## No. 23-7116

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

_____

**WILLIAM WHITE,**
**Petitioner/Appellant,**
**v.**

**WARDEN OF FEDERAL CORRECTIONAL INSTITUTION-
CUMBERLAND,**
*Respondent/Appellee.*

_____

**On Appeal from the United States District Court
for the District of Maryland, Southern Division
The Hon. Deborah K. Chasanow
(United States District Judge)**

_____

**JOINT APPENDIX - VOLUME I**

_____

EREK L. BARRON
United States Attorney

BEATRICE THOMAS
Assistant United States Attorney
36 S Charles St.
Baltimore, MD 21201
(410) 209-4848

*Counsel for Respondent/Appellee*

JAMES WYDA
Federal Public Defender

CLAIRE V. MADILL
Assistant Federal Public Defender
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
(301) 344-0600

*Counsel for Petitioner/Appellant*

# Table of Contents

**Page**

**Volume I**

District Court Docket Sheet ................................................................1

Petition (September 19, 2022, ECF No. 1) ...............................................4

Order to Respondent (September 20, 2022, ECF No. 2) .........................13

Motion to Dismiss/Summary Judgement (October 28, 2022, ECF No. 3)..............14

Response to Motion to Dismiss (November 14, 2022, ECF No. 5) .........................15

Reply to Response to Motion re 3 Motion to Dismiss (December 28,2022,

ECF No. 8) ................................................................................137

Motion for Leave to File Supplemental Response (March 01, 2023,

ECF No. 9) ................................................................................154

Correspondence re: Petitioner's Recalculation (March 03, 2023, ECF No. 10) ...165

Memorandum Opinion (July 31, 2023, ECF No. 12)............................................175

Order (July 31, 2023, ECF No. 13)................................................................196

Motion for Extension of Time to File NOA (October 10, 2023, ECF No. 14) .....197

Notice of Appeal (November 02, 2023, ECF No. 15) ..........................................202

Order Granting Extension of Time to File NOA (November 13, 2023,

ECF No. 18) ................................................................................206

Order Appointing the Federal Public Defender (January 13, 2025,

ECF No. 20) ................................................................................209

Program Statement ................................................................................210

ii

APPEAL,CLOSED,HABEAS

# U.S. District Court
## District of Maryland (Baltimore)
## CIVIL DOCKET FOR CASE #: 1:22-cv-02371-DKC

| | |
|---|---|
| White v. Warden, Federal Correctional Institution - Cumberland | Date Filed: 09/16/2022 |
| Assigned to: Judge Deborah K. Chasanow | Date Terminated: 11/13/2023 |
| Case in other court: USCA, 23-07116 | Jury Demand: None |
| Cause: 28:2241 Petition for Writ of Habeas Corpus (federa | Nature of Suit: 540 Mandamus & Other |
| | Jurisdiction: U.S. Government Defendant |

**Petitioner**

**William A White**     represented by     **William A White**
13888-084
CUMBERLAND FEDERAL
CORRECTIONAL INSTITUTION
P.O. Box 1000
Inmate Mail/Parcels
Cumberland, MD 21501
PRO SE

V.

**Respondent**

**Warden, Federal Correctional Institution
- Cumberland**     represented by     **Beatrice C. Thomas**
United States Attorney's Office
36 South Charles Street
Ste 4th Floor
Baltimore, MD 21201
410-209-4848
Email: beatrice.thomas@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/16/2022 | 1 | PETITION for Writ of Habeas Corpus, filed by William A White. (Attachments: # 1 Envelope)(mg3s, Deputy Clerk) (Entered: 09/19/2022) |
| 09/20/2022 | 2 | ORDER directing Respondent to file a response within 40 days of the date of this Order; Petitioner may reply 30 days after service of Respondents' Answer. Signed by Judge Deborah K. Chasanow on 9/20/2022. (c/m c/em 9/20/2022 - mg3s, Deputy Clerk) (Entered: 09/20/2022) |
| 10/28/2022 | 3 | MOTION to Dismiss *Complaint or, In The Alternative, For Summary Judgment* by Carter (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order, # 3 Exhibit 1, # 4 Exhibit 2, # 5 Exhibit 3, # 6 Exhibit 4)(Thomas, Beatrice) (Entered: 10/28/2022) |
| 10/28/2022 | 4 | Rule 12/56 notice mailed to William A White (mg3s, Deputy Clerk) (Entered: 10/28/2022) |

J.A. 1

| 11/10/2022 | 5 | RESPONSE to 3 MOTION to Dismiss *Complaint or, In The Alternative, For Summary Judgment* filed by William A White. (Attachments: # 1 Declaration, # 2 Envelope)(mg3s, Deputy Clerk) (Entered: 11/14/2022) |
| 11/22/2022 | 6 | MOTION for Extension of Time to File Response/Reply as to 5 Response in Opposition to Motion by Carter (Attachments: # 1 Text of Proposed Order)(Thomas, Beatrice) (Entered: 11/22/2022) |
| 11/23/2022 | 7 | ORDER granting 6 MOTION for Extension of Time to File Response/Reply as to 5 Response in Opposition to Motion. Signed by Judge Deborah K. Chasanow on 11/23/2022. (c/m P 11/23/2022 - mg3s, Deputy Clerk) (Entered: 11/23/2022) |
| 12/28/2022 | 8 | REPLY to Response to Motion re 3 MOTION to Dismiss *Complaint or, In The Alternative, For Summary Judgment* (Attachments: # 1 Exhibit 1)(Thomas, Beatrice) Modified on 12/29/2022 (mg3s, Deputy Clerk). (Entered: 12/28/2022) |
| 02/24/2023 | 9 | MOTION for Leave to Supplement Response to Motion to Dismiss by William A White (Attachments: # 1 Attachment, # 2 Envelope)(mg3s, Deputy Clerk) (Entered: 03/01/2023) |
| 03/03/2023 | 10 | Correspondence re: Respondent's Status Letter Update - Petitioner's Recalculation (Thomas, Beatrice) (Entered: 03/03/2023) |
| 03/16/2023 | 11 | MOTION to Strike by William A White (Attachments: # 1 Envelope)(mg3s, Deputy Clerk) (Entered: 03/17/2023) |
| 07/31/2023 | 12 | MEMORANDUM OPINION. Signed by Judge Deborah K. Chasanow on 7/31/2023. (c/m 7/31/2023 - mg3s, Deputy Clerk). (Entered: 07/31/2023) |
| 07/31/2023 | 13 | ORDER directing the Clerk to amend the docket; granting 3 Respondent's motion to dismiss; granting 9 Motion for leave to supplement response to motion to dismiss; denying 11 Motion to Strike; directing the Clerk to close this case. Signed by Judge Deborah K. Chasanow on 7/31/2023. (c/m 7/31/2023 - mg3s, Deputy Clerk) (Entered: 07/31/2023) |
| 10/05/2023 | 14 | MOTION for Extension of Time to File a Notice of Appeal by William A White (Attachments: # 1 Envelope)(mg3s, Deputy Clerk) (Entered: 10/10/2023) |
| 11/01/2023 | 15 | NOTICE OF APPEAL as to 13 Order Dismissing Case, by William A White. Filing fee $ 505. (Attachments: # 1 Envelope)(av4s, Deputy Clerk) (Entered: 11/02/2023) |
| 11/02/2023 | 16 | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals re 15 Notice of Appeal. IMPORTANT NOTICE: To access forms which you are required to file with the United States Court of Appeals for the Fourth Circuit please go to http://www.ca4.uscourts.gov and click on Forms & Notices.(av4s, Deputy Clerk) (Entered: 11/02/2023) |
| 11/06/2023 | 17 | USCA Case Number 23-7116 for 15 Notice of Appeal filed by William A White. Case Manager - Marcy Beall (av4s, Deputy Clerk) (Entered: 11/09/2023) |
| 11/09/2023 |  | Assembled Electronic Record Transmitted to Fourth Circuit -- Initial(av4s, Deputy Clerk) (Entered: 11/09/2023) |
| 11/13/2023 | 18 | ORDER granting 14 Motion for Extension of Time to File Document; closing case. Signed by Judge Deborah K. Chasanow on 11/13/2023. (dass, Deputy Clerk) (c/m to petitioner and c/nef coa 11/13/23-das) Modified on 11/22/2023 (dass, Deputy Clerk). (Entered: 11/13/2023) |
| 11/29/2023 | 19 | USCA Appeal Fees received $ 505 receipt number 6704 re 15 Notice of Appeal filed by William A White (av4s, Deputy Clerk) (Entered: 11/29/2023) |

J.A. 2

| 12/18/2024 | 20 | ORDER of USCA Granting leave to proceed in forma pauperis as to 15 Notice of Appeal filed by William A White (jh6s, Deputy Clerk) (Entered: 12/19/2024) |
| 01/10/2025 | 21 | ORDER of USCA Appointing the Federal Defender for the District of Maryland to represent William A. White as to 15 Notice of Appeal filed by William A White (jh6s, Deputy Clerk) (Entered: 01/13/2025) |

<table>
<tr><td colspan="4" align="center">**PACER Service Center**</td></tr>
<tr><td colspan="4" align="center">**Transaction Receipt**</td></tr>
<tr><td colspan="4" align="center">04/29/2025 10:11:36</td></tr>
<tr><td>**PACER Login:**</td><td>CMadillFPD</td><td>**Client Code:**</td><td></td></tr>
<tr><td>**Description:**</td><td>Docket Report</td><td>**Search Criteria:**</td><td>1:22-cv-02371-DKC</td></tr>
<tr><td>**Billable Pages:**</td><td>3</td><td>**Cost:**</td><td>0.30</td></tr>
<tr><td>**Exempt flag:**</td><td>Exempt</td><td>**Exempt reason:**</td><td>Always</td></tr>
</table>

J.A. 3

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND

Baltimore Division

FILED ___ ENTERED
___ LODGED ___ RECEIVED

SEP 1 6 2022

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

William A White

    Petitioner

v,

First Name Unknown ("FNU") Carter,

    Warden, FCI-Cumberland

      Respondent

Case No: _____

## PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 USC §2241

Comes Now the Petitioner, William A White, and, I Petition this Court to grant me Writ of Habeas Corpus and:

a) declare that Respondent Carter has deprived me of FIRST STEP Act Earned Time Credits ("ETCs") by placing and holding me in the Federal Correctional Institution ("FCI")-Cumberland Special Housing Unit ("SHU") (and, the Bureau of Prisons ("BOP") before her by placing me in the Federal Transfer Center ("FTC")-Oklahoma City SHU) from July 21 to August 22, 2022, without Due Process; and,

b) Order Carter to restore all said ETCs (about 10 days).

Parties, Venue, Jurisdiction

1) I, William A White, am a federal prisoner serving a term of 349 months imprisonment at FCI-Cumberland, located in Cumberland, Maryland, within the Baltimore Division of the District of Maryland.

2) Respondent FNU Carter is the Warden of FCI-Cumberland.

J.A. 4

-1-

USCA4 Appeal: 23-7116    Doc: 20    Filed: 05/21/2025    Pg: 8 of 236

3) 28 USC §2241 is the proper vehicle for a prisoner challenging a deprivation of Good Conduct Time ("GCT") credits awarded pursuant to 18 USC §3624 (b)(i). Wall v. Kiser 21 F 4ᵗʰ 266 (4ᵗʰ Cir 2021); Yi v. Fed Bureau of Prisons 412 F3d 526 (4ᵗʰ Cir 2005); Preiser v. Rodriguez 441 US 475 (1975). ETCs are awarded pursuant to 18 USC §3632(d)(4). While no Fourth Circuit case specifically addresses ETCs, United States v. Pratt 821 Fed Appx 200 (4ᵗʰ Cir 2020) suggests in dicta that 28 USC §2241 could be used to challenge the "calculation or award" of such credits (incorrectly citing 18 USC §3624(b)(i)). I address this further in argument, infra.

4) Venue is proper in this District. Rumsfeld v. Padilla 542 US 426 (2004); Konai v. McHugh 638 F3d 251 (4ᵗʰ Cir 2011); Hill v. Quintana 770 Fed Appx 66 (4ᵗʰ Cir 2019) (discussion)

Factual Allegations

5) On July 21, 2022, I was transferred from FCI-Terre Haute to FTC-Oklahoma City, where I was placed in the SHU for allegedly being a "domestic terrorist." No process was associated with this designation or placement and I was not permitted to challenge or appeal this designation through the administrative remedy process.

6) On July 25, 2022, I was transferred from FTC-Oklahoma City to FCI-Cumberland, where I was placed in SHU "pending bedspace" because the BOP had transferred me to FCI-Cumberland without providing for a bed to be available for me in general population. I was released to general population August 22, 2022.

7) On January 18, 2022, the BOP enacted 28 CFR §523.40, et seq, which guarantees

USCA4 Appeal: 23-7116    Doc: 20    Filed: 05/21/2025    Pg: 9 of 236

that federal inmates shall earn ETCs except for certain circumstances, such as placement in SHU. The BOP did not modify its regulations to provide the Due Process required by <u>Wolff v. McDonnell</u> 48 US 539 (1974) before an inmate is deprived of ETCs.

8) I am eligible to earn ETCs pursuant to 18 USC §3632 (d)(4).

9) I lost about 10 days ETCs during the period July 21, 2022, to August 22, 2022.

10) On July 26 2022, I submitted a BP-8 to Counselor Rice claiming that I had been placed in SHU without Due Process. Counselor Washington later confirmed to me orally that Rice gave him the BP-8. The BP-8 was not returned. I subsequently asked Washington orally on August 4, 5, 16, 23 and 26 and in writing August 11 and 14 for a BP-9. On August 26, 2022, Washington stated to me that he would not provide with a BP-9 until the BP-8 is returned. Because I have not been able to timely obtain a BP-9, I cannot access the administrative remedy system. see e.g. 28 CFR §542.14 (initial filing must be "on the appropriate form (BP-9)".

Argument

11) 28 USC §2241 (c)(3) extends the writ of habeas corpus to a prisoner who "is in custody in violation of the Constitution or laws and treaties of the United States."

12) 18 USC §3632 (d)(4) provides that "A prisoner... who successfully completes evidence-based recidivism reduction programming or productive activities shall earn time credits as follows... (i) a prisoner shall earn 10 days of time credits for every 30 days of successful participation... This earning of ETCs

J.A. 6

-3-

is distinct from the application of said credits, which is governed by 18 USC §3624(g). Exercising its discretion, the BOP, on January 18, 2022, enacted 28 CFR §523.40, et seq, to interpret and apply the mandate of 18 USC §3624 (g) and §3632 (d)(4). 28 CFR §523.41 defines "successful participation" as a default condition for BOP inmates even when, 28 CFR §523.41(c)(3), the BOP is unable or unwilling to provide programming. Instead, 28 CFR §523.41(c)(3) defines the only five times when an inmate is not "successfully participating" as:

(i) when placed in SHU;

(ii) when designated outside the institution;

(iii) when transferred to the custody of an agency other than the BOP;

(iv) when on a mental health or psychiatric hold;

(v) when choosing not to participate.

13) "If a prisoner's term of confinement can be shortened or modified by rights conveyed to him under ... [the] law, those rights cannot be denied without Due Process. Thus, a ... right to mandatory parole or good time credits creates a protected liberty interest." O'Bar v. Pinion 953 F2d 74 (4th Cir 1991) citing Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex 442 US 1 (1979), Wolff v. McDonnell 418 US 39 (1974). "Federal courts have long recognized that the revocation of prisoner's earned good time credits implicates their procedural due process rights." Wall v. Kiser 21 F 4th 266 (4th Cir 2021); See also Lennear v. Wilson 937 F3d 257 (4th Cir 2019); Dilworth v. Adams 841 F3d 246 (4th Cir 2016) (discussing Wolff). This extends to placement in a credit-earning class. O'Bar; Smith v. Collins 964 F3d 266 (4th Cir 2020) (42 USC §1983 case finding District Court erred in finding no liberty interest where inmate unable to earn time credits while in administrative detention.)

14) The specific Due Process protections that must be extended to a federal prisoner before he may be deprived of good time credits under any name, including ETCs, are:

a) twenty four hours notice in writing prior to a hearing of the allegations supporting the contemplated deprivation;

b) a hearing

   i) before an impartial official

   ii) where one may call witnesses and present evidence;

c) written notice of the hearing official's findings and the reasons behind them. <u>Dilworth</u>; <u>Wolff</u>.

There must also be "some evidence" to support the decision. <u>Superintendent, Mass Correctional Inst v. Hill</u> 472 US 445 (1985). Some Circuits have also found that there must be a meaningful appeal process that can "correct the procedural error before the punishment has begun." See, eg. <u>Morisette v. Peters</u> 45 F3d 1119 (7ᵀᴴ Cir 1995). In considering the lesser Due Process standard that applies before a prisoner may be placed in administrative detention, the Supreme Court has looked favorably upon such review processes. <u>Wilkinson v. Austin</u> 545 US 209 (2005). Thus, I ask that this Court also find a Due Process right to a meaningful appeal process.

15) The BOP's definition of "successful participation" in 18 USC §3632 (d)(4) and 28 CFR §523.41(c) clearly creates a statutory right to time credits that "shorten or modif[y]" a "prisoner's term of confinement." <u>O'Bar</u>. To earn ETCs, a prisoner needs to do little more than be in the BOP and not refuse programming. ( Several other propositions as to when an inmate cannot earn ETCs, such as when on a medical trip or psychiatric hold, are also likely unlawful or un-Constitutional, but, are not at issue here.) When not in SHU, I earn 10 days of ETCs for every 30 days I'm imprisoned as long as I do not refuse pro-

gramming. When in SHU, I earn 0 days, even if I program (as I did here, enrolling in a written ACE class). However, these ETCs that I've lost are not taken due to any procedure; the BOP arbitrarily places me in SHU because it disagrees with my political or religious beliefs (FTC-Oklahoma City's idiosyncratic "domestic terrorist" designation. which has no basis in statute, regulation or policy) or because it cannot manage its bedspace, and my sentence becomes 10 days longer. And. by not answering my BP-8s and not issuing me BP-9s, FCI-Cumberland effectively stops me from accessing the administrative remedy system. This is exactly what Wolff prohibits.

16) This is not about SHU confinement per se. The BOP may or may not have been permitted to place me in SHU. But, the BOP was not permitted to impose loss of ETCs as a collateral consequence of SHU confinement without Due Process. If the BOP wants to deprive inmates of ETCs due to SHU confinement, it must provide inmates with 24 hours written notice before a hearing on the issue, a hearing before an impartial hearing officer at which the inmate may produce witnesses and evidence, written notice of the officer's findings and the reasons therefore, and, a meaningful appeal process. Otherwise, it had to either give me programming and ETCs, or, not place me in SHU at all.

Thus, I ask that this Court:
a) declare that Respondent Carter has deprived me of ETCs without Due Process by holding me in the FCI-Cumberland (and, as the BOP, the FTC-Oklahoma City) SHU; and,
b) order Carter to restore all said ETCs (about 10 days);
as well as grant me costs and any other relief the Court sees fit.

Respectfully Submitted,

_____

William A White #13888-084
FCI-Cumberland
PO Box 1000
Cumberland, MD 21501

## CERTIFICATE OF SERVICE

I hereby certify that this Petition for Writ of Habeas Corpus was mailed to the Clerk of the Court, 1ST Class Postage Prepaid, this __12th__ day of September, 2022.

_____

William A White

-7-

William A. White # 13888-084
Federal Correctional Institution - Cumberland
PO Box 1000
Cumberland, MD 21501

BALTIMORE MD  212

13 SEP 2022   PM 4

CLERK
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
W. LOMBARD ST
BALTIMORE, MD 21201-2691

FILED _____
LODGED _____ RECEIVED

SEP 1 6 2022

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
                    DEPUTY

LEGAL MAIL

BY

21201-2691A511

Received
SEP 10 2022
FCI CUM
Mailroom



FEDERAL CORRECTIONAL INSTITUTION
14001 BUR     ROAD, SE
     LAND 21502

PLEASE RETURN     
ABO  E ADDRESS.

J.A. 12

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILLIAM A. WHITE,

    Petitioner,

    v.                                      Civil Action No.:  DKC-22-2371

CARTER, *Warden*,

    Respondent.

**ORDER**

The above-captioned Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2241, was received for filing on September 16, 2022.  Respondent shall be required to answer the allegations raised in the Petition.

Accordingly, it is this 20th day of September, 2022, by the United States District Court for the District of Maryland, hereby ORDERED that:

1.    Respondent shall file a response within 40 days of the date of this Order;

2.    Petitioner may reply thirty (30) days after service of Respondents' Answer; and

3.    The Clerk shall mail a copy of this Order to Petitioner and provide via email a copy of this Order and a copy of the Petition to Assistant United States Attorney Thomas F. Corcoran.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge

J.A. 13

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WIILLIAM WHITE,                          )
                                         )
        Petitioner,                      )
                                         )    Civil Action No. 1:22-cv-02371-DKC
        v.                               )
                                         )
FIRST NAME UNKNOWN ("FNU")               )
CARTER, WARDEN, FCI CUMBERLAND           )
                                         )
        Respondent.                      )
_____

## MOTION TO DISMISS COMPLAINT OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Warden, FCI Cumberland (the "Respondent"), by and through undersigned counsel, Erek

L. Barron, United States Attorney for the District of Maryland, and Beatrice C. Thomas, Assistant

United States Attorney for said District, hereby moves to dismiss the Petition for Writ of Habeas

Corpus for failure to state a claim, pursuant to Federal Rule of Civil Procedure (12)(b)(6).

Respondent's arguments in support of this motion are fully set forth in the attached memorandum.

                                    Respectfully submitted,

                                    EREK L. BARRON
                                    United States Attorney

                                    _____/s/_____
                                    Beatrice C. Thomas (Bar No. 21969)
                                    Assistant United States Attorney
                                    36 South Charles Street, 4th Floor
                                    Baltimore, Maryland 21201
                                    410-209-4848
                                    beatrice.thomas@usdoj.gov

                                    *Counsel for Respondent*

J.A. 14

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **WIILLIAM WHITE**, | ) |
| | ) |
| Petitioner, | ) |
| | ) Civil Action No. 1:22-cv-02371-DKC |
| v. | ) |
| | ) |
| **FIRST NAME UNKNOWN ("FNU")** | ) |
| **CARTER, WARDEN, FCI CUMBERLAND** | ) |
| | ) |
| Respondent. | ) |

_____

## RESPONDENT'S MEMORANDM IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Petitioner, William White, Federal Register number 13888-084, is a Federal Bureau of Prisons ("BOP") inmate currently designated to the Federal Correctional Institution in Cumberland, Maryland ("FCI Cumberland"). Petitioner filed the instant Petition for Writ of Habeas Corpus (the "Petition") requesting the BOP to calculate and apply his Earned Time Credits ("Time Credits") under the First Step Act ("FSA") he received while in the Special Housing Unit ("SHU") from July 21, 2022, to August 22, 2022.

## INTRODUCTION

This Petition must be dismissed. Petitioner has failed to administratively exhaust his remedies pursuant to the BOP grievance process. Additionally, while Petitioner is eligible to *earn* Time Credits, any credits he has received will not be *applied* until he reaches a Low or Minimum recidivism risk score under the Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN") tool. Finally, Petitioner was unable to earn Time Credits while in the SHU pursuant to 28 C.F.R. § 523.41(c)(4)(i).

J.A. 15

## I.   FACTUAL HISTORY

Petitioner is currently serving an aggregate 349-month term of imprisonment at FCI Cumberland.  Assuming he receives all good conduct time currently projected, Petitioner has a release date of May 29, 2037.  *See* **Exhibit 1**, Declaration of Misty Shaw ("Shaw Declaration"), ¶ 5, and Attachment A, p. 1.

On November 22, 2019, Petitioner was reviewed for Time Credit eligibility based on his current offenses and he was found eligible to receive Time Credits.  *See* **Exhibit 2**, Declaration of Brittny May ("May Declaration"), ¶ 7, and Attachment C, p. 1.  On July 21, 2022, Petitioner was transferred from the Federal Correctional Institution Terre Haute in Terre Haute, Indiana and arrived at the Federal Transfer Center Oklahoma City ("Oklahoma City") in Oklahoma City, Oklahoma.[1]  *Id.,* ¶ 4, and Attachment A, p. 1.   Between July 21, 2022 (the day he arrived at Oklahoma City) and July 25, 2022 (the day he left Oklahoma City), Petitioner was held in the SHU because he had several security threat group assignments.  *See* **Exhibit 3**, Declaration of Gerald Sawyer (Sawyer Declaration"), ¶ 6.

On July 25, 2022, Petitioner was transferred from Oklahoma City to Cumberland.  *See* **Exh**. **2**, May Declaration ¶ 6, and Attachment A.  He was placed in the SHU from July 25, 2022 to August 22, 2022 due to unavailable bed space in general population.  *Id.*  On August 22, 2022, Petitioner was released to the general population.  *Id.*

On August 30, 2022, Petitioner attended his routine 180-day program review where he was evaluated as a Medium risk level according to PATTERN.  **Exh. 2***, May Declaration, ¶ 8, and

---

[1] Its mission is to process and temporarily house inmates who are in-transit to facilities throughout the BOP.  *See* **Exh**. **3**, Sawyer Declaration, ¶ 4.

Attachment D. That same day, a memo was released to all inmates informing them that all inmates would receive an auto-calculation application worksheet of any Time Credits they have received once the program was launched. *Id.,* ¶ 9, and Attachment E, p. 1. On October 2, 2022, the BOP began auto-calculating Petitioner's Time Credits. *Id.,* ¶ 10. On October 5, 2022, Petitioner's Time Credits were automatically calculated. *Id.,* ¶ 11, and Attachment F. Petitioner did not receive thirty-three days of Time Credits because he was not in qualifying status, i.e., transfer or SHU pursuant to 28 C.F.R. § 523.41(c)(4)(i). *Id.,* ¶ 17, and Attachment F.

## II.    THE FIRST STEP ACT OF 2018

The FSA amended 18 U.S.C. § 3621, which governs the calculation of federal prison sentences. Section 102(b) of the FSA also amended 18 U.S.C. § 3624(b), allowing federal inmates to earn additional good time credits. *Knight v. Bell*, JKB-20-3108, 2021 WL 1753791, at *3 (D. Md. May 4, 2021) (citing P.L. 115-391, § 102(b)(1)). The FSA, among other things, allows the BOP to award inmates a maximum of 54 days of good time credits per year of their *imposed* sentence rather than 54 days of credit per year of their sentence *served. See Pizarro v. White*, 2019 WL 1922437, at *1 (M.D. Pa. Apr. 30, 2019). In other words, the FSA increased the maximum allowable good time credits from 47 days to 57 days per year. *See Knight*, 2021 WL 1753791, at *3 (citing *Bowling v. Hudgins*, 2020 WL 1918248, at *3 (N.D.W. Va. Mar. 16, 2020), report and recommendation adopted, 2020 WL 1917490 (N.D.W. Va. Apr. 20, 2020)).

Under the FSA, inmates are eligible to earn up to 10 days of time credits for every 30 days of successfully completing BOP-approved recidivism reduction programming. *See Murph v. Andrews*, 2021 WL 3575844, at *2 (E.D. Va. Aug. 12, 2021) (citing 18 U.S.C. § 3632(d)(4)(A)). These time credits can be eligible, at the discretion of the BOP, for various incentives and rewards

3

for successful completion -- most importantly here, time credit applied toward time in pre-release custody or supervised release.  *See* 18 U.S.C. §§ 3632 (d)(1) – (4)(C).

The FSA and its programs were not immediately effective upon enactment.  *Murph*, 2021 WL 3575844, at *2.  Rather, the Attorney General was required to complete and release a "Risk and Needs Assessment ("Needs Assessment")," which was published in 2019.[2]  *Knight*, 2021 WL 1753791, at *3.  The BOP was then required to phase-in the system created under the Needs Assessment, expand and implement programming and productive activities opportunities to eligible inmates, and award earned time credits by January 2022.  *Id*. (citing *Llufrio v. Johns*, 2020 WL 5248556, at *2 (S.D. Ga. Aug. 13, 2020) and 18 U.S.C. § 3621(h)).

On January 19, 2022, the BOP published its "procedures regarding the earning and application of Time Credits as authorized by the First Step Act of 2018."  *See* **Exhibit 4**, FSA Time Credits, p.1, 87 Fed. Reg. 12, 2705 (January 19, 2022) (codified at 28 C.F.R. pt. 523).  In accordance with the FSA, if the inmate has successfully participated in Evidenced-Based Recidivism Reduction ("EBRR") Programs and Productive activities ("PAs") specifically approved by the BOP, the time credits *earned* upon completion may not be *applied* to pre-release custody until:

- The amount of earned Time Credits is equal to the remainder of the inmate's imposed term of imprisonment;

- The inmate has demonstrated a reduced risk of recidivism or maintained a minimum or low recidivism risk during his or her term of imprisonment.

- The remainder of his/her imposed term of imprisonment has been computed under applicable law (e.g., Good Time Credit under 28

---

[2]  The First Step Act of 2018: Risk and Needs Assessment System is available at the Bureau of Prisons' website: https://www.bop.gov/inmates/fsa/docs/the-first-step-act-of-2018-risk-and-needs-assessment-system-updated.pdf

4

> CFR Part 523 has been applied, eligibility for early release consideration under Residential Drug Abuse Treatment Program regulations in 28 CFR Part 550 has been evaluated, etc.); and
>
> - The inmate has been determined to be at a minimum or low risk of recidivating based on his or her last two assessments, or has had a petition to be transferred to pre-release custody approved by the warden.

*Id.*, p. 8; 28 C.F.R. § 523(c)(1) and § 541.

Eligible inmates will receive retroactive time credits for programming and activities they participated in starting on December 21, 2018, the date of the FSA's enactment. *See* **Exh. 4,** FSA Time Credits, p. 4, 14. In determining how to award FSA Time Credits during the period before all individualized risk and needs assessments had been completed, the Bureau will exercise its discretion, and eligible inmates will be afforded a presumption of participation for the period between December 21, 2018, and January 14, 2020, and be awarded time credits accordingly. *Id.*, p. 4. Inmates will not receive credit for any period in which they were in a special housing unit, in a designation status outside the institution, temporarily transferred to the custody of another federal or non-federal government agency, in mental health/psychiatric holds, or for refusing mandatory programming. *Id.*

## III.   STANDARDS OF REVIEW

### A.  Motion to Dismiss

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Although the complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), this Rule "still requires a 'showing,' rather than a blanket assertion, of entitlement to relief.'" *Bell*

5

J.A. 19

*Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 n.3 (2007).  That is, [f]actual allegations must be enough to raise a right to relief above the speculative level . . .  on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965 (internal citations omitted).  In considering a motion to dismiss, the court need not accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).  A court may dismiss a complaint "as a matter of law if it lacks a cognizable legal theory or if it alleges insufficient facts under a cognizable legal theory." *Turner v. Kight*, 192 F. Supp. 2d 391, 398 (D. Md. 2002) (internal citations omitted).  A court should also dismiss a complaint if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief.  *Franks v. Ross*, 313 F.3d 184, 192 (4th Cir. 2002).

### B.  Motion for Summary Judgment

Typically, under Federal Rule of Civil Procedure 56, a court must enter summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  However, summary judgment is also appropriate when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party.  *See Khoury v. Meserve*, 268 F. Supp. 2d 600, 607 (D. Md. 2003).  Nevertheless,

6

J.A. 20

"'[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.'" *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 455 F. Supp. 2d 399, 410 (D. Md. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). A district court has an "affirmative obligation ... to prevent 'factually unsupported claims and defenses' from proceeding to trial.'" *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex Corp.,* 477 U.S. at 323).

## IV.    ARGUMENT

Petitioner is not entitled to immediate applicability of Time Credits because he has failed to exhaust his administrative remedies and he is a Medium risk inmate. Additionally, an inmate housed in the SHU is not entitled to Time Credits pursuant to 28 C.F.R. § 523.41(c)(4)(i).

### A. Petitioner failed to exhaust his administrative remedies in this matter.

Courts have consistently required prisoners to exhaust administrative remedies prior to filing habeas corpus petitions. The well-established doctrine of exhaustion of administrative remedies requires that in order for an individual to assert claims for judicial relief, he must first exhaust the prescribed administrative remedy made available to him. *See Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006) (citing *McKart v. United States*, 395 U.S. 185, 193 (1969)). Exhaustion allows for a potentially faster, more efficient solution to the inmate's problem, reduces the intrusion of the courts into prison administration, and provides a mechanism for fact finding before the matter reaches the court. *See McKart*, 395 U.S. at 193-95; *see also Reeder v. Phillips*, 2008 WL 2434003, at *5 (N.D.W. Va. June 12, 2008) (listing seven policies promoted by requiring exhaustion). If an inmate "is required to pursue his administrative remedies, the courts may never have to intervene. And notions of administrative autonomy require that the agency be given a chance to discover and correct its own errors." *McKart*, 395 U.S. at 195.

7

Proper exhaustion of administrative remedies demands compliance with an agency's deadlines and other critical procedural rules. *Woodford*, 548 U.S. at 90. Failure to exhaust administrative remedies is excusable only upon a showing of cause and prejudice. *Carmona v. Bureau of Prisons*, 243 F.3d 629, 634 (2d Cir. 2001). Even where "the administrative process is unlikely to grant an inmate relief, Courts have enforced a longstanding policy favoring exhaustion." *See Homan v. U.S. District Court*, 2011 WL 4007391, *2 (N.D.W. Va. 2011) (citing *Alexander v. Hawk*, 159 F.3d 1321, 1327-28 (11th Cir. 1998). An inmate must complete all stages of the administrative remedy process before the process is considered properly exhausted. *Woodford*, 548 U.S. at 88-89.

The BOP has established a four-tiered administrative remedy process. Title 28 C.F.R. § 542.10, *et seq.*, sets forth the BOP's administrative remedy program, which provides formal review of any complaint that relates to any aspect of the inmate's confinement. Under this process, inmates are encouraged to first attempt resolution of their complaints informally by discussing the matter with a member of the unit team. *See* 28 C.F.R. § 542.13. If the attempt at informal resolution does not resolve the matter, the inmate may file a formal complaint with the Warden within 20 days of the date on which the basis of the complaint occurred. 28 C.F.R. §§ 542.13-14. If an inmate is not satisfied with the Warden's response, he may appeal, using the appropriate form, to the Regional Director within 20 calendar days of the Warden's response. *See* 28 C.F.R. § 542.15(a). If the inmate is dissatisfied with the regional response, he may file an appeal with the National Appeals Administrator at BOP's Central Office in Washington, D.C. *Id.* The Central Office appeal is the final level of administrative review in the Bureau of Prisons' administrative remedy process. *Id.* An inmate is only deemed to have exhausted his administrative remedies when he has filed a complaint at all levels. 28 C.F.R. § 542.15(a).

J.A. 22

Here, Petitioner claims he has been unable to access the administrative remedy system because his Counselor would not provide him with the appropriate form. *See* ECF No. 1, p. 3. Between January 1, 2022[3] through October 12, 2022, Petitioner has filed fifty-seven administrative remedies, which clearly demonstrates his familiarity with the process. *See* **Exh. 1**, ¶ 7, at Attachment B. During this period of time, Petitioner has only filed four administrative remedies regarding the FSA. *Id.* When the institution closed or rejected his requests, Petitioner failed to correct the errors and/or appeal to Central Office. *Id.* Like in *Cochran v. Earwin,* where this Court found "Cochran has failed to establish that the administrative remedy process was unavailable to him because he never appealed his one request concerning FSA credits," this Court should find Petitioner failed to exhaust his administrative remedies. *See generally Cochran v. Earwin,* No. 1:22-cv-00173-GLR (October 13, 2022).

**B. Petitioner's current PATTERN score excludes him from the application of Time Credits.**

Petitioner argues he is eligible to receive Time Credits and have ten days of Time Credits applied to his sentence immediately to reflect the time he spent in the SHU between July 21, 2022 to August 22, 2022. *See* ECF 1, Page 3. While Petitioner is *eligible* to receive Time Credits, because he is a Medium risk inmate, he is not entitled to the *application* of Time Credits until he receives a Low or Minimum risk level and maintains the Low or Minimum risk level for two consecutive assessment periods pursuant to 28 C.F.R. § 523.42(c).

---

[3] Petitioner has been incarcerated since 2008. *See* **Exh. 1**, ¶ 7. Petitioner has filed an innumerable amount of remedies which the BOP's electronic system, SENTRY, is unable to compute into a single document.

J.A. 23

    *i.      Petitioner is eligible to receive Time Credits.*

On an inmate's Inmate Profile, or a PP44, the Unit Team will review, and if eligible, code them as "FTC-ELIGIBLE-REVIEWED." *See* **Exh. 2**, ¶ 7, and Attachment C. This code indicates the inmate's eligibility to **earn** Time Credits. *Id.*

    *ii.     Petitioner's current PATTERN score precludes applicability of Time Credits.*

The FSA requires the BOP to implement a Risk and Needs Assessment System that determines the individual risk an inmate will recidivate and identifies the programs which will address the needs for that inmate. PATTERN is the tool selected by the Attorney General to assess an inmate's risk. Through PATTERN, the BOP identifies the following 13 areas to be assessed for each inmate: anger/hostility, finance/poverty, antisocial peers, medical, cognitions, mental health, dyslexia, education, family/parenting, work, medical, recreation/leisure/fitness, substance abuse, and trauma.[4] Following an assessment, eligible inmates may begin earning time credit to be applied towards early placement in pre-release custody, such as Residential Reentry Centers (RRCs) and home confinement, or toward a term of supervised release. 18 U.S.C. § 3632(d)(4)(C).

However, before earned credits are actually applied, eligible inmates must attain a Low or Minimum risk level on PATTERN and maintain that score for two consecutive assessment periods. *See* 28 C.F.R. § 523.42(c). On January 19, 2022, the Code of Federal Regulations reemphasized the ineligibility of an inmate to receive FSA credit who does not hold a minimum or low risk. 28 C.F.R. § 523 and § 541.

The BOP placed emphasis on a system that accurately measures an inmate's change during incarceration, and provides opportunities for inmates to reduce their risk scores post-intake during

---

[4] *See The First Step Act of 2018: Risk and Needs Assessment*, available online:
https://www.bop.gov/inmates/fsa/docs/the-first-step-act-of-2018-risk-and-needs-assessment-system-updated.pdf,
p. 23 n.18

periodic reassessments. 18 U.S.C. § 3621(h)(2). Accordingly, PATTERN includes a diverse set of factors to determine the risk of recidivism for BOP inmates. 18 U.S.C. § 3635(3). Many of these factors are dynamic, meaning that an inmate's risk of recidivism could change with appropriate programming and services or could be affected by the inmate's behavior. 18 U.S.C. § 3621(h)(2).

Here, Petitioner is a Medium risk level and therefore is statutorily precluded from receiving *applied* Time Credits until he reaches a Low or Minimum risk level and maintains that risk level for two consecutive assessment periods. *See* **Exh. 2**, ¶ 8, and Attachment D. On August 30, 2022, Petitioner attended his routine 180-day program review which evaluated his recidivism risk. *Id.* His risk was marked as Medium. Petitioner will not be reevaluated until in or around February 2023 when his next 180-day assessment occurs. Therefore, at this time, Petitioner is not entitled to time credit until his PATTERN score changes. An award of time credit by way of habeas relief would be in direct conflict with the FSA. Petitioner, should he wish to be awarded time credit, must participate in and complete approved programs to change his PATTERN score. *See Murph*, 2021 WL 3575844, at *3 (finding inmate ineligible for the higher amount of good conduct time because he had not completed the requisite evidence-based recidivism reduction programs and productive activities); *see also Knight*, 2021 WL 1753791, at *4 (finding Petitioner ineligible to use any time credit to reduce his sentence because his current PATTERN score does not show a low risk recidivism level).

**C. An Inmate housed in the SHU is not eligible to receive any Time Credit.**

Pursuant to 28 C.F.R. § 523.41(c):

> (1) An eligible inmate must be "successfully participating" in EBRR[5] Programs or PAs[6] to earn FSA Time Credits for those EBRR Programs or PAs.

---

[5] EBRRs are Evidenced Based Recidivism Risk Programs.
[6] PAs are Productive Activities.

J.A. 25

(2) "Successful participation" requires a determination by Bureau staff that an eligible inmate has participated in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment, and has complied with the requirements of each particular EBRR Program or PA.

(3) Temporary operational or programmatic interruptions authorized by the Bureau that would prevent an inmate from participation in EBRR programs or PAs will not ordinarily affect an eligible inmate's "successful participation" for the purposes of FSA Time Credit eligibility.

(4) An eligible inmate, as described in paragraph (d)[7] of this section, will generally not be considered to be "successfully participating" in EBRR Programs or PAs in situations including, but not limited to:

> (i) *Placement in a Special Housing Unit;*
> (ii) Designation status outside the institution (*e.g.*, for extended medical placement in a hospital or outside institution, an escorted trip, a furlough, etc.);
> (iii) Temporary transfer to the custody of another Federal or non-Federal government agency (*e.g.,* on state or Federal writ, transfer to state custody for service of sentence, etc.);
> (iv) Placement in mental health/psychiatric holds; or
> (v) "Opting out" (choosing not to participate in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment).

Here, based on Petitioner's FSA Time Credit Assessment worksheet calculated on October 5, 2022, he was disallowed thirty-three (33) days of Time Credits because he was not in qualifying admittance status, *i.e.,* because he was transferred from Terre Haute to Oklahoma City (July 21, 2022) and then transferred from Oklahoma City to Cumberland (July 25, 2022), and then was held in the SHU from July 25, 2022 to August 22, 2022 due to unavailable bed space. *See* **Exh. 2**, ¶ 17, and Attachment F. Because Petitioner was in transfer status and in SHU status, he is precluded from receiving 33 days of credits. *See* 28 C.F.R. § 523.41(c). As of October 5, 2022, Petitioner has already accrued 285 days of Time Credits that can be applied towards pre-release custody, and

---

[7] 28 C.F.R. § 523.41(d) states:

(1) *Eligible to earn FSA Time Credits.* An inmate who is *eligible to earn* FSA Time Credits is an *eligible* inmate for the purposes of this subpart. Any inmate sentenced to a term of imprisonment pursuant to a conviction for a Federal criminal offense, or any person in the custody of the Bureau, is *eligible to earn* FSA Time Credits, subject to the exception description in paragraph (d)(2) of this section.

(2) *Exception.* If the inmate is serving a term of imprisonment for an offense specified in 18 U.S.C. § 3632(4)(D), the inmate is not *eligible to earn* FSA Time Credits.

J.A. 26

365 days of Time Credits that can be applied towards his release date **once he reaches a Low or Minimum risk level and is within 18 months his release date,** which is May 29, 2037. *Id.*, ¶¶12-21, and Attachment F.

## V.        **CONCLUSION**

For the reasons described above, the Respondent respectfully requests that this Court dismiss the Petition or, in the alternative, enter summary judgment in favor of the Respondent.

Respectfully submitted,

EREK L. BARRON
United States Attorney

_____/s/_____
Beatrice C. Thomas (Bar No. 21969)
Assistant United States Attorney
36 South Charles Street, 4th Floor
Baltimore, Maryland 21201
410-209-4848
beatrice.thomas@usdoj.gov

*Counsel for the Respondent*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 28th day of October 2022, I caused a copy of the foregoing Motion to Dismiss or, in the Alternative, for Summary Judgment to be mailed, first class, postage prepaid to:

William White, #13888-084
Federal Correctional Institution - Cumberland
P.O. Box 1000, Inmate Mail/Parcels
Cumberland, MD 21501

_____/s/_____
Beatrice C. Thomas
Assistant United States Attorney

13

J.A. 27

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **WIILLIAM WHITE**, ) | |
| ) | |
| Petitioner, ) | |
| ) | Civil Action No. 1:22-cv-02371-DKC |
| v. ) | |
| ) | |
| **FIRST NAME UNKNOWN ("FNU")** ) | |
| **CARTER, WARDEN, FCI CUMBERLAND** ) | |
| ) | |
| Respondent. ) | |

_____

**ORDER**

Upon consideration of Respondent's Motion to Dismiss, or, in the Alternative, for Summary Judgment, any response thereto, and the record in this case, it is this _____ day of _____, 2022 hereby:

_____ ORDERED that the Petition for Writ of Habeas Corpus against Respondent Warden, FCI Cumberland shall be and hereby is DISMISSED for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

It is so ORDERED.

_____
The Honorable Deborah K. Chasanow
United States District Judge

J.A. 28

# EXHIBIT 1

# Declaration of Misty Shaw

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| WIILLIAM WHITE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Civil Action No. 1:22-CV-2371-DKC |
| v. | ) | |
| | ) | |
| FIRST NAME UNKNOWN ("FNU") | ) | |
| CARTER, WARDEN, FCI CUMBERLAND | ) | |
| | ) | |
| Respondent. | ) | |

---

**DECLARATION OF MISTY SHAW**

In accordance with the provisions of 28 U.S.C. § 1746, I, the undersigned Misty Shaw, do hereby make the following declaration pertinent to the above-styled cause of action:

1. I, Misty Shaw, am presently the Paralegal at the Mid-Atlantic Regional Office of the Federal Bureau of Prisons (Bureau). I have held this position since March 2019 and began my employment with the Bureau July 11, 2004.

2. As Paralegal, I have access to the official records compiled and maintained by the Bureau, many of which are located in the Bureau's computerized records (SENTRY) and inmate files.

3. I hereby certify the attached documents are true and accurate copies of official records received, compiled, and maintained in the ordinary course of business by the Bureau.

4. I have reviewed the computerized SENTRY records of Petitioner William White, Federal Register Number 13888-084.

5. Petitioner is currently serving an aggregate 349-month term of imprisonment followed by a supervised release term of three years. Assuming he receives all good conduct time currently projected, Petitioner has a release date of May 29, 2037. *See* Attachment A.

6. Attached hereto as Attachment B is a true and accurate copy of Petitioner's

1

J.A. 30

Administrative Remedy History.  This document reflects all of the formal BOP administrative grievances that Petitioner has filed.  The document contains the following pertinent information:

- REMEDY ID: This section lists the remedy ID associated with the grievance. Each administrative grievance is assigned a specific remedy ID. The numerical portion of the Remedy ID before the hyphen is known as the Case Number which is used to track subsequent submissions or appeals of the same administrative grievance. Following the hyphen, there is a Submission ID comprised of one letter and one number. The letter indicates which level of the BOP administrative remedy program has received the grievance. The letter "F" indicates that the submission was received by an individual federal correctional facility. The subsequent number indicates the number of times an inmate has submitted the same request at the same level of the BOP grievance program. The letter "R" indicates that the submission was received by individual regional office. The letter "A" indicates that the submission was received by the BOPs Central Office.

- RCV OFC: This section lists which level of the BOP administrative remedy program received the submission. Submissions received by a federal correctional facility are listed using an abbreviation reflecting the name of the facility.

- FACL RCV: This section lists the federal correctional facility in which Plaintiff was incarcerated when he filed the administrative remedy request.

- DATE RCV: This section lists the date on which the administrative remedy submission was received and, therefore, considered filed.

- STATUS CODE: This section lists the status or disposition of the administrative remedy submission. The abbreviation "REJ" indicates that the submission was rejected.

- STATUS DATE: This section lists the date associated with the status or disposition of

2

J.A. 31

the administrative remedy submission.

7. Based on a review of Plaintiff's Administrative Remedy History, Plaintiff has filed an innumerable total of remedies since being in BOP custody which the BOP's electronic system, SENTRY, is unable to compute into a single document. Between January 1, 2022 and October 12, 2022, Petitioner has filed fifty-seven administrative remedies. Only four have referenced the First Step Act (FSA).

  a. On March 22, 2022, the Federal Correctional Institution in Terre Haute, Indiana (Terre Haute) received Petitioner's administrative remedy 1114308-F1, regarding "Req's to receive FSA credit, FSA eligibility status." The remedy was closed with the status reason of "XPL." *See* Attachment B, pg. 6.

  b. On May 24, 2022, FCI Terre Haute received Petitioner's administrative remedy 1121229-F1 regarding "Appeal of commissary restriction, req's FSA credits." The remedy was rejected with the status reasons of "MLT, MSI, IAT, RS." *Id.* pg. 15.

  c. On June 10, 2022, the North Central Regional Office received Petitioner's administrative remedy 1121229-R1 regarding "Appeal of commissary restriction, req's FSA credits." The remedy was rejected with the remarks stating, "should not have been accepted. See 1121229-R2." *Id.* pg. 17.

  d. On June 10, 2022, the North Central Regional Office received Petitioner's administrative remedy 1121229-R2 regarding "Appeals encumbrance/commissary restriction." The remedy was rejected with the remarks stating, "You did not provide a copy of the rejection notice you were appealing. Separate your complaint of not earning FSA credits from encumbrance appeal." *Id.* pg. 21.

3

J.A. 32

Because Petitioner neither resubmitted his appeals when they were rejected in accordance

with instruction and did not appeal to Central Office, he has not properly exhausted his

administrative remedies.

I declare under the penalty of perjury, the foregoing is true and correct, to the best of my
knowledge, and that all attached documents are true and correct copies of the documents
maintained by the BOP in the ordinary course of business.

Executed on this __20th__ day of October 2022.

*Misty Shaw*
Misty Shaw
Paralegal
Mid-Atlantic Regional Office

4

J.A. 33

# **Attachment A to the Declaration of Misty Shaw**

```
MXRA4            *          PUBLIC INFORMATION              *     10-14-2021
PAGE 001         *           INMATE DATA                    *     13:15:44
                             AS OF 10-14-2022


REGNO..: 13888-084 NAME: WHITE, WILLIAM A


                    RESP OF: CUM
                    PHONE..: 301-784-1000    FAX: 301-784-1008
                                             RACE/SEX...: WHITE / MALE
                                             AGE:  45
PROJ REL MT: GOOD CONDUCT TIME RELEASE       PAR ELIG DT: N/A
PROJ REL DT: 05-29-2037                       PAR HEAR DT:
```

```
G0002       MORE PAGES TO FOLLOW . . .
```

J.A. 35

```
MXRA4                        PUBLIC INFORMATION
PAGE 002          *          INMATE DATA              *      13:15:44
                           AS OF 10-14-2022


REGNO..: 13888-084 NAME: WHITE, WILLIAM A


                    RESP OF: CUM
                    PHONE..: 301-784-1000    FAX: 301-784-1008
FSA ELIGIBILITY STATUS IS: INELIGIBLE


THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.


HOME DETENTION ELIGIBILITY DATE....: 11-29-2036


THE INMATE IS PROJECTED FOR RELEASE: 05-29-2037 VIA GCT REL


---------------------CURRENT JUDGMENT/WARRANT NO: 020 ----------------------


COURT OF JURISDICTION...........: VIRGINIA, WESTERN DISTRICT
DOCKET NUMBER...................: DVAW708CR000054-001
JUDGE...........................: TURK
DATE SENTENCED/PROBATION IMPOSED: 04-14-2010
DATE SUPERVISION REVOKED........: 09-12-2012
TYPE OF SUPERVISION REVOKED.....: REG
DATE COMMITTED..................: 11-09-2012
HOW COMMITTED...................: COMMIT OF SUPERVISED REL VIOL
PROBATION IMPOSED...............: NO


                 FELONY ASSESS  MISDMNR ASSESS  FINES        COSTS
NON-COMMITTED.:  $300.00        $00.00          $00.00       $00.00


RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO      AMOUNT:  $00.00


-----------------------CURRENT OBLIGATION NO: 010 --------------------------
OFFENSE CODE....:  121    18:875 EXTORTION
OFF/CHG: 18:875(C) INTERSTATE COMMUNICATION OF A THREAT TO INJURE(2 CTS
         18:1512(B)(1) TAMPERING WITH A WITNESS; (SRT VIOL)


 SENTENCE PROCEDURE.............: SUPERVISED RELEASE VIOLATION PLRA
 SENTENCE IMPOSED/TIME TO SERVE.:    10 MONTHS
 DATE OF OFFENSE................: 03-22-2007


---------------------CURRENT JUDGMENT/WARRANT NO: 030 ----------------------


COURT OF JURISDICTION...........: ILLINOIS, NORTHERN DISTRICT
DOCKET NUMBER...................: 08-CR-851
JUDGE...........................: ADELMAN
DATE SENTENCED/PROBATION IMPOSED: 02-20-2013
DATE COMMITTED..................: 05-03-2013




 G0002      MORE PAGES TO FOLLOW . . .
```

J.A. 36

```
   MXRA4          *     PUBLIC INFORMATION                 *
PAGE 003          *        INMATE DATA                     *      13:15:44
                           AS OF 10-14-2022


 REGNO..: 13888-084 NAME: WHITE, WILLIAM A


                     RESP OF: CUM
                     PHONE..: 301-784-1000   FAX: 301-784-1008
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO


                 FELONY ASSESS  MISDMNR ASSESS  FINES         COSTS
NON-COMMITTED.:  $100.00        $00.00          $00.00        $00.00


RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO      AMOUNT:  $00.00


-------------------------CURRENT OBLIGATION NO: 010 -------------------------
OFFENSE CODE....:  580     18:373 SOLICIT COMMIT VIOL
OFF/CHG: 18:373, 1503 SOLICITATION TO COMMIT CRIME OF
        VIOLENCE/INFLUENCING JUROR, CT-1

 SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
 SENTENCE IMPOSED/TIME TO SERVE.:   42 MONTHS
 TERM OF SUPERVISION............:    3 YEARS
 RELATIONSHIP OF THIS OBLIGATION
  TO OTHERS FOR THE OFFENDER....: C/C TO 08-CR-54
 DATE OF OFFENSE................: 10-11-2008

--------------------CURRENT JUDGMENT/WARRANT NO: 040 -----------------------

COURT OF JURISDICTION...........: VIRGINIA, WESTERN DISTRICT
DOCKET NUMBER...................: DVAW713CR000013-001
JUDGE...........................: TURK
DATE SENTENCED/PROBATION IMPOSED: 05-01-2014
DATE COMMITTED..................: 01-09-2015
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO


                 FELONY ASSESS  MISDMNR ASSESS  FINES         COSTS
NON-COMMITTED.:  $400.00        $00.00          $00.00        $00.00

RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO      AMOUNT:  $00.00







 G0002       MORE PAGES TO FOLLOW . . .
```

J.A. 37

```
MXRA4                       PUBLIC INFORMATION                        10-14-2024
PAGE 004        *              INMATE DATA              *        13:15:44
                           AS OF 10-14-2022


 REGNO..: 13888-084 NAME: WHITE, WILLIAM A


                      RESP OF: CUM
                      PHONE..: 301-784-1000   FAX: 301-784-1008
-----------------------CURRENT OBLIGATION NO: 010 -------------------------
OFFENSE CODE....:  121    18:875 EXTORTION
OFF/CHG: 18:875(B) EXTORTION BY INTERSTATE COMMUNICATION, CT- 1, 3, & 4
        18:875(C) THREAT BY INTERSTATE COMMUNICATION, CT-2

 SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
 SENTENCE IMPOSED/TIME TO SERVE.:   92 MONTHS
 TERM OF SUPERVISION............:    3 YEARS
 RELATIONSHIP OF THIS OBLIGATION
  TO OTHERS FOR THE OFFENDER....: C/S
 DATE OF OFFENSE................: 05-27-2012


---------------------CURRENT JUDGMENT/WARRANT NO: 050 ----------------------

COURT OF JURISDICTION..........: FLORIDA, MIDDLE DISTRICT
DOCKET NUMBER..................: 6:13-CR-304-ORL-28GL
JUDGE..........................: ANTOON
DATE SENTENCED/PROBATION IMPOSED: 11-21-2014
DATE COMMITTED.................: 01-09-2015
HOW COMMITTED..................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED..............: NO


                 FELONY ASSESS  MISDMNR ASSESS  FINES        COSTS
NON-COMMITTED.:  $500.00        $00.00          $00.00       $00.00

RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO     AMOUNT:  $00.00

-----------------------CURRENT OBLIGATION NO: 010 -------------------------
OFFENSE CODE....:  899    OTHER/UNCLASSIFIABLE
OFF/CHG: 18:875(B) & 2 EXTORTION BY INTERSTATE COMMUNICATION CT 1
        18:875(B) & 2 EXTORTION BY INTERSTATE COMMUNICATION CT 2 - 5

 SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
 SENTENCE IMPOSED/TIME TO SERVE.:  210 MONTHS
 TERM OF SUPERVISION............:    3 YEARS
 RELATIONSHIP OF THIS OBLIGATION
  TO OTHERS FOR THE OFFENDER....: C/S
 DATE OF OFFENSE................: 05-19-2012




 G0002        MORE PAGES TO FOLLOW . . .
```

J.A. 38

```
  MXRA4                          PUBLIC INFORMATION                   10-14-2024
PAGE 005           *            INMATE DATA              *        13:15:44
                             AS OF 10-14-2022


  REGNO..: 13888-084 NAME: WHITE, WILLIAM A


                    RESP OF: CUM
                    PHONE..: 301-784-1000    FAX: 301-784-1008


-----------------------CURRENT COMPUTATION NO: 020 -------------------------


COMPUTATION 020 WAS LAST UPDATED ON 03-11-2022 AT DSC AUTOMATICALLY
COMPUTATION CERTIFIED ON 04-12-2018 BY DESIG/SENTENCE COMPUTATION CTR

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 020: 020 010, 030 010, 040 010, 050 010

DATE COMPUTATION BEGAN..........: 09-12-2012
AGGREGATED SENTENCE PROCEDURE...: AGGREGATE GROUP 800 PLRA
TOTAL TERM IN EFFECT............:  349 MONTHS      8 DAYS
TOTAL TERM IN EFFECT CONVERTED..:   29 YEARS       1 MONTHS       8 DAYS
AGGREGATED TERM OF SUPERVISION..:    3 YEARS
EARLIEST DATE OF OFFENSE........: 03-22-2007

JAIL CREDIT.....................:   FROM DATE      THRU DATE
                                    03-17-2011     04-21-2011
                                    06-08-2012     09-11-2012


TOTAL PRIOR CREDIT TIME.........: 132
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 1472
TOTAL GCT EARNED................: 441
STATUTORY RELEASE DATE PROJECTED: 05-29-2037
ELDERLY OFFENDER TWO THIRDS DATE: 09-28-2031
EXPIRATION FULL TERM DATE.......: 06-09-2041
TIME SERVED.....................:   10 YEARS       5 MONTHS      12 DAYS
PERCENTAGE OF FULL TERM SERVED..:  35.9
PERCENT OF STATUTORY TERM SERVED:  41.6










  G0002       MORE PAGES TO FOLLOW . . .
```

J.A. 39

USCA4 Appeal: 23-7116    Doc: 20    Filed: 05/21/2025    Pg: 43 of 236

```
MXRA4          *          PUBLIC INFORMATION                    10-14-2024
PAGE 006       *            INMATE DATA            *         13:15:44
                          AS OF 10-14-2022

REGNO..: 13888-084 NAME: WHITE, WILLIAM A

                 RESP OF: CUM
                 PHONE..: 301-784-1000    FAX: 301-784-1008

PROJECTED SATISFACTION DATE.....: 05-29-2037
PROJECTED SATISFACTION METHOD...: GCT REL
```

```
G0002        MORE PAGES TO FOLLOW . . .
```

J.A. 40

```
MXRA4                         PUBLIC INFORMATION              10-14-2024
PAGE 007        *             INMATE DATA              *      13:15:44
                             AS OF 10-14-2022


REGNO..: 13888-084 NAME: WHITE, WILLIAM A

                  RESP OF: CUM


HOME DETENTION ELIGIBILITY DATE: 01-12-2011


THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S PRIOR COMMITMENT.
THE INMATE WAS SCHEDULED FOR RELEASE:  04-21-2011 VIA GCT REL


-----------------------PRIOR JUDGMENT/WARRANT NO: 010 -----------------------


COURT OF JURISDICTION..........: VIRGINIA, WESTERN DISTRICT
DOCKET NUMBER..................: DVAW708CR000054-001
JUDGE..........................: TURK
DATE SENTENCED/PROBATION IMPOSED: 04-14-2010
DATE COMMITTED.................: 04-28-2010
HOW COMMITTED..................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED..............: NO


               FELONY ASSESS  MISDMNR ASSESS  FINES        COSTS
NON-COMMITTED.:  $300.00        $00.00        $00.00       $00.00

RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO      AMOUNT:  $00.00

-------------------------PRIOR OBLIGATION NO: 010 -------------------------
OFFENSE CODE....:  121     18:875 EXTORTION
OFF/CHG: 18:875(C) INTERSTATE COMMUNICATION OF A THREAT TO INJURE(2 CTS
         18:1512(B)(1) TAMPERING WITH A WITNESS;

 SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
 SENTENCE IMPOSED/TIME TO SERVE.:    30 MONTHS
 TERM OF SUPERVISION............:    36 MONTHS
 NEW SENTENCE IMPOSED...........:    33 MONTHS
 BASIS FOR CHANGE...............: COURT ORDER MODIFYING SENTENCE
 DATE OF OFFENSE................: 03-22-2007




 G0002      MORE PAGES TO FOLLOW . . .
```

J.A. 41

```
MXRA4                          PUBLIC INFORMATION                        04-14-2024
PAGE 008 OF 008 *                 INMATE DATA               *       13:15:44
                               AS OF 04-21-2011

  REGNO..: 13888-084 NAME: WHITE, WILLIAM A

                    RESP OF: CUM
                    PHONE..: 301-784-1000    FAX: 301-784-1008
  -------------------------PRIOR COMPUTATION NO: 010 -------------------------

COMPUTATION 010 WAS LAST UPDATED ON 06-17-2016 AT DSC AUTOMATICALLY
COMPUTATION CERTIFIED ON 06-17-2016 BY DESIG/SENTENCE COMPUTATION CTR

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
PRIOR COMPUTATION 010:   010 010

DATE COMPUTATION BEGAN..........: 04-14-2010
TOTAL TERM IN EFFECT............:   33 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:    2 YEARS      9 MONTHS
EARLIEST DATE OF OFFENSE........: 03-22-2007

JAIL CREDIT.....................:   FROM DATE     THRU DATE
                                    10-17-2008    09-18-2009
                                    09-23-2009    04-13-2010

TOTAL PRIOR CREDIT TIME.........: 540
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 93
TOTAL GCT EARNED................: 93
STATUTORY RELEASE DATE PROJECTED: 04-21-2011
ELDERLY OFFENDER TWO THIRDS DATE: 08-22-2010
EXPIRATION FULL TERM DATE.......: 07-23-2011
TIME SERVED.....................:    2 YEARS      6 MONTHS      1 DAYS
PERCENTAGE OF FULL TERM SERVED..:  90.7
PERCENT OF STATUTORY TERM SERVED: 100.0

ACTUAL SATISFACTION DATE........: 04-21-2011
ACTUAL SATISFACTION METHOD......: GCT REL
ACTUAL SATISFACTION FACILITY....: DSC
ACTUAL SATISFACTION KEYED BY....: STH

DAYS REMAINING..................: 93
FINAL PUBLIC LAW DAYS...........: 0




  G0000       TRANSACTION SUCCESSFULLY COMPLETED
```

J.A. 42

# **Attachment B to the Declaration of Misty Shaw**

```
MXRA4           *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL      10-12-2024
PAGE 001 OF                                                       12:19:04
     FUNCTION: L-P SCOPE: REG   EQ 13888-084   OUTPUT FORMAT: FULL
-------LIMITED TO SUBMISSIONS WHICH MATCH ALL LIMITATIONS KEYED BELOW---------
DT RCV: FROM 01-01-2022 THRU 10-12-2022 DT STS: FROM _____ THRU _____
DT STS: FROM ___ TO ___ DAYS BEFORE "OR" FROM ___ TO ___ DAYS AFTER DT RDU
DT TDU: FROM ___ TO ___ DAYS BEFORE "OR" FROM ___ TO ___ DAYS AFTER DT TRT
STS/REAS: _____ _____ _____ _____ _____ _____ _____ _____ _____ _____
SUBJECTS: ____ ____ ____ ____ ____ ____ ____ ____ ____ ____
EXTENDED: _ REMEDY LEVEL: _ _              RECEIPT: _ _ _ "OR" EXTENSION: _ _ _
RCV  OFC : EQ ____     ____     ____     ____     ____     ____
TRACK:  DEPT: _____ _____ _____ _____ _____ _____
      PERSON: ___     ___     ___     ___     ___     ___
        TYPE: ___     ___     ___     ___     ___     ___
EVNT FACL: EQ ____     ____     ____     ____     ____     ____
RCV FACL.: EQ ____     ____     ____     ____     ____     ____
RCV UN/LC: EQ _____ _____ _____ _____ _____ _____
RCV QTR..: EQ _____ _____ _____ _____ _____ _____
ORIG FACL: EQ ____     ____     ____     ____     ____     ____
ORG UN/LC: EQ _____ _____ _____ _____ _____ _____
ORIG QTR.: EQ _____ _____ _____ _____ _____ _____




G0002      MORE PAGES TO FOLLOW . . .
```

J.A. 44

```
MXRA4      *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL*      09-14-2024
PAGE 002 OF      *         FULL SCREEN FORMAT         *      12:19:04


REGNO: 13888-084 NAME: WHITE, WILLIAM
RSP OF...: CUM UNT/LOC/DST: 3 GP              QTR.: B03-202U   RCV OFC: BOP
REMEDY ID: 1090822-A1    SUB1: 15HM SUB2: 34AM DATE RCV:   01-25-2022
UNT  RCV..:CMU           QTR RCV.: D02-008LDS    FACL RCV: THA
UNT  ORG..:I             QTR ORG.: I03-010L      FACL ORG: MAR
EVT FACL.: MAR    ACC LEV:  MAR  1 NCR  1 BOP  3   RESP DUE:
ABSTRACT.: CMU COMMUNICATION
STATUS DT: 02-18-2022  STATUS CODE: REJ STATUS REASON: IRQ RSA OTH
INCRPTNO.:          RCT:    EXT:   DATE ENTD: 02-18-2022
REMARKS..: MISSING RESPONSE DATED 10-19-2021.




REGNO: 13888-084 NAME: WHITE, WILLIAM
RSP OF...: CUM UNT/LOC/DST: 3 GP              QTR.: B03-202U   RCV OFC: BOP
REMEDY ID: 1096077-A1    SUB1: 27CM SUB2: 15HM DATE RCV:   01-25-2022
UNT  RCV..:CMU           QTR RCV.: D02-008LDS    FACL RCV: THA
UNT  ORG..:I             QTR ORG.: I03-006L      FACL ORG: MAR
EVT FACL.: MAR    ACC LEV:  MAR  1 NCR  1         RESP DUE:
ABSTRACT.: DENTAL MATTERS
STATUS DT: 02-18-2022  STATUS CODE: REJ STATUS REASON: IRQ RSA OTH
INCRPTNO.:          RCT:    EXT:   DATE ENTD: 02-18-2022
REMARKS..: PROVIDE MISSING RESPONSE DATED 10-12-2021
```

```
G0002      MORE PAGES TO FOLLOW . . .
```

J.A. 45

```
MXRA4          *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL*      04-18-2024
PAGE 003 OF      *           FULL SCREEN FORMAT            *       12:19:04


REGNO: 13888-084 NAME: WHITE, WILLIAM
RSP OF...: CUM UNT/LOC/DST: 3 GP              QTR.: B03-202U   RCV OFC: BOP
REMEDY ID: 1090820-A1     SUB1: 15HM SUB2: 34AM DATE RCV:   01-27-2022
UNT  RCV..:CMU           QTR RCV.: D02-008LDS    FACL RCV: THA
UNT  ORG..:I             QTR ORG.: I03-010L      FACL ORG: MAR
EVT FACL.: MAR    ACC LEV:  MAR  1 NCR  1          RESP DUE:
ABSTRACT.: CMU COMMUNICATION
STATUS DT: 02-18-2022  STATUS CODE: REJ STATUS REASON: IRQ RSA
INCRPTNO.:           RCT:  EXT:   DATE ENTD: 02-18-2022
REMARKS..:




REGNO: 13888-084 NAME: WHITE, WILLIAM
RSP OF...: CUM UNT/LOC/DST: 3 GP              QTR.: B03-202U   RCV OFC: THA
REMEDY ID: 1113124-F1     SUB1: 25CS SUB2: 15HS DATE RCV:   03-09-2022
UNT  RCV..:CMU           QTR RCV.: D02-012LDS    FACL RCV: THA
UNT  ORG..:CMU           QTR ORG.: D02-012LDS    FACL ORG: THA
EVT FACL.: THA    ACC LEV:  THA  1 NCR  1          RESP DUE:  TUE  03-29-2022
ABSTRACT.: ALLEGES SEWAGE LEAKAGE IN  CMU SHU CELL 108
STATUS DT: 04-08-2022  STATUS CODE: CLG STATUS REASON: GRT
INCRPTNO.:           RCT: P EXT:   DATE ENTD: 03-10-2022
REMARKS..:













G0002      MORE PAGES TO FOLLOW . . .
```

J.A. 46

USCA4 Appeal: 23-7116    Doc: 20    Filed: 05/21/2025    Pg: 50 of 236

MXRA4       Case 1:22-cv-02371-DKC  Document 3-3  Filed 10/28/22   Page 19 of 45
ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL
PAGE 004 OF     *          FULL SCREEN FORMAT          *      12:19:04

REGNO: 13888-084 NAME: WHITE, WILLIAM
RSP OF...: CUM UNT/LOC/DST: 3 GP                QTR.: B03-202U   RCV OFC: THA
REMEDY ID: 1113226-F1     SUB1: 34ZS SUB2: 15HS DATE RCV:   03-09-2022
UNT  RCV..:CMU          QTR RCV.: D02-012LDS    FACL RCV: THA
UNT  ORG..:CMU          QTR ORG.: D02-012LDS    FACL ORG: THA
EVT FACL.: THA    ACC LEV: THA  1 NCR  2        RESP DUE:  MON  04-18-2022
ABSTRACT.: STAFF COMPLAINT, FALSIFYING INCIDENT REPORT INFO.
STATUS DT: 04-11-2022  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:           RCT: P EXT: P DATE ENTD: 03-11-2022
REMARKS..:



REGNO: 13888-084 NAME: WHITE, WILLIAM
RSP OF...: CUM UNT/LOC/DST: 3 GP                QTR.: B03-202U   RCV OFC: THA
REMEDY ID: 1113143-F1     SUB1: 26AS SUB2: 15HS DATE RCV:   03-10-2022
UNT  RCV..:CMU          QTR RCV.: D02-012LDS    FACL RCV: THA
UNT  ORG..:CMU          QTR ORG.: D02-012LDS    FACL ORG: THA
EVT FACL.: THA    ACC LEV:                      RESP DUE:
ABSTRACT.: COMPLAINS 30 MINS WAIT FOR O.C. SHOWER DECONTAMINATE
STATUS DT: 03-10-2022  STATUS CODE: REJ STATUS REASON: INF MSI OTH
INCRPTNO.:           RCT:   EXT:   DATE ENTD: 03-10-2022
REMARKS..: YOU DID NOT STATE RELIEF REQUESTED. YOU ARE ALSO
           ENCOURAGED TO SIGN UP FOR SICK CALL IF YOUR SYMPTOMS
           OCCUR OR CONTINUE TO PERSIST



G0002      MORE PAGES TO FOLLOW . . .

J.A. 47

```
MXRA4        *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL*          10-20-2024
PAGE 005 OF      *              FULL SCREEN FORMAT              *      12:19:04


REGNO: 13888-084 NAME: WHITE, WILLIAM
RSP OF...: CUM UNT/LOC/DST: 3 GP                QTR.: B03-202U    RCV OFC: NCR
REMEDY ID: 1103551-R1     SUB1: 15HM SUB2: 22CM DATE RCV:    03-15-2022
UNT  RCV..:CMU           QTR RCV.: D02-012LDS    FACL RCV: THA
UNT  ORG..:I             QTR ORG.: I02-011LAD    FACL ORG: MAR
EVT FACL.: MAR    ACC LEV:  MAR  1                 RESP DUE:
ABSTRACT.: 25DM, PERSONAL PROPERTY IN CMU SHU
STATUS DT: 03-15-2022  STATUS CODE: REJ STATUS REASON: LEG RSR
INCRPTNO.:          RCT:   EXT:   DATE ENTD: 03-15-2022
REMARKS..:




REGNO: 13888-084 NAME: WHITE, WILLIAM
RSP OF...: CUM UNT/LOC/DST: 3 GP                QTR.: B03-202U    RCV OFC: THA
REMEDY ID: 1114297-F1     SUB1: 22ZS SUB2: 15HS DATE RCV:    03-22-2022
UNT  RCV..:CMU           QTR RCV.: D02-012LDS    FACL RCV: THA
UNT  ORG..:CMU           QTR ORG.: D02-012LDS    FACL ORG: THA
EVT FACL.: THA    ACC LEV:  THA  1 NCR  1         RESP DUE:  SUN  05-01-2022
ABSTRACT.: REQUESTS HIS NEWSPAPERS AND MAGAZINES WHILE IN SHU
STATUS DT: 04-04-2022  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:          RCT: P EXT: P DATE ENTD: 03-22-2022
REMARKS..:













G0002      MORE PAGES TO FOLLOW . . .
```

J.A. 48

```
MXRA4        *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL*    10-12-2024
PAGE 006 OF    *         FULL SCREEN FORMAT          *    12:19:04


    REGNO: 13888-084 NAME: WHITE, WILLIAM
    RSP OF...: CUM UNT/LOC/DST: 3 GP              QTR.: B03-202U   RCV OFC: THA
    REMEDY ID: 1114308-F1     SUB1: 13FS SUB2: 15HS DATE RCV:    03-22-2022
    UNT  RCV..:CMU          QTR RCV.: D02-012LDS    FACL RCV: THA
    UNT  ORG..:CMU          QTR ORG.: D02-012LDS    FACL ORG: THA
    EVT FACL.: THA    ACC LEV:  THA  1                RESP DUE: SUN  05-01-2022
    ABSTRACT.: REQ'S TO RECEIVE FSA CREDIT, FSA ELIGIBILITY STATUS
    STATUS DT: 05-04-2022  STATUS CODE: CLO STATUS REASON: XPL
    INCRPTNO.:            RCT: P EXT: P DATE ENTD: 03-22-2022
    REMARKS..:



    REGNO: 13888-084 NAME: WHITE, WILLIAM
    RSP OF...: CUM UNT/LOC/DST: 3 GP              QTR.: B03-202U   RCV OFC: THA
    REMEDY ID: 1114317-F1     SUB1: 22DS SUB2: 15HS DATE RCV:    03-22-2022
    UNT  RCV..:CMU          QTR RCV.: D02-012LDS    FACL RCV: THA
    UNT  ORG..:CMU          QTR ORG.: D02-012LDS    FACL ORG: THA
    EVT FACL.: THA    ACC LEV:                      RESP DUE:
    ABSTRACT.: COMPLAINS HE IS WRONGFULLY PLACED IN SHU
    STATUS DT: 03-22-2022  STATUS CODE: REJ STATUS REASON: MLT OTH
    INCRPTNO.:            RCT:   EXT:   DATE ENTD: 03-22-2022
    REMARKS..: THIS COMPLAINT IS CURRENTLY BEING ADDRESSED IN ADMIN
              REMEDY NO. 1113226-F1. YOU ARE ENCOURAGED TO CONTINU
              E WITH THE APPEALS PROCESS ONCE RECEIVED
```


```
G0002       MORE PAGES TO FOLLOW . . .
```

J.A. 49

```
REGNO: 13888-084 NAME: WHITE, WILLIAM
RSP OF...: CUM UNT/LOC/DST: 3 GP              QTR.: B03-202U   RCV OFC: THA
REMEDY ID: 1116420-F1     SUB1: 22AS SUB2: 15HS DATE RCV:   04-11-2022
UNT  RCV..:CMU           QTR RCV.: D02-010LDS    FACL RCV: THA
UNT  ORG..:CMU           QTR ORG.: D02-010LDS    FACL ORG: THA
EVT FACL.: THA    ACC LEV:                       RESP DUE:
ABSTRACT.: APPEAL REASON FOR SHU PLACEMENT, STATES SET-UP, PTSD
STATUS DT: 04-11-2022  STATUS CODE: REJ STATUS REASON: UTF MSI MLT IAT
INCRPTNO.:           RCT:   EXT:   DATE ENTD: 04-11-2022
REMARKS..:




REGNO: 13888-084 NAME: WHITE, WILLIAM
RSP OF...: CUM UNT/LOC/DST: 3 GP              QTR.: B03-202U   RCV OFC: BOP
REMEDY ID: 1090820-A2     SUB1: 34AM SUB2: 26HM DATE RCV:   04-20-2022
UNT  RCV..:CMU           QTR RCV.: D02-010LDS    FACL RCV: THA
UNT  ORG..:I             QTR ORG.: I03-010L      FACL ORG: MAR
EVT FACL.: MAR    ACC LEV: MAR  1 NCR  1         RESP DUE:
ABSTRACT.: CMU COMMUNICATION - FALSIFICATION OF PSYCH RECORDS
STATUS DT: 05-09-2022  STATUS CODE: REJ STATUS REASON: RJA MEM OTH
INCRPTNO.:           RCT:   EXT:   DATE ENTD: 05-09-2022
REMARKS..: A1 REJECTION NOTICE DATED 2/18/22.  PROVIDE STAFF
           VERIFICATION FOR DELAY IN FILING.
```

G0002      MORE PAGES TO FOLLOW . . .

J.A. 50

```
MXRA4     *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL*     04-20-2024
PAGE 008 OF     *          FULL SCREEN FORMAT          *      12:19:04


   REGNO: 13888-084 NAME: WHITE, WILLIAM
   RSP OF...: CUM UNT/LOC/DST: 3 GP               QTR.: B03-202U   RCV OFC: BOP
   REMEDY ID: 1090822-A2    SUB1: 34AM SUB2: 28ZM DATE RCV:   04-20-2022
   UNT  RCV..:CMU          QTR RCV.: D02-010LDS    FACL RCV: THA
   UNT  ORG..:I            QTR ORG.: I03-010L      FACL ORG: MAR
   EVT FACL.: MAR    ACC LEV:  MAR  1 NCR  1 BOP  3   RESP DUE:
   ABSTRACT.: CMU COMMUNICATION - PSYCH COMMUNICATION
   STATUS DT: 05-09-2022  STATUS CODE: REJ STATUS REASON: RJA MEM OTH
   INCRPTNO.:         RCT:   EXT:   DATE ENTD: 05-09-2022
   REMARKS..: A1 REJECTION DATED 2/18/22. PROVIDE STAFF
             VERIFICATION FOR DELAY IN FILING.



   REGNO: 13888-084 NAME: WHITE, WILLIAM
   RSP OF...: CUM UNT/LOC/DST: 3 GP               QTR.: B03-202U   RCV OFC: NCR
   REMEDY ID: 1118667-R1     SUB1: 20ZM SUB2: 20AM DATE RCV:   04-25-2022
   UNT  RCV..:CMU          QTR RCV.: D02-010LDS    FACL RCV: THA
   UNT  ORG..:CMU          QTR ORG.: D02-010LDS    FACL ORG: THA
   EVT FACL.: THA    ACC LEV:                     RESP DUE:
   ABSTRACT.: DHO APPEALS
   STATUS DT: 04-29-2022  STATUS CODE: REJ STATUS REASON: DHO
   INCRPTNO.: 3556931  RCT:   EXT:   DATE ENTD: 04-29-2022
   REMARKS..:
```

```
   G0002      MORE PAGES TO FOLLOW . . .
```

J.A. 51

```
MXRA4          *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL*
PAGE 009 OF      *          FULL SCREEN FORMAT          *      12:19:04


REGNO: 13888-084 NAME: WHITE, WILLIAM
RSP OF...: CUM UNT/LOC/DST: 3 GP                QTR.: B03-202U   RCV OFC: NCR
REMEDY ID: 1118688-R1     SUB1: 16ZM SUB2:     DATE RCV:   04-25-2022
UNT  RCV..:CMU          QTR RCV.: D02-010LDS    FACL RCV: THA
UNT  ORG..:CMU          QTR ORG.: D02-010LDS    FACL ORG: THA
EVT FACL.: THA    ACC LEV:                      RESP DUE:
ABSTRACT.: MAIL COMPLAINTS
STATUS DT: 04-29-2022  STATUS CODE: REJ STATUS REASON: IRQ
INCRPTNO.:          RCT:   EXT:   DATE ENTD: 04-29-2022
REMARKS..:




REGNO: 13888-084 NAME: WHITE, WILLIAM
RSP OF...: CUM UNT/LOC/DST: 3 GP                QTR.: B03-202U   RCV OFC: BOP
REMEDY ID: 1096077-A2     SUB1: 27CM SUB2: 15HM DATE RCV:   04-29-2022
UNT  RCV..:CMU          QTR RCV.: D02-010LDS    FACL RCV: THA
UNT  ORG..:I            QTR ORG.: I03-006L      FACL ORG: MAR
EVT FACL.: MAR    ACC LEV:  MAR  1 NCR  1       RESP DUE:
ABSTRACT.: DENTAL MATTERS
STATUS DT: 05-13-2022  STATUS CODE: REJ STATUS REASON: RAP RSA OTH
INCRPTNO.:          RCT:   EXT:   DATE ENTD: 05-13-2022
REMARKS..: MISSING RESPONSE IS DATED 10-12-2021.
```

G0002      MORE PAGES TO FOLLOW . . .

J.A. 52

MXRA4         *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL*        06-24-2024
PAGE 010 OF       *         FULL SCREEN FORMAT         *       12:19:04


REGNO: 13888-084 NAME: WHITE, WILLIAM
RSP OF...: CUM UNT/LOC/DST: 3 GP                QTR.: B03-202U   RCV OFC: THA
REMEDY ID: 1118873-F1     SUB1: 34DS SUB2: 15HS DATE RCV:   05-02-2022
UNT  RCV..:CMU          QTR RCV.: D02-010LDS   FACL RCV: THA
UNT  ORG..:CMU          QTR ORG.: D02-010LDS   FACL ORG: THA
EVT FACL.: THA    ACC LEV:  THA  2 NCR  1       RESP DUE:
ABSTRACT.: COMPLAINS OF REHABILITATION ACT ACCOMODATIONS IN CMU
STATUS DT: 05-02-2022  STATUS CODE: REJ STATUS REASON: INF
INCRPTNO.:          RCT:   EXT:   DATE ENTD: 05-02-2022
REMARKS..:




REGNO: 13888-084 NAME: WHITE, WILLIAM
RSP OF...: CUM UNT/LOC/DST: 3 GP                QTR.: B03-202U   RCV OFC: NCR
REMEDY ID: 1119022-R1     SUB1: 26AM SUB2:      DATE RCV:   05-02-2022
UNT  RCV..:CMU          QTR RCV.: D02-010LDS   FACL RCV: THA
UNT  ORG..:CMU          QTR ORG.: D02-010LDS   FACL ORG: THA
EVT FACL.: THA    ACC LEV:                      RESP DUE:
ABSTRACT.: MEDICAL CARE DELAY
STATUS DT: 05-03-2022  STATUS CODE: REJ STATUS REASON: INS IRQ
INCRPTNO.:          RCT:   EXT:   DATE ENTD: 05-03-2022
REMARKS..:




G0002       MORE PAGES TO FOLLOW . . .

J.A. 53

```
MXRA4          *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL*     09-26-2024
PAGE 011 OF     *          FULL SCREEN FORMAT          *       12:19:04


REGNO: 13888-084 NAME: WHITE, WILLIAM
RSP OF...: CUM UNT/LOC/DST: 3 GP              QTR.: B03-202U   RCV OFC: THA
REMEDY ID: 1118873-F2     SUB1: 34DS SUB2: 15HS DATE RCV:   05-02-2022
UNT  RCV..:CMU          QTR RCV.: D02-010LDS    FACL RCV: THA
UNT  ORG..:CMU          QTR ORG.: D02-010LDS    FACL ORG: THA
EVT FACL.: THA    ACC LEV:  THA  2 NCR  1        RESP DUE:  SAT  06-11-2022
ABSTRACT.: COMPLAINS OF REHABILITATION ACT ACCOMODATIONS IN CMU
STATUS DT: 05-23-2022  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:          RCT: P EXT: P DATE ENTD: 05-04-2022
REMARKS..:




REGNO: 13888-084 NAME: WHITE, WILLIAM
RSP OF...: CUM UNT/LOC/DST: 3 GP              QTR.: B03-202U   RCV OFC: THA
REMEDY ID: 1119018-F1     SUB1: 14AS SUB2: 15HS DATE RCV:   05-03-2022
UNT  RCV..:CMU          QTR RCV.: D02-010LDS    FACL RCV: THA
UNT  ORG..:CMU          QTR ORG.: D02-010LDS    FACL ORG: THA
EVT FACL.: THA    ACC LEV:  THA  1 NCR  1        RESP DUE:  SUN  06-12-2022
ABSTRACT.: APPEALS PLACEMENT IN CMU, REQUESTS TRANSFER
STATUS DT: 05-10-2022  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:          RCT: P EXT: P DATE ENTD: 05-03-2022
REMARKS..:
```

```
G0002       MORE PAGES TO FOLLOW . . .
```

J.A. 54

```
MXRA4         *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL    04-27-2024
PAGE 012 OF      *              FULL SCREEN FORMAT          *    12:19:04


REGNO: 13888-084 NAME: WHITE, WILLIAM
RSP OF...: CUM UNT/LOC/DST: 3 GP                QTR.: B03-202U   RCV OFC: NCR
REMEDY ID: 1113226-R1     SUB1: 34ZS SUB2: 15HS DATE RCV:   05-12-2022
UNT  RCV..:CMU           QTR RCV.: D02-009LDS    FACL RCV: THA
UNT  ORG..:CMU           QTR ORG.: D02-012LDS    FACL ORG: THA
EVT FACL.: THA    ACC LEV:  THA  1 NCR  2        RESP DUE:
ABSTRACT.: STAFF COMPLAINT, FALSIFYING INCIDENT REPORT INFO.
STATUS DT: 05-16-2022  STATUS CODE: REJ STATUS REASON: DHO RSR
INCRPTNO.:           RCT:   EXT:   DATE ENTD: 05-16-2022
REMARKS..:




REGNO: 13888-084 NAME: WHITE, WILLIAM
RSP OF...: CUM UNT/LOC/DST: 3 GP                QTR.: B03-202U   RCV OFC: NCR
REMEDY ID: 1113124-R1     SUB1: 25CS SUB2: 15HS DATE RCV:   05-12-2022
UNT  RCV..:CMU           QTR RCV.: D02-009LDS    FACL RCV: THA
UNT  ORG..:CMU           QTR ORG.: D02-012LDS    FACL ORG: THA
EVT FACL.: THA    ACC LEV:  THA  1 NCR  1        RESP DUE:  MON  07-11-2022
ABSTRACT.: ALLEGES SEWAGE LEAKAGE IN  CMU SHU CELL 108
STATUS DT: 07-07-2022  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:           RCT: P EXT: P DATE ENTD: 05-16-2022
REMARKS..:












G0002       MORE PAGES TO FOLLOW . . .
```

MXRA4            ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL        04-26-2024
PAGE 013 OF       *            FULL SCREEN FORMAT              *        12:19:04


REGNO: 13888-084 NAME: WHITE, WILLIAM
RSP OF...: CUM UNT/LOC/DST: 3 GP                QTR.: B03-202U    RCV OFC: NCR
REMEDY ID: 1116420-R1      SUB1: 22AM SUB2: 15HM DATE RCV:    05-12-2022
UNT  RCV..:CMU          QTR RCV.: D02-009LDS    FACL RCV: THA
UNT  ORG..:CMU          QTR ORG.: D02-010LDS    FACL ORG: THA
EVT FACL.: THA    ACC LEV:                      RESP DUE:
ABSTRACT.: APPEAL REASON FOR SHU PLACEMENT, STATES SET-UP, PTSD
STATUS DT: 05-18-2022  STATUS CODE: REJ STATUS REASON: UTF IRQ MLT
INCRPTNO.:          RCT:   EXT:   DATE ENTD: 05-18-2022
REMARKS..:




REGNO: 13888-084 NAME: WHITE, WILLIAM
RSP OF...: CUM UNT/LOC/DST: 3 GP                QTR.: B03-202U    RCV OFC: BOP
REMEDY ID: 1121312-A1      SUB1: 20AM SUB2:      DATE RCV:    05-19-2022
UNT  RCV..:CMU          QTR RCV.: D02-009LDS    FACL RCV: THA
UNT  ORG..:CMU          QTR ORG.: D02-009LDS    FACL ORG: THA
EVT FACL.: THA    ACC LEV:                      RESP DUE:
ABSTRACT.: DHO 3/11/22; CODE 201
STATUS DT: 05-24-2022  STATUS CODE: REJ STATUS REASON: WRL RAP
INCRPTNO.: 3556931  RCT:   EXT:   DATE ENTD: 05-24-2022
REMARKS..:














G0002      MORE PAGES TO FOLLOW . . .

J.A. 56

MXRA4           *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL*          04-29-2024
PAGE 014 OF      *              FULL SCREEN FORMAT              *        12:19:04


REGNO: 13888-084 NAME: WHITE, WILLIAM
RSP OF...: CUM UNT/LOC/DST: 3 GP               QTR.: B03-202U   RCV OFC: BOP
REMEDY ID: 1121313-A1     SUB1: 20AM SUB2:     DATE RCV:   05-19-2022
UNT  RCV..:CMU           QTR RCV.: D02-009LDS  FACL RCV: THA
UNT  ORG..:CMU           QTR ORG.: D02-009LDS  FACL ORG: THA
EVT FACL.: THA    ACC LEV:                     RESP DUE:
ABSTRACT.: DHO 3/11/22; CODE 201
STATUS DT: 05-24-2022  STATUS CODE: REJ STATUS REASON: WRL RAP
INCRPTNO.: 3597543   RCT:   EXT:   DATE ENTD: 05-24-2022
REMARKS..:




REGNO: 13888-084 NAME: WHITE, WILLIAM
RSP OF...: CUM UNT/LOC/DST: 3 GP               QTR.: B03-202U   RCV OFC: BOP
REMEDY ID: 1103551-A1     SUB1: 22CM SUB2:     DATE RCV:   05-19-2022
UNT  RCV..:CMU           QTR RCV.: D02-009LDS  FACL RCV: THA
UNT  ORG..:I             QTR ORG.: I02-011LAD  FACL ORG: MAR
EVT FACL.: MAR    ACC LEV:  MAR  1             RESP DUE:
ABSTRACT.: 25DM, PERSONAL PROPERTY IN CMU SHU
STATUS DT: 05-24-2022  STATUS CODE: REJ STATUS REASON: UTA MEM OTH
INCRPTNO.:           RCT:   EXT:   DATE ENTD: 05-24-2022
REMARKS..: BP10 CLOSED 3/15/22. PROVIDE STAFF VERIFICATION FOR
           DELAY IN FILING.


G0002       MORE PAGES TO FOLLOW . . .


J.A. 57

REGNO: 13888-084 NAME: WHITE, WILLIAM
RSP OF...: CUM UNT/LOC/DST: 3 GP              QTR.: B03-202U   RCV OFC: THA
REMEDY ID: 1121229-F1     SUB1: 15AS SUB2: 13FS DATE RCV:    05-24-2022
UNT  RCV..:CMU          QTR RCV.: D02-009LDS    FACL RCV: THA
UNT  ORG..:CMU          QTR ORG.: D02-009LDS    FACL ORG: THA
EVT FACL.: THA    ACC LEV:                      RESP DUE:
ABSTRACT.: APPEAL OF COMMISSARY RESTRICTION, REQ'S FSA CREDITS
STATUS DT: 05-24-2022  STATUS CODE: REJ STATUS REASON: MLT MSI IAT RSF
INCRPTNO.:          RCT:   EXT:   DATE ENTD: 05-24-2022
REMARKS..:


REGNO: 13888-084 NAME: WHITE, WILLIAM
RSP OF...: CUM UNT/LOC/DST: 3 GP              QTR.: B03-202U   RCV OFC: THA
REMEDY ID: 1121246-F1     SUB1: 16ZS SUB2: 15HS DATE RCV:    05-24-2022
UNT  RCV..:CMU          QTR RCV.: D02-009LDS    FACL RCV: THA
UNT  ORG..:CMU          QTR ORG.: D02-009LDS    FACL ORG: THA
EVT FACL.: THA    ACC LEV:  THA  2              RESP DUE:
ABSTRACT.: REQ'S MAIL BE FORWARDED & $300 CREDIT TO HIS ACCOUNT
STATUS DT: 05-24-2022  STATUS CODE: REJ STATUS REASON: MSI IAT OTH
INCRPTNO.:          RCT:   EXT:   DATE ENTD: 05-24-2022
REMARKS..: PROVIDE MORE INFORMATION AND/OR DOCUMENTATION SUCH
           AS COURT CASE PAPERWORK PERTAINING TO THIS REQUEST
           FOR IT TO BE CONSIDERED


G0002       MORE PAGES TO FOLLOW . . .


J.A. 58

MXRA4           *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL*      04-12-2024
PAGE 016 OF      *           FULL SCREEN FORMAT              *      12:19:04


REGNO: 13888-084 NAME: WHITE, WILLIAM
RSP OF...: CUM UNT/LOC/DST: 3 GP              QTR.: B03-202U   RCV OFC: NCR
REMEDY ID: 1122234-R1     SUB1: 22AM SUB2:     DATE RCV:   06-01-2022
UNT  RCV..:CMU          QTR RCV.: D02-009LDS    FACL RCV: THA
UNT  ORG..:CMU          QTR ORG.: D02-009LDS    FACL ORG: THA
EVT FACL.: THA    ACC LEV:                      RESP DUE:
ABSTRACT.: REQUESTS SHU HOUSING MODIFICATIONS
STATUS DT: 06-02-2022  STATUS CODE: REJ STATUS REASON: IAT INF INS IRQ
INCRPTNO.:           RCT:  EXT:   DATE ENTD: 06-02-2022
REMARKS..:




REGNO: 13888-084 NAME: WHITE, WILLIAM
RSP OF...: CUM UNT/LOC/DST: 3 GP              QTR.: B03-202U   RCV OFC: THA
REMEDY ID: 1123164-F1     SUB1: 13CS SUB2: 15HS DATE RCV:   06-06-2022
UNT  RCV..:CMU          QTR RCV.: D02-009LDS    FACL RCV: THA
UNT  ORG..:CMU          QTR ORG.: D02-009LDS    FACL ORG: THA
EVT FACL.: THA    ACC LEV:  THA  1 NCR  1        RESP DUE:  SAT  07-16-2022
ABSTRACT.: STATES FALSE SEPARATES PLACED ON HIM
STATUS DT: 07-01-2022  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:           RCT: P EXT: P DATE ENTD: 06-10-2022
REMARKS..:


G0002        MORE PAGES TO FOLLOW . . .

J.A. 59

REGNO: 13888-084 NAME: WHITE, WILLIAM
RSP OF...: CUM UNT/LOC/DST: 3 GP              QTR.: B03-202U    RCV OFC: NCR
REMEDY ID: 1121229-R1      SUB1: 15AS SUB2: 13FS DATE RCV:    06-10-2022
UNT  RCV..:CMU          QTR RCV.: D02-009LDS    FACL RCV: THA
UNT  ORG..:CMU          QTR ORG.: D02-009LDS    FACL ORG: THA
EVT FACL.: THA     ACC LEV:                     RESP DUE:
ABSTRACT.: APPEAL OF COMMISSARY RESTRICTION, REQ'S FSA CREDITS
STATUS DT: 08-25-2022   STATUS CODE: VOD STATUS REASON:
INCRPTNO.:           RCT:    EXT:    DATE ENTD: 06-14-2022
REMARKS..: SHOULD NOT HAVE BEEN ACCEPTED. SEE 1121229-R2


REGNO: 13888-084 NAME: WHITE, WILLIAM
RSP OF...: CUM UNT/LOC/DST: 3 GP              QTR.: B03-202U    RCV OFC: NCR
REMEDY ID: 1113226-R2      SUB1: 34ZS SUB2: 15HS DATE RCV:    06-10-2022
UNT  RCV..:CMU          QTR RCV.: D02-009LDS    FACL RCV: THA
UNT  ORG..:CMU          QTR ORG.: D02-012LDS    FACL ORG: THA
EVT FACL.: THA     ACC LEV:  THA  1 NCR  2      RESP DUE:  TUE  08-09-2022
ABSTRACT.: STAFF COMPLAINT, FALSIFYING INCIDENT REPORT INFO.
STATUS DT: 07-27-2022   STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:           RCT: P EXT: P DATE ENTD: 06-14-2022
REMARKS..:


G0002      MORE PAGES TO FOLLOW . . .

```
MXRA4        *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL*      10-26-2024
PAGE 018 OF       *          FULL SCREEN FORMAT          *       12:19:04


REGNO: 13888-084 NAME: WHITE, WILLIAM
RSP OF...: CUM UNT/LOC/DST: 3 GP               QTR.: B03-202U   RCV OFC: NCR
REMEDY ID: 1119018-R1    SUB1: 14AM SUB2: 15HM DATE RCV:   06-10-2022
UNT  RCV..:CMU          QTR RCV.: D02-009LDS    FACL RCV: THA
UNT  ORG..:CMU          QTR ORG.: D02-010LDS    FACL ORG: THA
EVT FACL.: THA   ACC LEV:  THA  1 NCR  1        RESP DUE:  TUE  08-09-2022
ABSTRACT.: APPEALS PLACEMENT IN CMU, REQUESTS TRANSFER
STATUS DT: 08-17-2022  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:           RCT: P EXT: P DATE ENTD: 06-14-2022
REMARKS..:




REGNO: 13888-084 NAME: WHITE, WILLIAM
RSP OF...: CUM UNT/LOC/DST: 3 GP               QTR.: B03-202U   RCV OFC: NCR
REMEDY ID: 1118873-R1    SUB1: 15HM SUB2:      DATE RCV:   06-10-2022
UNT  RCV..:CMU          QTR RCV.: D02-009LDS    FACL RCV: THA
UNT  ORG..:CMU          QTR ORG.: D02-010LDS    FACL ORG: THA
EVT FACL.: THA   ACC LEV:  THA  2 NCR  1        RESP DUE:  TUE  08-09-2022
ABSTRACT.: COMPLAINS OF REHABILITATION ACT ACCOMODATIONS IN CMU
STATUS DT: 06-14-2022  STATUS CODE: ACC STATUS REASON:
INCRPTNO.:           RCT: P EXT: P DATE ENTD: 06-14-2022
REMARKS..:
```

```
G0002      MORE PAGES TO FOLLOW . . .
```

J.A. 61

```
REGNO: 13888-084 NAME: WHITE, WILLIAM
RSP OF...: CUM UNT/LOC/DST: 3 GP              QTR.: B03-202U   RCV OFC: BOP
REMEDY ID: 1113226-A1     SUB1: 34ZS SUB2: 15HS DATE RCV:   06-10-2022
UNT  RCV..:CMU            QTR RCV.: D02-009LDS    FACL RCV: THA
UNT  ORG..:CMU            QTR ORG.: D02-012LDS    FACL ORG: THA
EVT FACL.: THA    ACC LEV:  THA  1 NCR  2          RESP DUE:
ABSTRACT.: STAFF COMPLAINT, FALSIFYING INCIDENT REPORT INFO.
STATUS DT: 07-08-2022  STATUS CODE: REJ STATUS REASON: IRQ OTH
INCRPTNO.:          RCT:    EXT:   DATE ENTD: 07-08-2022
REMARKS..: REGION ACCEPTED YOUR APPEAL ON 6-14-2022, AND
           EXTENDED THE DUE DATE TO 60 DAYS.  WAIT FOR REGIONAL
           RESPONSE.


REGNO: 13888-084 NAME: WHITE, WILLIAM
RSP OF...: CUM UNT/LOC/DST: 3 GP              QTR.: B03-202U   RCV OFC: BOP
REMEDY ID: 1114317-A1     SUB1: 22DS SUB2: 15HS DATE RCV:   06-10-2022
UNT  RCV..:CMU            QTR RCV.: D02-009LDS    FACL RCV: THA
UNT  ORG..:CMU            QTR ORG.: D02-012LDS    FACL ORG: THA
EVT FACL.: THA    ACC LEV:                         RESP DUE:
ABSTRACT.: COMPLAINS HE IS WRONGFULLY PLACED IN SHU
STATUS DT: 07-08-2022  STATUS CODE: REJ STATUS REASON: WRL DIR
INCRPTNO.:          RCT:    EXT:   DATE ENTD: 07-08-2022
REMARKS..:
```

```
G0002      MORE PAGES TO FOLLOW . . .
```

J.A. 62

```
MXRA4          ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL
PAGE 020 OF     *           FULL SCREEN FORMAT              *      12:19:04


REGNO: 13888-084 NAME: WHITE, WILLIAM
RSP OF...: CUM UNT/LOC/DST: 3 GP                QTR.: B03-202U   RCV OFC: BOP
REMEDY ID: 1114297-A1     SUB1: 22ZS SUB2: 15HS DATE RCV:    06-10-2022
UNT  RCV..:CMU            QTR RCV.: D02-009LDS    FACL RCV: THA
UNT  ORG..:CMU            QTR ORG.: D02-012LDS    FACL ORG: THA
EVT FACL.: THA    ACC LEV:  THA  1 NCR  1          RESP DUE:
ABSTRACT.: REQUESTS HIS NEWSPAPERS AND MAGAZINES WHILE IN SHU
STATUS DT: 07-08-2022  STATUS CODE: REJ STATUS REASON: WRL OTH
INCRPTNO.:          RCT:   EXT:   DATE ENTD: 07-08-2022
REMARKS..: NOW YOU HAVE YOUR INSTITUTIONAL RESPONSE, NEXT STEP
           IS APPEAL THE REGIONAL LEVEL.



REGNO: 13888-084 NAME: WHITE, WILLIAM
RSP OF...: CUM UNT/LOC/DST: 3 GP                QTR.: B03-202U   RCV OFC: BOP
REMEDY ID: 1113143-A1     SUB1: 26AS SUB2: 15HS DATE RCV:    06-10-2022
UNT  RCV..:CMU            QTR RCV.: D02-009LDS    FACL RCV: THA
UNT  ORG..:CMU            QTR ORG.: D02-012LDS    FACL ORG: THA
EVT FACL.: THA    ACC LEV:                         RESP DUE:
ABSTRACT.: COMPLAINS 30 MINS WAIT FOR O.C. SHOWER DECONTAMINATE
STATUS DT: 07-08-2022  STATUS CODE: REJ STATUS REASON: WRL DIR OTH
INCRPTNO.:          RCT:   EXT:   DATE ENTD: 07-08-2022
REMARKS..: START WITH INFORMAL RESOLUTION, BP-9, BP-10 THEN
           BP-11.
```

```
G0002       MORE PAGES TO FOLLOW . . .
```

J.A. 63

```
MXRA4        *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL*        06-29-2024
PAGE 021 OF      *           FULL SCREEN FORMAT            *      12:19:04


   REGNO: 13888-084 NAME: WHITE, WILLIAM
   RSP OF...: CUM UNT/LOC/DST: 3 GP                QTR.: B03-202U   RCV OFC: NCR
   REMEDY ID: 1121229-R2     SUB1: 15AS SUB2: 13FS DATE RCV:   06-10-2022
   UNT  RCV..:CMU          QTR RCV.: D02-009LDS    FACL RCV: THA
   UNT  ORG..:CMU          QTR ORG.: D02-009LDS    FACL ORG: THA
   EVT FACL.: THA    ACC LEV:                      RESP DUE:
   ABSTRACT.: APPEALS ENCUMBRANCE/COMMISSARY RESTRICTION
   STATUS DT: 08-25-2022   STATUS CODE: REJ STATUS REASON: OTH RSR MLT
   INCRPTNO.:          RCT:   EXT:   DATE ENTD: 08-25-2022
   REMARKS..: YOU DID NOT PROVIDE A COPY OF THE REJECTION NOTICE
              YOU WERE APPEALING. SEPARATE YOUR COMPLAINT OF NOT
              EARNING FSA CREDITS FROM ENCUMBRANCE APPEAL.


   REGNO: 13888-084 NAME: WHITE, WILLIAM
   RSP OF...: CUM UNT/LOC/DST: 3 GP                QTR.: B03-202U   RCV OFC: THA
   REMEDY ID: 1121246-F2     SUB1: 15AS SUB2: 15HS DATE RCV:   06-13-2022
   UNT  RCV..:CMU          QTR RCV.: D02-009LDS    FACL RCV: THA
   UNT  ORG..:CMU          QTR ORG.: D02-009LDS    FACL ORG: THA
   EVT FACL.: THA    ACC LEV:  THA  2              RESP DUE:  SUN  07-03-2022
   ABSTRACT.: REQUESTS BALANCE OF ACCOUNT BE APPLIED TO FRP REFUSE
   STATUS DT: 06-17-2022   STATUS CODE: CLG STATUS REASON: GRT
   INCRPTNO.:          RCT: P EXT:   DATE ENTD: 06-13-2022
   REMARKS..:


   G0002       MORE PAGES TO FOLLOW . . .
```

J.A. 64

```
MXRA4       *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL*      06-09-2024
PAGE 022 OF      *         FULL SCREEN FORMAT          *       12:19:04


REGNO: 13888-084 NAME: WHITE, WILLIAM
RSP OF...: CUM UNT/LOC/DST: 3 GP               QTR.: B03-202U   RCV OFC: BOP
REMEDY ID: 1090822-A3    SUB1: 34AM SUB2: 28ZM DATE RCV:   06-15-2022
UNT  RCV..:CMU           QTR RCV.: D02-009LDS    FACL RCV: THA
UNT  ORG..:I             QTR ORG.: I03-010L      FACL ORG: MAR
EVT FACL.: MAR    ACC LEV:  MAR  1 NCR  1 BOP  3   RESP DUE:  SUN  08-14-2022
ABSTRACT.: STAFF LIED ABOUT PSYCHOLOGY SERVICES CONVERSATION
STATUS DT: 08-30-2022  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:          RCT: P EXT: P DATE ENTD: 07-08-2022
REMARKS..:




REGNO: 13888-084 NAME: WHITE, WILLIAM
RSP OF...: CUM UNT/LOC/DST: 3 GP               QTR.: B03-202U   RCV OFC: NCR
REMEDY ID: 1125866-R1     SUB1: 20DM SUB2:      DATE RCV:   07-05-2022
UNT  RCV..:CMU           QTR RCV.: D02-009LDS    FACL RCV: THA
UNT  ORG..:CMU           QTR ORG.: D02-009LDS    FACL ORG: THA
EVT FACL.: THA    ACC LEV:  NCR  1 BOP  2          RESP DUE:  SAT  09-03-2022
ABSTRACT.: DHO APPEAL
STATUS DT: 07-27-2022  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.: 3597543   RCT: P EXT: P DATE ENTD: 07-07-2022
REMARKS..:
```

```
G0002       MORE PAGES TO FOLLOW . . .
```

USCA4 Appeal: 23-7116    Doc: 20    Filed: 05/21/2025    Pg: 69 of 236

Case 1:22-cv-02371-DKC   Document 3-3   Filed 10/28/22   Page 38 of 45

```
REGNO: 13888-084 NAME: WHITE, WILLIAM
RSP OF...: CUM UNT/LOC/DST: 3 GP                 QTR.: B03-202U   RCV OFC: BOP
REMEDY ID: 1125866-A1      SUB1: 20DM SUB2:      DATE RCV:   07-05-2022
UNT  RCV..:CMU           QTR RCV.: D02-009LDS    FACL RCV: THA
UNT  ORG..:CMU           QTR ORG.: D02-009LDS    FACL ORG: THA
EVT FACL.: THA    ACC LEV:  NCR  1 BOP  2          RESP DUE:
ABSTRACT.: DHO APPEAL
STATUS DT: 07-29-2022  STATUS CODE: REJ STATUS REASON: OTH
INCRPTNO.: 3597543   RCT:   EXT:   DATE ENTD: 07-29-2022
REMARKS..: REGION ACCEPTED YOUR APPEAL ON 7-7-2022, AND
           EXTENDED THE DUE DATE TO 60 DAYS, WAIT FOR REGIONAL
           RESPONSE.


REGNO: 13888-084 NAME: WHITE, WILLIAM
RSP OF...: CUM UNT/LOC/DST: 3 GP                 QTR.: B03-202U   RCV OFC: BOP
REMEDY ID: 1118667-A1      SUB1: 20ZM SUB2: 20AM DATE RCV:   07-05-2022
UNT  RCV..:CMU           QTR RCV.: D02-009LDS    FACL RCV: THA
UNT  ORG..:CMU           QTR ORG.: D02-010LDS    FACL ORG: THA
EVT FACL.: THA    ACC LEV:                         RESP DUE:
ABSTRACT.: DHO APPEALS
STATUS DT: 07-29-2022  STATUS CODE: REJ STATUS REASON: WRL DIR
INCRPTNO.: 3556931   RCT:   EXT:   DATE ENTD: 07-29-2022
REMARKS..:
```

```
G0002        MORE PAGES TO FOLLOW . . .
```

J.A. 66

USCA4 Appeal: 23-7116    Doc: 20    Filed: 05/21/2025    Pg: 70 of 236

Case 1:22-cv-02371-DKC   Document 3-3   Filed 10/28/22   Page 39 of 45

```
MXRA4       *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL*      10-28-2024
PAGE 024 OF      *           FULL SCREEN FORMAT             *      12:19:04


REGNO: 13888-084 NAME: WHITE, WILLIAM
RSP OF...: CUM UNT/LOC/DST: 3 GP                QTR.: B03-202U   RCV OFC: THA
REMEDY ID: 1125668-F1     SUB1: 16BS SUB2: 15HS DATE RCV:   07-06-2022
UNT  RCV..:CMU          QTR RCV.: D02-009LDS    FACL RCV: THA
UNT  ORG..:CMU          QTR ORG.: D02-009LDS    FACL ORG: THA
EVT FACL.: THA    ACC LEV:                      RESP DUE:
ABSTRACT.: REQUESTS LEGAL INFO RELATING TO ANOTHER INMATE, MAIL
STATUS DT: 07-06-2022  STATUS CODE: REJ STATUS REASON: INF MLT
INCRPTNO.:           RCT:  EXT:  DATE ENTD: 07-06-2022
REMARKS..:




REGNO: 13888-084 NAME: WHITE, WILLIAM
RSP OF...: CUM UNT/LOC/DST: 3 GP                QTR.: B03-202U   RCV OFC: NCR
REMEDY ID: 1103553-R1     SUB1: 15HM SUB2: 22ZM DATE RCV:   07-18-2022
UNT  RCV..:CMU          QTR RCV.: D02-009LDS    FACL RCV: THA
UNT  ORG..:I            QTR ORG.: I02-011LAD    FACL ORG: MAR
EVT FACL.: MAR    ACC LEV:  MAR  1 NCR  1       RESP DUE:  FRI  09-16-2022
ABSTRACT.: REQ RECREATION IN CMU SHU
STATUS DT: 08-26-2022  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:           RCT: P EXT: P DATE ENTD: 07-21-2022
REMARKS..:






G0002      MORE PAGES TO FOLLOW . . .
```

J.A. 67

MXRA4      *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL*        10-24-2024
PAGE 025 OF       *          FULL SCREEN FORMAT             *      12:19:04


REGNO: 13888-084 NAME: WHITE, WILLIAM
RSP OF...: CUM UNT/LOC/DST: 3 GP              QTR.: B03-202U   RCV OFC: NCR
REMEDY ID: 1127716-R1      SUB1: 20AM SUB2:      DATE RCV:    07-22-2022
UNT  RCV..:5F HOM        QTR RCV.: Z01-109UAD    FACL RCV: OKL
UNT  ORG..:5F HOM        QTR ORG.: Z01-109UAD    FACL ORG: OKL
EVT FACL.: THA    ACC LEV:  MXR   4                  RESP DUE:
ABSTRACT.: DHO APPEAL
STATUS DT: 07-26-2022  STATUS CODE: VOD STATUS REASON:
INCRPTNO.:          RCT:    EXT:   DATE ENTD: 07-22-2022
REMARKS..: REJECT. INMATE IS NO LONGER IN NCRO. MUST FILE
           COMPLAINT IN REGION WHICH INMATE IS CURRENTLY
           ASSIGNED.


REGNO: 13888-084 NAME: WHITE, WILLIAM
RSP OF...: CUM UNT/LOC/DST: 3 GP              QTR.: B03-202U   RCV OFC: NCR
REMEDY ID: 1127716-R2      SUB1: 20AM SUB2:      DATE RCV:    07-22-2022
UNT  RCV..:5F HOM        QTR RCV.: Z01-109UAD    FACL RCV: OKL
UNT  ORG..:5F HOM        QTR ORG.: Z01-109UAD    FACL ORG: OKL
EVT FACL.: THA    ACC LEV:  MXR   4                  RESP DUE:
ABSTRACT.: DHO APPEAL
STATUS DT: 07-26-2022  STATUS CODE: REJ STATUS REASON: OTH
INCRPTNO.:          RCT:    EXT:   DATE ENTD: 07-26-2022
REMARKS..: REJECT. INMATE IS NO LONGER IN NCRO. MUST FILE
           COMPLAINT IN REGION WHICH INMATE IS CURRENTLY
           ASSIGNED.


G0002      MORE PAGES TO FOLLOW . . .


J.A. 68

```
REGNO: 13888-084 NAME: WHITE, WILLIAM
RSP OF...: CUM UNT/LOC/DST: 3 GP              QTR.: B03-202U   RCV OFC: NCR
REMEDY ID: 1123164-R1    SUB1: 13CM SUB2: 15HM DATE RCV:   07-28-2022
UNT  RCV..:UNIT B       QTR RCV.: Z02-130LAD    FACL RCV: CUM
UNT  ORG..:CMU          QTR ORG.: D02-009LDS    FACL ORG: THA
EVT FACL.: THA    ACC LEV:  THA  1 NCR  1         RESP DUE:  MON  09-26-2022
ABSTRACT.: STATES FALSE SEPARATEES PLACED ON HIM
STATUS DT: 07-29-2022  STATUS CODE: ACC STATUS REASON:
INCRPTNO.:          RCT: P EXT: P DATE ENTD: 07-29-2022
REMARKS..:




REGNO: 13888-084 NAME: WHITE, WILLIAM
RSP OF...: CUM UNT/LOC/DST: 3 GP              QTR.: B03-202U   RCV OFC: NCR
REMEDY ID: 1114297-R1    SUB1: 22ZM SUB2: 15HM DATE RCV:   07-28-2022
UNT  RCV..:UNIT B       QTR RCV.: Z02-130LAD    FACL RCV: CUM
UNT  ORG..:CMU          QTR ORG.: D02-012LDS    FACL ORG: THA
EVT FACL.: THA    ACC LEV:  THA  1 NCR  1         RESP DUE:  MON  09-26-2022
ABSTRACT.: REQUESTS HIS NEWSPAPERS AND MAGAZINES WHILE IN SHU
STATUS DT: 07-29-2022  STATUS CODE: ACC STATUS REASON:
INCRPTNO.:          RCT: P EXT: P DATE ENTD: 07-29-2022
REMARKS..:
```

G0002      MORE PAGES TO FOLLOW . . .

J.A. 69

```
MXRA4        *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL*      10/20/2024
PAGE 027 OF      *          FULL SCREEN FORMAT            *      12:19:04


REGNO: 13888-084 NAME: WHITE, WILLIAM
RSP OF...: CUM UNT/LOC/DST: 3 GP              QTR.: B03-202U   RCV OFC: BOP
REMEDY ID: 1113124-A1    SUB1: 25CS SUB2:     DATE RCV:   08-04-2022
UNT  RCV..:3 GP          QTR RCV.: Z01-102LAD   FACL RCV: CUM
UNT  ORG..:CMU           QTR ORG.: D02-012LDS   FACL ORG: THA
EVT FACL.: THA    ACC LEV: THA  1 NCR  1        RESP DUE:
ABSTRACT.: ALLEGES SEWAGE LEAKAGE IN  CMU SHU CELL 108
STATUS DT: 08-15-2022  STATUS CODE: REJ STATUS REASON: RAP RSA
INCRPTNO.:          RCT:   EXT:   DATE ENTD: 08-15-2022
REMARKS..:




REGNO: 13888-084 NAME: WHITE, WILLIAM
RSP OF...: CUM UNT/LOC/DST: 3 GP              QTR.: B03-202U   RCV OFC: MXR
REMEDY ID: 1129439-R1    SUB1: 20DM SUB2:     DATE RCV:   08-05-2022
UNT  RCV..:3 GP          QTR RCV.: Z01-102LAD   FACL RCV: CUM
UNT  ORG..:            QTR ORG.:              FACL ORG:
EVT FACL.: THA    ACC LEV:                    RESP DUE:
ABSTRACT.: DHO APPEAL
STATUS DT: 08-05-2022  STATUS CODE: VOD STATUS REASON:
INCRPTNO.:          RCT:   EXT:   DATE ENTD: 08-05-2022
REMARKS..: SHOULD BE ENTERED IN UNDER 1127716








G0002      MORE PAGES TO FOLLOW . . .
```

J.A. 70

USCA4 Appeal: 23-7116    Doc: 20    Filed: 05/21/2025    Pg: 74 of 236

```
MXRA4      *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL*        10-26-2024
PAGE 028 OF     *         FULL SCREEN FORMAT              *      12:19:04


  REGNO: 13888-084 NAME: WHITE, WILLIAM
  RSP OF...: CUM UNT/LOC/DST: 3 GP              QTR.: B03-202U   RCV OFC: MXR
  REMEDY ID: 1127716-R3     SUB1: 20AM SUB2:    DATE RCV:   08-05-2022
  UNT  RCV..:3 GP       QTR RCV.: Z01-102LAD    FACL RCV: CUM
  UNT  ORG..:5F HOM     QTR ORG.: Z01-109UAD    FACL ORG: OKL
  EVT FACL.: THA    ACC LEV: MXR  4                  RESP DUE:
  ABSTRACT.: DHO APPEAL
  STATUS DT: 08-05-2022  STATUS CODE: REJ STATUS REASON: UTR MEM
  INCRPTNO.:          RCT:   EXT:   DATE ENTD: 08-05-2022
  REMARKS..:




  REGNO: 13888-084 NAME: WHITE, WILLIAM
  RSP OF...: CUM UNT/LOC/DST: 3 GP              QTR.: B03-202U   RCV OFC: BOP
  REMEDY ID: 1125866-A2     SUB1: 20DM SUB2:    DATE RCV:   09-01-2022
  UNT  RCV..:3 GP       QTR RCV.: B03-202U      FACL RCV: CUM
  UNT  ORG..:CMU        QTR ORG.: D02-009LDS    FACL ORG: THA
  EVT FACL.: THA    ACC LEV: NCR  1 BOP  2          RESP DUE:  MON  10-31-2022
  ABSTRACT.: DHO APPEAL
  STATUS DT: 10-01-2022  STATUS CODE: ACC STATUS REASON:
  INCRPTNO.: 3597543   RCT: P EXT: P DATE ENTD: 10-01-2022
  REMARKS..:
```

```
  G0002       MORE PAGES TO FOLLOW . . .
```

J.A. 71

```
MXRA4       *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL*   10-12-2024
PAGE 029 OF      *          FULL SCREEN FORMAT          *      12:19:04


REGNO: 13888-084 NAME: WHITE, WILLIAM
RSP OF...: CUM UNT/LOC/DST: 3 GP                QTR.: B03-202U   RCV OFC: BOP
REMEDY ID: 1113226-A2     SUB1: 34ZS SUB2: 15HS DATE RCV:   09-12-2022
UNT  RCV..:3 GP          QTR RCV.: Z04-235LAD    FACL RCV: CUM
UNT  ORG..:CMU           QTR ORG.: D02-012LDS    FACL ORG: THA
EVT FACL.: THA    ACC LEV:  THA  1 NCR  2         RESP DUE:
ABSTRACT.: STAFF COMPLAINT, FALSIFYING INCIDENT REPORT INFO.
STATUS DT: 09-26-2022  STATUS CODE: REJ STATUS REASON: IRQ RSA
INCRPTNO.:           RCT:   EXT:   DATE ENTD: 09-26-2022
REMARKS..:




REGNO: 13888-084 NAME: WHITE, WILLIAM
RSP OF...: CUM UNT/LOC/DST: 3 GP                QTR.: B03-202U   RCV OFC: MXR
REMEDY ID: 1127716-R4     SUB1: 20AM SUB2:      DATE RCV:   09-26-2022
UNT  RCV..:3 GP          QTR RCV.: B03-202U     FACL RCV: CUM
UNT  ORG..:5F HOM        QTR ORG.: Z01-109UAD   FACL ORG: OKL
EVT FACL.: THA    ACC LEV:  MXR  4               RESP DUE: FRI  11-25-2022
ABSTRACT.: DHO APPEAL
STATUS DT: 10-12-2022  STATUS CODE: ACC STATUS REASON:
INCRPTNO.: 3556931   RCT: P EXT: P DATE ENTD: 10-12-2022
REMARKS..:


             CURRENT INVESTIGATIVE AND RELIEF TRACKING DATA
DATE DUE            DEPARTMENT   TO    DATE ASSN   TRK TYPE   DATE RETURNED
TUE 11-01-2022     DHO                 10-12-2022      INV




G0002       MORE PAGES TO FOLLOW . . .
```

J.A. 72

```
MXRA4     *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL*        10-25-2024
PAGE 030 OF 030 *          FULL SCREEN FORMAT            *      12:19:04


REGNO: 13888-084 NAME: WHITE, WILLIAM
RSP OF...: CUM UNT/LOC/DST: 3 GP               QTR.: B03-202U    RCV OFC: NCR
REMEDY ID: 1121229-R3     SUB1: 15AS SUB2: 13FS DATE RCV:   10-03-2022
UNT  RCV..:3 GP          QTR RCV.: B03-202U    FACL RCV: CUM
UNT  ORG..:CMU           QTR ORG.: D02-009LDS  FACL ORG: THA
EVT FACL.: THA    ACC LEV:                     RESP DUE:
ABSTRACT.: APPEALS ENCUMBRANCE/COMMISSARY RESTRICTION
STATUS DT: 10-04-2022  STATUS CODE: REJ STATUS REASON: UTR MEM RSR
INCRPTNO.:          RCT:  EXT:  DATE ENTD: 10-04-2022
REMARKS..:




              57 REMEDY SUBMISSION(S) SELECTED
   G0000       TRANSACTION SUCCESSFULLY COMPLETED
```

J.A. 73

# EXHIBIT 2

# Declaration of Brittny May

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WIILLIAM WHITE,                        )
                                       )
        Petitioner,                    )
                                       )    Civil Action No. 1:22-CV-2371-DKC
        v.                             )
                                       )
FIRST NAME UNKNOWN ("FNU")             )
CARTER, WARDEN, FCI CUMBERLAND         )
                                       )
        Respondent.                    )

_____

**DECLARATION OF BRITTNY MAY**

In accordance with the provisions of 28 U.S.C. § 1746, I, the undersigned Brittny May, do hereby make the following declaration pertinent to the above-styled cause of action:

1.    I, Brittny May, am presently a Federal Bureau of Prisons ("BOP") Case Manager at the Federal Correctional Institution in Cumberland, Maryland ("FCI Cumberland"). I have held this position since 2020 and began my employment with the BOP in 2016.

2.    As a case manager at FCI Cumberland, I am responsible for the custody and control of designated inmates including individual counseling, group counseling, and managing reports and correspondence. Additionally, I perform the Risks and Needs Assessments for my case load of inmates, including William White.

3.    I am aware that Petitioner William White, Federal Register Number 13888-084, seeks First Step Act (FSA) Time Credits (Time Credits) for the time he spent in the Special Housing Unit (SHU) from July 21, 2022 to August 22, 2022.

**Petitioner's 2022 BOP Designation History**

1

J.A. 75

4. Petitioner was originally designated to the Federal Correctional Institution Terre Haute in Terre Haute, Indiana from January 21, 2022 to July 21, 2022. On July 21, 2022, Petitioner was transferred to the Federal Transfer Center Oklahoma City (Oklahoma City) in Oklahoma City, Oklahoma from July 21, 2022 to July 25, 2022. On July 25, 2022, he was transferred to the Federal Correctional Institution Cumberland in Cumberland, Maryland (FCI Cumberland). *See* Attachment A.

5. When Petitioner was at Oklahoma City, he was placed in the SHU. *See* Attachment B[1].

6. When Petitioner arrived at FCI Cumberland on July 25, 2022, FCI Cumberland had no available bed space for him in general population. Therefore, he was temporarily housed in the SHU from July 25, 2022, to August 22, 2022. On August 22, 2022, he was released to general population. *Id.*

## BOP's First Step Act (FSA) History

7. When an inmate's Unit Team reviews an inmate for eligibility based on their current offenses, they will note on the inmate's profile, or PP44, accordingly. On November 22, 2019, Petitioner was reviewed for Time Credit eligibility based on his current offenses and he was found eligible to receive Time Credits. Accordingly, his inmate profile shows FTC-ELIGIBLE-REVIEWED. This code indicates that Petitioner is able to **earn** Time Credits. *See* Attachment C.

8. On August 30, 2022, Petitioner attended his routine 180-day program review where he was evaluated as a Medium risk level according to the Prisoner Assessment Tool Targeting Estimated Risk and Needs (PATTERN). *See* Attachment D.

9. On August 30, 2022, a memo was released to all inmates informing them that they will receive an auto-calculation application worksheet of any Time Credits that they have

---

[1] "AD" denotes "administrative detention status," an available placement for SHU.

2

J.A. 76

received once the program is launched. This memo did not state that any credit inmate's

may have earned will be applied to their sentence immediately. The worksheet is

intended to show inmates how many credits they have "banked" so far, or a running total

of the credits so that when they are closer to their release date, the credits can be applied

accordingly. *See* Attachment E.

10.    On October 2, 2022, the BOP began auto-calculating inmate's Time Credits.

11.    On October 5, 2022, Petitioner's Time Credits were automatically calculated. *See*
Attachment F.

**Petitioner's FSA Time Credit Assessment[2]**

12.    At the top left of the worksheet, Petitioner's basic information is listed, including his start
date of incarceration: September 12, 2012.

13.    The assessment calculated any credit that Petitioner has "banked" so far since December
21, 2018. As of October 5, 2022, Petitioner has accrued 1341 calendar days of possible
programming.  285 credit days have been applied towards prerelease custody and 365
credit days have been applied towards his release date. Days of programming shows the
total number of calendar days Petitioner could have programmed between December 21,
2018 and October 5, 2022. The days applied to prerelease custody and the days applied
to his release date are credit days, not calendar days and are calculated accordingly.
Additionally, this section shows that Petitioner is unable to have his Time Credits applied
because he is a Medium risk inmate.

14.    In the first row of the worksheet, it states the total number of program days, or calendar
days which here is 1341.

15.    In the second row, between December 21, 2018 and June 3, 2022, Petitioner accrued

---

[2] This section references Attachment F.

3

1260 days of programming. His time credit factor was 15 meaning he received 15 days of FSA credit for every 30 days of successful participation, in accordance with 28 CFR § 523.42(c). To arrive at 630 credits, one must calculate as follows:

1260 (total number of accrued calendar days) / 30 (days in the month) = 42 (number of calendar months)

42 (number of months) * 15 (days of credit for 30 days of successful participation) = 630 (total number of FSA credits)

16. In the third row, between June 3, 2022 and July 21, 2022, Petitioner accrued 48 calendar days. During this time, Petitioner only received 10 days of credit for every 30 days, pursuant to 28 CFR § 523.42(c) of successful participation because he was a Medium risk level inmate. Accordingly, he received ten (10) days of FSA credits which is reflected here:

48 (total number of accrued calendar days) / 30 (days in the month) = 1 (number of months rounded)

1 (number of months) * 10 (days of credit for every 30 days of successful participation) = 10 (total number of FSA credits)

However, there were eighteen (18) days still remaining to be applied which resulted in a carry-over status. Carry-over status occurs when the inmate has not completed a full calendar participation because they may have been in disallowance status. Because Petitioner was transferred on July 21, 2022, he stopped earning any FSA credit; however, he is still entitled to those 8 days he successfully participated. Therefore, those 18 days gets carried over to the next time he is in accrual status which is further explained in paragraph 18.

17. In the fourth row, it reflects the time Petitioner spent in disallow status, i.e. the time he

4

J.A. 78

spent in transfer status or in the SHU. Between July 21, 2022 and August 23, 2022, he lost thirty-three days of possible calendar days accrued.

18. In the fifth row on the second page, between August 23, 2022 and September 12, 2022, Petitioner accrued twenty (20) calendar days. During this time, Petitioner only received 10 days of credit for every 30 days of successful participation because he was a Medium risk level inmate. Accordingly, he received 10 days of FSA credit which is reflected here:

First, the 18 carry-over day he earned between June 3, 2022 and July 21, 2022, needed to be applied to the 20 calendar days he accrued during this period. Therefore, 20+18 = 38 (accrued calendar days).

38 (accrued calendar days) / 30 (days in the month) = 1 (number of months rounded)
1 (number of months rounded) * 10 (days of credit for every 30 days of successful participation) = 10 (total number of FSA credits)

19. In the sixth row, Petitioner was in the SHU from September 12, 2022 to September 22, 2022. Therefore, he lost 10 days of possible calendar days accrued.

However, there were eight (8) days still remaining to be applied which resulted in a carry-over status.

20. In the final row, between September 22, 2022 and October 5, 2022, Petitioner accrued thirteen (13) calendar days. During this time, Petitioner only received 10 days of credit for every 30 days of successful participation because he was a Medium risk level inmate. First, the 8 carry-over days he earned between August 23, 2022 and September 12, 2022, needed to be applied to the 13 calendar days he accrued during this period. Therefore, 13+8=21 (accrued calendar days). However, because 21 accrued calendar days does not equal 30 days, the total number of days in a month, Petitioner needs to be wait to see the

5

J.A. 79

21 days reflected on the worksheet.

21.    Therefore:

630 (credits received from December 21, 2018 to October 5, 2022) + 10 (credits received

from June 3, 2022 to July 21, 2022) + 10 (credits received from August 23, 2022 to

September 12, 2022) = 650 FSA credit days

650 (total FSA credit days) – 365 (maximum number of days he can receive towards

release pursuant to 28 CFR § 523.44(d) = 285 remaining FSA credit days

The remaining 285 FSA credit days may be applied towards prerelease custody pursuant

to 28 CFR § 523.44(d).

I declare under the penalty of perjury, the foregoing is true and correct, to the best of my
knowledge, and that all attached documents are true and correct copies of the documents
maintained by the BOP in the ordinary course of business.

Executed on this 21st day of October 2022.

Brittny May
Case Manager
FCI Cumberland

6

J.A. 80

# **<u>Attachment A</u> to the Declaration of Brittny May**

```
MXRA4    5G2U02 *       INMATE HISTORY      ADM-REL                  4-20-2022
PAGE 001        *                 ADM-REL            *       12:45:09


 REG NO..: 13888-084 NAME....: WHITE, WILLIAM A
 CATEGORY: ARS       FUNCTION: PRT       FORMAT:

FCL    ASSIGNMENT DESCRIPTION                  START DATE/TIME STOP  DATE/TIME
CUM    A-DES      DESIGNATED, AT ASSIGNED FACIL 07-25-2022 1719 CURRENT
A02    RELEASE    RELEASED FROM IN-TRANSIT FACL 07-25-2022 1719 07-25-2022 1719
A02    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 07-25-2022 1000 07-25-2022 1719
OKL    HLD REMOVE HOLDOVER REMOVED              07-25-2022 0900 07-25-2022 0900
OKL    A-BOP HLD  HOLDOVER FOR INST TO INST TRF 07-21-2022 1620 07-25-2022 0900
A02    RELEASE    RELEASED FROM IN-TRANSIT FACL 07-21-2022 1720 07-21-2022 1720
A02    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 07-21-2022 1134 07-21-2022 1720
THA    TRANSFER   TRANSFER                      07-21-2022 1134 07-21-2022 1134
THA    A-DES      DESIGNATED, AT ASSIGNED FACIL 01-21-2022 1026 07-21-2022 1134
3-M    RELEASE    RELEASED FROM IN-TRANSIT FACL 01-21-2022 1026 01-21-2022 1026
3-M    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 01-21-2022 0723 01-21-2022 1026
MAR    TRANSFER   TRANSFER                      01-21-2022 0623 01-21-2022 0623
MAR    A-DES      DESIGNATED, AT ASSIGNED FACIL 03-25-2021 1454 01-21-2022 0623
MAR    LOCAL HOSP ESC TRIP TO LOCAL HOSP W/RETN 03-25-2021 0825 03-25-2021 1454
MAR    A-DES      DESIGNATED, AT ASSIGNED FACIL 06-17-2016 1410 03-25-2021 0825
A02    RELEASE    RELEASED FROM IN-TRANSIT FACL 06-17-2016 1510 06-17-2016 1510
A02    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 06-17-2016 1000 06-17-2016 1510
OKL    HLD REMOVE HOLDOVER REMOVED              06-17-2016 0900 06-17-2016 0900
OKL    A-HLD      HOLDOVER, TEMPORARILY HOUSED  06-06-2016 1425 06-17-2016 0900
A02    RELEASE    RELEASED FROM IN-TRANSIT FACL 06-06-2016 1525 06-06-2016 1525
A02    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 06-06-2016 0917 06-06-2016 1525
CCC    HLD REMOVE HOLDOVER REMOVED              06-06-2016 0817 06-06-2016 0817
CCC    A-HLD      HOLDOVER, TEMPORARILY HOUSED  10-19-2015 0819 06-06-2016 0817
0-S    RELEASE    RELEASED FROM IN-TRANSIT FACL 10-19-2015 0919 10-19-2015 0919
0-S    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 09-29-2015 1011 10-19-2015 0919
CCC    HLD REMOVE HOLDOVER REMOVED              09-29-2015 0911 09-29-2015 0911
CCC    A-HLD      HOLDOVER, TEMPORARILY HOUSED  06-08-2015 1725 09-29-2015 0911
3-M    RELEASE    RELEASED FROM IN-TRANSIT FACL 06-08-2015 1825 06-08-2015 1825
3-M    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 06-08-2015 0844 06-08-2015 1825
MAR    FED WRIT   RELEASE ON FEDERAL WRIT       06-08-2015 0744 06-17-2016 1410
MAR    A-DES      DESIGNATED, AT ASSIGNED FACIL 04-30-2015 1458 06-08-2015 0744
S38    RELEASE    RELEASED FROM IN-TRANSIT FACL 04-30-2015 1558 04-30-2015 1558
S38    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 04-30-2015 0522 04-30-2015 1558
OKL    HLD REMOVE HOLDOVER REMOVED              04-30-2015 0422 04-30-2015 0422
OKL    A-HLD      HOLDOVER, TEMPORARILY HOUSED  04-21-2015 1530 04-30-2015 0422
8-C    RELEASE    RELEASED FROM IN-TRANSIT FACL 04-21-2015 1630 04-21-2015 1630
8-C    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 03-03-2015 0730 04-21-2015 1630
CAA    HLD REMOVE HOLDOVER REMOVED              03-03-2015 0730 03-03-2015 0730
CAA    A-HLD      HOLDOVER, TEMPORARILY HOUSED  02-20-2015 1150 03-03-2015 0730
B24    RELEASE    RELEASED FROM IN-TRANSIT FACL 02-20-2015 1150 02-20-2015 1150
B24    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 02-20-2015 0745 02-20-2015 1150




G0002       MORE PAGES TO FOLLOW . . .
```

```
MXRA4    531011*            INMATE HISTORY              04-14-2022
PAGE 002        *             ADM-REL          *        12:45:09


  REG NO..: 13888-084 NAME....: WHITE, WILLIAM A
  CATEGORY: ARS       FUNCTION: PRT      FORMAT:


FCL    ASSIGNMENT DESCRIPTION                 START DATE/TIME STOP  DATE/TIME
LOR    FED WRIT   RELEASE ON FEDERAL WRIT     02-20-2015 0745 05-01-2015 0720
LOR    A-DES      DESIGNATED, AT ASSIGNED FACIL 01-09-2015 0645 02-20-2015 0745
B01    RELEASE    RELEASED FROM IN-TRANSIT FACL 01-09-2015 0645 01-09-2015 0645
B01    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 01-09-2015 0127 01-09-2015 0645
CAA    TRANSFER   TRANSFER                     01-09-2015 0127 01-09-2015 0127
CAA    A-BOP HLD  HOLDOVER FOR INST TO INST TRF 12-29-2014 1820 01-09-2015 0127
A01    RELEASE    RELEASED FROM IN-TRANSIT FACL 12-29-2014 1820 12-29-2014 1820
A01    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 12-29-2014 1014 12-29-2014 1820
OKL    HLD REMOVE HOLDOVER REMOVED            12-29-2014 0914 12-29-2014 0914
OKL    A-HLD      HOLDOVER, TEMPORARILY HOUSED 12-23-2014 1625 12-29-2014 0914
I-T    RELEASE    RELEASED FROM IN-TRANSIT FACL 12-23-2014 1725 12-23-2014 1725
I-T    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 12-10-2014 0530 12-23-2014 1725
A01    RELEASE    RELEASED FROM IN-TRANSIT FACL 12-10-2014 0530 12-10-2014 0530
A01    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 12-09-2014 1318 12-10-2014 0530
ATL    ADMIN REL  ADMINISTRATIVE RELEASE       12-09-2014 1318 12-09-2014 1318
ATL    A-ADMIN    ADMINISTRATIVE ADMISSION     12-09-2014 1250 12-09-2014 1318
P14    RELEASE 12 RELEASED FROM IN-TRANSIT, DEC 12-09-2014 1250 12-09-2014 1250
P14    A-ADMIT 09 ADMITTED TO IN-TRANSIT, SEP  09-11-2014 0530 12-09-2014 1250
I-T    RELEASE    RELEASED FROM IN-TRANSIT FACL 09-11-2014 0530 09-11-2014 0530
I-T    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 05-14-2014 0530 09-11-2014 0530
A01    RELEASE    RELEASED FROM IN-TRANSIT FACL 05-14-2014 0530 05-14-2014 0530
A01    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 05-13-2014 0900 05-14-2014 0530
OKL    HLD REMOVE HOLDOVER REMOVED            05-13-2014 0800 05-13-2014 0800
OKL    A-HLD      HOLDOVER, TEMPORARILY HOUSED 05-08-2014 1715 05-13-2014 0800
P13    RELEASE 05 RELEASED FROM IN-TRANSIT, MAY 05-08-2014 1815 05-08-2014 1815
P13    A-ADMIT 10 ADMITTED TO IN-TRANSIT, OCT  10-11-2013 0530 05-08-2014 1815
7-O    RELEASE    RELEASED FROM IN-TRANSIT FACL 10-11-2013 0530 10-11-2013 0530
7-O    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 06-13-2013 1114 10-11-2013 0530
PEM    HLD REMOVE HOLDOVER REMOVED            06-13-2013 1114 06-13-2013 1114
PEM    A-HLD      HOLDOVER, TEMPORARILY HOUSED 06-12-2013 1324 06-13-2013 1114
B15    RELEASE    RELEASED FROM IN-TRANSIT FACL 06-12-2013 1324 06-12-2013 1324
B15    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 06-12-2013 0722 06-12-2013 1324
PHL    HLD REMOVE HOLDOVER REMOVED            06-12-2013 0722 06-12-2013 0722
PHL    A-HLD      HOLDOVER, TEMPORARILY HOUSED 06-10-2013 1905 06-12-2013 0722
A01    RELEASE    RELEASED FROM IN-TRANSIT FACL 06-10-2013 1905 06-10-2013 1905
A01    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 06-10-2013 0920 06-10-2013 1905
CAA    HLD REMOVE HOLDOVER REMOVED            06-10-2013 0920 06-10-2013 0920
CAA    A-BOP HLD  HOLDOVER FOR INST TO INST TRF 06-07-2013 1200 06-10-2013 0920
B24    RELEASE    RELEASED FROM IN-TRANSIT FACL 06-07-2013 1200 06-07-2013 1200
B24    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 06-07-2013 0749 06-07-2013 1200
LOR    FED WRIT   RELEASE ON FEDERAL WRIT     06-07-2013 0749 01-09-2015 0645




G0002       MORE PAGES TO FOLLOW . . .
```

J.A. 83

```
MXRA4    531-01:*       INMATE HISTORY       *       10-24-2022
PAGE 003       *              ADM-REL              *    12:45:09


 REG NO..: 13888-084 NAME....: WHITE, WILLIAM A
 CATEGORY: ARS       FUNCTION: PRT        FORMAT:


FCL    ASSIGNMENT DESCRIPTION                  START DATE/TIME STOP  DATE/TIME
LOR    A-DES      DESIGNATED, AT ASSIGNED FACIL 05-03-2013 0641 06-07-2013 0749
B01    RELEASE    RELEASED FROM IN-TRANSIT FACL 05-03-2013 0641 05-03-2013 0641
B01    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 05-03-2013 0146 05-03-2013 0641
CAA    HLD REMOVE HOLDOVER REMOVED             05-03-2013 0146 05-03-2013 0146
CAA    A-HLD      HOLDOVER, TEMPORARILY HOUSED  04-15-2013 1820 05-03-2013 0146
A01    RELEASE    RELEASED FROM IN-TRANSIT FACL 04-15-2013 1820 04-15-2013 1820
A01    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 04-15-2013 0900 04-15-2013 1820
OKL    HLD REMOVE HOLDOVER REMOVED             04-15-2013 0800 04-15-2013 0800
OKL    A-HLD      HOLDOVER, TEMPORARILY HOUSED  04-01-2013 1925 04-15-2013 0800
A01    RELEASE    RELEASED FROM IN-TRANSIT FACL 04-01-2013 2025 04-01-2013 2025
A01    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 04-01-2013 1219 04-01-2013 2025
CCC    HLD REMOVE HOLDOVER REMOVED             04-01-2013 1119 04-01-2013 1119
CCC    A-HLD      HOLDOVER, TEMPORARILY HOUSED  01-23-2013 1540 04-01-2013 1119
A02    RELEASE    RELEASED FROM IN-TRANSIT FACL 01-23-2013 1640 01-23-2013 1640
A02    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 01-23-2013 1119 01-23-2013 1640
MIL    HLD REMOVE HOLDOVER REMOVED             01-23-2013 1119 01-23-2013 1119
MIL    A-HLD      HOLDOVER, TEMPORARILY HOUSED  01-15-2013 1513 01-23-2013 1119
A02    RELEASE    RELEASED FROM IN-TRANSIT FACL 01-15-2013 1513 01-15-2013 1513
A02    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 01-15-2013 1255 01-15-2013 1513
MIL    HLD REMOVE HOLDOVER REMOVED             01-15-2013 1255 01-15-2013 1255
MIL    A-HLD      HOLDOVER, TEMPORARILY HOUSED  01-14-2013 1826 01-15-2013 1255
A02    RELEASE    RELEASED FROM IN-TRANSIT FACL 01-14-2013 1826 01-14-2013 1826
A02    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 01-14-2013 0945 01-14-2013 1826
OKL    HLD REMOVE HOLDOVER REMOVED             01-14-2013 0845 01-14-2013 0845
OKL    A-HLD      HOLDOVER, TEMPORARILY HOUSED  01-07-2013 1645 01-14-2013 0845
A01    RELEASE    RELEASED FROM IN-TRANSIT FACL 01-07-2013 1745 01-07-2013 1745
A01    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 01-07-2013 0815 01-07-2013 1745
CAA    HLD REMOVE HOLDOVER REMOVED             01-07-2013 0815 01-07-2013 0815
CAA    A-BOP HLD  HOLDOVER FOR INST TO INST TRF 12-21-2012 1145 01-07-2013 0815
B24    RELEASE    RELEASED FROM IN-TRANSIT FACL 12-21-2012 1145 12-21-2012 1145
B24    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 12-21-2012 0750 12-21-2012 1145
LOR    FED WRIT   RELEASE ON FEDERAL WRIT      12-21-2012 0750 05-03-2013 0641
LOR    A-DES      DESIGNATED, AT ASSIGNED FACIL 11-09-2012 0615 12-21-2012 0750
B01    RELEASE    RELEASED FROM IN-TRANSIT FACL 11-09-2012 0615 11-09-2012 0615
B01    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 11-09-2012 0217 11-09-2012 0615
CAA    HLD REMOVE HOLDOVER REMOVED             11-09-2012 0217 11-09-2012 0217
CAA    A-HLD      HOLDOVER, TEMPORARILY HOUSED  11-05-2012 1650 11-09-2012 0217
9-L    RELEASE    RELEASED FROM IN-TRANSIT FACL 11-05-2012 1650 11-05-2012 1650
9-L    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 09-27-2012 1711 11-05-2012 1650
DSC    ADMIN REL  ADMINISTRATIVE RELEASE       09-27-2012 1611 09-27-2012 1611
DSC    A-ADMIN    ADMINISTRATIVE ADMISSION     09-27-2012 1342 09-27-2012 1611




G0002      MORE PAGES TO FOLLOW . . .
```

```
MXRA4   5335011.?                INMATE HISTORY          09/14/2012
PAGE 004        *                ADM-REL              *    12:45:09


  REG NO..: 13888-084 NAME....: WHITE, WILLIAM A
  CATEGORY: ARS        FUNCTION: PRT        FORMAT:


FCL    ASSIGNMENT DESCRIPTION              START DATE/TIME STOP  DATE/TIME
I-T    RELEASE    RELEASED FROM IN-TRANSIT FACL 09-27-2012 1442 09-27-2012 1442
I-T    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 08-03-2012 0530 09-27-2012 1442
A01    RELEASE    RELEASED FROM IN-TRANSIT FACL 08-03-2012 0530 08-03-2012 0530
A01    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 08-02-2012 0857 08-03-2012 0530
OKL    HLD REMOVE HOLDOVER REMOVED            08-02-2012 0757 08-02-2012 0757
OKL    A-HLD      HOLDOVER, TEMPORARILY HOUSED 07-24-2012 1700 08-02-2012 0757
MIM    PRE REMOVE PRE SENT DETAINEE REMOVED   07-24-2012 1131 07-24-2012 1700
MIM    A-PRE      PRE-SENT ADMIT, ADULT        06-09-2012 1851 07-24-2012 1131
CCC    UNCOMT RMV UNCOMMITTED CASE REMOVED    05-11-2011 1209 06-09-2012 1851
CCC    A-UNCOMMIT UNCOMMITTED PERSON          05-11-2011 1123 05-11-2011 1209
CCC    PRE REMOVE PRE SENT DETAINEE REMOVED   04-20-2011 0959 05-11-2011 1123
CCC    A-HLD      HOLDOVER, TEMPORARILY HOUSED 12-17-2010 1512 04-20-2011 0959
A01    RELEASE    RELEASED FROM IN-TRANSIT FACL 12-17-2010 1612 12-17-2010 1612
A01    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 12-17-2010 1015 12-17-2010 1612
OKL    HLD REMOVE HOLDOVER REMOVED            12-17-2010 0915 12-17-2010 0915
OKL    A-HLD      HOLDOVER, TEMPORARILY HOUSED 12-09-2010 1535 12-17-2010 0915
A01    RELEASE    RELEASED FROM IN-TRANSIT FACL 12-09-2010 1635 12-09-2010 1635
A01    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 12-09-2010 1154 12-09-2010 1635
BEC    FED WRIT   RELEASE ON FEDERAL WRIT      12-09-2010 1154 01-18-2011 0915
BEC    A-DES      DESIGNATED, AT ASSIGNED FACIL 09-01-2010 1541 12-09-2010 1154
I-T    RELEASE    RELEASED FROM IN-TRANSIT FACL 09-01-2010 1541 09-01-2010 1541
I-T    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 08-19-2010 0530 09-01-2010 1541
A01    RELEASE    RELEASED FROM IN-TRANSIT FACL 08-19-2010 0530 08-19-2010 0530
A01    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 08-18-2010 1148 08-19-2010 0530
BEC    FED WRIT   RELEASE ON FEDERAL WRIT      08-18-2010 1148 09-01-2010 1541
BEC    A-DES      DESIGNATED, AT ASSIGNED FACIL 04-28-2010 1649 08-18-2010 1148
9-L    RELEASE    RELEASED FROM IN-TRANSIT FACL 04-28-2010 1649 04-28-2010 1649
9-L    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 04-23-2010 1245 04-28-2010 1649
DSC    ADMIN REL  ADMINISTRATIVE RELEASE       04-23-2010 1145 04-23-2010 1145
DSC    A-ADMIN    ADMINISTRATIVE ADMISSION     04-23-2010 1122 04-23-2010 1145
P09    RELEASE 04 RELEASED FROM IN-TRANSIT, APR 04-23-2010 1222 04-23-2010 1222
P09    A-ADMIT 12 ADMITTED TO IN-TRANSIT, DEC  12-26-2009 0530 04-23-2010 1222
I-T    RELEASE    RELEASED FROM IN-TRANSIT FACL 12-26-2009 0530 12-26-2009 0530
I-T    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 08-28-2009 0530 12-26-2009 0530
A01    RELEASE    RELEASED FROM IN-TRANSIT FACL 08-28-2009 0530 08-28-2009 0530
A01    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 08-27-2009 1115 08-28-2009 0530
OKL    HLD REMOVE HOLDOVER REMOVED            08-27-2009 1015 08-27-2009 1015
OKL    A-HLD      HOLDOVER, TEMPORARILY HOUSED 08-14-2009 1815 08-27-2009 1015
CCC    PRE REMOVE PRE SENT DETAINEE REMOVED   08-11-2009 0957 08-14-2009 1815
CCC    A-PRE      PRE-SENT ADMIT, ADULT        11-07-2008 2019 08-11-2009 0957
A01    RELEASE    RELEASED FROM IN-TRANSIT FACL 11-07-2008 2119 11-07-2008 2119




G0002      MORE PAGES TO FOLLOW . . .
```

J.A. 85

USCA4 Appeal: 23-7116　　Doc: 20　　Filed: 05/21/2025　　Pg: 89 of 236

```
MXRA4    53551 *           INMATE HISTORY          *      10-13-2022
PAGE 005 OF 005 *              ADM-REL             *      12:45:09

 REG NO..: 13888-084 NAME....: WHITE, WILLIAM A
 CATEGORY: ARS       FUNCTION: PRT        FORMAT:

FCL    ASSIGNMENT DESCRIPTION                  START DATE/TIME STOP  DATE/TIME
A01    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 11-07-2008 0950 11-07-2008 2119
OKL    HLD REMOVE HOLDOVER REMOVED               11-07-2008 0850 11-07-2008 0850
OKL    A-HLD      HOLDOVER, TEMPORARILY HOUSED   10-30-2008 1716 11-07-2008 0850




G0000         TRANSACTION SUCCESSFULLY COMPLETED
```

J.A. 86

# **Attachment B to the Declaration of Brittny May**

```
MXRA4  5341011                INMATE HISTORY                   10-15-2022
PAGE 001         *              QUARTERS                 *      12:45:31


 REG NO..: 13888-084 NAME....: WHITE, WILLIAM A
 CATEGORY: QTR          FUNCTION: PRT          FORMAT:

FCL    ASSIGNMENT DESCRIPTION                   START DATE/TIME STOP  DATE/TIME
CUM    B03-202U   HOUSE B/RANGE 03/BED 202U     09-21-2022 0924 CURRENT
CUM    Z04-235LAD HOUSE Z/RANGE 04/BED 235L AD  09-12-2022 1418 09-21-2022 0924
CUM    B03-202U   HOUSE B/RANGE 03/BED 202U     08-30-2022 1744 09-12-2022 1418
CUM    B01-118U   HOUSE B/RANGE 01/BED 118U     08-22-2022 1111 08-30-2022 1744
CUM    Z01-103LAD HOUSE Z/RANGE 01/BED 103L AD  08-15-2022 1220 08-22-2022 1111
CUM    Z01-102LAD HOUSE Z/RANGE 01/BED 102L AD  07-29-2022 0959 08-15-2022 1220
CUM    Z02-130LAD HOUSE Z/RANGE 02/BED 130L AD  07-25-2022 1944 07-29-2022 0959
CUM    R01-001L   HOUSE R/RANGE 01/BED 001L     07-25-2022 1719 07-25-2022 1944
OKL    Z01-109UAD HOUSE Z/RANGE 01/BED 109U AD  07-21-2022 1821 07-25-2022 0900
OKL    R01-001L   HOUSE R/RANGE 01/BED 001L     07-21-2022 1620 07-21-2022 1821
THA    D02-009LDS HOUSE D/RANGE 02/BED 009L DS  05-12-2022 1157 07-21-2022 1134
THA    D02-010LDS HOUSE D/RANGE 02/BED 010L DS  03-25-2022 1253 05-12-2022 1157
THA    D02-012LDS HOUSE D/RANGE 02/BED 012L DS  03-04-2022 1156 03-25-2022 1253
THA    D02-011LDS HOUSE D/RANGE 02/BED 011L DS  03-04-2022 1153 03-04-2022 1156
THA    D02-008LDS HOUSE D/RANGE 02/BED 008L DS  02-18-2022 2200 03-04-2022 1153
THA    D03-035U   HOUSE D/RANGE 03/BED 035U     02-08-2022 1022 02-18-2022 2200
THA    D02-008LDS HOUSE D/RANGE 02/BED 008L DS  01-21-2022 1316 02-08-2022 1022
THA    R01-001L   HOUSE R/RANGE 01/BED 001L     01-21-2022 1026 01-21-2022 1316
MAR    I02-011LAD HOUSE I/RANGE 02/BED 011L AD  01-16-2022 0923 01-21-2022 0623
MAR    I02-012LAD HOUSE I/RANGE 02/BED 012L AD  12-27-2021 1334 01-16-2022 0923
MAR    I02-011LAD HOUSE I/RANGE 02/BED 011L AD  12-07-2021 0917 12-27-2021 1334
MAR    I02-012LAD HOUSE I/RANGE 02/BED 012L AD  11-17-2021 1142 12-07-2021 0917
MAR    I02-010LAD HOUSE I/RANGE 02/BED 010L AD  10-28-2021 0939 11-17-2021 1142
MAR    I02-015LAD HOUSE I/RANGE 02/BED 015L AD  10-13-2021 2034 10-28-2021 0939
MAR    I03-006L   HOUSE I/RANGE 03/BED 006L     08-25-2021 0817 10-13-2021 2034
MAR    I03-010L   HOUSE I/RANGE 03/BED 010L     04-30-2021 0912 08-25-2021 0817
MAR    I02-002L   HOUSE I/RANGE 02/BED 002L     04-17-2021 2149 04-30-2021 0912
MAR    I04-006L   HOUSE I/RANGE 04/BED 006L     04-06-2021 0752 04-17-2021 2149
MAR    I03-012L   HOUSE I/RANGE 03/BED 012L     03-25-2021 1454 04-06-2021 0752
MAR    I02-002L   HOUSE I/RANGE 02/BED 002L     03-23-2021 1446 03-25-2021 0825
MAR    I03-012L   HOUSE I/RANGE 03/BED 012L     02-05-2020 0738 03-23-2021 1446
MAR    I03-013L   HOUSE I/RANGE 03/BED 013L     05-14-2019 1323 02-05-2020 0738
MAR    I03-007L   HOUSE I/RANGE 03/BED 007L     05-14-2019 1317 05-14-2019 1323
MAR    I03-002L   HOUSE I/RANGE 03/BED 002L     07-06-2017 1435 05-14-2019 1317
MAR    I02-012LAD HOUSE I/RANGE 02/BED 012L AD  07-04-2017 0906 07-06-2017 1435
MAR    I03-002L   HOUSE I/RANGE 03/BED 002L     06-17-2016 1410 07-04-2017 0906
OKL    E01-524U   HOUSE E/RANGE 01/BED 524U     06-06-2016 1911 06-17-2016 0900
OKL    E01-901L   HOUSE E/RANGE 01/BED 901L     06-06-2016 1425 06-06-2016 1911
CCC    G02-009U   HOUSE G/RANGE 02/BED 009U     05-21-2016 0924 06-06-2016 0817
CCC    G02-008U   HOUSE G/RANGE 02/BED 008U     03-05-2016 0751 05-21-2016 0924
CCC    G02-007U   HOUSE G/RANGE 02/BED 007U     12-24-2015 1450 03-05-2016 0751




G0002        MORE PAGES TO FOLLOW . . .
```

J.A. 88

```
MXRA4   531.01                INMATE HISTORY            QUARTERS      04/16/2020
PAGE 002         *                 QUARTERS                  *     12:45:31


 REG NO..: 13888-084 NAME....: WHITE, WILLIAM A
 CATEGORY: QTR          FUNCTION: PRT          FORMAT:

FCL   ASSIGNMENT DESCRIPTION                    START DATE/TIME STOP  DATE/TIME
CCC   G02-006U   HOUSE G/RANGE 02/BED 006U      10-19-2015 1711 12-24-2015 1450
CCC   G01-004U   HOUSE G/RANGE 01/BED 004U      10-19-2015 1515 10-19-2015 1711
CCC   R01-001L   HOUSE R/RANGE 01/BED 001L      10-19-2015 0819 10-19-2015 1515
CCC   G02-005U   HOUSE G/RANGE 02/BED 005U      09-11-2015 1132 09-29-2015 0911
CCC   G02-009U   HOUSE G/RANGE 02/BED 009U      07-03-2015 0740 09-11-2015 1132
CCC   G02-008U   HOUSE G/RANGE 02/BED 008U      06-08-2015 2255 07-03-2015 0740
CCC   R01-001L   HOUSE R/RANGE 01/BED 001L      06-08-2015 1725 06-08-2015 2255
MAR   I04-015L   HOUSE I/RANGE 04/BED 015L      04-30-2015 2344 06-08-2015 0744
MAR   I04-011L   HOUSE I/RANGE 04/BED 011L      04-30-2015 1458 04-30-2015 2344
OKL   Z01-725UAD HOUSE Z/RANGE 01/BED 725U AD   04-21-2015 1902 04-30-2015 0422
OKL   R01-001L   HOUSE R/RANGE 01/BED 001L      04-21-2015 1530 04-21-2015 1902
CAA   A01-109U   HOUSE A/RANGE 01/BED 109U      02-27-2015 1034 03-03-2015 0730
CAA   A01-114L   HOUSE A/RANGE 01/BED 114L      02-20-2015 1507 02-27-2015 1034
CAA   A01-115U   HOUSE A/RANGE 01/BED 115U      02-20-2015 1457 02-20-2015 1507
CAA   R01-001L   HOUSE R/RANGE 01/BED 001L      02-20-2015 1150 02-20-2015 1457
LOR   Z01-013LAD HOUSE Z/RANGE 01/BED 013L AD   02-17-2015 1239 02-20-2015 0745
LOR   Z01-005UAD HOUSE Z/RANGE 01/BED 005U AD   01-29-2015 1017 02-17-2015 1239
LOR   Z01-002UAD HOUSE Z/RANGE 01/BED 002U AD   01-12-2015 1208 01-29-2015 1017
LOR   Z01-008UAD HOUSE Z/RANGE 01/BED 008U AD   01-09-2015 1118 01-12-2015 1208
LOR   Z01-016UAD HOUSE Z/RANGE 01/BED 016U AD   01-09-2015 0645 01-09-2015 1118
CAA   A03-130U   HOUSE A/RANGE 03/BED 130U      01-05-2015 1034 01-09-2015 0127
CAA   A03-119U   HOUSE A/RANGE 03/BED 119U      12-29-2014 2040 01-05-2015 1034
CAA   R01-001L   HOUSE R/RANGE 01/BED 001L      12-29-2014 1820 12-29-2014 2040
OKL   Z02-708LAD HOUSE Z/RANGE 02/BED 708L AD   12-23-2014 2035 12-29-2014 0914
OKL   R01-001L   HOUSE R/RANGE 01/BED 001L      12-23-2014 1954 12-23-2014 2035
OKL   E12-602L   HOUSE E/RANGE 12/BED 602L      12-23-2014 1625 12-23-2014 1954
ATL   R01-001L   HOUSE R/RANGE 01/BED 001L      12-09-2014 1250 12-09-2014 1318
OKL   E03-512L   HOUSE E/RANGE 03/BED 512L      05-08-2014 1715 05-13-2014 0800
PEM   Z02-142UAD HOUSE Z/RANGE 02/BED 142U AD   06-12-2013 1812 06-13-2013 1114
PEM   Z01-112LO  HOUSE Z/RANGE 01/BED 112L O    06-12-2013 1650 06-12-2013 1812
PEM   R01-001L   HOUSE R/RANGE 01/BED 001L      06-12-2013 1324 06-12-2013 1650
PHL   Z02-815LDS HOUSE Z/RANGE 02/BED 815L DS   06-10-2013 2252 06-12-2013 0722
PHL   Z01-801LAD HOUSE Z/RANGE 01/BED 801L AD   06-10-2013 2238 06-10-2013 2252
PHL   F02-659U   HOUSE F/RANGE 02/BED 659U      06-10-2013 2123 06-10-2013 2238
PHL   R01-001L   HOUSE R/RANGE 01/BED 001L      06-10-2013 1905 06-10-2013 2123
CAA   A03-115U   HOUSE A/RANGE 03/BED 115U      06-07-2013 1335 06-10-2013 0920
CAA   R01-001L   HOUSE R/RANGE 01/BED 001L      06-07-2013 1200 06-07-2013 1335
LOR   N01-111U   HOUSE N/RANGE 01/BED 111U      05-03-2013 0641 06-07-2013 0749
CAA   A03-130L   HOUSE A/RANGE 03/BED 130L      04-15-2013 2222 05-03-2013 0146
CAA   R01-001L   HOUSE R/RANGE 01/BED 001L      04-15-2013 1820 04-15-2013 2222
OKL   Z02-704LAD HOUSE Z/RANGE 02/BED 704L AD   04-04-2013 1020 04-15-2013 0800



G0002       MORE PAGES TO FOLLOW . . .
```

J.A. 89

```
MXRA4    5.....                      INMATE HISTORY                        0.....
PAGE 003              *              QUARTERS                    *      12:45:31


   REG NO..: 13888-084 NAME....: WHITE, WILLIAM A
   CATEGORY: QTR        FUNCTION: PRT          FORMAT:


FCL    ASSIGNMENT DESCRIPTION                     START DATE/TIME STOP  DATE/TIME
OKL    C04-410U   HOUSE C/RANGE 04/BED 410U       04-01-2013 1925 04-04-2013 1020
CCC    G04-003U   HOUSE G/RANGE 04/BED 003U       02-21-2013 2105 04-01-2013 1119
CCC    G03-007U   HOUSE G/RANGE 03/BED 007U       02-21-2013 1508 02-21-2013 2105
CCC    G03-007L   HOUSE G/RANGE 03/BED 007L       02-21-2013 1505 02-21-2013 1508
CCC    E01-017U   HOUSE E/RANGE 01/BED 017U       01-25-2013 1306 02-21-2013 1505
CCC    Z02-012LAD HOUSE Z/RANGE 02/BED 012L AD    01-23-2013 1955 01-25-2013 1306
CCC    R01-001L   HOUSE R/RANGE 01/BED 001L       01-23-2013 1540 01-23-2013 1955
MIL    D03-111L   HOUSE D/RANGE 03/BED 111L       01-15-2013 1700 01-23-2013 1119
MIL    R02-001L   HOUSE R/RANGE 02/BED 001L       01-15-2013 1513 01-15-2013 1700
MIL    D03-111L   HOUSE D/RANGE 03/BED 111L       01-14-2013 2051 01-15-2013 1255
MIL    R02-001L   HOUSE R/RANGE 02/BED 001L       01-14-2013 1826 01-14-2013 2051
OKL    Z01-712LAD HOUSE Z/RANGE 01/BED 712L AD    01-07-2013 2106 01-14-2013 0845
OKL    R01-001L   HOUSE R/RANGE 01/BED 001L       01-07-2013 1645 01-07-2013 2106
CAA    A03-109L   HOUSE A/RANGE 03/BED 109L       12-21-2012 2006 01-07-2013 0815
CAA    A03-124U   HOUSE A/RANGE 03/BED 124U       12-21-2012 1313 12-21-2012 2006
CAA    R01-001L   HOUSE R/RANGE 01/BED 001L       12-21-2012 1145 12-21-2012 1313
LOR    Z01-024UAD HOUSE Z/RANGE 01/BED 024U AD    12-20-2012 1238 12-21-2012 0750
LOR    N04-061U   HOUSE N/RANGE 04/BED 061U       12-04-2012 1200 12-20-2012 1238
LOR    K06-032U   HOUSE K/RANGE 06/BED 032U       11-14-2012 1234 12-04-2012 1200
LOR    Z01-019UAD HOUSE Z/RANGE 01/BED 019U AD    11-09-2012 1146 11-14-2012 1234
LOR    Z01-024LAD HOUSE Z/RANGE 01/BED 024L AD    11-09-2012 0615 11-09-2012 1146
CAA    A03-110U   HOUSE A/RANGE 03/BED 110U       11-05-2012 2206 11-09-2012 0217
CAA    R01-001L   HOUSE R/RANGE 01/BED 001L       11-05-2012 1650 11-05-2012 2206
OKL    Z02-727LAD HOUSE Z/RANGE 02/BED 727L AD    07-29-2012 1114 08-02-2012 0757
OKL    E02-620U   HOUSE E/RANGE 02/BED 620U       07-26-2012 1431 07-29-2012 1114
OKL    C09-313L   HOUSE C/RANGE 09/BED 313L       07-24-2012 1700 07-26-2012 1431
MIM    Z03-031LAD HOUSE Z/RANGE 03/BED 031L AD    07-13-2012 0943 07-24-2012 1131
MIM    F02-029U   HOUSE F/RANGE 02/BED 029U       06-21-2012 0855 07-13-2012 0943
MIM    Z01-010LAD HOUSE Z/RANGE 01/BED 010L AD    06-15-2012 1121 06-21-2012 0855
MIM    Z01-005LAD HOUSE Z/RANGE 01/BED 005L AD    06-09-2012 1915 06-15-2012 1121
MIM    R01-001L   HOUSE R/RANGE 01/BED 001L       06-09-2012 1851 06-09-2012 1915
CCC    R01-001L   HOUSE R/RANGE 01/BED 001L       05-11-2011 1123 05-11-2011 1209
CCC    Z02-007UAD HOUSE Z/RANGE 02/BED 007U AD    04-06-2011 1230 04-20-2011 0959
CCC    Z02-008UAD HOUSE Z/RANGE 02/BED 008U AD    03-15-2011 1332 04-06-2011 1230
CCC    Z02-004LAD HOUSE Z/RANGE 02/BED 004L AD    03-09-2011 0850 03-15-2011 1332
CCC    Z01-028LAD HOUSE Z/RANGE 01/BED 028L AD    02-23-2011 0956 03-09-2011 0850
CCC    Z01-029LAD HOUSE Z/RANGE 01/BED 029L AD    01-26-2011 1211 02-23-2011 0956
CCC    Z01-028LAD HOUSE Z/RANGE 01/BED 028L AD    01-11-2011 1047 01-26-2011 1211
CCC    Z02-009UAD HOUSE Z/RANGE 02/BED 009U AD    01-05-2011 1245 01-11-2011 1047
CCC    Z02-010UAD HOUSE Z/RANGE 02/BED 010U AD    12-25-2010 2153 01-05-2011 1245
CCC    C01-025U   HOUSE C/RANGE 01/BED 025U       12-17-2010 1831 12-25-2010 2153




G0002        MORE PAGES TO FOLLOW . . .
```

J.A. 90

```
MXRA4    53.01 *                  INMATE HISTORY                      08.14.2012
PAGE 004 OF 004 *                    QUARTERS                  *      12:45:31


  REG NO..: 13888-084 NAME....: WHITE, WILLIAM A
  CATEGORY: QTR       FUNCTION: PRT      FORMAT:

FCL    ASSIGNMENT DESCRIPTION                  START DATE/TIME STOP  DATE/TIME
CCC    R01-001L   HOUSE R/RANGE 01/BED 001L    12-17-2010 1512 12-17-2010 1831
OKL    C01-309L   HOUSE C/RANGE 01/BED 309L    12-09-2010 1535 12-17-2010 0915
BEC    Z02-007LAD HOUSE Z/RANGE 02/BED 007L AD 11-21-2010 1036 12-09-2010 1154
BEC    Z01-024LAD HOUSE Z/RANGE 01/BED 024L AD 10-31-2010 0935 11-21-2010 1036
BEC    Z01-022LAD HOUSE Z/RANGE 01/BED 022L AD 10-10-2010 1054 10-31-2010 0935
BEC    Z01-019LAD HOUSE Z/RANGE 01/BED 019L AD 10-05-2010 1324 10-10-2010 1054
BEC    Z03-010LDS HOUSE Z/RANGE 03/BED 010L DS 09-21-2010 1752 10-05-2010 1324
BEC    Z01-019UAD HOUSE Z/RANGE 01/BED 019U AD 09-19-2010 1135 09-21-2010 1752
BEC    Z01-009UAD HOUSE Z/RANGE 01/BED 009U AD 09-03-2010 1154 09-19-2010 1135
BEC    Z05-001LH  HOUSE Z/RANGE 05/BED 001L H  09-03-2010 1146 09-03-2010 1154
BEC    A06-222U   HOUSE A/RANGE 06/BED 222U    09-02-2010 1541 09-03-2010 1146
BEC    A06-216U   HOUSE A/RANGE 06/BED 216U    09-01-2010 1850 09-02-2010 1541
BEC    R01-001L   HOUSE R/RANGE 01/BED 001L    09-01-2010 1541 09-01-2010 1850
BEC    A05-121U   HOUSE A/RANGE 05/BED 121U    05-27-2010 0927 08-18-2010 1148
BEC    A06-809U   HOUSE A/RANGE 06/BED 809U    04-28-2010 2032 05-27-2010 0927
BEC    R01-001L   HOUSE R/RANGE 01/BED 001L    04-28-2010 1649 04-28-2010 2032
OKL    Z02-722LAD HOUSE Z/RANGE 02/BED 722L AD 08-14-2009 2120 08-27-2009 1015
OKL    R01-001L   HOUSE R/RANGE 01/BED 001L    08-14-2009 2035 08-14-2009 2120
OKL    E12-616L   HOUSE E/RANGE 12/BED 616L    08-14-2009 1815 08-14-2009 2035
CCC    C04-013U   HOUSE C/RANGE 04/BED 013U    08-07-2009 0935 08-11-2009 0957
CCC    E04-011U   HOUSE E/RANGE 04/BED 011U    07-16-2009 1128 08-07-2009 0935
CCC    E04-004U   HOUSE E/RANGE 04/BED 004U    06-19-2009 1244 07-16-2009 1128
CCC    Z01-021UAD HOUSE Z/RANGE 01/BED 021U AD 06-19-2009 0841 06-19-2009 1244
CCC    Z01-020UAD HOUSE Z/RANGE 01/BED 020U AD 06-14-2009 1335 06-19-2009 0841
CCC    E03-021U   HOUSE E/RANGE 03/BED 021U    05-12-2009 1134 06-14-2009 1335
CCC    E03-025U   HOUSE E/RANGE 03/BED 025U    04-22-2009 1458 05-12-2009 1134
CCC    E01-021U   HOUSE E/RANGE 01/BED 021U    04-02-2009 1651 04-22-2009 1458
CCC    Z02-013UAD HOUSE Z/RANGE 02/BED 013U AD 04-01-2009 0344 04-02-2009 1651
CCC    F01-017U   HOUSE F/RANGE 01/BED 017U    01-07-2009 1307 04-01-2009 0344
CCC    F03-018U   HOUSE F/RANGE 03/BED 018U    12-29-2008 1233 01-07-2009 1307
CCC    Z02-012LAD HOUSE Z/RANGE 02/BED 012L AD 12-08-2008 1516 12-29-2008 1233
CCC    Z02-005LAD HOUSE Z/RANGE 02/BED 005L AD 11-17-2008 1131 12-08-2008 1516
CCC    Z02-003LAD HOUSE Z/RANGE 02/BED 003L AD 11-17-2008 1109 11-17-2008 1131
CCC    Z02-010LAD HOUSE Z/RANGE 02/BED 010L AD 11-08-2008 0110 11-17-2008 1109
CCC    R01-001L   HOUSE R/RANGE 01/BED 001L    11-07-2008 2019 11-08-2008 0110
OKL    Z03-708LDS HOUSE Z/RANGE 03/BED 708L DS 10-30-2008 2054 11-07-2008 0850
OKL    R01-001L   HOUSE R/RANGE 01/BED 001L    10-30-2008 2038 10-30-2008 2054
OKL    E12-623U   HOUSE E/RANGE 12/BED 623U    10-30-2008 1716 10-30-2008 2038




  G0000        TRANSACTION SUCCESSFULLY COMPLETED
```

# **Attachment C to the Declaration of Brittny May**

```
MXRA4   530-31*                INMATE PROFILE              10-24-2022
PAGE 001                                                    12:04:11
            13888-084          REG
REGNO: 13888-084               FUNCTION: PRT DOB/AGE.: 05-29-1977 / 45
NAME.: WHITE, WILLIAM A                  R/S/ETH.: W/M/O    WALSH: NO
RSP..: CUM-CUMBERLAND FCI                MILEAGE.: 95 MILES
PHONE: 301-784-1000      FAX: 301-784-1008
 PROJ REL METHOD: GOOD CONDUCT TIME RELEASE    FBI NO..: ████████
 PROJ REL DATE..: 05-29-2037                   INS NO..: N/A
 PAR ELIG DATE..: N/A                          SSN.....: ████████
 PAR HEAR DATE..:              PSYCH: NO    DETAINER: NO     CMC..: YES
OFFN/CHG RMKS: SRV-DVAW708CR54-001/6:13CR304ORL28GJK/08CR851/7L3CR13/EXTORTIO
OFFN/CHG RMKS: THREAT TO INJ./CRIME OF VIOL./29YRS,1MOS,8DAYS;3YRS
    FACL CATEGORY   - - - - - CURRENT ASSIGNMENT - - - - - - EFF DATE  TIME
    CUM  ADM-REL    A-DES      DESIGNATED, AT ASSIGNED FACIL 07-25-2022 1719
    CUM  CARE LEVEL CARE1      HEALTHY OR SIMPLE CHRONIC CARE 08-04-2022 1014
    CUM  CARE LEVEL CARE1-MH   CARE1-MENTAL HEALTH           06-29-2010 0935
    CUM  COR COUNSL FCI B1     JAMES WASHINGTON 3056         07-25-2022 1719
    CUM  CASE MGT   BIR CERT N BIRTH CERTIFICATE - NO        02-27-2018 0826
    CUM  CASE MGT   CMU STEP-D CMU STEP-DOWN                 06-27-2022 0727
    CUM  CASE MGT   DEPEND Y   DEPENDENTS UNDER 21 - YES     02-27-2018 1133
    CUM  CASE MGT   PHOTO ID N PHOTO ID - NO                 02-27-2018 0759
    CUM  CASE MGT   PROG RPT   NEXT PROGRESS REPORT DUE DATE 11-09-2015 1026
    CUM  CASE MGT   RPP PART   RELEASE PREP PGM PARTICIPATES 11-19-2012 0850
    CUM  CASE MGT   SSN CARD N SOCIAL SECURITY CARD - NO     02-27-2018 0853
    CUM  CASE MGT   VET P/S N  PARENT/SPOUSE VETERAN - NO    02-27-2018 1130
    CUM  CASE MGT   VETERAN N  VETERAN - NO                  02-27-2018 1131
    CUM  CASE MGT   VWP AUTO   VICTIM/WITNESS PGM AUTO UPDATE 04-21-2010 0700
    CUM  CASE MGT   V94 CVA913 V94 CURR VIOL ON/AFTER 91394  11-19-2012 1027
    CUM  CASE MGT   WA NO HIST NO WALSH ACT OFFENSE HISTORY  04-23-2010 1128
    CUM  CORR SVCS  REQD MONTR REQUIRED MONITORING           12-22-2016 1827
    CUM  CASEWORKER FCI B1     B. MAY     EXT-3053           07-25-2022 1719
    CUM  CUSTODY    IN         IN CUSTODY                    07-24-2012 1700
    CUM  DRUG PGMS  ED NONE    DRUG EDUCATION NONE           11-19-2012 1027
    CUM  DESIG/SENT FOXTROT    TEAM FOXTROT                  09-27-2012 1352
    CUM  EDUCATION  MRSA       MRSA IN AN ATHLETIC FACILITY  10-06-2022 1901
    CUM  EDUCATION  SOLAR SYS  OUR SOLAR SYSTEM              08-24-2022 1829
    CUM  EDUC INFO  ESL HAS    ENGLISH PROFICIENT            04-29-2010 1254
    CUM  EDUC INFO  GED HAS    COMPLETED GED OR HS DIPLOMA   04-29-2010 1253
    CUM  FIN RESP   COMPLT     FINANC RESP-COMPLETED         06-21-2018 1051
    CUM  FIRST STEP FTC ELIG   FTC-ELIGIBLE - REVIEWED       11-22-2019 1213
    CUM  FIRST STEP N-ANGER Y  NEED - ANGER/HOSTILITY YES    08-30-2022 1315
    CUM  FIRST STEP N-ANTISO Y NEED - ANTISOCIAL PEERS YES   08-30-2022 1315
    CUM  FIRST STEP N-COGNTV Y NEED - COGNITIONS YES         08-30-2022 1315
    CUM  FIRST STEP N-DYSLEX N NEED - DYSLEXIA NO            05-30-2021 1300
    CUM  FIRST STEP N-EDUC N   NEED - EDUCATION NO           08-30-2022 1315
    CUM  FIRST STEP N-FIN PV N NEED - FINANCE/POVERTY NO     08-30-2022 1323
    CUM  FIRST STEP N-FM/PAR N NEED - FAMILY/PARENTING NO    08-30-2022 1315
    CUM  FIRST STEP N-M HLTH N NEED - MENTAL HEALTH NO       08-30-2022 1315
    CUM  FIRST STEP N-MEDICL N NEED - MEDICAL NO             08-30-2022 1315
    CUM  FIRST STEP N-RLF Y    NEED - REC/LEISURE/FITNESS YES 08-30-2022 1315
    CUM  FIRST STEP N-SUB AB N NEED - SUBSTANCE ABUSE NO     08-30-2022 1315

 G0017      WARNING : NOTIFICATIONS ARE REQUIRED PER P.S. 1490.06
 G0002      MORE PAGES TO FOLLOW . . .
```

USCA4 Appeal: 23-7116　　Doc: 20　　Filed: 05/21/2025　　Pg: 97 of 236

```
MXRA4   530-31*              INMATE PROFILE                   09-14-2022
PAGE 002 OF 002                                               12:04:11
                13888-084              REG
REGNO: 13888-084                FUNCTION: PRT DOB/AGE.: 05-29-1977 / 45
NAME.: WHITE, WILLIAM A                   R/S/ETH.: W/M/O    WALSH: NO
RSP..: CUM-CUMBERLAND FCI                 MILEAGE.: 95 MILES
PHONE: 301-784-1000        FAX: 301-784-1008
    FACL CATEGORY  - - - - - CURRENT ASSIGNMENT - - - - - - EFF DATE  TIME
    CUM  FIRST STEP N-TRAUMA N NEED - TRAUMA NO              08-30-2022 1315
    CUM  FIRST STEP N-WORK N   NEED - WORK NO                08-30-2022 1315
    CUM  FIRST STEP R-MED      MEDIUM RISK RECIDIVISM LEVEL  08-30-2022 1315
    CUM  LEVEL      MEDIUM     SECURITY CLASSIFICATION MEDIUM 03-02-2022 0938
    CUM  MED DY ST  NO PAPER   NO PAPER MEDICAL RECORD       11-14-2008 0822
    CUM  MED DY ST  REG DUTY   NO MEDICAL RESTR--REGULAR DUTY 06-28-2012 0001
    CUM  PGM REVIEW FEB        FEBRUARY PROGRAM REVIEW       02-15-2023 0858
    CUM  PT OTHER   HTH WELL W HEALTH & WELLNESS LIFESPN WAIT 10-07-2022 1808
    CUM  PSYCH TRMT RSW COMP   RESOLVE WORKSHOP COMPLETED    06-16-2020 1700
    CUM  QUARTERS   B03-202U   HOUSE B/RANGE 03/BED 202U     09-21-2022 0924
    CUM  RELIGION   HINDU      HINDU                         08-23-2022 0915
    CUM  UNIT MGR   FCI B1     UNT MGR J. FAZENBAKER 3052    07-25-2022 1719
    CUM  UNIT       3 GP       UNIT 3 - GP(B)                08-02-2022 1433
    CUM  WRK DETAIL F A&O      FCI A&O INMATES               09-21-2022 0925




    G0017       WARNING : NOTIFICATIONS ARE REQUIRED PER P.S. 1490.06
    G0000       TRANSACTION SUCCESSFULLY COMPLETED
```

J.A. 94

# **Attachment D to the Declaration of Brittny May**

Register Number:13888-084, Last Name:WHITE

**U.S. DEPARTMENT OF JUSTICE**          **FEDERAL BUREAU OF PRISONS**

| | |
|---|---|
| Register Number: 13888-084 | Risk Level Inmate....: R-MED |
| Inmate Name |   General Level......: R-LW (30) |
|   Last........: WHITE |   Violent Level......: R-MED (30) |
|   First.......: WILLIAM | Security Level Inmate: MEDIUM |
|   Middle......: A | Security Level Facl..: MEDIUM |
|   Suffix......: | Responsible Facility.: CUM |
| Gender........: MALE | Start Incarceration..: 09/12/2012 |

**PATTERN Worksheet Summary**

| Item | - Value | - General Score | - Violent Score |
|---|---|---|---|
| Current Age | 45 | 14 | 8 |
| Walsh w/Conviction | FALSE | 0 | 0 |
| Violent Offense (PATTERN) | TRUE | 5 | 7 |
| Criminal History Points | 5 | 16 | 6 |
| History of Escapes | 0 | 0 | 0 |
| History of Violence | 5 | 5 | 10 |
| Education Score | HighSchoolDegreeOrGED | -2 | -2 |
| Drug Program Status | NoNeed | -6 | -3 |
| All Incident Reports (120 Months) | 8 | 3 | 3 |
| Serious Incident Reports (120 Months) | 4 | 3 | 3 |
| Time Since Last Incident Report | 6 | 2 | 2 |
| Time Since Last Serious Incident Report | 6 | 0 | 0 |
| FRP Refuse | FALSE | 0 | 0 |
| Programs Completed | 7 | -9 | -3 |
| Work Programs | 1 | -1 | -1 |
| | Total | 30 | 30 |

J.A. 96

Assessment Date: 08/30/2022      (1)      Assessment# R-2147019697

# **Attachment E to the Declaration of Brittny May**

**Inmate Message – Federal Time Credits (FTC)
Auto-Calculation Launches**

Recently, the Bureau has launched the Federal Time Credits (FTCs) auto-calculation application.  All eligible inmates will be reviewed regardless of PATTERN risk level release date, and credits will be applied consistent with the final rules language and implementing text.

As a reminder, the unit team will determine an inmate's eligibility to earn FTCs based on the current conviction and prior criminal convictions.

The earning of FTCs is based on "earning status," and NOT participation and/or completion of individual programs.  **Inmates who refuse or fail to complete any portion of the needs assessment and/or refuse or decline any program recommended to address as specific identified need area, is considered "opted out" and will not earn FTCs.**

The following are items have been incorporated into the calculation of FTCs:

- While inmates can begin earning time credits starting with the enactment of the statute, the "presumed participation" period only extends from December 21, 2018, through January 14, 2020.
- During the "presumed participation" period and through April 28, 2021, the PATTERN risk level calculated on April 28, 2021 (PATTERN auto-calculation start date), will be used to determine the initial risk level and FTC earning rate.
- During the "presumed participation" period, only those days when the inmate was incarcerated outside the facility, housed in the Special Housing Unit, or on refused/declined status for a pre-FSA programming (e.g., FRP, Drug Education, GED, etc.) will be excluded from successful participation and credit will not be earned.
- **From January 15, 2020, forward, all components of the SPARC-13 needs assessment must be complete to be eligible to earn FTCs.  Failing to do so is considered "opted out." In other words, if an inmate fails to complete a required survey or declines to enroll in a recommended program which addresses a specific need, the inmate will not be eligible to earn FTCs.**
- In order to earn the apply the higher earning rate of 15 days (for every 30 day period of successful EBRR or PA recommended), inmates need a PATTERN level of minimum or

J.A. 98

low risk or have dropped to a minimum or low risk level and maintained it for two consecutive assessment periods.

- FTCs are applied first toward release dates and then toward RRC/HC placement.

- Inmates must be otherwise eligible to participate in RRC/HC placement to apply FTCs to early release.  While inmates continue to earn FTCs, inmates can only apply the FTCs if they have no detainers, unresolved pending charges, and/or unresolved immigration status issues.

- **Eligible inmates will continue to earn FTCs toward early release until they have accumulated 365 days OR are 18 months from their release date, <u>whichever happens first</u>. At this point, the release date becomes fixed, and all additional FTCs are applied toward RRC/HC placement.**

- FTCs will be updated monthly, and an FSA Time Credits Assessment worksheet will be maintained in the central files.  The most current copy will be provided during the regularly schedule Program Review team meeting.

- FTCs earned toward RRC/HC placement will be applied in addition to release needs-based recommendations made under the Second Chance Act.

- FTCs may be applied toward early release in addition to the early release benefit for RDAP graduates; however, inmates are still required to complete the required 120-day RRC/HC placement.  Dropping out of RDAP may result in the loss of both the RDAP early release benefit and early release due to FTCs if it is determined the inmate is "opting out" despite having an identified need.

J.A. 99

# **Attachment F to the Declaration of Brittny May**

Register Number:13888-084, Last Name:WHITE

**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| | |
|---|---|
| Register Number....: 13888-084 | Responsible Facility: CUM |
| Inmate Name | Assessment Date.....: 10-05-2022 |
|  Last............: WHITE | Period Start/Stop...: 12-21-2018 to 10-05-2022 |
|  First...........: WILLIAM | Accrued Pgm Days....: 1341 |
|  Middle..........: A | Disallowed Pgm Days.: 43 |
|  Suffix..........: | FTC Towards RRC/HC..: 285 |
| Gender............: MALE | FTC Towards Release.: 365 |
| Start Incarceration: 09-12-2012 | Can Apply FTC.......: No |

| Start | Stop | Pgm Status | Pgm Days |
|---|---|---|---|
| 12-21-2018 | 10-05-2022 | accrue | 1341 |

**Cannot apply FTC**

| Facility | Category | Assignment | Start | | Stop |
|---|---|---|---|---|---|
| CUM | FSA | R-MED | 08-30-2022 | 1315 | CURRENT |

----------------------------------------------------------------------------

| Start | Stop | Pgm Status | Pgm Days |
|---|---|---|---|
| 12-21-2018 | 06-03-2022 | accrue | 1260 |

 Accrued Pgm Days...: 1260
 Carry Over Pgm Days: 0
 Time Credit Factor.: 15
 Time Credits.......: 630

----------------------------------------------------------------------------

| Start | Stop | Pgm Status | Pgm Days |
|---|---|---|---|
| 06-03-2022 | 07-21-2022 | accrue | 48 |

 Accrued Pgm Days...: 48
 Carry Over Pgm Days: 0
 Time Credit Factor.: 10
 Time Credits.......: 10

----------------------------------------------------------------------------

| Start | Stop | Pgm Status | Pgm Days |
|---|---|---|---|
| 07-21-2022 | 08-23-2022 | disallow | 33 |

**Not in qualifying admit status**

| Facility | Category | Assignment | Start | | Stop | |
|---|---|---|---|---|---|---|
| THA | ARS | TRANSFER | 07-21-2022 | 1134 | 07-21-2022 | 1134 |
| A02 | ARS | A-ADMIT | 07-21-2022 | 1134 | 07-21-2022 | 1720 |
| OKL | ARS | A-BOP HLD | 07-21-2022 | 1620 | 07-25-2022 | 0900 |
| A02 | ARS | RELEASE | 07-21-2022 | 1720 | 07-21-2022 | 1720 |

**In SHU**

| Facility | Category | Assignment | Start | | Stop | |
|---|---|---|---|---|---|---|
| OKL | QTR | Z01-109UAD | 07-21-2022 | 1821 | 07-25-2022 | 0900 |
| CUM | QTR | Z02-130LAD | 07-25-2022 | 1944 | 07-29-2022 | 0959 |

J.A. 101

FSA Time Credit Assessment

Register Number:13888-084, Last Name:WHITE

**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| | | | | |
|---|---|---|---|---|
| CUM | QTR | Z01-102LAD | 07-29-2022 0959 | 08-15-2022 1220 |
| CUM | QTR | Z01-103LAD | 08-15-2022 1220 | 08-22-2022 1111 |

---

| Start | Stop | Pgm Status | Pgm Days |
|---|---|---|---|
| 08-23-2022 | 09-12-2022 | accrue | 20 |

    Accrued Pgm Days...: 20
    Carry Over Pgm Days: 18
    Time Credit Factor.: 10
    Time Credits.......: 10

---

| Start | Stop | Pgm Status | Pgm Days |
|---|---|---|---|
| 09-12-2022 | 09-22-2022 | disallow | 10 |

    **In SHU**

| Facility | Category | Assignment | Start | Stop |
|---|---|---|---|---|
| CUM | QTR | Z04-235LAD | 09-12-2022 1418 | 09-21-2022 0924 |

---

| Start | Stop | Pgm Status | Pgm Days |
|---|---|---|---|
| 09-22-2022 | 10-05-2022 | accrue | 13 |

    Accrued Pgm Days...: 13
    Carry Over Pgm Days: 8
    Time Credit Factor.: 10
    Time Credits.......: 0

J.A. 102

**Assessment Date: 10-05-2022**                    **(2)**                    **Assessment# -2147470774**

# EXHIBIT 3

# Declaration of Gerald Sawyer

J.A. 103

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

WIILLIAM WHITE,                              )
                                             )
                 Petitioner,                 )
                                             )     Civil Action No. 1:22-CV-2371-DKC
          v.                                 )
                                             )
FIRST NAME UNKNOWN ("FNU")                   )
CARTER, WARDEN, FCI CUMBERLAND               )
                                             )
                 Respondent.                 )

---

## DECLARATION OF GERALD SAWYER

In accordance with the provisions of 28 U.S.C. § 1746, I, the undersigned Gerald Sawyer, do hereby make the following declaration pertinent to the above-styled cause of action:

1. I, Gerald Sawyer, am presently a Federal Bureau of Prisons ("BOP") Special Housing Unit Lieutenant ("SHU") at the Federal Transfer Center Oklahoma City (OKL) in Oklahoma City, Oklahoma.

2. As a SHU Lieutenant, I am responsible for the custody and control of designated inmates in the SHU and the safety, security, and orderly operations within the unit.

3. I am aware that Petitioner William White, Federal Register Number 13888-084, seeks First Step Act (FSA) Time Credits (Time Credits) for the time he spent in the Special Housing Unit (SHU) from July 21, 2022 to August 22, 2022.

4. OKL is a federal transfer center. Its mission is to process and temporarily house inmates who are in-transit facilities throughout the BOP.

5. Petitioner arrived at OKL on July 21, 2022. *See* Attachment A.

6. Upon his arrival, I was notified that Petitioner has several security threat group

1

J.A. 104

assignment.  Accordingly, per Oklahoma City's practice, Petitioner was not allowed to

reside in general population.  Therefore, Petitioner was placed in the SHU from July 21 –

July 25, the date in which he was transferred to another institution.

I declare under the penalty of perjury, the foregoing is true and correct, to the best of my knowledge, and that all attached documents are true and correct copies of the documents maintained by the BOP in the ordinary course of business.

Executed on this __21__ day of October 2022.

Gerald Sawyer
SHU Lieutenant
FTC Oklahoma City

2

J.A. 105

# **Attachment A** to the **Declaration of Gerald Sawyer**

```
MXRA4   530      *      INMATE HISTORY      *
PAGE 001          *           ADM-REL           *      12:45:09


 REG NO..: 13888-084 NAME....: WHITE, WILLIAM A
 CATEGORY: ARS      FUNCTION: PRT      FORMAT:


FCL    ASSIGNMENT DESCRIPTION                  START DATE/TIME STOP  DATE/TIME
CUM    A-DES      DESIGNATED, AT ASSIGNED FACIL 07-25-2022 1719 CURRENT
A02    RELEASE    RELEASED FROM IN-TRANSIT FACL 07-25-2022 1719 07-25-2022 1719
A02    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 07-25-2022 1000 07-25-2022 1719
OKL    HLD REMOVE HOLDOVER REMOVED              07-25-2022 0900 07-25-2022 0900
OKL    A-BOP HLD  HOLDOVER FOR INST TO INST TRF 07-21-2022 1620 07-25-2022 0900
A02    RELEASE    RELEASED FROM IN-TRANSIT FACL 07-21-2022 1720 07-21-2022 1720
A02    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 07-21-2022 1134 07-21-2022 1720
THA    TRANSFER   TRANSFER                      07-21-2022 1134 07-21-2022 1134
THA    A-DES      DESIGNATED, AT ASSIGNED FACIL 01-21-2022 1026 07-21-2022 1134
3-M    RELEASE    RELEASED FROM IN-TRANSIT FACL 01-21-2022 1026 01-21-2022 1026
3-M    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 01-21-2022 0723 01-21-2022 1026
MAR    TRANSFER   TRANSFER                      01-21-2022 0623 01-21-2022 0623
MAR    A-DES      DESIGNATED, AT ASSIGNED FACIL 03-25-2021 1454 01-21-2022 0623
MAR    LOCAL HOSP ESC TRIP TO LOCAL HOSP W/RETN 03-25-2021 0825 03-25-2021 1454
MAR    A-DES      DESIGNATED, AT ASSIGNED FACIL 06-17-2016 1410 03-25-2021 0825
A02    RELEASE    RELEASED FROM IN-TRANSIT FACL 06-17-2016 1510 06-17-2016 1510
A02    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 06-17-2016 1000 06-17-2016 1510
OKL    HLD REMOVE HOLDOVER REMOVED              06-17-2016 0900 06-17-2016 0900
OKL    A-HLD      HOLDOVER, TEMPORARILY HOUSED  06-06-2016 1425 06-17-2016 0900
A02    RELEASE    RELEASED FROM IN-TRANSIT FACL 06-06-2016 1525 06-06-2016 1525
A02    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 06-06-2016 0917 06-06-2016 1525
CCC    HLD REMOVE HOLDOVER REMOVED              06-06-2016 0817 06-06-2016 0817
CCC    A-HLD      HOLDOVER, TEMPORARILY HOUSED  10-19-2015 0819 06-06-2016 0817
0-S    RELEASE    RELEASED FROM IN-TRANSIT FACL 10-19-2015 0919 10-19-2015 0919
0-S    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 09-29-2015 1011 10-19-2015 0919
CCC    HLD REMOVE HOLDOVER REMOVED              09-29-2015 0911 09-29-2015 0911
CCC    A-HLD      HOLDOVER, TEMPORARILY HOUSED  06-08-2015 1725 09-29-2015 0911
3-M    RELEASE    RELEASED FROM IN-TRANSIT FACL 06-08-2015 1825 06-08-2015 1825
3-M    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 06-08-2015 0844 06-08-2015 1825
MAR    FED WRIT   RELEASE ON FEDERAL WRIT       06-08-2015 0744 06-17-2016 1410
MAR    A-DES      DESIGNATED, AT ASSIGNED FACIL 04-30-2015 1458 06-08-2015 0744
S38    RELEASE    RELEASED FROM IN-TRANSIT FACL 04-30-2015 1558 04-30-2015 1558
S38    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 04-30-2015 0522 04-30-2015 1558
OKL    HLD REMOVE HOLDOVER REMOVED              04-30-2015 0422 04-30-2015 0422
OKL    A-HLD      HOLDOVER, TEMPORARILY HOUSED  04-21-2015 1530 04-30-2015 0422
8-C    RELEASE    RELEASED FROM IN-TRANSIT FACL 04-21-2015 1630 04-21-2015 1630
8-C    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 03-03-2015 0730 04-21-2015 1630
CAA    HLD REMOVE HOLDOVER REMOVED              03-03-2015 0730 03-03-2015 0730
CAA    A-HLD      HOLDOVER, TEMPORARILY HOUSED  02-20-2015 1150 03-03-2015 0730
B24    RELEASE    RELEASED FROM IN-TRANSIT FACL 02-20-2015 1150 02-20-2015 1150
B24    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 02-20-2015 0745 02-20-2015 1150




G0002       MORE PAGES TO FOLLOW . . .
```

J.A. 107

```
MXRA4    530-25          INMATE HISTORY
PAGE 002        *              ADM-REL            *        12:45:09


  REG NO..: 13888-084 NAME....: WHITE, WILLIAM A
  CATEGORY: ARS        FUNCTION: PRT       FORMAT:


FCL   ASSIGNMENT DESCRIPTION                  START DATE/TIME STOP  DATE/TIME
LOR   FED WRIT   RELEASE ON FEDERAL WRIT      02-20-2015 0745 05-01-2015 0720
LOR   A-DES      DESIGNATED, AT ASSIGNED FACIL 01-09-2015 0645 02-20-2015 0745
B01   RELEASE    RELEASED FROM IN-TRANSIT FACL 01-09-2015 0645 01-09-2015 0645
B01   A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 01-09-2015 0127 01-09-2015 0645
CAA   TRANSFER   TRANSFER                      01-09-2015 0127 01-09-2015 0127
CAA   A-BOP HLD  HOLDOVER FOR INST TO INST TRF 12-29-2014 1820 01-09-2015 0127
A01   RELEASE    RELEASED FROM IN-TRANSIT FACL 12-29-2014 1820 12-29-2014 1820
A01   A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 12-29-2014 1014 12-29-2014 1820
OKL   HLD REMOVE HOLDOVER REMOVED             12-29-2014 0914 12-29-2014 0914
OKL   A-HLD      HOLDOVER, TEMPORARILY HOUSED  12-23-2014 1625 12-29-2014 0914
I-T   RELEASE    RELEASED FROM IN-TRANSIT FACL 12-23-2014 1725 12-23-2014 1725
I-T   A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 12-10-2014 0530 12-23-2014 1725
A01   RELEASE    RELEASED FROM IN-TRANSIT FACL 12-10-2014 0530 12-10-2014 0530
A01   A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 12-09-2014 1318 12-10-2014 0530
ATL   ADMIN REL  ADMINISTRATIVE RELEASE       12-09-2014 1318 12-09-2014 1318
ATL   A-ADMIN    ADMINISTRATIVE ADMISSION     12-09-2014 1250 12-09-2014 1318
P14   RELEASE 12 RELEASED FROM IN-TRANSIT, DEC 12-09-2014 1250 12-09-2014 1250
P14   A-ADMIT 09 ADMITTED TO IN-TRANSIT, SEP  09-11-2014 0530 12-09-2014 1250
I-T   RELEASE    RELEASED FROM IN-TRANSIT FACL 09-11-2014 0530 09-11-2014 0530
I-T   A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 05-14-2014 0530 09-11-2014 0530
A01   RELEASE    RELEASED FROM IN-TRANSIT FACL 05-14-2014 0530 05-14-2014 0530
A01   A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 05-13-2014 0900 05-14-2014 0530
OKL   HLD REMOVE HOLDOVER REMOVED             05-13-2014 0800 05-13-2014 0800
OKL   A-HLD      HOLDOVER, TEMPORARILY HOUSED  05-08-2014 1715 05-13-2014 0800
P13   RELEASE 05 RELEASED FROM IN-TRANSIT, MAY 05-08-2014 1815 05-08-2014 1815
P13   A-ADMIT 10 ADMITTED TO IN-TRANSIT, OCT  10-11-2013 0530 05-08-2014 1815
7-O   RELEASE    RELEASED FROM IN-TRANSIT FACL 10-11-2013 0530 10-11-2013 0530
7-O   A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 06-13-2013 1114 10-11-2013 0530
PEM   HLD REMOVE HOLDOVER REMOVED             06-13-2013 1114 06-13-2013 1114
PEM   A-HLD      HOLDOVER, TEMPORARILY HOUSED  06-12-2013 1324 06-13-2013 1114
B15   RELEASE    RELEASED FROM IN-TRANSIT FACL 06-12-2013 1324 06-12-2013 1324
B15   A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 06-12-2013 0722 06-12-2013 1324
PHL   HLD REMOVE HOLDOVER REMOVED             06-12-2013 0722 06-12-2013 0722
PHL   A-HLD      HOLDOVER, TEMPORARILY HOUSED  06-10-2013 1905 06-12-2013 0722
A01   RELEASE    RELEASED FROM IN-TRANSIT FACL 06-10-2013 1905 06-10-2013 1905
A01   A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 06-10-2013 0920 06-10-2013 1905
CAA   HLD REMOVE HOLDOVER REMOVED             06-10-2013 0920 06-10-2013 0920
CAA   A-BOP HLD  HOLDOVER FOR INST TO INST TRF 06-07-2013 1200 06-10-2013 0920
B24   RELEASE    RELEASED FROM IN-TRANSIT FACL 06-07-2013 1200 06-07-2013 1200
B24   A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 06-07-2013 0749 06-07-2013 1200
LOR   FED WRIT   RELEASE ON FEDERAL WRIT      06-07-2013 0749 01-09-2015 0645




G0002      MORE PAGES TO FOLLOW . . .
```

J.A. 108

```
MXRA4   530 *   INMATE HISTORY              *
PAGE 003        *              ADM-REL            *        12:45:09


 REG NO..: 13888-084 NAME....: WHITE, WILLIAM A
 CATEGORY: ARS      FUNCTION: PRT      FORMAT:


FCL    ASSIGNMENT DESCRIPTION                 START DATE/TIME STOP  DATE/TIME
LOR    A-DES      DESIGNATED, AT ASSIGNED FACIL 05-03-2013 0641 06-07-2013 0749
B01    RELEASE    RELEASED FROM IN-TRANSIT FACL 05-03-2013 0641 05-03-2013 0641
B01    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 05-03-2013 0146 05-03-2013 0641
CAA    HLD REMOVE HOLDOVER REMOVED             05-03-2013 0146 05-03-2013 0146
CAA    A-HLD      HOLDOVER, TEMPORARILY HOUSED  04-15-2013 1820 05-03-2013 0146
A01    RELEASE    RELEASED FROM IN-TRANSIT FACL 04-15-2013 1820 04-15-2013 1820
A01    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 04-15-2013 0900 04-15-2013 1820
OKL    HLD REMOVE HOLDOVER REMOVED             04-15-2013 0800 04-15-2013 0800
OKL    A-HLD      HOLDOVER, TEMPORARILY HOUSED  04-01-2013 1925 04-15-2013 0800
A01    RELEASE    RELEASED FROM IN-TRANSIT FACL 04-01-2013 2025 04-01-2013 2025
A01    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 04-01-2013 1219 04-01-2013 2025
CCC    HLD REMOVE HOLDOVER REMOVED             04-01-2013 1119 04-01-2013 1119
CCC    A-HLD      HOLDOVER, TEMPORARILY HOUSED  01-23-2013 1540 04-01-2013 1119
A02    RELEASE    RELEASED FROM IN-TRANSIT FACL 01-23-2013 1640 01-23-2013 1640
A02    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 01-23-2013 1119 01-23-2013 1640
MIL    HLD REMOVE HOLDOVER REMOVED             01-23-2013 1119 01-23-2013 1119
MIL    A-HLD      HOLDOVER, TEMPORARILY HOUSED  01-15-2013 1513 01-23-2013 1119
A02    RELEASE    RELEASED FROM IN-TRANSIT FACL 01-15-2013 1513 01-15-2013 1513
A02    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 01-15-2013 1255 01-15-2013 1513
MIL    HLD REMOVE HOLDOVER REMOVED             01-15-2013 1255 01-15-2013 1255
MIL    A-HLD      HOLDOVER, TEMPORARILY HOUSED  01-14-2013 1826 01-15-2013 1255
A02    RELEASE    RELEASED FROM IN-TRANSIT FACL 01-14-2013 1826 01-14-2013 1826
A02    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 01-14-2013 0945 01-14-2013 1826
OKL    HLD REMOVE HOLDOVER REMOVED             01-14-2013 0845 01-14-2013 0845
OKL    A-HLD      HOLDOVER, TEMPORARILY HOUSED  01-07-2013 1645 01-14-2013 0845
A01    RELEASE    RELEASED FROM IN-TRANSIT FACL 01-07-2013 1745 01-07-2013 1745
A01    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 01-07-2013 0815 01-07-2013 1745
CAA    HLD REMOVE HOLDOVER REMOVED             01-07-2013 0815 01-07-2013 0815
CAA    A-BOP HLD  HOLDOVER FOR INST TO INST TRF 12-21-2012 1145 01-07-2013 0815
B24    RELEASE    RELEASED FROM IN-TRANSIT FACL 12-21-2012 1145 12-21-2012 1145
B24    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 12-21-2012 0750 12-21-2012 1145
LOR    FED WRIT   RELEASE ON FEDERAL WRIT       12-21-2012 0750 05-03-2013 0641
LOR    A-DES      DESIGNATED, AT ASSIGNED FACIL 11-09-2012 0615 12-21-2012 0750
B01    RELEASE    RELEASED FROM IN-TRANSIT FACL 11-09-2012 0615 11-09-2012 0615
B01    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 11-09-2012 0217 11-09-2012 0615
CAA    HLD REMOVE HOLDOVER REMOVED             11-09-2012 0217 11-09-2012 0217
CAA    A-HLD      HOLDOVER, TEMPORARILY HOUSED  11-05-2012 1650 11-09-2012 0217
9-L    RELEASE    RELEASED FROM IN-TRANSIT FACL 11-05-2012 1650 11-05-2012 1650
9-L    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 09-27-2012 1711 11-05-2012 1650
DSC    ADMIN REL  ADMINISTRATIVE RELEASE        09-27-2012 1611 09-27-2012 1611
DSC    A-ADMIN    ADMINISTRATIVE ADMISSION      09-27-2012 1342 09-27-2012 1611




G0002       MORE PAGES TO FOLLOW . . .
```

J.A. 109

```
MXRA4   530        INMATE HISTORY                      05/19/2012
PAGE 004        *        ADM-REL        *       12:45:09


 REG NO..: 13888-084 NAME....: WHITE, WILLIAM A
 CATEGORY: ARS        FUNCTION: PRT        FORMAT:


FCL    ASSIGNMENT DESCRIPTION                 START DATE/TIME STOP  DATE/TIME
I-T    RELEASE    RELEASED FROM IN-TRANSIT FACL 09-27-2012 1442 09-27-2012 1442
I-T    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 08-03-2012 0530 09-27-2012 1442
A01    RELEASE    RELEASED FROM IN-TRANSIT FACL 08-03-2012 0530 08-03-2012 0530
A01    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 08-02-2012 0857 08-03-2012 0530
OKL    HLD REMOVE HOLDOVER REMOVED             08-02-2012 0757 08-02-2012 0757
OKL    A-HLD      HOLDOVER, TEMPORARILY HOUSED 07-24-2012 1700 08-02-2012 0757
MIM    PRE REMOVE PRE SENT DETAINEE REMOVED    07-24-2012 1131 07-24-2012 1700
MIM    A-PRE      PRE-SENT ADMIT, ADULT        06-09-2012 1851 07-24-2012 1131
CCC    UNCOMT RMV UNCOMMITTED CASE REMOVED     05-11-2011 1209 06-09-2012 1851
CCC    A-UNCOMMIT UNCOMMITTED PERSON           05-11-2011 1123 05-11-2011 1209
CCC    PRE REMOVE PRE SENT DETAINEE REMOVED    04-20-2011 0959 05-11-2011 1123
CCC    A-HLD      HOLDOVER, TEMPORARILY HOUSED 12-17-2010 1512 04-20-2011 0959
A01    RELEASE    RELEASED FROM IN-TRANSIT FACL 12-17-2010 1612 12-17-2010 1612
A01    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 12-17-2010 1015 12-17-2010 1612
OKL    HLD REMOVE HOLDOVER REMOVED             12-17-2010 0915 12-17-2010 0915
OKL    A-HLD      HOLDOVER, TEMPORARILY HOUSED 12-09-2010 1535 12-17-2010 0915
A01    RELEASE    RELEASED FROM IN-TRANSIT FACL 12-09-2010 1635 12-09-2010 1635
A01    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 12-09-2010 1154 12-09-2010 1635
BEC    FED WRIT   RELEASE ON FEDERAL WRIT      12-09-2010 1154 01-18-2011 0915
BEC    A-DES      DESIGNATED, AT ASSIGNED FACIL 09-01-2010 1541 12-09-2010 1154
I-T    RELEASE    RELEASED FROM IN-TRANSIT FACL 09-01-2010 1541 09-01-2010 1541
I-T    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 08-19-2010 0530 09-01-2010 1541
A01    RELEASE    RELEASED FROM IN-TRANSIT FACL 08-19-2010 0530 08-19-2010 0530
A01    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 08-18-2010 1148 08-19-2010 0530
BEC    FED WRIT   RELEASE ON FEDERAL WRIT      08-18-2010 1148 09-01-2010 1541
BEC    A-DES      DESIGNATED, AT ASSIGNED FACIL 04-28-2010 1649 08-18-2010 1148
9-L    RELEASE    RELEASED FROM IN-TRANSIT FACL 04-28-2010 1649 04-28-2010 1649
9-L    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 04-23-2010 1245 04-28-2010 1649
DSC    ADMIN REL  ADMINISTRATIVE RELEASE       04-23-2010 1145 04-23-2010 1145
DSC    A-ADMIN    ADMINISTRATIVE ADMISSION     04-23-2010 1122 04-23-2010 1145
P09    RELEASE 04 RELEASED FROM IN-TRANSIT, APR 04-23-2010 1222 04-23-2010 1222
P09    A-ADMIT 12 ADMITTED TO IN-TRANSIT, DEC  12-26-2009 0530 04-23-2010 1222
I-T    RELEASE    RELEASED FROM IN-TRANSIT FACL 12-26-2009 0530 12-26-2009 0530
I-T    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 08-28-2009 0530 12-26-2009 0530
A01    RELEASE    RELEASED FROM IN-TRANSIT FACL 08-28-2009 0530 08-28-2009 0530
A01    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 08-27-2009 1115 08-28-2009 0530
OKL    HLD REMOVE HOLDOVER REMOVED             08-27-2009 1015 08-27-2009 1015
OKL    A-HLD      HOLDOVER, TEMPORARILY HOUSED 08-14-2009 1815 08-27-2009 1015
CCC    PRE REMOVE PRE SENT DETAINEE REMOVED    08-11-2009 0957 08-14-2009 1815
CCC    A-PRE      PRE-SENT ADMIT, ADULT        11-07-2008 2019 08-11-2009 0957
A01    RELEASE    RELEASED FROM IN-TRANSIT FACL 11-07-2008 2119 11-07-2008 2119



G0002      MORE PAGES TO FOLLOW . . .
```

J.A. 110

```
MXRA4   530    *        INMATE HISTORY              *     10-29-2010
PAGE 005 OF 005 *            ADM-REL               *     12:45:09

 REG NO..: 13888-084 NAME....: WHITE, WILLIAM A
 CATEGORY: ARS       FUNCTION: PRT       FORMAT:

FCL    ASSIGNMENT DESCRIPTION                  START DATE/TIME STOP  DATE/TIME
A01    A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 11-07-2008 0950 11-07-2008 2119
OKL    HLD REMOVE HOLDOVER REMOVED               11-07-2008 0850 11-07-2008 0850
OKL    A-HLD      HOLDOVER, TEMPORARILY HOUSED   10-30-2008 1716 11-07-2008 0850




G0000        TRANSACTION SUCCESSFULLY COMPLETED
```

J.A. 111

# EXHIBIT 4

# FSA Time Credits

### SCHEDULE OF FEES FOR CONSULAR SERVICES

| Item No. | Fee |
|---|---|
| *    *    *    *    *    *    * | |
| 32. * * * | |
| (e) Certain adoptee applicants for replacement Immigrant Visas as described in 22 CFR 42.71(b)(2) ................................... | No Fee. |
| (f) Certain immigrant visa applicants previously refused pursuant to Proclamation 9645 or Proclamation 9983, as described in 22 CFR 42.71(b)(3) .................................................................................................................................................... | No Fee. |
| *    *    *    *    *    *    * | |
| 34. * * * | |
| (a) Certain immigrant visa applicants previously refused solely pursuant to Proclamation 9645 or Proclamation 9983, as described in 22 CFR 42.71(b)(3) ............................................................................................................................. | No Fee. |
| *    *    *    *    *    *    * | |

## PART 42—VISAS: DOCUMENTATION OF IMMIGRANTS UNDER THE IMMIGRATION AND NATIONALITY ACT, AS AMENDED

■ 3. The authority citation for part 42 continues to read as follows:

**Authority:** 8 U.S.C. 1104 and 1182; Pub. L. 105–277, 112 Stat. 2681; Pub. L. 108–449, 118 Stat. 3469; The Convention on Protection of Children and Co-operation in Respect of Intercountry Adoption (done at the Hague, May 29, 1993), S. Treaty Doc. 105–51 (1998), 1870 U.N.T.S. 167 (Reg. No. 31922 (1993)); 42 U.S.C. 14901–14954 (Pub. L. 106–279, 114 Stat. 825); 8 U.S.C. 1101 (Pub. L. 111–287, 124 Stat. 3058); 8 U.S.C. 1154 (Pub. L. 109–162, 119 Stat. 2960); 8 U.S.C. 1201 (Pub. L. 114–70, 129 Stat. 561).

■ 4. Section 42.71 is amended by revising paragraph (b) to read as follows:

### § 42.71 Authority to issue visas; visa fees.

\*    \*    \*    \*    \*

(b) *Immigrant visa fees*—(1) *Payment of fees.* The Secretary of State prescribes a fee for the processing of immigrant visa applications. Except as provided in paragraphs (b)(2) and (3) of this section, an individual registered for immigrant visa processing at a post designated for this purpose by the Deputy Assistant Secretary for Visa Services must pay the fee upon being notified that a visa is expected to become available in the near future, and upon being requested to obtain the supporting documentation needed to apply formally for a visa, in accordance with instructions received with such notification. The fee must be paid before an applicant at a post so designated will receive an appointment to appear and make application before a consular officer. Applicants at a post not yet so designated will pay the fee immediately prior to formal application for a visa. A fee collected for the processing of an immigrant visa application is refundable only if the principal officer of a post or the officer in charge of a consular section

determines that the application was not adjudicated as a result of action by the U.S. Government over which the alien had no control and for which the alien was not responsible, which precluded the applicant from benefitting from the processing, or as provided in paragraph (b)(2) of this section.

(2) *Waiver or refund of fees for replacement immigrant visas for adoptees.* The consular officer shall waive the application processing fee for a replacement immigrant visa or, upon request, refund such a fee where already paid, if the consular officer is satisfied that the alien, the alien's parent(s), or the alien's representative has established that:

(i) The prior immigrant visa was issued on or after March 27, 2013, to an alien who has been lawfully adopted, or who is coming to the United States to be adopted, by a United States citizen;

(ii) The alien was unable to use the original immigrant visa during the period of its validity as a direct result of extraordinary circumstances, including the denial of an exit permit; and

(iii) The inability to use the visa was attributable to factors beyond the control of the adopting parent or parents and of the alien.

(3) *Exemption from fees for immigrant visa applicants previously refused solely pursuant to Proclamation 9645 or Proclamation 9983.* An immigrant visa applicant shall be exempt from the application processing fee and the affidavit of support review fee, if the applicant was previously denied an immigrant visa on or between December 8, 2017, and January 19, 2020; the sole ground of ineligibility was based on Proclamation 9645 or 9983; and the applicant is applying again for an immigrant visa. This paragraph (b)(3) provides only for a one-time exemption of the applicable fees per applicant.

■ 5. Section 42.74 is amended by revising paragraph (a) to read as follows:

### § 42.74 Issuance of new, replacement, or duplicate visas.

(a) *New immigrant visa for a special immigrant under INA 101(a)(27)(A) and (B).* The consular officer may issue a new immigrant visa to a qualified alien entitled to status under INA 101(a)(27)(A) or (B), provided that:

(1) The alien establishes that the original visa has been lost, mutilated, or has expired; or that the alien will be unable to use it during the period of its validity; and

(2) The alien pays anew the application processing fees prescribed in the Schedule of Fees (22 CFR 22.1); and

(3) The consular officer ascertains whether the original issuing office knows of any reason why a new visa should not be issued.

\*    \*    \*    \*    \*

**Kevin E. Bryant,**
*Deputy Director, Office of Directives Management, U.S. Department of State.*
[FR Doc. 2022–00829 Filed 1–18–22; 8:45 am]
**BILLING CODE 4710–06–P**

## DEPARTMENT OF JUSTICE

**Bureau of Prisons**

**28 CFR Parts 523 and 541**

**[BOP–1176P]**

**RIN 1120–AB76**

**FSA Time Credits**

**AGENCY:** Bureau of Prisons, Justice.
**ACTION:** Final rule.

**SUMMARY:** This rule codifies the Bureau of Prisons' (Bureau or BOP) procedures regarding the earning and application of time credits as authorized by the First Step Act of 2018 (FSA), hereinafter referred to as ''FSA Time Credits'' or ''Time Credits.'' The FSA provides that

eligible inmates earn FSA Time Credits toward prerelease custody or early transfer to supervised release for successfully completing approved Evidence-Based Recidivism Reduction (EBRR) Programs or Productive Activities (PAs) assigned to each inmate based on the inmate's risk and needs assessment. Inmates eligible to apply Time Credits under the FSA include individuals sentenced under the U.S. Code. As required by the FSA, an inmate cannot earn FSA Time Credits if that inmate is serving a sentence for a disqualifying offense or has a disqualifying prior conviction. However, such inmates may still earn other benefits for successfully completing recidivism reduction programming, such as increased privileges (commissary, visiting, and telephone) for participation in EBRR Programs or PAs, as authorized by the Bureau.

**DATES:** This rule is effective on January 19, 2022.

**FOR FURTHER INFORMATION CONTACT:** Sarah Qureshi, Office of General Counsel, Bureau of Prisons, phone (202) 353–8248.

**SUPPLEMENTARY INFORMATION:** This rule codifies the Bureau of Prisons' (Bureau) procedures regarding First Step Act (FSA) Time Credits, as authorized by 18 U.S.C. 3632(d)(4) and Section 101 of the First Step Act of 2018 (Pub. L. 115–391, December 21, 2018, 132 Stat 5194) (FSA). The FSA provides that an eligible inmate in Bureau custody who successfully participates in EBRR Programs or PAs recommended based on the inmate's risk and needs assessment will earn FSA Time Credits, to be applied toward prerelease custody (*i.e.,* transfer to a Residential Reentry Center (RRC) or home confinement for service of a portion of the inmate's sentence) or transfer to supervised release (*i.e.,* early satisfaction of the inmate's term of imprisonment) under 18 U.S.C. 3624(g).

The proposed rule on this subject was published on November 25, 2020 (85 FR 75268). The public comment period ended on January 25, 2021. The Bureau received over two hundred and fifty responses to the publication of the proposed rule, but cannot generate a definite number of comments, as a significant portion of responses were from inmates in Bureau facilities and their family members requesting that FSA Time Credits be applied to the terms of imprisonment of particular inmates, rather than specific comments or questions regarding the proposed regulations as published.

Staff at Bureau facilities have been instructed to address specific questions regarding application of FSA Time Credits to particular inmates with those individual inmates, and we encourage those with questions regarding particular inmates to address those questions to staff at facilities where those inmates are housed, or to the regional offices with oversight for those facilities. A list of Bureau of Prisons Regional Offices can be found on the Bureau website: *https://www.bop.gov/ about/facilities/offices.jsp?o=4.*

The Bureau also received a large number of comments on the proposed regulations which repeated certain common themes and issues. We have therefore consolidated the issues raised into representative excerpts from selected commenters, and address these issues below.

Additionally, on October 18, 2021, the Bureau published a document reopening the comment period of the proposed rulemaking until November 17, 2021, to solicit public comment on the limited issue of whether DC Code offenders in Bureau of Prisons custody are eligible to apply Time Credits under 18 U.S.C. 3632(d)(4), as added by FSA. 86 FR 57612. We received thirty submissions during the reopened comment period with regard to that issue, which we discuss further below.

*COMMENT: The Bureau's definition of a "day" as one eight-hour-period of a successfully completed EBRR Program or PA is incorrect, unworkable, and/or contrary to congressional intent.*

The FSA provides that "[a] prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." 18 U.S.C. 3632(d)(4)(A)(i). An inmate determined to be at a "minimum or low risk for recidivating" who, "over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." 18 U.S.C. 3632(d)(4)(A)(ii). The statute does not expressly define what constitutes a "day" of successful participation. In the proposed rule, the Bureau defined it as "one eight-hour period of participation in an EBRR Program or PA that an eligible inmate successfully completes."

More than 150 commenters raised concerns with the Bureau's definition. For example, Senator Sheldon Whitehouse (D–RI) and Senator John Cornyn (R–TX) commented as follows:

The proposed rule's definition of a "day" of program participation does not adequately

reward engagement with [EBBR programs] and PAs consistent with the First Step Act. . . . Because BOP programs do not run for eight hours per day, the proposed rule would require individuals to attend an EBRR or PA for several calendar days before they earned a full "day" of time credit. . . It was not our intent as drafters of the legislation that BOP define a "day" in this way. Nor did Congress ever consider it. . . . The proposed rule's narrow definition of a "day" does not adequately incentivize program participation and reduce recidivism as intended by the First Step Act.

Congressman Hakeem Jeffries (D–NY) echoed the Senators' sentiments, stating:

[D]efining a day as eight hours of participation does not appear to be a good faith attempt to honor congressional intent. A day of successful participation is clearly a day on which a prisoner has successfully participated in a program or productive activity. BOP['s] definition of [a] day would dramatically reduce the amount of time credits an individual can earn.

*RESPONSE:* After carefully considering the comments received, the Bureau agrees that a change is warranted. The proposed definition of a day of successful participation was inconsistent with the goals of the FSA and would have been logistically burdensome to calculate and administer. The Bureau is thus adopting a simpler FSA Time Credits program award model that will more fully encourage and reward participation in evidence-based recidivism reduction programs and productive activities.

In enacting the FSA, Congress made clear that Time Credits should be broadly applicable to a wide range of inmates for a broad range of activities to maximize their opportunities to reduce recidivism. The proposed definition, however, would have meant that inmates could successfully do everything asked of them as part of their recommended programming for multiple days (*e.g.,* two hours each day for four days), but be credited for only one day of successful participation.

In addition, the proposed definition would have required Bureau staff to not only track inmate participation in recommended programming, but also break down participation time into individual hours of work, and then aggregate time spent completing certain programming with other time spent completing other programming. This approach would have varied the earning of Time Credits by program factors such as intensity, length, and duration that could have been confusing to inmates, burdensome for staff to administer, and inconsistent with the general goal of awarding Time Credits in a consistent manner to inmates who are participating in the full range of programming

recommended to them based on the results of their risk and needs assessments.

The final rule adopts a more straightforward and more administratively manageable approach that is consistent with the FSA's goal of promoting successful participation in EBRR Programs and PAs. For every thirty-day period that an eligible inmate successfully participates in EBRR Programs or PAs recommended based on the inmate's risk and needs assessment, the inmate will earn ten days of FSA Time Credits. If the inmate is determined to be at a minimum or low risk for recidivating and can maintain that risk level for the most recent two consecutive risk and needs assessments, that inmate may earn an additional five days of FSA Time Credits per thirty-day period.

An eligible inmate must successfully participate in programs and activities that the Bureau recommends based on an individualized risk and needs assessment to earn Time Credits. An inmate will not be considered to be successfully participating if that inmate refuses to participate in or otherwise violates conditions, rules, or requirements of EBRR programs or PAs recommended based on the inmate's risk and needs assessment. However, temporary interruptions in participation that are unrelated to an inmate's refusal to participate or other violation of programming requirements, or that are authorized by the Bureau, such when a recommended program or activity is unavailable or at full enrollment, will not affect the inmate's ability to earn Time Credits.

If an eligible inmate refuses to participate in the recommended program or activity, engages in misconduct that results in removal from the program or activity through placement in restrictive housing, or disrupts or fails to follow the conditions, parameters, or rules of the program or activity, accrual of Time Credits is paused until the inmate complies with programming or completes the disciplinary sanction. This methodology is intended to guide inmates back to the appropriate pro-social goals of programming and act as a deterrent for future misconduct, giving inmates a direct incentive to maintain clear conduct (behavior clear of inmate disciplinary infractions under 28 CFR part 541).

By clarifying the method for awarding Time Credits in this manner to ensure it furthers Congressional intent of the statute, the Bureau hopes to increase the amount of FSA Time Credits that may be awarded to eligible inmates.

*COMMENT: FSA Time Credits should be earned for programs successfully completed on or after December 21, 2018, the date of the enactment of the First Step Act, instead of January 15, 2020, as indicated in the proposed rule.*

More than 150 commenters raised this issue, including Senator Sheldon Whitehouse (D–RI) and Senator John Cornyn (R–TX), who wrote:

The Act provides that "[a] prisoner may not earn time credits under this paragraph for an evidence-based recidivism reduction program that the prisoner successfully completed . . . prior to the date of enactment of this subchapter." 18 U.S.C. 3632(d)(4)(B). . . . The proposed rule, however, states that an individual may only earn time credits for programs "successfully completed on or after January 15, 2020"— more than a year after the date of enactment. Nor does the proposed rule explain why individuals are not eligible to earn time credits for programs completed between December 21, 2018 and January 15, 2020.

Congressman Hakeem Jeffries (D–NY) also commented on this issue, opining that the regulation's proposed start date for earning time credits of January 15, 2020, "serves no clear purpose and is inconsistent with the text of the First Step Act, which states that credit may not be earned for programs completed prior to the date of enactment of this subchapter, which was December 21, 2018."

*RESPONSE:* As the commenters correctly note, the FSA explicitly states that Time Credits may not be earned for participation in programming prior to the date of the FSA's enactment. The statute is silent, however, as to the specific date on which inmates should begin to earn Time Credits. Instead, the statute expressly contemplates a phased-in approach and sets specific timelines and benchmarks for implementation.[1] This phased-in approach is appropriate and warranted, given that the FSA has been the most impactful congressional action taken concerning the Bureau of Prisons in recent years, requiring major changes to existing systems and processes, the development of new systems, and

changes that apply to approximately 130,000 current inmates.

Under this phased-in approach, the Attorney General was required to develop and release the risk and needs assessment system within 210 days from the date the FSA was signed into law, December 21, 2018. The new risk and needs assessment tool, called the Prisoner Assessment Tool Targeting Estimated Risk and Needs (PATTERN), was subsequently released on July 19, 2019, in accordance with the FSA. Additional modifications of PATTERN occurred after feedback was received from external stakeholders and the FSA-established Independent Review Committee.

The FSA required that as part of the implementation period, within 180 days of the risk and needs assessment system's release date, the Bureau would conduct initial risk and needs assessments for the inmate population and begin expanding the EBRR Programs and PAs necessary to effectively implement the system.[2] The Bureau assigned an initial PATTERN risk level to each inmate by the statutory deadline of January 15, 2020. And, notably, the Bureau implemented the FSA's directive at 18 U.S.C. 3621(h)(2)(A), to assign inmates to EBRR Programs or PAs by January 15, 2022 (two years after the date by which the agency completed risk and needs assessments for all inmates) well before that date.

Because the FSA contemplates a phase-in period during which the risk and needs assessment system could be developed, and because the FSA is silent regarding a specific date when eligible inmates must begin earning Time Credits, the Bureau exercised its discretion and adopted the position in the proposed rule that it would be reasonable for the Bureau to begin allowing inmates eligible under the FSA to earn FSA Time Credits *after* the risk and needs assessment and relevant programming were established, *i.e.,* on January 15, 2020, the date on which initial evaluations under the new risk and needs assessment system were completed. However, in light of the comments submitted, the Bureau acknowledges that because the FSA is silent regarding a specific date when eligible inmates must begin earning Time Credits, yet explicitly prohibits the earning of Time Credits for participation prior to the date of enactment, the statute could also be interpreted to allow for eligible inmates to earn Time Credits as of December 21, 2018, the date of enactment of the FSA.

---

[1] *See* 18 U.S.C. 3621(h)(1)(C), referring to the "risk and needs assessment tools necessary to effectively implement the System over time," and sec. 3621(h)(2)(A), requiring that EBRR Programs and PAs be provided "before the date that is 2 years after the date on which the Bureau of Prisons completes a risk and needs assessment for each prisoner. . . ." The Bureau completed risk and needs assessments for every inmate in Bureau custody on January 15, 2020, and, therefore, as indicated by the FSA, had until January 15, 2022, to ensure that EBRR Programs and PAs are provided to eligible inmates in Bureau custody. The Bureau was already providing those programs and activities to eligible inmates well in advance of that date.

[2] *See* 18 U.S.C. 3621(h)(1).

The case law on this issue is mixed, but some courts have concluded that this reading is in fact the better one. With regard to participation in programming completed after the date of the FSA's enactment, but before completion of all inmate risk and needs assessments on January 15, 2020, some courts have held that eligible inmates should be awarded FSA Time Credits in addition to the pre-FSA incentives already offered by the Bureau. Courts in the Districts of New Jersey and Oregon have directed the Bureau to award Time Credits under the FSA for the successful completion of programs and activities occurring before January 15, 2020, but on or after December 21, 2018, the FSA's date of enactment. *See, e.g., Cazares* v. *Hendrix,* 20–cv–2019 (D. Or. Nov. 9, 2021); *Goodman* v. *Ortiz,* 2020 WL 5015613, at *6 (D.N.J., Aug. 25, 2020) (holding inmates are currently entitled to FSA Time Credits that have been properly earned); *Hare* v. *Ortiz,* 2021 WL 391280, at *7 (D.N.J. Feb. 4, 2021) (limiting award of Time Credits to those earned for programs completed on or after the date of enactment of the FSA); *Gallo* v. *Ortiz,* Civ. No. 20–16416 (D.N.J., filed Feb. 16, 2021) (District Court required the Bureau to calculate Time Credits based on 2018 date).[3] Awarding Time Credits as of the date of enactment may also be more consistent with the FSA's goals of reducing recidivism through participation in programming and activities, and allowing inmates to work towards early release. From a fairness perspective, the Bureau also acknowledges that an inmate who has been consistently participating in programming, such as working to obtain his or her GED while the FSA was in effect, between December 21, 2018 (the date of the

enactment of the FSA), and January 15, 2020 (the date risk and needs assessments were completed on all Bureau inmates), should be rewarded for that effort.

While the Bureau continues to consider the FSA amenable to the interpretation reflected in the proposed rule, it acknowledges that the statute is ambiguous, and in light of the FSA's purposes and fairness considerations, it exercises its discretion to adopt the reading urged by the majority of commenters. Therefore, the Bureau amends this final rule to allow inmates eligible under the First Step Act to receive retroactive Time Credits for programming and activities they participated in starting on December 21, 2018, the date of the FSA's enactment. In determining how to award FSA Time Credits during the period before all individualized risk and needs assessments had been completed, the Bureau faces administrative challenges. Consistent with the phased-in approach contemplated by the FSA, the Bureau did not have mechanisms in place to methodically track participation in EBRRs and PAs until January 15, 2020, because comprehensive uniform tracking codes did not exist. In addition, it was not until that date that the Bureau had completed individualized risk and needs assessments for every inmate— and thus had a basis to conclude that there was an evidence-based reason to assign a particular program to, or recommend particular activities for, an inmate in order to reduce a particular inmate's risk of recidivism. Thus, in many instances, inmates were participating in programs for reasons other than addressing a criminogenic need.

Due to these administrative difficulties, for inmates participating in programming after the date of the FSA's enactment, but before the date that Bureau had completed all risk and needs assessments (December 18, 2018, to January 14, 2020), it is not feasible for the Bureau to connect individual inmate participation in programming to individualized risk and needs assessments, since the risk and needs assessment tool did not exist until well after the date of the FSA's enactment. Instead, for inmate participation in programming during this period of time, the Bureau will exercise its discretion to award FSA Time Credits to inmates otherwise deemed eligible under the First Step Act by applying the same criteria as that applied to inmate participation in authorized EBRR programs or PAs recommended based on a risk and needs assessment after January 2020 to determine the inmate's

retroactive Time Credit balance. Eligible inmates will be afforded a presumption of participation for the period between December 21, 2018, and January 14, 2020 and be awarded Time Credits accordingly. Inmates will not receive credit for any period in which they were in a special housing unit, in a designation status outside the institution, temporarily transferred to the custody of another Federal or non-Federal government agency, in mental health/psychiatric holds (either court-ordered mental health/psychiatric evaluations or situations in which mental health or psychiatric evaluation or treatment require an inmate to be designated outside or away from the inmate's ''home'' facility within the Bureau), or for refusing mandatory programming, as further explained below.

*COMMENT:* There are no safeguards in the risk and needs assessment system to prevent racial discrimination or racial disparities.

Several commenters were concerned about the potential for racial and ethnic biases or disparities in the risk and needs assessment tool used by the Bureau of Prisons.

*RESPONSE:* The Department of Justice issued the Risk and Needs Assessment System (RNAS) mandated by the First Step Act, known as PATTERN, on July 19, 2019. *See The First Step Act of 2018: Risk and Needs Assessment,* U.S. DEP'T OF JUSTICE: OFFICE OF THE ATTORNEY GENERAL, *https://www.bop.gov/ inmates/fsa/docs/the-first-step-act-of-2018-risk-and-needs-assessment-system.pdf* (July 2019). The Department's release of PATTERN was followed by a comment period during which the Department received approximately 200 comments and statements and held two listening sessions. On November 19, 2019, the Attorney General met with the Independent Review Committee (IRC) created by Section 107 of the FSA to discuss proposed changes to PATTERN, as required by 18 U.S.C. 3632.

The Attorney General then announced enhancements to PATTERN in a document entitled *The First Step Act of 2018: Risk and Needs Assessment System—UPDATE, https:// www.bop.gov/inmates/fsa/docs/the-first-step-act-of-2018-risk-and-needs-assessment-system-updated.pdf* (January 2020) (2020 Update). In this 2020 Update, and in response to concerns arising from potential racial disparities, the Department instituted several recommended changes to the tool. Later, in 2021, the Department also implemented a more standardized

---

[3] Most courts that have analyzed this issue, however, have found it reasonable for the Bureau to begin awarding Time Credits for successful completion on or after January 15, 2020, as opposed to holding that inmates are entitled to FSA Time Credits for successful completion of EBRR Programs and PAs occurring before that date but on or after December 21, 2018. *See, e.g., Cohen* v. *United States,* No. 20–cv–10833, 2021 WL 1549917, at *6 (S.D.N.Y. Apr. 20, 2021) (''[T]he statute does not require the BOP to begin awarding ETCs [earned time credits] during the phase-in period.''); *Kennedy-Robey* v. *Warden, FCI Pekin,* No. 20–cv–1371 (C.D. Ill. Mar. 2, 2021) (ECF No. 14) (''Not only is the BOP's decision to delay awarding credits permitted under the statute, the BOP has legitimate reasons for desiring to do so.''); *Llewlyn* v. *Johns,* No. 5:20-cv-77, 2021 WL 535863 (S.D. Ga. Jan. 5, 2021); *Herring* v. *Joseph,* No. 4:20–CV–249, 2020 WL 3642706, at *1 (N.D. Fla. July 6, 2020); *Holt* v. *Warden,* 4:20–CV–04064–RAL, (D.S.D. May. 13, 2021; *Fleming* v. *Joseph,* No. 3:20CV5.990–LC–HTC, 2021 WL I66936I (N.D. Fla. Apr. 7, 2021) (report and recommendation). *See also Bowling* v. *Hudgins,* 2020 WL 1917490 (N.D. Va. Apr. 20, 2020); *Allen* v. *Hendrix,* 2020 WL 890396 (E.D. Ark. Feb. 24, 2020).

process for inputting scores into the risk and needs system, and the Bureau will continue to ensure that necessary precautions are taken to ensure consistent, objective application for all inmates in accordance with the published schema.

The *2021 Annual Review and Revalidation of the First Step Act Risk Assessment Tool* report confirmed the predictive and dynamic validity of PATTERN, but expressed the concern that differences in race and ethnicity might affect predictions of risk for recidivism. The Justice Department takes seriously its responsibility under the First Step Act to annually ''review, validate, and release publicly on the Department of Justice website the risk and needs assessment system,'' and ''. . . to identify any unwarranted disparities, including disparities among similarly classified prisoners of different demographic groups . . .'' 18 U.S.C. 3631(b)(4)(E). The Department will continue to meet this mandate, to rigorously evaluate any risk assessment tool, including through the use of outside experts, and to take all steps possible to address and mitigate against racial bias or other disparities.

As part of that compliance, the Department will publish annually (1) for each disqualifying offense, data on how many individuals from each racial and/or ethnic group were ineligible to earn Time Credits; (2) for each disqualifying prior federal conviction, data on how many individuals from each racial and/or ethnic group were ineligible to earn Time Credits; (3) for all other disqualifying prior convictions, data on how many individuals from each racial and/or ethnic group were ineligible to earn Time Credits; (4) data on how many individuals from each racial and/or ethnic group were eligible to earn Time Credits; and (5) how many individuals from each racial and/or ethnic received risk and needs assessment score classifications of ''high,'' ''medium,'' ''low,'' and ''minimum'' based on their most recent assessment.

*COMMENT: The Bureau does not have the resources to implement the FSA Time Credits program appropriately.*

Several commenters were concerned about the Bureau's ability to implement the FSA Time Credits program. One commenter, for example, stated that ''the average course that is offered by BOP is not listed on the list for reentry courses, some of which are college/correspondence courses that inmates have to pay for out of pocket. As for the courses that are listed, they are not even offered at this time because inmates are

the teachers of them, and COVID does not allow inmates to teach them at this time. Many inmates are returning home now, not having had any reentry courses—not to their own fault.'' Other commenters mentioned long waitlists and other scarcity of resource issues.

*RESPONSE:* The Bureau recognizes the significant impact that the FSA will have on inmate programming, and notes that additional appropriated funding has been directed toward FSA implementation. These additional resources will be used to add to existing programs and meet the FSA's direction that the Bureau encourage and increase inmate programming participation.

Before the enactment of the FSA, the Bureau already offered a wide variety of programs and activities designed to prepare inmates for release, educate them, and provide them with substance abuse disorder and mental health treatment. The Bureau has always endeavored to focus on increasing the breadth and depth of its programming for inmates and build greater capacity for inmate participation in programming, and the FSA provides further statutory support for that mission. To that end, the Bureau has asked, and will continue to ask, Congress to authorize funding and staffing for those purposes, and will endeavor to fill staff positions as necessary to increase and enhance inmate programming.

In *The First Step Act of 2018: Risk and Needs Assessment System— UPDATE,* U.S. DEP'T OF JUSTICE: OFFICE OF THE ATTORNEY GENERAL, *https://www.bop.gov/ inmates/fsa/docs/the-first-step-act-of-2018-risk-and-needs-assessment-system-updated.pdf* (January 2020) (2020 Update), the Department indicated that it had received feedback expressing concerns about the Bureau's programming capacity. *Id.* at 18. The issue raised by this feedback to the Department is substantially similar to concerns raised by the commenters on the Bureau's proposed rule.

In response to the feedback discussed in this 2020 Update, the Department described the waitlist process for inmate programming, indicating that that process is meant to ensure that inmates are ''enrolled in needed courses at the appropriate times in their incarceration,'' and that ''case management and programming staff monitor these lists based on inmate need and release date/plans, to ensure relevant programs are completed in appropriate timeframes.'' *Id.* The Department also described the ongoing expansion of Federal Prison Industries and the Resolve Program (providing

trauma treatment). However, the Department also noted:

As part of the FSA implementation, the BOP is assigning codes to approved evidence-based recidivism reduction programs and productive activities to enable tracking and monitoring of their capacity and use. BOP will also begin assigning inmates to specific programs to address identified needs, which will allow it to further examine inmate interest and program capacity. Based upon these changes, BOP can expand or contract capacity consistent with the inmate needs and interests.

*Id.* The Department also noted in the 2020 Update that the Bureau had ''already begun expanding programs and hiring staff to deliver'' further necessary programming, and that although the FSA, issued in 2018, had ''not come with appropriated funds in [fiscal year] FY 2019 . . . BOP had taken the initiative to adjust funding within its budget to cover a variety of targeted FSA activities.'' Further, for FY 2020, approximately $116 million was authorized to allow the Bureau to expand evidence-based reentry programs, capacity for prerelease custody, medication-assisted treatment (MAT) for opioid use disorder nationwide, information technology services for inmates, and evaluation of programs and services. *Id.* at 21–22.

Additionally, in the 2020 Update, the Department noted that to facilitate implementation of the FSA, the Bureau had increased staffing at female institutions and enhanced male and female trauma treatment and vocational training offerings. The Bureau also implemented a variety of hiring strategies to address staffing shortfalls, and continues to do so. *Id.* at 24. Therefore, while the Bureau recognizes that resources have been strained, future funding allotments will enhance the Bureau's course offerings and serve to bolster the Bureau's resources, improving its ability to carry out the FSA Time Credits program across all Bureau facilities.

*COMMENT: FSA Time Credits should be awarded for participation in UNICOR, online or correspondence college courses, religious services, more time for RDAP, and other programs and activities.*

Several commenters suggested that the list of EBRR Programs and PAs should be expanded to include participation in, or a greater amount of Time Credits allowable for participation in, UNICOR and prison jobs, online or correspondence courses (including college courses), religious services, the Residential Drug Abuse Treatment Program (RDAP), and a variety of other programs, courses, and activities.

For instance, one commenter indicated that while the requirement to successfully complete a program before earning Time Credits ''may make sense for educational classes, certificate-based programs, or fixed length productive activities, it should not apply to prison jobs that would require ongoing accumulation of Time Credits. A prison job is not a 'program to complete,' has no set duration, and its success is based on continued employment and supervisor evaluations.''

Another commenter suggested that those ''participating in the Residential Drug[] Abuse Program (RDAP), should receive (16) program hours per day, 2 eight-hour program days for 1 proposed day, . . . [because] RDAP participants 'live' in a therapeutic community.''

Additionally, Senator Sheldon Whitehouse (D–RI) and Senator John Cornyn (R–TX) commented as follows:

As BOP finalizes and implements its proposed rule, it should ensure that individuals are assigned to categories of programs that meet their needs, rather than specific programs, to allow for maximum participation in credit-earning EBRRs and PAs. . . . Each program at a facility should be appropriately categorized, including faith-based programs. Such flexibility will ensure that individuals can freely choose to participate or not participate in faith-based options. It is also critical to allow for greater program access as BOP expands its offerings, as some programs have limited capacity or may not be offered at particular facilities.

*RESPONSE:* The Bureau agrees with these commenters, and has structured its programs and work assignments to promote participation and flexibility. New funding allotments will enhance the Bureau's course offerings, largely by permitting it to increase capacity through hiring additional staff, and will also serve to bolster the Bureau's resources, thereby improving its ability to carry out the FSA Time Credits program. The Bureau began to enhance programming immediately after the FSA's enactment, using then-current appropriations from FY 2019 not allotted specifically for FSA implementation, and continued to grow its programming offerings with budget allotments as authorized from FY 2020 appropriations.

In *The Attorney General's First Step Act Section 3634 Annual Report,* U.S. DEP'T OF JUSTICE: OFFICE OF THE ATTORNEY GENERAL, *https:// www.bop.gov/inmates/fsa/docs/ 20201221_fsa_section_3634_report.pdf* (December 2020) (2020 Annual Report), the Bureau established a review process to consider externally submitted programs for potential inclusion on the approved EBRR Program/PA list. *Id.* at

17. The Bureau currently engages in partnerships with external organizations to recruit community volunteers to assist with inmate reentry and educational programs. Consistent with the goal of supporting and expanding volunteer activities at all institutions, on June 25, 2019, the Bureau provided guidance to all Wardens about the importance and use of partnerships under the FSA. Specifically, the Assistant Directors for the Office of General Counsel and Reentry Services Divisions issued guidance on collaboration with outside organizations pursuant to the FSA. This memorandum provided information on the FSA's statutory requirements, the Bureau process for establishing partnerships, equitable treatment of similar organizations, and tracking of partnerships.

On September 19, 2019, voluntary partnerships were in place at all 122 Bureau institutions. During FY 2019, 5,939 individuals volunteered 110,489 hours at various institutions. During FY 2020 (as of September 10, 2020), 5,978 volunteers and contractors had provided 157,752 hours at various institutions. The increase in volunteer hours can, in part, be attributed to staff efforts to increase partnerships pre-COVID–19, and changes made to the Bureau volunteer tracking system. *Id.* at 37.

In 2020, the Bureau created unique identifier codes for every Bureau program. These codes allow Bureau to track inmates' program enrollment, participation, and completion. This information can then be compared to needs assessment information and used as a method for assessing capacity. Unfortunately, because of the global pandemic, the Bureau has not been able to program as it would under normal conditions.

The Bureau assesses 12 broad need areas plus dyslexia, and programs are matched to each of these needs. As normal operations resume, the Bureau will be able to accurately track whether inmates sign up for the programs that match their needs, and whether the programs are offered with enough capacity that inmates are able to complete them at the appropriate times during their sentences. While the Bureau's current list of over 70 EBRR Programs and PAs addresses most areas of need, some improvements have been made even during the pandemic. For example, the Bureau created better quality and more standardized materials that provide more consistent program delivery. Additionally, a more intensive program addressing criminal cognition is in development to account for this

highly prevalent need in Bureau facilities. *Id.* at 19–20.

Also, several programs and activities mentioned by the commenters as items that should be included in the list of approved programs are, in fact, already on the list. *The First Step Act Approved Programs Guide,* available on the Bureau's website at *https:// www.bop.gov/inmates/fsa/docs/2021_ fsa_program_guide.pdf* (Programs Guide), contains a program description, institution locations, needs addressed by each program offered, and the department responsible for program delivery (*e.g.,* Education, Psychology).

The Programs Guide indicates that offered programs and activities ''will vary based on the needs of the sentenced population'' at a given location. This helps to explain, in part, why some programs and activities may not be available at all facilities. However, as the Bureau continues to expand its offerings, the Programs Guide continues to expand, and will be updated annually.

With regard to several programs and activities specifically mentioned by commenters:

*UNICOR:* Employment in Federal Prison Industries (FPI, also known by its trade name, UNICOR) is included in the Programs Guide as an EBRR Program.

*RDAP:* The Residential Drug Abuse Treatment Program (RDAP), is included in the Program Guide as an EBRR Program.

*Online or correspondence college courses:* The Programs Guide includes Post-Secondary Education programming, and explains that ''[c]ollege level classes are provided by credentialed instructors from the community who deliver coursework leading to the Associates or Bachelors degree,'' and that ''[s]pecific prerequisites for each program are determined by the school providing the service.'' *See Programs Guide* at 23. This program, delivered by Education staff or appropriately credentialed contractors, allows for online or correspondence college courses, as authorized and credentialed by the Bureau's Education staff.

*Religious services and programming:* The Programs Guide describes several faith-based programs and activities currently available at all Bureau facilities, including the Threshold Program, a faith-based reentry program (*id.* at 32), and Embracing Interfaith Cooperation, a PA which fosters interfaith dialogue and understanding to counter religious discrimination and extremism (*id.* at 36).

Also, the Bureau's longstanding Life Connections Program (LCP), a

residential, multi-faith-based reentry program open to inmates of all religious traditions and those with no faith affiliation, uses contract partners to provide religious services, while community volunteers serve as mentors to inmate participants. This program is available at six Bureau facilities. *See* 2020 Annual Report, *supra,* at 37–38.

As the Bureau's FSA implementation budget appropriations increase and necessary COVID–19 pandemic-related health and safety restrictions ease, the Bureau will continue its efforts to expand EBRR programming and PA offerings available at Bureau facilities for eligible inmates. Furthermore, as noted above, the Bureau has changed the proposed regulation to a more inclusive model, whereby FSA Time Credits may be earned if an eligible inmate is successfully participating in EBRR Programs and PAs recommended based upon his or her risk and needs assessment. Also, inmates will not be penalized if specifically recommended EBRR Programs or PAs are unavailable to them or at full enrollment at their facilities. As the Bureau continues to evaluate these and other types of programs and activities, the list of EBRR Programs and PAs for which inmates may earn FSA Time Credits will likewise increase.

*COMMENT: FSA Time Credits should be earned for successful participation, not only for successful completion.*

Many commenters opined that FSA Time Credits should be awarded on an ongoing basis, during *participation* in EBRR programming and PAs, instead of after successful *completion* of an EBRR Program or PA. One commenter wrote that

[b]y focusing only on completion, BOP diminishes the value of participation and weakens the incentive structure Congress enacted. Indeed, there are myriad situations where people would successfully participate in an approved program and—through no fault of their own—be prevented from, or delayed in, completing it. Transfers, program resource and staffing limitations, and facility movement restrictions all impact program completion, as do length of sentence, program availability, and waitlists. Individuals have no control over completion if, for example, their facility is locked down, or if programs are indefinitely suspended due to a pandemic. Congress created the earned time credit system to encourage personal responsibility. BOP's all-or-nothing rule that fails to acknowledge participation is inconsistent with this intent. BOP should revise the proposed rule to allow individuals who successfully participate in programming to earn time credits.

*RESPONSE:* The Bureau agrees with these comments. As indicated previously, the Bureau is altering and

expanding its method for awarding Time Credits.

The concern of the commenters regarding participation in programming echoes the Bureau's longstanding policy of encouraging inmate reentry programming and productive activities throughout each inmate's incarceration, which is consistent with the FSA's goal of attaining maximum recidivism reduction. The Bureau will continue to emphasize the need for full and successful participation in EBRR programs and PAs, as recommended for each inmate, to achieve the maximum award of FSA Time Credits to the maximum number of eligible inmates.

Toward that end, the Bureau has developed the simpler model which it now adopts for the FSA Time Credits program. Under this model, each eligible inmate earns Time Credits while participating in recommended EBRR Programs and PAs. Time Credits for successful participation are awarded at the end of each thirty-day period. By altering the scheme for awarding Time Credits in this manner, the Bureau hopes to increase the amount of FSA Time Credits that may be awarded to the maximum number of eligible inmates. Inmates must participate in all programs and activities that the Bureau recommends based on an individualized risk and needs assessment to be considered to have successfully participated in recommended EBRR Programs and PAs for purposes of earning Time Credits.

It is important to note, however, that temporary interruptions in participation that are unrelated to an inmate's refusal or other violation of programming requirements, such as the unavailability of a recommended program or activity or its full enrollment, or interruptions authorized by the Bureau, will not affect the inmate's ability to earn Time Credits. An inmate's ability to earn FSA Time Credits will be affected if the inmate refuses to participate in the recommended programming or productive activity, engages in misconduct that results in removal from the program or activity through placement in restrictive housing, or disrupts or fails to follow the conditions, parameters, or rules of the activity. In the event that the inmate is found to have committed any of these violations, accrual of Time Credits is paused until the inmate complies with programming conditions, parameters, or rules, or completes the disciplinary sanction.

For, example, the Bureau may permit an inmate to continue earning FSA Time Credit if programming is briefly interrupted due to an instructor's

illness, which results in the instructor canceling class for the day. Another possible example might be a brief interruption caused by an inmate requiring to be absent from programming for a day or two due to illness or medical treatment. In such circumstances, the Bureau may review whether or not the illness or medical treatment is attributable to factors over which the inmate may exercise control (possible drug overdose, injuries sustained while fighting, etc.), whether the conduct is a disciplinary offense, or whether it is excusable behavior and therefore may be authorized. The Bureau will strive to reach an equitable result when calculating time in program participation and circumstances both beyond and within the inmate's control.

Accordingly, unless the inmate formally declines recommended programming addressing his or her unique needs, or is not participating in any activities, the assumption is that the eligible inmates will be earning Time Credits and fully participating in recommended programming. The regulation indicates that accrual of Time Credits may be suspended in certain situations when the inmate is unable to participate in recommended programming, including, but not limited to, situations such as:

• Placement in a Special Housing Unit;

• Designation status outside the institution (*e.g.,* for extended medical placement in a hospital or outside institution, court appearances, an escorted trip, a furlough, etc.);

• Temporary transfer to the custody of another federal or non-federal government agency (e.*g.,* on state or federal writ, transfer to state custody for service of sentence, etc.);

• Placement in mental health/ psychiatric holds; or

• ''Opting out'' (choosing not to participate in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment).

Inmates who decline to participate in a recommended voluntary EBRR or PA (*i.e.,* inmates that ''opt out'') will not be considered to be refusing a program assignment for the purposes of disciplinary prohibited act code violations, but will merely be excluded from benefits or privileges of FSA Time Credit Program participation. For example, declining to take a recommended anger management course will prevent an inmate from earning FSA Time Credits, but will not in itself constitute a disciplinary prohibited act code violation. Inmates that refuse a formal assignment,

however, will also be held responsible for any attendant disciplinary prohibited act code violations, *e.g.,* failing to report to institution work detail.[4]

*COMMENT: FSA Time Credits should be applied to an inmate's transfer to supervised release (to shorten a term of imprisonment).*

Some commenters indicated that they were concerned that Time Credits would not, in fact, be applied to transfer to supervised release at all, but instead might only be applied to prerelease custody, noting that the proposed rule ''does not address the procedures for determining whether an individual inmate will have FSA Time Credits applied toward prerelease custody, early transfer to supervised release, a combination of both, or neither; this proposed rule only addresses the procedures for earning, awarding, loss, and restoration of FSA Time Credits.''

*RESPONSE:* As stated, under the FSA, an eligible inmate who successfully participates in an EBRR Program or PA recommended by staff based on the inmate's risk and needs assessment may earn FSA Time Credits to apply toward prerelease custody or transfer to supervised release. Eligible inmates may earn 10 days of Time Credits (and, if maintaining a low or minimum risk status, an additional 5 days of Time Credits) for every 30-day period of successful participation in EBRR Programs or PAs.

However, under the FSA (18 U.S.C. 3624(g)), even if earned, Time Credits may not be applied to prerelease custody until:

• The amount of earned Time Credits is equal to the remainder of the inmate's imposed term of imprisonment;

• The inmate has demonstrated a reduced risk of recidivism or maintained a minimum or low recidivism risk during his or her term of imprisonment;

• The remainder of the inmate's imposed term of imprisonment has been computed under applicable law (*e.g.,* Good Conduct Time Credit under 28 CFR part 523 has been applied, eligibility for early release consideration under Residential Drug Abuse Treatment Program regulations in 28 CFR part 550 has been evaluated, etc.); and

• The inmate has been determined to be at a minimum or low risk of recidivating based on his or her last two assessments, or has had a petition to be

transferred to prerelease custody approved by the warden.

Similar requirements exist under the FSA for application of earned Time Credits to transfer to supervised release. Time Credits may not be applied to transfer to supervised release under 18 U.S.C. 3624(g) unless:

• The amount of earned Time Credits is equal to the remainder of the inmate's imposed term of imprisonment;

• The inmate's sentence includes a period of supervised release to be served after his or her term of imprisonment;

• The inmate's latest risk and needs assessment shows that he or she is at a minimum or low risk of recidivating; and

• The application of Time Credits would not result in starting the period of supervised release more than 12 months before he or she would otherwise be eligible to do so (*i.e.,* any amount of earned Time Credits in excess of 12 months would be applied to prerelease custody).

*See* Nathan James, U.S. Congressional Research Service, The First Step Act of 2018: An Overview (2019), at 5–6.

The Bureau assures commenters that FSA Time Credits will be applied to early transfer to supervised release, as authorized by the FSA in 18 U.S.C. 3632(d)(4)(C) and 18 U.S.C. 3624(g). *See* 2020 Annual Report at 39–44. The Bureau intends to adhere to the parameters of the FSA to permit application of Time Credits toward transfer to supervised release pending development of policy, in individual cases as appropriate.

*COMMENT: Earning FSA Time Credits should continue in Residential Reentry Centers and/or while in home confinement.*

Many commenters raised an issue that was articulated by Senator Sheldon Whitehouse (D–RI) and Senator John Cornyn (R–TX) as follows:

The proposed rule also provides that ''FSA Time Credits can only be earned while an inmate is in a Bureau facility, and will not be earned if an inmate is in a Residential Reentry Center or on home confinement.'' The proposed rule does not cite to any authority for this restriction, and this interpretation is not consistent with the goals of the First Step Act.

Allowing individuals to earn time credits while in RRCs is authorized by the First Step Act. The Act provides that ''[t]ime credits earned . . . by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prerelease custody or supervised release.'' It defines ''prisoner'' as ''a person who has been sentenced to a term of imprisonment pursuant to a conviction for a Federal criminal offense, or a person in the custody of the Bureau of Prisons.''

Because ''[p]re-release inmates at an RRC remain in Federal custody while serving a sentence imposed by a U.S. District Court or DC Superior Court,'' they are ''prisoners'' for the purposes of the First Step Act. Nor does the First Step Act distinguish between ''prisoners'' who are serving their sentence in a BOP institution, in an RRC, or on home confinement in describing the time credit program. By its own terms, the statute allows BOP to award time credits to individuals incarcerated in an RRC toward time in supervised release.

Allowing individuals incarcerated in an RRC to earn time credits by participating in EBRRs would further the purposes of the First Step Act. RRCs offer substance abuse treatment and other programs similar to those offered in BOP institutions. There is no reason to believe that a program offered in an RRC will reduce recidivism any less than one offered to an individual in prison. In fact, such programs may be more effective, as individuals are close to release from custody and can begin putting lessons learned into practice as they transition home. BOP should revise the proposed rule to allow individuals to earn time credits while in an RRC.

Congressman Hakeem Jeffries (D–NY) also stated, ''I see no reason to make individuals in Residential Reentry Centers (RRCs) or in home confinement ineligible to earn time credits. . . . Congress could have used a narrower definition or explicitly excluded certain categories of individuals based on where they serve their sentence, but it chose not to do so.''

*RESPONSE:* After carefully considering the comments received, the Bureau agrees that inmates in prerelease custody—whether in a residential reentry center (RRC) or on home confinement—are eligible to earn FSA Time Credits under 18 U.S.C. 3632(d)(4)(A), which they could presumably apply, under 18 U.S.C. 3632(d)(4)(C), toward transfer to supervised release.

The practical effect of allowing eligible inmates to keep earning Time Credits while in prelease custody (RRCs) will likely be limited, however, for several reasons. First, the Bureau intends to transfer eligible inmates who satisfy the criteria in 3624(g) to supervised release to the extent practicable, rather than to prelease custody. The Bureau therefore anticipates that the total population of eligible inmates in RRCs or home confinement will be small.

Second, as a practical matter, programming and services for inmates in RRCs or home confinement will often be provided off-site or by a third-party provider, which makes tracking successful participation more difficult. For example, community-based substance use treatment programs referred to by the Senators in their

---

[4] *See* 28 CFR 541.3, Table 1—Prohibited Acts and Available Sanctions: Moderate Severity Level Prohibited Acts, code 306: ''Refusing to work or to accept a program assignment.''

comments are not provided on-site at RRCs, but rather on an outpatient basis. The Bureau uses a comprehensive inmate information tracking system that is only accessible to Bureau staff. The Bureau's inmate information tracking system is not accessible to RRC staff, and therefore cannot track inmate programming activity when inmates are no longer in the custody of the Bureau of Prisons.

Third, unlike a prison facility, which is a self-contained unit under the Bureau's control and supervision that can provide Bureau-authorized, comparable, and approved programming to all housed inmates, the breadth of programming available at or through different RRCs, or in the communities where an inmate may be place in home confinement, could vary significantly and may not correspond directly to recommendations based on inmates' most recent risk and needs assessments.

Given these variables, the Bureau will work on a case-by-case basis with eligible inmates in RRCs to identify appropriate available programming for them to earn FSA Time Credits, and will determine how to best track participation as part of the Bureau's commitment to ensure the maximum number of FSA Time Credits may be awarded to the maximum number of eligible inmates. The Bureau will issue guidance on this topic to ensure consistency in implementation.

*COMMENT: All inmates should be eligible for FSA Time Credits without exclusions.*

Several commenters recommended that, as a general matter, any inmate willing to participate in the FSA Time Credit program should be eligible for FSA Time Credits. A few individual commenters suggested more specifically that inmates convicted of particular offenses (as described above) should be removed from the category of "ineligible prisoners," as described in 18 U.S.C. 3632(d)(4)(D), and should be permitted to earn FSA Time Credits for application toward prerelease custody or transfer to supervised release.

*RESPONSE:* As noted, 18 U.S.C. 3632(d)(4)(D) describes inmates that are "ineligible to receive time credits" under Subchapter D (the Risk and Needs Assessment System) if serving a term of imprisonment for conviction under any of the provisions listed therein. It is outside the Bureau's authority to alter the exclusions as stated in the FSA. Some commenters suggested that "non-violent" offenses be removed from the ineligibility exclusions, but did not specify which offenses listed might be considered "non-violent" or otherwise define that term. Regardless, the

statutory exclusions may only be amended by Congress.

*Specific offenses:* The FSA enumerates 68 offenses for which inmates who are serving terms of imprisonment are ineligible. Commenters raised several specific offenses. We note that under the FSA's list of 68 enumerated offenses, the following are included as ones for which inmates are ineligible if they are serving a term of imprisonment upon conviction:

• 18 U.S.C. 2250, relating to failure to register as a sex offender (*see* 18 U.S.C. 3632(d)(4)(D)(xxxviii));

• 18 U.S.C. 2251, relating to the sexual exploitation of children (*see* 18 U.S.C. 3632(d)(4)(D)(xxxix));

• 18 U.S.C. 2251A, relating to the selling or buying of children (*see* 18 U.S.C. 3632(d)(4)(D)(xl));

• 18 U.S.C. 2252, relating to certain activities concerning material involving the sexual exploitation of minors (*see* 18 U.S.C. 3632(d)(4)(D)(xli));

• 18 U.S.C. 2252A, relating to certain activities involving material constituting or containing child pornography (*see* 18 U.S.C. 3632(d)(4)(D)(xlii));

• 18 U.S.C. 2260, relating to the production of sexually explicit depictions of a minor for importation into the United States (*see* 18 U.S.C. 3634(d)(4)(D)(xliii)).

*Prior convictions:* As stated in the preamble to the proposed rule, an inmate cannot earn FSA Time Credits if he or she has a disqualifying prior conviction as specified in 18 U.S.C. 3632(d)(4)(D). In the interest of clarifying the statement in the proposed rule, a "disqualifying prior conviction" would render an inmate ineligible to earn Time Credits under 18 U.S.C. 3632(d)(4)(D)(li) if the inmate:

1. Had a *prior conviction* for which he or she served a term of imprisonment of more than 1 year, for a Federal or State offense, by whatever designation and wherever committed, consisting of the following:

• Murder (as described in 18 U.S.C. 1111),

• voluntary manslaughter (as described in 18 U.S.C. 1112),

• assault with intent to commit murder (as described in 18 U.S.C. 113(a)),

• aggravated sexual abuse and sexual abuse (as described in 18 U.S.C. 2241 and 2242),

• abusive sexual contact (as described in 18 U.S.C. 2244(a)(1) and (a)(2)),

• kidnapping (as described in 18 U.S.C. chapter 55),

• carjacking (as described in 18 U.S.C. 2119),

• arson (as described in 18 U.S.C. 844(f)(3), (h), or (i)), or

• terrorism (as described in 18 U.S.C. chapter 113B);

*AND*

2. Is currently serving a term of imprisonment of more than 1 year for an offense described in 18 U.S.C. 3559(c)(2)(F), *i.e.,* a "serious violent felony," which means either—

(i) a Federal or State offense, by whatever designation and wherever committed, consisting of the following:

• Murder (as described in 18 U.S.C. 1111);

• manslaughter other than involuntary manslaughter (as described in 18 U.S.C. 1112);

• assault with intent to commit murder (as described in 18 U.S.C. 113(a));

• assault with intent to commit rape (as described in 18 U.S.C. 3559(c)(2)(A));

• aggravated sexual abuse and sexual abuse (as described in 18 U.S.C. 2241 and 2242);

• abusive sexual contact (as described in 18 U.S.C. 2244(a)(1) and (a)(2));

• kidnapping (as described in 18 U.S.C. 3559(c)(2)(E));

• aircraft piracy (as described in 49 U.S.C. 46502);

• robbery (as described in 18 U.S.C. 2111, 2113, or 2118);

• carjacking (as described in 18 U.S.C. 2119);

• extortion (as described in 18 U.S.C. 3559(c)(2)(C));

• arson (as described in 18 U.S.C. 3559(c)(2)(B));

• firearms use (as described in 18 U.S.C. 3559(c)(2)(D));

• firearms possession (as described in 18 U.S.C. 924(c));

• or attempt, conspiracy, or solicitation to commit any of the above offenses;

*OR*

(ii) any other offense punishable by a maximum term of imprisonment of 10 years or more—

• that has as an element the use, attempted use, or threatened use of physical force against the person of another or

• that, by its nature, involves a substantial risk that physical force against the person of another may be used in the course of committing the offense.

The Bureau is cognizant of the strict categorical analysis required by the Supreme Court in adjudicating whether an offense meets the elements or residual clause of 18 U.S.C. 3559. As such, the Bureau after consultation with the Department of Justice will ensure that its facilities receive updated information as to which federal and state offenses qualify or are the subject

**2714**   **Federal Register** / Vol. 87, No. 12 / Wednesday, January 19, 2022 / Rules and Regulations

of litigation and that inmate records are updated to ensure maximum participation in credit-earning EBRRs.

*Deportable inmates:* As the FSA also indicates in 18 U.S.C. 3632(d)(4)(E), an inmate who is subject to a final order of removal under immigration laws as defined in 8 U.S.C. 1101(a)(17) may not have FSA Time Credits applied toward prerelease custody or early transfer to supervised release under 18 U.S.C. 3624(g).

Although the Bureau does not have the authority to award FSA Time Credits to inmates who are ineligible under the FSA, such inmates may still earn other benefits for successfully participating in the many other types of programming offered by the Bureau. Inmates ineligible for earning or applying FSA Time Credits may still receive incentives such as increased privileges (commissary, visiting, and telephone) for participation in EBRR Programs.

*COMMENT: Forfeiture penalties for earned Time Credits are too severe.*

Many commenters stated that the proposal to amend the Bureau's regulations on inmate discipline in 28 CFR part 541 to include forfeiture of FSA Time Credits as a disciplinary sanction was too severe. One commenter stated that:

The forfeiture rates would be too harsh on their own, but even more punitive when combined with other negative consequences for violations, including limits on future earning and use of time credits and would be disproportionately severe across all levels of prohibited acts... Moreover, forfeiture of earned time credits is not the only consequence an individual would suffer as the result of a prison infraction. An infraction could also negatively affect an individual's ability to earn and use time credits in the future by raising his risk score. . .

Another commenter stated that

The proposed rule provides that to restore credits from prison rule violations, an individual must first have ''[c]lear conduct for at least four consecutive risk and needs assessments.''. . . It could take at least 4 years to complete ''at least four consecutive risk and needs assessments.'' Yet BOP provides no justification for requiring clear conduct for this long. Indeed, requiring an individual to remain infraction-free for at least 4 years is inconsistent with PATTERN. Under PATTERN, individuals who are infraction-free for 12 months or more receive no points related to the recency of an infraction. If PATTERN indicates those with infractions older than 12 months are no more risky than those with infractions older than 4 years, it is difficult to understand what justification BOP would have to require ''clear conduct'' for what could be at least 4 years.

*RESPONSE:* The Bureau agrees with these commenters, and has adjusted the

proposed penalties related to FSA Time Credits accordingly. As stated in the proposed rule, FSA Time Credits may be lost through inmate discipline procedures described in 28 CFR part 541 only if an inmate violates the requirements or rules of an EBRR Program or PA. The FSA authorizes the Bureau to develop procedures for the reduction of FSA Time Credits for inmates under these circumstances. *See* 18 U.S.C. 3632(e). Opting out of a program will not result in the forfeiture of credits, unless failure to complete the program itself constitutes an infraction (*e.g.* failing to accept a mandatory work assignment).

The Bureau's proposed amendments to 28 CFR 541.3, Table 1 (Prohibited Acts and Available Sanctions), were intended to resemble the structure of current sanctions for loss of Good Conduct Time, which allow for forfeiture in escalating amounts depending on the severity level of the prohibited act committed. However, in light of the comments received, the Bureau alters the proposed forfeiture sanctions to more closely mirror the Good Conduct Time forfeiture sanctions, and accordingly decreases the amount of FSA Time Credits forfeiture sanctions for each prohibited act severity level offense by more than half.

Further, upon review, the Bureau agrees with commenters that it is inconsistent with the risk and needs assessment methodology to require clear conduct (behavior clear of inmate disciplinary infractions under 28 CFR part 541) for four consecutive assessments to permit restoration of forfeited Time Credits, and therefore alters the regulation to maintain consistency with the Department of Justice risk and needs assessment methodology—requiring clear conduct for *two* consecutive assessments (one year) as a condition of restoring forfeited Time Credits.

*COMMENT: The FSA should be applicable to DC Code Offenders.*

The Bureau reopened the comment period of the proposed rulemaking from October 18, 2021, until November 17, 2021, to solicit public comment on the limited issue of whether DC Code offenders in Bureau of Prisons custody are eligible to apply Time Credits under 18 U.S.C. 3632(d)(4), as added by the FSA. 86 FR 57612. We received thirty submissions during the reopened comment period. However, of those submissions, only eighteen were comments relating to the limited issue. Twelve submissions related to issues raised during the proposed rule comment period in 2020 or to specific circumstances of particular inmates in

Bureau facilities and their eligibility for FSA Time Credits, rather than the limited issue for which the document reopened the comment period. As we stated above with regard to submissions unrelated to the proposed rule, we encourage those with questions regarding particular inmates to address those questions to staff at facilities where those inmates are housed, or to the regional offices with oversight for those facilities.

*RESPONSE:* The October 18, 2021 document indicated that the proposed rule would have expressly excluded from time-credit eligibility any inmate serving a term of imprisonment only for an offense under the laws of the District of Columbia. The FSA, however, is ambiguous as to whether those with convictions under the DC Code are eligible to apply FSA Time Credits through their participation in EBRR programs or PAs.

Some comments pointed to features of the statute's text or history, suggesting that Congress intended DC Code offenders to be eligible to apply FSA Time Credits to their sentences. A comment from the Public Defender Service for the District of Columbia noted that the FSA defines ''prisoner'' as ''a person who has been sentenced to a term of imprisonment pursuant to a conviction for a Federal criminal offense, or a person in the custody of the Bureau of Prisons.'' 18 U.S.C. 3635(4). That definition includes DC Code offenders, who the commenter pointed out are in Bureau custody under the National Capital Revitalization and Self Government Improvement Act of 1997, which requires that ''any person who has been convicted of a felony offense pursuant to the District of Columbia Code . . . shall be subject to any law or regulation applicable to persons committed for violations of laws of the United States consistent with the sentence imposed.'' 111 Stat. 251 at 734; Public Law 105–33, Sec. 11021 (the ''DC Revitalization Act'').

A comment from Senator Cory Booker (D–NJ) noted that other unenacted bills addressing similar subjects that preceded the enactment of the FSA would have defined ''prisoner'' as a person sentenced for a federal offense. *See* Corrections and Recidivism Reduction Act of 2016, H.R. 759, 114th Cong. 8(4) (as introduced Feb. 5, 2015 sub nom. Recidivism Risk Reduction Act), *https://www.congress.gov/bill/114th-congress/house-bill/759/text/ih* (defining ''prisoner'' as ''a person who has been sentenced to a term of imprisonment pursuant to a conviction for a Federal criminal offense''); the Sentencing Reform and Corrections Act

of 2015, S. 2123, 114th Cong. 202(b)(8) (as introduced Oct. 1, 2015), *https://www.congress.gov/bill/114th-congress/senate-bill/2123/text/is* (defining ''eligible prisoner'' as ''a prisoner serving a sentence of incarceration for conviction of a Federal offense,'' with exceptions for medical and security circumstances and sentences under one month).

But there are other statutory features suggesting Congress may not have intended the FSA Time Credit program to alter the time that DC Code offenders spend in Bureau facilities while serving sentences imposed by the District of Columbia. As noted, the DC Revitalization Act commits DC Code offenders to Bureau custody, but provides that these offenders ''shall be subject to any law or regulation applicable to'' U.S. Code offenders only insofar as those laws or regulations are ''consistent with the sentence imposed.'' (DC Code section 24–101(b).) While this restriction does not appear to bar DC Code offenders from earning FSA Time Credits, it does appear to bar them from applying those credits in a way that would change the duration of their DC-imposed sentences, *i.e.,* by granting them early supervised release. Even given this limitation that currently exists by virtue of the DC Code, it is possible that Congress intended to permit DC Code offenders to use Time Credits to secure an early transfer to prerelease custody, which does not change the sentence's duration. But the fact that at least part of the FSA Time Credit program is inconsistent with the terms on which the DC Code has committed DC Code felons to Bureau custody suggests otherwise.

In addition, Congress took care to preclude violent U.S. Code offenders from using FSA Time Credits to secure an early release from Bureau facilities, specifying a long list of serious Federal crimes in 18 U.S.C. 3632(d)(4)(D), a conviction for which makes a prisoner ineligible to earn Time Credits.[5] Congress's failure to provide an analogous list of serious DC Code offenses could indicate that Congress did not intend DC Code offenders to be eligible to apply Time Credits. Similarly, the FSA states that the Time Credit system does not apply ''with respect to offenses committed before November 1, 1987,'' (*see* Section

102(b)(3) of the FSA), which is the date Federal parole was abolished, but does not contain any like provision for the date DC parole was abolished (2000). If the FSA is construed to afford DC Code offenders in Bureau custody a right to apply Time Credits, Congress's failure to account for the date on which DC parole was abolished would mean that some DC Code offenders could be eligible for both parole and the FSA Time Credit program. Congress could have acted to avoid the overlap of these two programs, and the fact that Congress did not do so could further suggest that Congress did not intend the FSA to make DC Code offenders eligible to apply Time Credits.

Finally, there is a textual basis for concluding that Congress did not intend the FSA to make DC Code offenders eligible to use Time Credits. In Section 105 of the FSA, Congress provided that nothing in the FSA ''may be construed to provide authority to place a prisoner in prerelease custody or supervised release who is serving a term of imprisonment pursuant to a conviction for an offense under the laws of one of the 50 States, or of a territory or possession of the United States.'' 18 U.S.C. 3621 Note. As a comment (from the DC Justice Lab, Democracy Forward Foundation, FAMM, Justice Action Network, National Association of Criminal Defense Lawyers, Washington Lawyers' Committee for Civil Rights, and Urban Affairs) noted, it is unclear whether the District of Columbia is ''one of the 50 States,'' a ''territory,'' or a ''possession'' of the United States. The Bureau agrees that Section 105 is ambiguous; statutory references to States and territories may or may not be understood to include the District of Columbia, depending on the statutory context. *See, e.g., District of Columbia* v. *Carter,* 409 U.S. 418, 420 (1973). Particularly in light of the statutory features above, Section 105 could be read to manifest Congress's desire to avoid interference with non-U.S. Code sentences of offenders who end up in Bureau custody.

Overall, there is significant ambiguity about whether and to what extent DC Code offenders are eligible to apply FSA Time Credits under the statute. A construction of the FSA that would allow DC Code offenders to apply Time Credits under federal law would create particular concerns because of the absence of any basis on which to preclude DC Code offenders convicted of violent crimes from then using Time Credits. That result would substantially diverge from the FSA provision that expressly bars federal inmates convicted of any one of a list of 68 categories of enumerated violent offenses (only one

of which includes any DC Code offenses, and only under certain conditions, see 18 U.S.C. 3632(d)(4)(D)(li)) from receiving FSA Time Credits. Although the majority of the comments received during the reopened comment period supported allowing DC Code offenders to earn FSA Time Credits, they largely failed to address the issue of whether violent DC Code offenders should be eligible to apply such credits along with non-violent offenders. A single comment received during the reopened comment period opposed application of the FSA to DC Code offenders in Bureau custody, expressing concern that the rule would ''undermine the criminal justice system and allow these violent offenders to re-enter society to only most likely commit these violent crimes again.'' The lack of additional discussion in the comments regarding this issue is particularly problematic because the overwhelming majority of DC offenders in Bureau custody are serving sentences for violent offenses analogous to the list of offenses that disqualify federal offenders from receiving FSA Time Credits.

The Bureau is also concerned that adopting a reading of the FSA to permit DC Code offenders to leave Bureau facilities before they have served their DC-imposed sentences stands in some tension with other provisions of the DC Code. In other circumstances, where the length of a DC Code offender's sentence would be reduced, there are specific authorities in the DC Code to authorize such actions. For example, the DC Code specifies that offenders sentenced to imprisonment for felonies committed after August 5, 2000, ''may receive good time credit toward service of the sentence only as provided in 18 U.S.C. 3624(b)'' (DC Code section 24–403.01(d)); that those sentenced to imprisonment after August 5, 2000, ''for a nonviolent offense may receive up to a one-year reduction'' for completing a substance-abuse-treatment program in accordance with 18 U.S.C. 3621(e)(2) (DC Code section 24–403.01(d–1)(1)); and that certain DC Code offenders who committed their crimes before age 25 have an opportunity to be resentenced to a reduced term (DC Code section 24–403.03). There are no similar provisions to allow DC Code offenders to have sentences reduced by early placement on supervised release under the terms of the FSA.

Many of these considerations implicate the sovereignty of the District of Columbia and its authority over DC Code offenders and could be addressed through local legislation. The Bureau further understands that the DC Council is actively considering whether and

---

[5] *See, e.g.,* 164 Cong. Rec. S7642 (daily ed. Dec. 17, 2018) (statement of Sen. Cornyn) (''There are some who, for example, say that this legislation will put violent criminals and sex offenders back on the streets, which is completely false. . . . This bill will not allow dangerous, violent criminals to be released early. . . . We have disqualified violent offenders . . . .'').

under what circumstances DC Code offenders should be eligible for FSA Time Credits as a matter of DC law. The Council has the authority and latitude to incorporate the FSA Time Credit program by reference into the DC Code and specify which DC Code offenders are eligible to apply FSA Time Credits. The DC Council may, for example, develop a list of excluded DC Code offenses that parallels the list of violent federal offenses in 18 U.S.C. 3632(d)(4)(D), or otherwise clarify whether and in what circumstances inmates may apply Time Credits toward pre-release custody and/or supervised release. Should the Council enact legislation that speaks to the issues presented by the FSA's ambiguity, such legislation could significantly inform, or dictate, the relevance of the FSA's time-credit program to DC Code offenders in the Bureau's custody.

In light of these statutory interpretation and policy considerations, and the current deliberations of the DC Council, the Bureau will defer definitively resolving the FSA's ambiguities with respect to DC Code offenders in its custody. The final rule therefore is amended to reflect the possibility that the DC Council will enact legislation regarding the eligibility of such offenders to apply FSA Time Credits. Thus, any inmate in Bureau custody who is sentenced to a term of imprisonment under the Criminal Code of the District of Columbia is, at present, not eligible to apply FSA Time Credits unless the laws of the District of Columbia are amended to authorize the application of such credits. The Bureau may revisit this question through future rulemaking, depending on the outcome of the DC Council's consideration of these issues, and any other relevant developments.

**Regulatory Certifications**

*Executive Orders 12866 and 13563:* Because this proposed rule may raise novel legal or policy issues arising out of implementation of the First Step Act, the Office of Management and Budget (OMB) has determined that it constitutes a ''significant regulatory action'' under section 3(f) of Executive Order 12866 and has reviewed it.

The economic impact of this rule is limited to a specific subset of inmates who are eligible to earn and apply FSA Time Credits toward additional prerelease custody or early transfer to supervised release. Under the FSA, FSA Time Credits may be earned by an eligible inmate who is assessed to have a minimum or low risk for recidivating and who has had no increased risk of recidivism over the most recent two

consecutive assessments conducted by the Bureau. Consistent with the FSA, inmates in Bureau custody are assessed under its risk and needs assessment system, which includes both static and dynamic elements.

For example, on August 27, 2020, 131,386 inmates had been assessed under the risk and needs assessment tool and received a risk and needs assessment score. The risk and needs assessment scores for the entire group of 131,386 inmates were: 50,060 classified as high; 25,043 classified as medium; 38,084 classified as low; and 18,199 classified as minimum. Of these inmates, approximately 65,000 would be ineligible to earn FSA Time Credits under the FSA due to the inmate's crime of conviction. This data represents a snapshot of those inmates in Bureau custody as of August 27, 2020.

The Bureau conducted risk and needs assessments for Federal inmates and assigned EBRR Programs by the January 15, 2020, FSA deadline. As of that date, recidivism risk assessment levels of High, Medium, Low, or Minimum were assigned to all sentenced inmates at Bureau designated facilities. The Bureau anticipates that this data will change continually, as inmates in custody earn reductions in risk classification, based on program participation and other dynamic factors, and inmates enter and release from Bureau custody.

The Bureau anticipates that as a result of this rule and the FSA, additional inmates will engage in programming to earn FSA Time Credits. As discussed above, FSA Time Credits may be earned for successful completion of an EBRR Program or PA that is assigned to an inmate based on the inmate's needs assessment. The current list of these programs can be found at *https://www.bop.gov/inmates/fsa/docs/2021_fsa_program_guide.pdf.* These programs are available to all inmates regardless of an inmate's eligibility to earn FSA Time Credits.

The rule may also result in movement of eligible inmates who earn FSA Time Credits from Bureau facilities to prerelease custody in the community (including RRCs and home confinement) earlier in the course of their confinement and for a longer period of time than would have previously occurred. In some cases, this transfer of time from secured confinement to prerelease custody may result in increased costs, depending on the relative costs of the inmate's current facility and the costs associated with housing or supervision in prerelease custody.

The rule may also result in the early transfer of inmates from custody to

supervised release, functionally shortening their term of imprisonment. In such cases, the Bureau would avoid costs that would otherwise have been incurred to confine the affected inmates for that amount of time.

At present, therefore, specific monetary costs or savings for these future actions cannot be calculated. But, consistent with the purpose of the statute, the proposed rule will enhance public safety and reduce the need for future incarceration by providing significant incentives to encourage inmates to participate in evidence-based programs intended to reduce their risk of recidivism and help facilitate their successful reentry back into society after they have served their time.[6]

For these reasons, it is not possible to forecast the actual economic effect of this rule. However, given the mix of cost increases and savings which may result, the overall long-term economic impact is expected to be marginal in either direction.

The purpose of this rule is to codify the Bureau's procedures regarding the earning and application of time credits as authorized by the FSA. Time credits may be applied towards prerelease custody or early transfer to supervised release, and some inmates will be eligible for such custody or release as soon as this rule goes into effect. Delaying implementation for 30 days could therefore deprive at least some inmates of time in the less restrictive environments that Congress has determined are appropriate for eligible inmates. Given the liberty issues implicated by the prompt implementation of this program and this rule, the Bureau is prepared to begin implementation immediately, and the Bureau therefore finds good cause for exempting this rule from the provision of the Administrative Procedure Act (5 U.S.C. 553(d)) which ordinarily requires a delay in effective date. The Bureau notes that neither it nor the affected inmates require a delay to adjust their practices before this rule takes effect. A delay in the effective date of this final rule would be unnecessary and contrary to the public interest.

*Executive Order 13132:* This rule will not have substantial direct effect on the States, on the relationship between the National Government and the States, or on the distribution of power and responsibilities among the various

---

[6] The costs or cost savings resulting from this rule will not be fully realized for years to come, as increasing numbers of inmates have opportunities to earn FSA Time Credits over their terms of incarceration, are transferred to prerelease custody or supervised release, and reintegrate into the community.

levels of government. Therefore, under Executive Order 13132, we determine that this rule does not have sufficient federalism implications to warrant the preparation of a Federalism Assessment.

*Regulatory Flexibility Act:* The Director of the Bureau of Prisons, under the Regulatory Flexibility Act (5 U.S.C. 605(b)), reviewed this rule and certifies that it will not have a significant economic impact upon a substantial number of small entities for the following reasons: This rule pertains to the correctional management of offenders committed to the custody of the Attorney General or the Director of the Bureau of Prisons, and its economic impact is limited to the Bureau's appropriated funds.

*Unfunded Mandates Reform Act of 1995:* This rule will not result in the expenditure by State, local, and tribal governments, in the aggregate, or by the private sector, of $100,000,000 or more in any one year, and it will not significantly or uniquely affect small governments. Therefore, no actions were deemed necessary under the provisions of the Unfunded Mandates Reform Act of 1995.

*Congressional Review Act:* This rule is not a major rule as defined by the Congressional Review Act, 5 U.S.C. 804.

For the foregoing reasons, we issue the regulations regarding the First Step Act Time Credits, proposed on November 25, 2020, with modifications, as set forth below.

**List of Subjects in 28 CFR Parts 523 and 541**

Prisoners.

**Michael D. Carvajal,**

*Director, Federal Bureau of Prisons.*

Under rulemaking authority vested in the Attorney General in 5 U.S.C. 301; 28 U.S.C. 509, 510 and delegated to the Director, Bureau of Prisons in 28 CFR 0.96, we amend 28 CFR parts 523 and 541 as follows:

**Subchapter B—Inmate Admission, Classification, and Transfer**

**PART 523—COMPUTATION OF SENTENCE**

■ 1. The authority citation for 28 CFR part 523 is revised to read as follows:

**Authority:** 5 U.S.C. 301; 18 U.S.C. 3568 (repealed November 1, 1987, as to offenses committed on or after that date), 3621, 3622, 3624, 3632, 3635, 4001, 4042, 4081, 4082 (repealed in part as to conduct occurring on or after November 1, 1987), 4161–4166 (repealed October 12, 1984, as to offenses committed on or after November 1, 1987), 5006–5024 (repealed October 12, 1984, as to conduct occurring after that date), 5039; 28 U.S.C. 509, 510.

■ 2. Add subpart E to read as follows:

**Subpart E—First Step Act Time Credits**

Sec.
523.40    Purpose.
523.41    Definitions.
523.42    Earning First Step Act Time Credits.
523.43    Loss of FSA Time Credits.
523.44    Application of FSA Time Credits.

**§ 523.40    Purpose.**

(a) The purpose of this subpart is to describe procedures for the earning and application of Time Credits as authorized by 18 U.S.C. 3632(d)(4) and Section 101 of the First Step Act of 2018 (Pub. L. 115–391, December 21, 2018, 132 Stat. 5194) (FSA), hereinafter referred to as "FSA Time Credits" or "Time Credits."

(b) Generally, as defined and described in this subpart, an eligible inmate who successfully participates in Evidence-Based Recidivism Reduction (EBRR) Programs or Productive Activities (PAs) that are recommended based on the inmate's risk and needs assessment may earn FSA Time Credits to be applied toward prerelease custody or early transfer to supervised release under 18 U.S.C. 3624(g).

**§ 523.41    Definitions.**

(a) *Evidence-Based Recidivism Reduction (EBRR) Program.* An EBRR Program is a group or individual activity that has been shown by empirical evidence to reduce recidivism or is based on research indicating that it is likely to be effective in reducing recidivism; and is designed to help prisoners succeed in their communities upon release from prison. EBRR Programs may include, but are not limited to, those involving the following types of activities:

(1) Social learning and communication, interpersonal, anti-bullying, rejection response, and other life skills;

(2) Family relationship building, structured parent-child interaction, and parenting skills;

(3) Classes on morals or ethics;

(4) Academic classes;

(5) Cognitive behavioral treatment;

(6) Mentoring;

(7) Substance abuse treatment;

(8) Vocational training;

(9) Faith-based classes or services;

(10) Civic engagement and reintegrative community services;

(11) Inmate work and employment opportunities;

(12) Victim impact classes or other restorative justice programs; and

(13) Trauma counseling and trauma-informed support programs.

(b) *Productive Activity (PA).* A PA is a group or individual activity that

allows an inmate to remain productive and thereby maintain or work toward achieving a minimum or low risk of recidivating.

(c) *Successful participation.* (1) An eligible inmate must be "successfully participating" in EBRR Programs or PAs to earn FSA Time Credits for those EBRR Programs or PAs.

(2) "Successful participation" requires a determination by Bureau staff that an eligible inmate has participated in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment, and has complied with the requirements of each particular EBRR Program or PA.

(3) Temporary operational or programmatic interruptions authorized by the Bureau that would prevent an inmate from participation in EBRR programs or PAs will not ordinarily affect an eligible inmate's "successful participation" for the purposes of FSA Time Credit eligibility.

(4) An eligible inmate, as described in paragraph (d) of this section, will generally not be considered to be "successfully participating" in EBRR Programs or PAs in situations including, but not limited to:

(i) Placement in a Special Housing Unit;

(ii) Designation status outside the institution (*e.g.,* for extended medical placement in a hospital or outside institution, an escorted trip, a furlough, etc.);

(iii) Temporary transfer to the custody of another Federal or non-Federal government agency (*e.g.,* on state or Federal writ, transfer to state custody for service of sentence, etc.);

(iv) Placement in mental health/psychiatric holds; or

(v) "Opting out" (choosing not to participate in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment).

(5)(i) If an eligible inmate "opts out," or chooses not to participate in any of the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment, the inmate's choice must be documented by staff.

(ii) Opting out will not, by itself, be considered a disciplinary violation. However, violation of specific requirements or rules of a particular recommended EBRR Program or PA, including refusal to participate or withdrawal, may be considered a disciplinary violation (*see* this part).

(iii) Opting out will result in exclusion from further benefits or privileges allowable under the FSA,

until the date the inmate "opts in" (chooses to participate in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment, as documented by staff).

(d) *Eligible inmate*—(1) *Eligible to earn FSA Time Credits.* An inmate who is *eligible to earn* FSA Time Credits is an *eligible inmate* for the purposes of this subpart. Any inmate sentenced to a term of imprisonment pursuant to a conviction for a Federal criminal offense, or any person in the custody of the Bureau, is *eligible to earn* FSA Time Credits, subject to the exception described in paragraph (d)(2) of this section.

(2) *Exception.* If the inmate is serving a term of imprisonment for an offense specified in 18 U.S.C. 3632(d)(4)(D), the inmate is not *eligible to earn* FSA Time Credits.

### § 523.42    Earning First Step Act Time Credits.

(a) *When an eligible inmate begins earning FSA Time Credits.* An eligible inmate begins earning FSA Time Credits after the inmate's term of imprisonment commences (the date the inmate arrives or voluntarily surrenders at the designated Bureau facility where the sentence will be served).

(b) *Dates of participation in EBRRs or PAs.* (1) An inmate cannot earn FSA Time Credits for programming or activities in which he or she participated before December 21, 2018, the date of enactment of the First Step Act of 2018.

(2) An eligible inmate, as defined in this subpart, may earn FSA Time Credits for programming and activities in which he or she participated from December 21, 2018, until January 14, 2020.

(3) An eligible inmate, as defined in this subpart, may earn FSA Time Credit if he or she is successfully participating in EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment on or after January 15, 2020.

(c) *Amount of FSA Time Credits that may be earned.* (1) For every thirty-day period that an eligible inmate has successfully participated in EBRR Programs or PAs recommended based on the inmate's risk and needs assessment, that inmate will earn ten days of FSA Time Credits.

(2) For every thirty-day period that an eligible inmate has successfully participated in EBRR Programs or PAs recommended based on the inmate's risk and needs assessment, that inmate will earn an additional five days of FSA Time Credits if the inmate:

(i) Is determined by the Bureau to be at a minimum or low risk for recidivating; and

(ii) Has maintained a consistent minimum or low risk of recidivism over the most recent two consecutive risk and needs assessments conducted by the Bureau.

### § 523.43    Loss of FSA Time Credits.

(a) *Procedure for loss of FSA Time Credits.* An inmate may lose earned FSA Time Credits for violation of the requirements or rules of an EBRR Program or PA. The procedures for loss of FSA Time Credits are described in 28 CFR part 541.

(b) *How to appeal loss of FSA Time Credits.* Inmates may seek review of the loss of earned FSA Time Credits through the Bureau's Administrative Remedy Program (28 CFR part 542).

(c) *Restoration of FSA Time Credits.* An inmate who has lost FSA Time Credits under this subpart may have part or all of the FSA Time Credits restored to him or her, on a case-by-case basis, after clear conduct (behavior clear of inmate disciplinary infractions under 28 CFR part 541) for two consecutive risk and needs assessments conducted by the Bureau.

### § 523.44    Application of FSA Time Credits.

(a) *How Time Credits may be applied.* For any inmate eligible to earn FSA Time Credits under this subpart who is:

(1) Sentenced to a term of imprisonment under the U.S. Code, the Bureau may apply FSA Time Credits toward prerelease custody or supervised release as described in paragraphs (c) and (d) of this section.

(2) Subject to a final order of removal under immigration laws as defined in 8 U.S.C. 1101(a)(17) (*see* 18 U.S.C. 3632(d)(4)(E)), the Bureau may not apply FSA Time Credits toward prerelease custody or early transfer to supervised release.

(3) Serving a term of imprisonment pursuant to a conviction for an offense under laws other than the U.S. Code (see Section 105 of the FSA, Pub. L. 115–391, 132 Stat. 5214 (not codified; included as note to 18 U.S.C. 3621)), the Bureau may not apply FSA Time Credits toward prerelease custody or early transfer to supervised release. This paragraph (a)(3) will not bar the application of FSA Time Credits, as authorized by the DC Code, for those serving a term of imprisonment for an offense under the DC Code.

(b) *Consideration for application of FSA Time Credits.* Where otherwise permitted by this subpart, the Bureau may apply FSA Time Credits toward prerelease custody or early transfer to

supervised release under 18 U.S.C. 3624(g) only if an eligible inmate has:

(1) Earned FSA Time Credits in an amount that is equal to the remainder of the inmate's imposed term of imprisonment;

(2) Shown through the periodic risk reassessments a demonstrated recidivism risk reduction or maintained a minimum or low recidivism risk, during the term of imprisonment; and

(3) Had the remainder of his or her imposed term of imprisonment computed under applicable law.

(c) *Prerelease custody.* The Bureau may apply earned FSA Time Credits toward prerelease custody only when an eligible inmate has, in addition to satisfying the criteria in paragraph (b) of this section:

(1) Maintained a minimum or low recidivism risk through his or her last two risk and needs assessments; or

(2) Had a petition to be transferred to prerelease custody or supervised release approved by the Warden, after the Warden's determination that:

(i) The prisoner would not be a danger to society if transferred to prerelease custody or supervised release;

(ii) The prisoner has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities; and

(iii) The prisoner is unlikely to recidivate.

(d) *Transfer to supervised release.* The Bureau may apply FSA Time Credits toward early transfer to supervised release under 18 U.S.C. 3624(g) only when an eligible inmate has, in addition to satisfying the criteria in paragraphs (b) and (c) of this section:

(1) An eligible inmate has maintained a minimum or low recidivism risk through his or her last risk and needs assessment;

(2) An eligible inmate has a term of supervised release after imprisonment included as part of his or her sentence as imposed by the sentencing court; and

(3) The application of FSA Time Credits would result in transfer to supervised release no earlier than 12 months before the date that transfer to supervised release would otherwise have occurred.

**Subchapter C—Institutional Management**

### PART 541—INMATE DISCIPLINE AND SPECIAL HOUSING UNITS

■ 3. The authority citation for part 541 continues to read as follows:

**Authority:** 5 U.S.C. 301; 18 U.S.C. 3621, 3622, 3624, 4001, 4042, 4081, 4082 (Repealed in part as to offenses committed on or after November 1, 1987), 4161–4166 (Repealed as

**Federal Register** / Vol. 87, No. 12 / Wednesday, January 19, 2022 / Rules and Regulations **2719**

to offenses committed on or after November 1, 1987), 5006–5024 (Repealed October 12, 1984 as to offenses committed after that date), 5039; 28 U.S.C. 509, 510.

■ 4. Amend § 541.3 in paragraph (b), Table 1, by:

■ a. Under the heading "Available Sanctions for Greatest Severity Level Prohibited Acts", adding the entry B.2 in alphanumeric order;

■ b. Under the heading "Available Sanctions for High Severity Level Prohibited Acts", adding the entry B.2 in alphanumeric order;

■ c. Under the heading "Available Sanctions for Moderate Severity Level Prohibited Acts", adding the entry B.2 in alphanumeric order; and

■ d. Under the heading "Available Sanctions for Low Severity Level Prohibited Acts", adding the entry B.2 in alphanumeric order.

The additions read as follows:

**§ 541.3 Prohibited acts and available sanctions.**

\* \* \* \* \*

(b) \* \* \*

TABLE 1—PROHIBITED ACTS AND AVAILABLE SANCTIONS

| | | | | | | |
|---|---|---|---|---|---|---|
| \* | \* | \* | \* | \* | \* | \* |
| **Available Sanctions for Greatest Severity Level Prohibited Acts** | | | | | | |
| \* | \* | \* | \* | \* | \* | \* |
| B.2 .......................... Forfeit up to 41 days of earned First Step Act (FSA) Time Credits (*see* 28 CFR part 523, subpart E) for each prohibited act committed. | | | | | | |
| \* | \* | \* | \* | \* | \* | \* |
| **Available Sanctions for High Severity Level Prohibited Acts** | | | | | | |
| \* | \* | \* | \* | \* | \* | \* |
| B.2 .......................... Forfeit up to 27 days of earned FSA Time Credits for each prohibited act committed. | | | | | | |
| \* | \* | \* | \* | \* | \* | \* |
| **Available Sanctions for Moderate Severity Level Prohibited Acts** | | | | | | |
| \* | \* | \* | \* | \* | \* | \* |
| B.2 .......................... Forfeit up to 14 days of earned FSA Time Credits for each prohibited act committed. | | | | | | |
| \* | \* | \* | \* | \* | \* | \* |
| **Available Sanctions for Low Severity Level Prohibited Acts** | | | | | | |
| \* | \* | \* | \* | \* | \* | \* |
| B.2 .......................... Forfeit up to 7 days of earned FSA Time Credits (only where the inmate is found to have committed a second violation of the same prohibited act within 6 months; forfeit up to 14 days of FSA Time Credits (only where the inmate is found to have committed a third violation of the same prohibited act within 6 months). | | | | | | |
| \* | \* | \* | \* | \* | \* | \* |

\* \* \* \* \*

■ 5. Amend § 541.7 by revising paragraph (f) to read as follows:

**§ 541.7 Unit Discipline Committee (UDC) review of the incident report.**

\* \* \* \* \*

(f) *Sanctions.* If you committed a prohibited act or prohibited acts, the UDC can impose any of the available sanctions in Tables 1 and 2 of § 541.3, except loss of good conduct time credit, FSA Time Credits, disciplinary segregation, or monetary fines.

[FR Doc. 2022–00918 Filed 1–14–22; 4:15 pm]

**BILLING CODE P**

---

## ENVIRONMENTAL PROTECTION AGENCY

### 40 CFR Part 52

**[EPA–R05–OAR–2021–0535; FRL–9444–02–R5]**

**Air Plan Approval; Wisconsin; Wisconsin Nonattainment New Source Review Certification for the 2015 Ozone NAAQS**

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Direct final rule.

**SUMMARY:** The Environmental Protection Agency (EPA) is approving, as a State Implementation Plan (SIP) revision, Wisconsin's certification that its SIP satisfies the nonattainment new source review (NNSR) requirements of the Clean Air Act (CAA) for the 2015 ozone National Ambient Air Quality Standard (NAAQS).

**DATES:** This direct final rule will be effective March 21, 2022, unless EPA receives adverse comments by February 18, 2022. If adverse comments are received, EPA will publish a timely withdrawal of the direct final rule in the **Federal Register** informing the public that the rule will not take effect.

**ADDRESSES:** Submit your comments, identified by Docket ID No. EPA–R05–OAR–2021–0535 at *http://www.regulations.gov* or via email to *damico.genevieve@epa.gov.* For comments submitted at *Regulations.gov*, follow the online instructions for submitting comments. Once submitted,

IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF MARYLAND

William A White

    Petitioner

v,

FNU Carter, Warden, FCI-Cumberland

    Respondent

Case No: 1:22-cv-02371-DKC

FILED ___ ENTERED ___
LOGGED ___ RECEIVED ___

NOV 1 0 2022

AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
        DEPUTY

## RESPONSE TO THE MOTION TO DISMISS (Doc3)

Comes Now the Petitioner, William A White, and, I make the following Response to the Government's Motion to Dismiss (Doc3)

## Factual And Procedural Background

1) In this habeas action under 28 USC §2241, I challenge the Constitutionality of 28 CFR §523.41(c) as applied to me to deny me eleven days of Earned Time Credits ("ETCs") under 18 USC §3632(d)(4). Doc1 para 11-16. The government, instead of addressing this issue, moves to dismiss some other motion about the application of ETCs which I never filed Doc3 p. 7, 9-11. Because the government doesn't address the motion I filed, doesn't argue that administrative remedy was available to me, doesn't actually request summary judgment and didn't provide me with a Roseboro v. Garrison 528 F2d 309 (4ᵗᵈ (in1975), their motion is due to be denied.

2) The parties agree on the relevant facts: between July 21, 2022, and August 22, 2022, I was held in the Special Housing Unit ("SHU") at the Federal Transfer Center

("FTC") at Oklahoma City and the Federal Correctional Institution ("FCi")-Cumberland. Doc 3-4 p.3 para 5-6, p.9; Doc 3-5. As a result, I failed to earn ETCs for 33 program days (I've been apparently denied credit for August 23, 2022, as well). Doc 3-4 p.28-29. During those 33 program days, I would have earned 11 ETC days at a rate of 10 ETC days per 30 program days, these ETC days can ultimately be applied to the end of my sentence to reduce my time spent in custody. Doc 3-4 para 13.

Administrative Remedy

3) I allege in my petition and now aver in the attached Sworn Declaration of William A. White ("White Decl") para 2 that I filed a "BP-8" challenging the Constitutionality of being denied ETCs for SHU confinement without Due Process during the period July 21 to August 22, 2022 on July 26, 2022. Decl para. 10. I then requested a "BP-9" form from Counselor JD Washington on August 4,5,11,14,16,23 and 26, 2022. Decl para 10. Washington ultimately refused to provide me with a BP-9 form because the BP-8 was never returned. Doc 1 para 10. 28 CFR §542.14 requires that I file my administrative remedy within 20 days "on the appropriate form (BP-9). On the 21st day, with remedies unavailable, I filed this action.

4) The government doesn't dispute my factual account. Doc 3-1 p.9. Instead, it claims that I filed "fifty seven administrative remedies" during a different period, "January 1, 2022 through October 12, 2022." Doc 3-1 p.9. It also explains that, in the "Remedy 10 Field" of its records, "The letter 'F' indicates that the submission was received by an individual federal correctional facility... The letter 'R' indicates that the submission was received by [an] individual regional office." Doc 3-3 p.2. Regional-level remedies are filed on BP-10 forms.

J.A. 2129

28 CFR §542.15. Central Office appeals (code "A") are filed by mail on "BP-11" forms 28 CFR §542.15; Doc 3-3 p.2. I do not dispute that I was provided with BP-10 and BP-11 forms. White Decl para 3.

5) The records provided do not include "BP-8" filings. Doc 3-3 para 6 p.2 (excluding mention of informal remedies).

6) During the time period in question, July 21, 2022, to September 11, 2022, seven remedies (with nine entries) were filed, all at the Regional or Central level, and, thus, all on BP-10 and BP-11 forms. Doc 3-3 p.40-44. Because they are filed by mail, some were filed from FCI-Terre Haute. The last BP-9 I filed was July 6, 2022, at FCI-Terre Haute. Doc 3-3 p.39.

7) "An inmate must exhaust available administrative remedies, but, need not exhaust unavailable ones." Ross v. Blake 578 US 632 (2016). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette 517 F3d 717 (4th Cir 2008). Administrative remedy is unavailable when "prison administrators thwart inmates from taking advantage of a grievance process." Ross.

8) Here, I've pled that Counselor Washington refused to provide me with BP-9 forms. Doc1 para 10. I don't contest that I received BP-10 and BP-11 forms. Doc1 para 10; White Decl para 3. The government's burden on the affirmative defense of failure to exhaust is to show that I could have obtained a BP-9 form but didn't; their records show only that I filed BP-10 and BP-11 forms, and, there is no contra-dictory declaration here from Washington. United States v. Muhammed, 16 F4th

J.A3130

126 (4ᵀᴴ Cir 2021) (burden on United States). And, if there was a declaration from Washington, my sworn declaration still precludes summary judgment. Hill v. Haynes 380 Fed Appx 268 (4ᵀᴴ Cir 2010). I wasn't required to conduct a scavenger hunt for remedy forms and I asked Washington for forms seven times. Hill v. Snyder 817 F3d 1037 (7ᵀᴴ Cir 2016); Doc 1 para. 10. Here, BOP staff chose to make the remedy system unavailable, so, I went to Court.

## The Government Fails To Ask For Summary Judgment

9) In Doc 3, while labelling their motion one "to Dismiss Complaint Or, In The Alternative, For Summary Judgment", the government only "moves to dismiss ... for failure to state a claim, pursuant to Federal Rule of Civil Procedure (12)(b)(6)." This doesn't properly request summary judgment, and, failure to exhaust is not evident from the face of the petition, so, the government's failure to exhaust argument is forfeit. United States v. Duroseau 26 F4ᵀᴴ 674 (4ᵀᴴ Cir 2021) ("forfeiture is the failure to make the timely assertion of a right").

## The Government Failed To Provide A Roseboro v. Garrison 528 F3d 329 (4ᵀᴴ Cir 1975) Notice

10) I am a pro se prisoner, and, the government filed a dispositive motion without a Roseboro notice. The motion must be denied. See, eg, Pledger v. Lynch 5 F4ᵀᴴ 511 (4ᵀᴴ Cir 2021) citing Carter v. Hutto 781 F2d 1028 (4ᵀᴴ Cir 1982)

**I Don't Seek To Have My ETCs Applied In This Motion**

11) The government and I agree that the earning and the application of ETCs are separate concepts. Doc3 p.7,9. The earning of ETCs is governed by 18 USC §3632(d)(4); the application by 18 USC §3624(g). Here, I challenge the Constitutionality of 28 CFR §523.41(c)'s bar on me earning ETCs while in the Special Housing Unit ("SHU"). Doc1 para 10-16. Nowhere do I ask for the credits to be applied, and, I will not be eligible for their application until at least 2029.

12) An inmate does not have to show that he is actually eligible to be released on good conduct before challenging the calculation or earning of good conduct time credits. see, e.g. Preiser v. Rodriguez 411 US 475 (1973) ("Even if the restoration of the respondent's credits would not have resulted in their immediate release, but only in shortening the length of their actual confinement in prison, habeas corpus would have been the appropriate remedy.") The government suggests that I can only contest my ETC calculation within 18 months of my Good Conduct Time release date of May 29, 2037. Doc3 p.12-13. But, my claim has already accrued. Nasim v. Warden, Md House of Corr 64 F.3d 951 (4th Cir 1995) (en banc) (claim accrues when claimant knows of harm and cause). And, given the two years of statutory halfway house time, 18 USC §3624(c)(1) my existing 640 days of ETCs, and, the 14½ years left on my sentence, I will be eligible to have my ETCs applied approximately eight years before my GCT release date. So, by the government's logic, I would only be able to challenge my ETC calculation 6½ years after I'm due to be released to a halfway house or home confinement.

<u>The Government Doesn't Address The Constitutionality Of 28 CFR §523.41(c)</u>

13) The government and I agree, Doc3 p. 11-13, that 28 CFR §523.41(c) prevents me from earning ETCs while in SHU. I argue that this regulation is unConstitutional under Wolff v. McDonnell 418 US 39 (1974) Doc1 para 11-16. The government fails to address this argument, and, thus, forfeits it. Duroseau In my pleading, I was required to state "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal 556 US 662 (2009). As the government forfeits its argument that my claim is not plausible on its face, this claim should proceed to a briefing on the merits.

Respectfully Submitted,

William A White # 13888-084

FCI-Cumberland

PO Box 1000

Cumberland, MD 21501

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that this Response was mailed to the Clerk of the Court and AUSA Beatrice C. Thomas, counsel for the defendants, 1ST Class Postage Prepaid, this 7th day of November, 2022.

William A White

J.A. 133

IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF MARYLAND

William A White
    Petitioner

v.

FNU Carter, Warden, FCI-Cumberland
    Respondent

Case No: 1:22-cv-02371-DKC

SWORN DECLARATION OF WILLIAM A WHITE

I, William A White, do hereby aver under penalty of perjury this 6th day of November, 2022, that the following is true and correct:

1) I am over-18 and have personal knowledge of the following.

2) The allegations of para 5-10 of Doc1, the Petition for Writ of Habeas Corpus, are true.

3) While Counselor Washington did deny me access to BP-9 forms during the period July 25, 2022, to September 11, 2022, I did obtain BP-10 and BP-11 forms from him during that period.

Having so averred, I sayeth no more under oath.

William A White

J.A. 134

William A White #13888-084
Federal Correctional Institution-Cumberland
POBox 1000
Cumberland, MD 21501

BALTIMORE MD

8 NOV 2022   PM 4

FILED ___ ___ ENTERED
LOGGED ___ ___ RECEIVED

Inspected By
Court Security Office

NOV 10

Baltimore, MD

NOV 10 2022

CLERK
UNITED STATES DISTRICT COURT
    FOR THE DISTRICT OF MARYLAND
6500 CHERRY WOOD LN
GREENBELT, MD 20770

received
NOV -5 2022
FCI CUM
Mailroom

LEGAL MAIL

20770-720350

USCA4 Appeal: 23-7116     Doc: 20     Filed: 05/21/2025     Pg: 138 of 236

J.A. 135

FEDERAL CORRECTIONAL INSTITUTION
14601 BURBRIDGE ROAD, SE
CUMBERLAND, MARYLAND 21502

received
NOV -5 2022
FCI CUM
Mailroom

PLEASE RETURN
ABOVE ADDRESS.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WIILLIAM WHITE,                         )
                                        )
        Petitioner,                     )
                                        )    Civil Action No. 1:22-CV-2371-DKC
        v.                              )
                                        )
FIRST NAME UNKNOWN ("FNU")              )
CARTER, WARDEN, FCI CUMBERLAND          )
                                        )
        Respondent.                     )
_____

**REPLY TO PETITIONER'S RESPONSE TO THE MOTION TO DISMISS**

Warden, FCI Cumberland (the "Respondent"), by and through undersigned counsel, Erek L. Barron, United States Attorney for the District of Maryland, and Beatrice C. Thomas, Assistant United States Attorney for said District, respectfully submits this Reply to Petitioner's Response to the Motion to Dismiss (the "Response"). For the reasons stated herein, as well as those stated in the initial memorandum in support of the Respondent's Motion to Dismiss or, in the alternative, for Summary Judgment, the Motion to Dismiss should be granted.

**INTRODUCTION**

In the Response, William White ("Petitioner") claims he was unable to access the administrative remedy system because his Counselor would not provide him with the appropriate form. *See* ECF No. 5, pp. 2-4, ¶¶ 3-8. Yet, as explained below, Petitioner neither filed all the required documentation nor waited to receive the appropriate response before attempting to proceed throughout the grievance process, as required by the Bureau of Prisons ("BOP"). ECF No. 5, pp. 2-4, ¶¶ 3-8. Thus, he failed to fully exhaust his administrative remedies pursuant to the BOP grievance process. Petitioner also alleges that the "Government filed a dispositive motion without a *Roseboro* notice[,]" and therefore the Motion to Dismiss should be denied. ECF No. 5,

1

J.A. 137

p. 4, ¶ 10.  However, on October 28, 2022, Petitioner was issued a "Rule 12/56" Notice informing him that the Respondent filed a Motion to Dismiss or, in the alternative, for Summary Judgment. *See* ECF No. 4.  Thus, Petitioner's arguments regarding notice fail.

Petitioner repeats his challenge to the the constitutionality of 28 C.F.R. § 523.41(c) and contends that the "Government fails to address this argument, and thus, forfeits it."   ECF No. 5, p. 6, ¶ 13.  Petitioner's objection is without merit. As detailed *infra*, BOP has deference in interpreting the statutes it administers, and absent an interpretation that is "plainly erroneous or inconsistent with the regulation," the Court should follow the agency's interpretation.  *See Auer v. Robbins*, 519 U.S. 452, 461 (1997).  Moreover, in accordance with BOP's new policy changes, all inmates' sentences are in the process of being recalculated to determine if the inmate is entitled to additional Time Credits.  To the extent Petitioner argues that he should have earned Time Credit while he was in a Special Housing Unit ("<u>SHU</u>"), Petitioner, like every other inmate in the BOP, must wait to have his Time Credits recalculated in accordance with the new policy.

## ARGUMENT

### I.   Petitioner's claim was not properly presented through BOP's administrative remedy process.

Petitioner, who is familiar with the administrative process, did not comply with BOP's administrative grievance process, as he failed to correct errors with his submitted forms and appropriately appeal pursuant to BOP's procedures.  ECF No. 5, p. 2, ¶ 3.  The Supreme Court has long held that administrative exhaustion is mandatory.  *Ross v. Blake*, 578 U.S. 632, 639 (2016). A claim that has not been exhausted cannot be considered by this Court.  *Jones v. Bock*, 549 U.S. 199, 220 (2007).  Generally, an inmate must follow the required procedural steps in order to exhaust his administrative remedies.  *Moore v. Bennette*, 517 F.3d 717, 725, 729 (4th Cir. 2008). Exhaustion mandates the completion of "the administrative review process in accordance with the

2

J.A. 138

applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" *Id.* at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Hence, a court ordinarily may not excuse a failure to exhaust. *Ross*, 578 U.S. at 639.

Petitioner concedes that he did not fully complete BOP's administrative process. In his Response, Petitioner states that he was not provided the BP-9 form because his BP-8 form was not returned. ECF No. 5, p. 2, ¶ 3. While Plaintiff submits a self-affirming declaration that he received the BP-10 and BP-11 forms, he admits he did **not** submit the BP-9 form. ECF No. 5, p. 6 (emphasis added). Furthermore, Petitioner acknowledges that the agency's records do not show that he submitted a BP-8 form, nor does Petitioner state that he actually returned the BP-8 form, the reason his Counselor offered for not providing him with the BP-9 form. ECF No. 5, p. 3, ¶ 5. Even if Petitioner filed the BP-10 and BP-11 forms, he failed to rectify remedies that were rejected and did not attempt to properly exhaust up to the Central Office level. *See* ECF No. 3-1, p. 9 (citing Ex. 1, ¶ 7, at Attachment B). Because Plaintiff has failed to follow the required procedural steps in exhausting his administrative remedies regarding the instant claim, the claim must be dismissed.

## II.    Petitioner received proper *Roseboro* notice.

Petitioner received sufficient notice that the Respondent's motion may have been converted to one for summary judgment, comporting with? the requirements of *Roseboro v Garrison*, 528 F.2d 309 (4th Cir. 1975). In *Roseboro,* the Fourth Circuit held a *pro se* inmate-plaintiff was entitled to fair notice of the requirements of the summary judgment rule. *Id.* at 310. Particularly, the Court reiterated that:

> We hold that before entering summary judgment against appellant, the District Court, as a bare minimum, should have provided him with fair notice of the

3

J.A. 139

> requirements of the summary judgment rule. We stress the need for a form of notice sufficiently understandable to one in appellant's circumstances fairly to apprise him of what is required.

*Id*. (citing *Hudson v. Hardy*, 134 U.S. App. D.C. 44, 47 (1968)).  Here, after receipt of the Respondent's Motion to Dismiss or, in the alternative, for Summary Judgment on October 28, 2022, ECF No. 3, the Clerk of this Court mailed a "Rule 12/56 Notice" to Petitioner.  ECF No. 4.  This notice informed Petitioner of the consequences of a failure to respond to the Respondent's motion, and that he had twenty-eight (28) days to respond.  *Id*.  This Court has routinely recognized that the "Rule 12/56 Notice" satisfies *Roseboro's* requirements.  *See e.g., Hutton v. Hickman*, No. ELH-19-3665, 2020 WL 7640825 (D. Md. Dec. 23, 2020); *Collins v. Gang*, No. JKB-19-2526, 2020 WL 7384877 (D. Md. Dec. 16, 2020); *Bogues v. Bishop*, No. CCB-19-2035, 2020 WL 5759758 (D. Md. Sept. 28, 2020).  Indeed, only 13 days after the mailing of the "Rule 12/56 Notice," Petitioner filed his Response to the Motion to Dismiss on November 10, 2022.  *See* ECF No. 5.  Additionally, Petitioner submitted a self-affirming declaration in support of his own Response to the Motion to Dismiss.  *Id*.  Thus, Petitioner had sufficient notice of Respondent's intent to seek summary judgment in this action.

**III.    Congress has conferred deference on BOP in relation to the statutes it administers, and its interpretation of 28 C.F.R. § 523.41(c) is constitutional.**

Plaintiff's allegation that 28 C.F.R. § 523.41(c) is unconstitutional ignores BOP's authorized deference in the application of First Step Act (FSA) Time Credits and related statutes, pursuant to *Chevron, U.S.A., Inc. v. NRDC, Inc.,* 467 U.S. 837, 865 (1984).  Under bedrock principles of administrative law, courts defer to an agency's interpretation of a statute when the agency has been "charged with responsibility for administering the provision" by Congress.  *See Chevron,* 467 U.S. at 865; *see also Smiley v. Citibank, N.A.,* 517 U.S. 735, 739 (1996) ("It is our practice to defer to the reasonable judgments of agencies with regard to the meaning of ambiguous terms in statutes

J.A. 140

that they are charged with administering."). Courts give weight to the agency's interpretation of a statute it administers because of the "presumption that Congress, when it left ambiguity in a statute meant for implementation by an agency, understood that the ambiguity would be resolved, first and foremost, by the agency, and desired the agency (rather than the courts) to possess whatever degree of discretion the ambiguity allows." *Smiley,* 517 U.S. at 740-41. Courts similarly defer to an agency's interpretation of its own regulations. *See Robbins*, 519 U.S. at 461-62. Although some deference is always given to an agency's interpretation of a statute it administers, the level of deference varies. If Congress delegated authority to an agency to make rules with the force of law and the agency acted pursuant to that delegated authority in interpreting the statutory scheme, then courts review that statutory interpretation under the standards set forth in *Chevron. See United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001).

Under *Chevron*, if the statute is silent or ambiguous, the courts will uphold the agency's interpretation if it "is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 845; *see also Lopez v. Davis*, 531 U.S. 230, 242 (2001) (holding the Bureau had the authority to fill the "statutory gap" in § 3621(e)'s early release provision in a reasonable manner in light of the Congress' "revealed design"). Therefore, if 18 U.S.C. § 3632(d)(4) is clear on its face, then it must be applied by BOP as written. However, if 18 U.S.C. § 3632(d)(4) is ambiguous, "the question for the court is whether" BOP's interpretation of 18 U.S.C. § 3632(d)(4) is a reasonable and "permissible construction of the statute." *Chevron*, 467 U.S. at 843.

18 U.S.C. § 3632(d)(4) provides for the eligibility and application of Time Credits. Specifically, in 18 U.S.C. § 3632(d)(4)(A), Congress stated: "A prisoner, except for an ineligible prisoner under subparagraph (d), who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn Time Credits." However, Congress did not define

how the BOP should classify "successfully completed." Therefore, BOP, following a time period

for comments, published 28 C.F.R. § 523.41(c), based on its discretion. Accordingly, 28 C.F.R. §

523.41(c) states:

> (1) An eligible inmate must be "successfully participating" in EBRR[1] Programs or PAs[2] to earn FSA Time Credits for those EBRR Programs or PAs.
> (2) "Successful participation" requires a determination by Bureau staff that an eligible inmate has participated in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment, and has complied with the requirements of each particular EBRR Program or PA.
> (3) Temporary operational or programmatic interruptions authorized by the Bureau that would prevent an inmate from participation in EBRR programs or PAs will not ordinarily affect an eligible inmate's "successful participation" for the purposes of FSA Time Credit eligibility.
> (4) An eligible inmate, as described in paragraph (d)[3] of this section, will generally not be considered to be "successfully participating" in EBRR Programs or PAs in situations including, but not limited to:
>
> > (i) *Placement in a Special Housing Unit;*
> > (ii) Designation status outside the institution (*e.g.*, for extended medical placement in a hospital or outside institution, an escorted trip, a furlough, etc.);
> > (iii) Temporary transfer to the custody of another Federal or non-Federal government agency (*e.g.,* on state or Federal writ, transfer to state custody for service of sentence, etc.);
> > (iv) Placement in mental health/psychiatric holds; or
> > (v) "Opting out" (choosing not to participate in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment).

Because 18 U.S.C. § 3632(d)(4) was ambiguous, the BOP is afforded *Chevron* deference in its

application of 28 C.F.R. § 523.41(c). Thus Petitioner's constitutionality argument is

unsubstantiated.

---

[1] EBRRs are Evidenced Based Recidivism Risk Programs.

[2] PAs are Productive Activities.

[3] 28 C.F.R. § 523.41(d) states:

(1) *Eligible to earn FSA Time Credits.* An inmate who is *eligible to earn* FSA Time Credits is an *eligible* inmate for the purposes of this subpart. Any inmate sentenced to a term of imprisonment pursuant to a conviction for a Federal criminal offense, or any person in the custody of the Bureau, is *eligible to earn* FSA Time Credits, subject to the exception description in paragraph (d)(2) of this section.

(2) *Exception.* If the inmate is serving a term of imprisonment for an offense specified in 18 U.S.C. § 3632(4)(D), the inmate is not *eligible to earn* FSA Time Credits.

6

J.A. 142

**IV.    The BOP is in full compliance with the FSA Time Credit statutory mandate.**

    A.    <u>The First Step Act of 2018</u>

Contrary to Petitioner's ill-founded assertion, BOP is in full compliance with FSA's statutory mandate regarding the earning of Time Credits. The FSA amended 18 U.S.C. § 3621, which governs the calculation of federal prison sentences. Section 102(b) of the FSA also amended 18 U.S.C. § 3624(b), allowing federal inmates to earn additional good time credits. Under the FSA, inmates are eligible to earn up to 15 days of time credits for every 30 days of successfully completed BOP-approved recidivism reduction programming. *See Murph v. Andrews*, 2021 WL 3575844, at *2 (E.D. Va. Aug. 12, 2021) (citing 18 U.S.C. § 3632(d)(4)(A)). These time credits can be eligible, at the discretion of the BOP, for various incentives and rewards for successful completion -- most importantly here, time credit applied toward time in prerelease custody or supervised release. *See* 18 U.S.C. §§ 3632 (d)(1) – (4)(C).

The FSA and its programs were not immediately effective upon enactment. *Murph*, 2021 WL 3575844, at *2. Rather, the Attorney General was required to complete and release a "Risk and Needs Assessment," which was published in 2019.[4] *Knight*, 2021 WL 1753791, at *3. The BOP was then required to phase-in the system created under the Needs Assessment, expand and implement programming, productive activities, and opportunities to eligible inmates, and award earned time credits by January 2022. *Id.* (citing *Llufrio v. Johns*, 2020 WL 5248556, at *2 (S.D. Ga. Aug. 13, 2020) and 18 U.S.C. § 3621(h)).

---

[4] The First Step Act of 2018: Risk and Needs Assessment System is available at the Bureau of Prisons' website: https://www.bop.gov/inmates/fsa/docs/the-first-step-act-of-2018-risk-and-needs-assessment-system-updated.pdf

7

J.A. 143

B.    January 2022 Final Rule

On January 19, 2022, the BOP published its "procedures regarding the earning and application of Time Credits as authorized by the First Step Act of 2018." *See* FSA Time Credits, p.1, 87 Fed. Reg. 12, 2705 (January 19, 2022) (codified at 28 C.F.R. pt. 523).

Eligible inmates receive retroactive time credits for programming and activities they participated in starting on December 21, 2018, the date of the FSA's enactment. *Id.* In determining to award FSA Time Credits during the period before all individualized risk and needs assessments had been completed, BOP exercised its discretion to afford eligible inmates a presumption of participation and award of time credits for the period between December 21, 2018, and January 14, 2020. *Id.* Inmates did not receive credit for any period in which they were in a special housing unit, in a designation status outside the institution, temporarily transferred to the custody of another federal or non-federal government agency, in mental health/psychiatric holds, or while refusing mandatory programming. *Id.* Additionally, the final rule specified how an inmate could receive credit towards prerelease custody or supervised release:

> (b) ***Consideration for application of FSA Time Credits***. Where otherwise permitted by this subpart, the Bureau may apply FSA Time Credits toward prerelease custody or early transfer to supervised release under 18 U.S.C. 3624(g), only if an eligible inmate has:
> (1) Earned FSA Time Credits in an amount that is equal to the remainder of the inmate's imposed term of imprisonment;
> (2) Shown through the periodic risk reassements a demonstrated recidivism risk reduction or maintained a minimum or low recidivism risk, during the term of imprisonment; and
> (3) Had the remainder of his or her imposed term of imprisonment computed under applicable law.
> (c) ***Prerelease custody.*** The Bureau may apply earned FSA Time Credits toward prerelease custody only when an eligible inmate has, in addition to satisfying the criteria in paragraph (b) of this section:
> (1) Maintained a minimum or low recidivism risk through his or her last two risk and needs assessments.

8

J.A. 144

*See* 28 CFR 523.44. Furthermore, the inmate must be "successfully participating" in his or her evidence-based recidivism reduction program (EBRR) through needs assessment and compliance with the requirements of each EBRR program or productive activity. *See* 28 CFR 523.41. The BOP refers to this process as "opt-in." If an inmate is not complying with needs assessment, is considered to be in "opt-out" status and will not receive Time Credits for that period of time.

C.       Final Rule Interim Procedures

On January 12, 2022, the BOP established interim procedures to ensure timely implementation of the FSA final rule. *See* **Exhibit 1**, Supplemental Declaration of Brittny May ("May Declaration"), p. 1, ¶ 3. Interim procedures *were established to prioritize inmates eligible for immediate benefit in terms of release or pre-release community placement.* **Ex. 1,** May Declaration, pp. 1-2, ¶ 3. (emphasis in original). The interim procedures remained in effect until August 31, 2022, when the BOP launched its auto-calculation application. **Ex. 1,** May Declaration, p, 2, ¶ 3. This application fully automated the calculation of FSA Time Credits and eliminated manual calculation of credit. *Id.* The system was expected to go live on September 6, 2022. *Id.* Following some unexpected glitches, auto-calculation was implemented on September 30, 2022. *Id.*

D.       Automated or Auto-calculation System

On August 31, 2022, the interim procedures ceased, and the permanent Automated Time Credit calculation and application process began. **Ex. 1,** May Declaration, p, 2, ¶ 4. Under the auto-calculation application, eligible inmates would continue to earn Time Credits towards supervised release or prerelease custody up to 365 days towards supervised release, or 18 months from their release date, whichever occurred first. *Id.* The 18-month cut off recognized  the need

9

J.A. 145

for a predictable release date to afford effective prerelease preparation planning, including transfer to community-based residential programs to facilitate community transition.  *Id.*

With respect to inmates in administrative detention in SHU unable to receive Time Credits pursuant to a strict interpretation in 28 C.F.R. § 523.41(c), Respondent relies on its Memorandum in Support of Motion to Dismiss or, in the alternative, Motion for Summary Judgment.  *See* ECF No. 3, pp. 11-13.

E.    Final Policy

On November 18, 2022, the BOP published BOP Program Statement 5410.01, First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d).  *See* BOP Program Statement 5410.01, First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)*, available at* 5410_01.pdf (bop.gov); *see also* **Ex. 1,** May Declaration, p. 2, ¶ 5.  The Program Statement implements the January Final Rule and explains application of Time Credits earned towards inmates' prerelease custody or supervised release.

Time Credits will be auto-calculated based on 30-day increments while the inmate is in earning status, i.e., not in opt-out status.  *Id.,* pg. 11.  The BOP defines "opting out" as choosing not to participate in the EBRR programs or PAs ("Productive Activities") that BOP has recommended based on the inmates' individual risk and needs assessment."  *Id.,* pg. 5; *see also* 28 CFR 523.41(c).  "Time Credits will be credited on a monthly basis agency-wide, as well as during scheduled Program Reviews, based on a completed 30-day period."  *See* BOP Program Statement 5410.01, pg. 11.  Accordingly, "no Time Credits will post if the inmate has not accrued 30 days in earning status." *Id.*  "Rather, any days in earning status will carry over to the next monthly cycle." *Id.*  Therefore, this provision explains that the 30-days does not mean calendar days.

J.A. 146

Additionally, the policy explained what "successful participation" means and while 28 C.F.R. § 523.41(c) states that inmates who are in the SHU may not earn FSA Time Credits, the BOP has exercised its discretion and has now implemented the following:

> Inmates in Disciplinary Segregation status will not be considered to be "successfully participating." Inmates in restrictive housing for Administrative Detention shall obtain FTCs if they otherwise remain in earning status under the policy.

*See* BOP Program Statement 5410.01, pg. 4. Pursuant to BOP Program Statement 5270.11 and 28 CFR 541.51, SHUs are "housing units in Bureau institutions where inmates are securely separated from the general inmate population . . . to help ensure the safety, security, and orderly operation of correctional facilities, and protect the public." *See* BOP Program Statement 5270.11, Special Housing Units, *available* 5270.11.pdf (bop.gov). When placed in the SHU, an inmate is either designated "administrative detention status" or "disciplinary segregation status." *Id.* and 28 CFR 541.22. Administrative detention status is a "status which removes you from the general population when necessary to ensure the safety, security, and orderly operations of correctional facilities, or to protect the public. It is non-punitive." *Id.* at p. 3. An inmate can be placed in this status for the following reasons: pending classification or reclassification, holdover status, removal from general population – an inmate's presence in general population poses a threat to life, property, self, staff, other inmates, the public, or the security or orderly running of the institution, as well as because of investigation, transfer, protection, or post-disciplinary segregation. *Id.* 4-5; *see also* 28 CFR 541.23. Disciplinary segregation status is a "punitive status imposed only by the Discipline Hearing Office as a sanction for committing a prohibited act(s)." BOP Program Statement 5410.01, pg. 4.

11

J.A. 147

F.    Petitioner's Current Status

Here, Petitioner was in administrative detention status following his transfer from Oklahoma City. *See* ECF No. 3-1, pg. 2. With the release of this new policy, the BOP is implementing the policy changes that were made, including the removal of the 18-month requirement that was a hallmark of the auto-calculated system. **Ex. 1,** May Declaration, p. 2, ¶ 6. Additionally, every inmate must have their auto-calculation recalculated to ensure that the appropriate amount of Time Credits have been applied. *Id.* at ¶ 7. This is *expected, not guaranteed,* to occur over the next month. *Id.* Once Petitioner is recalculated, if Petitioner is entitled (which is determined based on whether he was in earning status while in the SHU) to additional Time Credits, any available Time Credits may be applied accordingly, if able and in accordance with BOP Program Statement 5410.01. *Id.* at ¶ 8.

## CONCLUSION

For the reasons described above, the Respondent respectfully requests that this Court dismiss the Petition or, in the alternative, enter summary judgment in favor of the Respondent for failure to administratively exhaust, or in the alternative, for failure to state a claim.

Respectfully submitted,

EREK L. BARRON
United States Attorney

    /s/
Beatrice C. Thomas (Bar No. 21969)
Assistant United States Attorney
36 South Charles Street, 4th Floor
Baltimore, Maryland 21201
410-209-4848
beatrice.thomas@usdoj.gov

*Counsel for the Respondent*

12

J.A. 148

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 28th day of December 2022, I caused a copy of the

foregoing Reply to Petitioner's Response to the Motion to Dismiss to be mailed, first class, postage

prepaid to:

William White, #13888-084
Federal Correctional Institution - Cumberland
P.O. Box 1000, Inmate Mail/Parcels
Cumberland, MD 21501

_____/s/_____
Beatrice C. Thomas
Assistant United States Attorney

13

J.A. 149

# EXHIBIT 1

# Supplemental Declaration of Brittny May

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WIILLIAM WHITE,                          )
                                         )
            Petitioner,                  )
                                         )        Civil Action No. 1:22-CV-2371-DKC
      v.                                 )
                                         )
FIRST NAME UNKNOWN ("FNU")               )
CARTER, WARDEN, FCI CUMBERLAND           )
                                         )
            Respondent.                  )

---

## DECLARATION OF BRITTNY MAY

In accordance with the provisions of 28 U.S.C. § 1746, I, the undersigned Brittny May, do hereby make the following declaration pertinent to the above-styled cause of action:

1.  I, Brittny May, am presently a Federal Bureau of Prisons ("BOP") Case Manager at the Federal Correctional Institution in Cumberland, Maryland ("FCI Cumberland"). As a case manager at FCI Cumberland, I am responsible for the custody and control of designated inmates including individual counseling, group counseling, and managing reports and correspondence. Additionally, I perform the Risks and Needs Assessments for my case load of inmates, including William White.

2.  I am aware that Petitioner has submitted a reply to Respondent's Motion to Dismiss, or in the alternative, Motion for Summary Judgment.

**The First Step Act Interim Procedures**

3.  On January 12, 2022, the BOP established interim procedures to ensure timely implementation of the FSA final rule. Interim procedures *were established to prioritize*

1

J.A. 151

*inmates eligible for immediate benefit in terms of release or pre-release community placement.* The interim procedures remained in effect until August 31, 2022, at which time the BOP launched its auto-calculation application. This application fully automated the calculation of FSA Time Credits so that manual calculation of credit was no longer required. *Id.* The system was expected to go live on September 6, 2022. However, there were some unexpected glitches. The auto-calculation process was implemented on September 30, 2022.

## The First Step Act Auto-Calculation Procedures

4.      On August 31, 2022, the interim procedures ceased, and the permanent Automated Time Credit calculation and application process began. With the launching of the auto-calculation application, eligible inmates would continue to earn Time Credits towards supervised release or prerelease custody. However, they could only receive up to 365 days towards supervised release, or are 18 months from their release date, whichever happened first. This is an important distinction. This 18-month cut off is necessitated by the need for a predictable release date.

## Final Policy

5.      On November 18, 2022, the BOP published BOP Program Statement 5410.01, First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d).

6.      Upon information and belief, the BOP is implementing the policy changes that were made, including the removal of the 18-month requirement set forth in the auto-calculation procedures.

7.      Upon information and belief, every inmate must have their auto-calculation recalculated to ensure that the appropriate amount of Time Credits have been applied. This is

2

J.A. 152

*expected, not guaranteed,* to occur over the next month.

8.      Upon information and belief, as of the date of this signing, the BOP has not completed its

recalculation for Petitioner. Once Petitioner is recalculated, if Petitioner is entitled to

additional Time Credits, any available Time Credits may be accordingly applied, if able

and in accordance with BOP Program Statement 5410.01.

I declare under the penalty of perjury, the foregoing is true and correct, to the best of my
knowledge, and that all attached documents are true and correct copies of the documents
maintained by the BOP in the ordinary course of business.


Executed on this 28th day of December 2022.

Brittny May
Case Manager
FCI Cumberland

3

J.A. 153

IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF MARYLAND

Baltimore Division

___ FILED  ___ ENTERED
___ LOGGED  ___ RECEIVED

FEB 24 2023

AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

William A White

Petitioner

v.

FNU Carter, Warden, FCI-Cumberland

Respondent

Case No: 1:22-cv-02371-DKC

MOTION FOR LEAVE TO SUPPLEMENT PETITIONER'S RESPONSE
TO THE MOTION TO DISMISS (Doc 3) PURSUANT TO
FED. R. CIV. P. 15(d)

Comes Now the Petitioner, William A White, and, I hereby Move this Court For Leave To Supplement My Response To The Motion To Dismiss (Doc 3) Pursuant To Fed. R. Civ. P. 15(d) with the following transactions, occurrences and events and related argument:

1) Fed. R. Civ. P. 15(d) allows a party with leave of court to "serve a supplemental pleading setting out any transaction, occurrence or event that happened after the date of the pleading to be supplemented." Here, on February 17, 2023, Respondent implemented its current policy on Earned Time Credits ("ETCs") under the First Step Act with regards to the calculations at issue in this case.

2) The instant Petition for Writ of Habeas Corpus Pursuant To 28 USC § 2241 was filed September 12, 2022. Doc 1. In this matter, the Respondent prevented

J.A. 154

me from earning Earned Time Credits ("ETCs") under the First Step Act during the period July 21 to August 22, 2022, without Due Process - nominally because I was in a Special Housing Unit ("SHU"). Doc1. I asked the Court to find that I could not be deprived of ETCs without Due Process pursuant to O'Bar v. Pinion 953 F2d 74 (4ᵀᴴ Cir 1991), Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex 442 US 1 (1979), Wolff v. McDonell 418 US 39 (1974), et alia. Doc1. I also asked that the relevant portions of the implementing regulations, 28 CFR § 523.40, et seq, be declared un-Constitutional. Doc1.

3) The United States responded with a document captioned "Motion to Dismiss Or In The Alternate For Summary Judgment", which only asked for dismissal, on October 28, 2022. Doc3. The document raised three issues:

   i) that I failed to exhaust administrative remedies;

   ii) that my PATTERN score precludes the application of my credits, and,

   iii) that SHU inmates are ineligible to earn FTCs.

Doc3.

The motion did not address the issue of whether or not it was Constitutional to deprive inmates of ETCs without Due Process.

4) I responded November 6, 2022. Doc5. At the time, I had not received the Roseboro notice at Doc4. I raised four issues:

   i) I averred to having been denied access to the remedy system, and, noted that there is no evidence in the record to the contrary;

   ii) I noted Doc3's failure to argue for or request summary judgment;

   iii) I noted the lack of a Roseboro notice;

iv) I noted that I was contesting the earning, not the application, of the credits;

v) I noted that the government failed to address the issue of whether it is Constitutional to deprive an inmate of ETCs without Due Process.

5) On December 28, 2022, the government replied. Doc 8. In Doc 8 p. 9-10 the United States noted that the BOP changed its policies on ETCs on August 31, 2022, then again on November 18, 2022. It then stated that one policy change was that SHU inmates would be permitted to earn ETCs while in SHU unless deprived of them by a Disciplinary Hearing Officer ("DHO"). Doc 8 p. 11; BOP Program Statement ("PS") 5410.01 p. 4. The BOP implied that this would then end this litigation, though it asked this Court to rule before it credited the days involved, saying that it needed more time to calculate my sentence. Doc 8 p. 12. However, the BOP was ordered to have the federal regulations it promulgated in January 2022 finalized by July 21, 2019. 18 USC § 3632(a); 18 USC § 3624(c)(6). (Its programming was then to be finalized by July 21, 2021, 18 USC § 3621(h)(2)(A) — the BOP has argued in other proceedings that the final deadline for the regulations was January 2022, but, this has no basis in the law).

6) The BOP's change of position in its Reply was not allowed under the rules. United States v. Alston 722 F3d 603 (4ᵀᴴ Cir 2013) (arguments raised for the first time on Reply are waived) citing Cavallo v. Star Enter 100 F3d 1150 (4ᵀᴴ Cir 1996). And, the November 18, 2022, change in BOP policy seems to concede the merits of this petition. Yet, this action has not been mooted.

7) On February 17, 2023, the BOP issued me the attached calculation sheet. In the October 5, 2022, calculation presented to this Court, at Doc. 3, p. 28, the BOP stated that I had 1341 accrued program days, 43 disallowed program days, and, 650 ETCs earned to date. On the February 10, 2023, assessment, it states that I have 1509 accrued program days, 3 disallowed program days, and 530 ETCs. So, I have 168 more program days and 120 less ETCs. I spoke to Respondents witness Brittny Mays, today, and she stated that the BOP knows their computer system to calculate these credits isn't working - in fact, they are holding dozens of inmates past their release dates. One man, Patrick Acierno, of Acierno v. Carter pending in this district, should have been released in October; he was released February 14, 2023, an hour before the United States was to have responded in Acierno.

8) The United States is still not crediting me for the period July 22 to 25, 2022. This prevents this action from being moot. And, I have still not received any Due Process for this deprivation. But, though this action now only involves one day of ETC, the point - that a prisoner cannot be deprived of ETCs without Due Process - is of increased importance. Since November 18, 2022, the BOP has made at least two more major revisions to its Program Statement and numerous changes to its computer. The last one deprived me of about 176 days of ETCs without any process. People are being held months past their release dates. The BOP needs to be told that no person can be deprived of ETCs without Due Process, and, ordered to apply this.

J.A. 157

-4-

Respectfully Submitted,

William A White # 13888-084

FCI-Cumberland

PO Box 1000

Cumberland, MD 21501

CERTIFICATE OF SERVICE

I hereby certify that this Motion for Leave to Supplement was mailed to the Clerk of the Court and AUSA Beatrice C Thomas, 1ST Class Postage Prepaid, this 20th day of February, 2023.

William A White

J.A. 158

-5-

Case 1:22-cv-02371-DKC Document 6-4 Filed 10/26/22   Page 28 of 29

Register Number:13888-084, Last Name:WHITE

| U.S. DEPARTMENT OF JUSTICE | FEDERAL BUREAU OF PRISONS |
|---|---|

```
Register Number....: 13888-084        Responsible Facility: CUM
Inmate Name                           Assessment Date.....: 10-05-2022
  Last............: WHITE             Period Start/Stop...: 12-21-2018 to 10-05-2022
  First...........: WILLIAM           Accrued Pgm Days....: 1341
  Middle..........: A                 Disallowed Pgm Days.: 43
  Suffix..........:                   FTC Towards RRC/HC..: 285
Gender............: MALE              FTC Towards Release.: 365
Start Incarceration: 09-12-2012       Can Apply FTC.......: No
```

```
Start        Stop         Pgm Status    Pgm Days
12-21-2018   10-05-2022   accrue        1341
  Cannot apply FTC

   Facility Category  Assignment  Start        Stop
   CUM      FSA       R-MED       08-30-2022 1315  CURRENT
-------------------------------------------------------------------------
Start        Stop         Pgm Status    Pgm Days
12-21-2018   06-03-2022   accrue        1260
  Accrued Pgm Days...: 1260
  Carry Over Pgm Days: 0
  Time Credit Factor.: 15
  Time Credits.......: 630
-------------------------------------------------------------------------
Start        Stop         Pgm Status    Pgm Days
06-03-2022   07-21-2022   accrue        48
  Accrued Pgm Days...: 48
  Carry Over Pgm Days: 0
  Time Credit Factor.: 10
  Time Credits.......: 10
-------------------------------------------------------------------------
Start        Stop         Pgm Status    Pgm Days
07-21-2022   08-23-2022   disallow      33
  Not in qualifying admit status

   Facility Category  Assignment  Start            Stop
   THA      ARS       TRANSFER    07-21-2022 1134  07-21-2022 1134
   A02      ARS       A-ADMIT     07-21-2022 1134  07-21-2022 1720
   OKL      ARS       A-BOP HLD   07-21-2022 1620  07-25-2022 0900
   A02      ARS       RELEASE     07-21-2022 1720  07-21-2022 1720
  In SHU

   Facility Category  Assignment  Start            Stop
   OKL      QTR       Z01-109UAD  07-21-2022 1821  07-25-2022 0900
   CUM      QTR       Z02-130LAD  07-25-2022 1944  07-29-2022 0959
```

J.A. 159

```
ssment Date: 10-05-2022                (1)          Assessment# -2147470774
```

Case 1:22-cv-0237FSKTimecument8-4Assessment/22   Page 29 of 29

Register Number:13888-084, Last Name:WHITE

**U.S. DEPARTMENT OF JUSTICE**                           **FEDERAL BUREAU OF PRISONS**

```
    CUM      QTR        Z01-102LAD   07-29-2022 0959   08-15-2022 1220
    CUM      QTR        Z01-103LAD   08-15-2022 1220   08-22-2022 1111
-----------------------------------------------------------------------------------
Start        Stop         Pgm Status   Pgm Days
08-23-2022   09-12-2022   accrue         20
  Accrued Pgm Days...: 20
  Carry Over Pgm Days: 18
  Time Credit Factor.: 10
  Time Credits.......: 10
-----------------------------------------------------------------------------------
Start        Stop         Pgm Status   Pgm Days
09-12-2022   09-22-2022   disallow       10
  In SHU
    Facility Category  Assignment  Start            Stop
    CUM      QTR        Z04-235LAD   09-12-2022 1418   09-21-2022 0924
-----------------------------------------------------------------------------------
Start        Stop         Pgm Status   Pgm Days
09-22-2022   10-05-2022   accrue         13
  Accrued Pgm Days...: 13
  Carry Over Pgm Days: 8
  Time Credit Factor.: 10
  Time Credits.......: 0
```

J.A. 160

## FSA Time Credit Assessment

Register Number:13888-084, Last Name:WHITE

**U.S. DEPARTMENT OF JUSTICE**      **FEDERAL BUREAU OF PRISONS**

```
Register Number....: 13888-084          Responsible Facility: CUM
Inmate Name                             Assessment Date.....: 02-10-2023
  Last.............: WHITE              Period Start/Stop...: 12-21-2018 to 02-10-2023
  First............: WILLIAM            Accrued Pgm Days....: 1509
  Middle...........: A                 Disallowed Pgm Days.: 3
  Suffix...........:                   FTC Towards RRC/HC..: 165
Gender.............: MALE              FTC Towards Release.: 365
Start Incarceration: 09-12-2012        Apply FTC to Release: No
```

```
Start        Stop        Pgm Status   Pgm Days
12-21-2018   02-10-2023   accrue       1509
   Cannot apply FTC

   Facility Category  Assignment   Start        Stop
    CUM      FSA      R-MED        08-30-2022 1315  CURRENT
-----------------------------------------------------------------------------

Start        Stop        Pgm Status   Pgm Days
12-21-2018   12-05-2021   accrue       1080
   Accrued Pgm Days...: 1080
   Carry Over Pgm Days: 0
   Time Credit Factor.: 10
   Time Credits.......: 360
-----------------------------------------------------------------------------

Start        Stop        Pgm Status   Pgm Days
12-05-2021   06-03-2022   accrue       180
   Accrued Pgm Days...: 180
   Carry Over Pgm Days: 0
   Time Credit Factor.: 15
   Time Credits.......: 90
-----------------------------------------------------------------------------

Start        Stop        Pgm Status   Pgm Days
06-03-2022   07-22-2022   accrue       49
   Accrued Pgm Days...: 49
   Carry Over Pgm Days: 0
   Time Credit Factor.: 10
   Time Credits.......: 10
-----------------------------------------------------------------------------

Start        Stop        Pgm Status   Pgm Days
07-22-2022   07-25-2022   disallow     3
   Not in qualifying admit status

   Facility Category  Assignment   Start        Stop
    THA      ARS      TRANSFER     07-21-2022 1134  07-21-2022 1134
```

J.A. 161

(1)

## FSA Time Credit Assessment

Register Number:13888-084, Last Name:WHITE

**U.S. DEPARTMENT OF JUSTICE**        **FEDERAL BUREAU OF PRISONS**

```
    A02      ARS      A-ADMIT      07-21-2022 1134   07-21-2022 1720
    OKL      ARS      A-BOP HLD    07-21-2022 1620   07-25-2022 0900
    A02      ARS      RELEASE      07-21-2022 1720   07-21-2022 1720
```
----------------------------------------------------------------------------

| Start | Stop | Pgm Status | Pgm Days |
|-------|------|------------|----------|
| 07-25-2022 | 02-10-2023 | accrue | 200 |

```
  Accrued Pgm Days...: 200
  Carry Over Pgm Days: 19
  Time Credit Factor.: 10
  Time Credits.......: 70
```
----------------------------------------------------------------------------

| # | Start | Stop | Status | Risk Assignment | Risk Asn Start | Factor |
|---|-------|------|--------|-----------------|----------------|--------|
| 001 | 12-21-2018 | 06-19-2019 | PRESUMPTIVE | FSA R-LW | 04-28-2021 1133 | 10 |
| 002 | 06-19-2019 | 12-16-2019 | PRESUMPTIVE | FSA R-LW | 04-28-2021 1133 | 10 |
| 003 | 12-16-2019 | 06-13-2020 | PRESUMPTIVE | FSA R-LW | 04-28-2021 1133 | 10 |
| 004 | 06-13-2020 | 12-10-2020 | PRESUMPTIVE | FSA R-LW | 04-28-2021 1133 | 10 |
| 005 | 12-10-2020 | 06-08-2021 | ACTUAL | FSA R-LW | 04-28-2021 1133 | 10 |
| 006 | 06-08-2021 | 12-05-2021 | ACTUAL | FSA R-LW | 04-28-2021 1133 | 10 |
| 007 | 12-05-2021 | 06-03-2022 | ACTUAL | FSA R-LW | 04-28-2021 1133 | 15 |
| 008 | 06-03-2022 | 11-30-2022 | ACTUAL | FSA R-MED | 02-15-2022 1149 | 10 |
| 009 | 11-30-2022 | 05-29-2023 | ACTUAL | FSA R-MED | 08-30-2022 1315 | 10 |

J.A. 162

Assessment Date: 02-10-2023        (2)        Assessment# -2146964451



William Agostite # 13888 004
Federal Correctional Institution Cumberland
POBox 1000
Cumberland, MD 21501

BALTIMORE MD 212

22 FEB 2023   PM 5   L

FILED ___ ENTERED
LOGGED ___ RECEIVED

FEB 24 2023

AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND

BY _____ DEPUTY

CLERK
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
6500 CHERRY WOOD LN
GREENBELT, MD 20770

LEGAL MAIL

20770-720350

USCA4 Appeal: 23-7116   Doc: 20   Filed: 05/21/2025   Pg: 166 of 236

J.A. 163



USCA4 Appeal: 23-7116    Doc: 20    Filed: 05/21/2025    Pg: 167 of 236

J.A. 164



**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

*Beatrice C. Thomas*
*Assistant United States Attorney*
*beatrice.thomas@usdoj.gov*

*Suite 400*
*36 S. Charles Street*
*Baltimore, MD 21201-3119*

*DIRECT: 410-209-4848*
*MAIN: 410-209-4800*
*FAX: 410-962-9947*

March 3, 2023

**By ECF**

Honorable Deborah K. Chasanow
United States District Judge
United States District Court
6500 Cherrywood Lane, Suite 400
Greenbelt, MD 20770

Re:  *William White v. Warden, FCI Cumberland* - 22-02371-DKC

Dear Judge Chasanow:

Pursuant to the Warden of FCI Cumberland's (the "Respondent") Reply to Petitioner's Response to the Motion to Dismiss (the "Reply"), ECF. No. 8, where Respondent noted that they would update the Court when William White ("Petitioner") was recalculated, please accept this letter as an explanation of Petitioner's current status with BOP, in light of the new policies and Petitioner's recent recalculation.

Petitioner is currently serving an aggregate 349-month term of imprisonment at FCI Cumberland.  Assuming he receives all good conduct time currently projected, Petitioner has a release date of May 29, 2037.  ECF No. 3, p. 2.  Since the filing of the Reply, there have been additional changes in the Bureau of Prisons' ("BOP") policies surrounding First Step Act ("FSA") Time Credits and the accumulation of Time Credit for time spent in a special housing unit ("SHU").  Pursuant to BOP Program Statement 5410.01, First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4), "inmates in restrictive housing for Administrative Detention shall obtain FTCs if they otherwise remain in earning status under the policy.  However, inmates who are in a designation outside the institution may not earn Time Credits."

On January 19, 2023, Petitioner received a recalculation of his FSA Time Credits pursuant to BOP Program Statement 5410.01 wherein he has earned 365 days toward supervised release and 155 days prerelease custody.  **Exhibit 1,** Declaration of Brittny May ("May Declaration"), ¶ 2, and Attachment A. The BOP has restored the days he lost while he was held in the Special Housing Unit ("SHU").  Accordingly, Petitioner's FSA worksheet reflects only three disallowed program days for the time he was in *transfer status* from Terre Haute, Indiana to Oklahoma City, Oklahoma. These three days will not be restored.

J.A. 165

On February 24, 2023, Petitioner filed a Motion for Leave to file a Response (ECF No. 9), asserting that he has not been credited with one (1) day, a day he was in transfer status. However, pursuant to the policy, Petitioner cannot earn Time Credits while in a designation outside the institution. BOP Program Statement 5410.01, First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4).

WHEREFORE, undersigned counsel respectfully requests the Court consider this letter as an update in conjunction with the Respondent's Reply filed in this matter.

Very truly yours,

Erek L. Barron
United States Attorney

_____/s/_____
Beatrice C. Thomas
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 3rd day of March 2023, I caused a copy of the foregoing Letter to be mailed, first class, postage prepaid to:

William White, #13888-084
Federal Correctional Institution - Cumberland
P.O. Box 1000, Inmate Mail/Parcels
Cumberland, MD 21501

_____/s/_____
Beatrice C. Thomas
Assistant United States Attorney

2

J.A. 166

# EXHIBIT 1

J.A. 167

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| WIILLIAM WHITE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Civil Action No. 22-2371-DKC |
| v. | ) | |
| | ) | |
| FIRST NAME UNKNOWN ("FNU") | ) | |
| CARTER, WARDEN, FCI CUMBERLAND | ) | |
| | ) | |
| Respondent. | ) | |

**DECLARATION OF BRITTNY MAY**

In accordance with the provisions of 28 U.S.C. § 1746, I, the undersigned Brittny May, do hereby make the following declaration pertinent to the above-styled cause of action:

1.  I, Brittny May, am presently a Federal Bureau of Prisons ("BOP") Case Manager at the Federal Correctional Institution in Cumberland, Maryland ("FCI Cumberland"). As a case manager at FCI Cumberland, I am responsible for the custody and control of designated inmates including individual counseling, group counseling, and managing reports and correspondence. Additionally, I perform the Risks and Needs Assessments for my case load of inmates, including William White.

2.  On January 19, 2023, Petitioner received a recalculation of his First Step Act Time Credits pursuant to BOP Program Statement 5410.01, First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d) wherein he had earned 365 days towards supervised release and 155 days prerelease custody. *See* Attachment A.

3.  At the top left of the worksheet, Petitioner's basic information is listed, including his start date of incarceration: September 12, 2012.

1

J.A. 168

4.    The assessment calculated any credit that Petitioner has "banked" so far since he entered custody. As of January 19, 2023, Petitioner has accrued 1487 calendar days of possible programming. 155 credit days have been applied towards prerelease custody and 365 credit days have been applied towards his release date. Days of programming shows the total number of calendar days Petitioner could have programmed between December 21, 2018 (the date in which the FSA went into effect) and January 19, 2023. The days applied to prerelease custody and the days applied to his release date are credit days, not calendar days and are calculated accordingly. Additionally, this section shows that Petitioner is unable to have his Time Credits applied currently because he is a Medium risk inmate.

5.    In the first row of the worksheet, it states that Petitioner accrued 1487 total program days between December 21, 2018 and January 19, 2023. It specifies that Petitioner is unable to apply his Time Credits currently because he is a Medium risk inmate.

6.    In the second row of the worksheet, it states that Petitioner accrued 1080 program days between December 21, 2018 and December 5, 2021 which resulted in 360 days of Time Credits. His time credit factor was 10 meaning he received 10 days of FSA credit for every 30 days of successful participation in programming, in accordance with 28 CFR § 523.42(c). To arrive at 360 Time Credit days, one must calculate as follows:

1080 (total number of accrued calendar days) / 30 (days in the month) = 36 (number of calendar months)

36 (number of months) * 10 (days of credit for 30 days of successful participation) = 360 (total number of FSA credits)

7.    In the third row of the worksheet, it states that Petitioner accrued 180 program days between December 5, 2021 and June 3, 2022. His time credit factor was 15 meaning he

2

J.A. 169

received 15 days of FSA credit for every 30 days of successful participation in programming. To arrive at 90 Time Credit days, one must calculate as follows:

180 (total number of accrued calendar days) / 30 (days in the month) = 6 (number of calendar months)

6 (number of months) * 15 (days of credit for 30 days of successful participation) = 90 (total number of FSA credits)

8. In the fourth row of the worksheet, it states that Petitioner accrued 49 program days between June 3, 2022 and July 22, 2022. His time credit factor was 10. To arrive at 10 Time Credit days, one must calculate as follows:

49 (total number of accrued calendar days) / 30 (days in the month) = 1 (number of calendar months)

1 (number of months) * 10 (days of credit for 30 days of successful participation) = 10 (total number of FSA credits)

9. In the fifth row it shows that between July 22, 2022 and July 25, 2022, Petitioner was disallowed three days because he was in transfer status.

10. In the sixth row, it states Petitioner accrued 178 program days between July 25, 2022 and January 19, 2023. His time credit factor was 10. To arrive at 60 Time Credit days, one must calculate as follows:

178 (total number of accrued calendar days) / 30 (days in the month) = 6 (number of calendar months)

6 (number of months) * 10 (days of credit for 30 days of successful participation) = 10 (total number of FSA credits)

11. In the seventh row, it reflects the newest feature of the auto-calculation worksheet. The

3

J.A. 170

first and second columns show the assessment interval start and stop dates. The interval date range is either 180 days or 90 days depending on an inmate's projected release date. The second column shows the assessment interval stop date. The third column shows Petitioner's status while in the intervals. The fourth column shows Petitioner's risk assignment level. The fifth column shows Petitioner's risk assessment dates. The sixth column shows Petitioner's time credit factor.

a. Between December 21, 2018 and June 19, 2019, Petitioner was a low risk inmate. He received presumptive Time Credits because during the presumptive phase, inmates earned credit based on their presumed risk level which was established on April 28, 2021, with the launch of the Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN"). He received a time credit factor of 10.

b. Between June 19, 2019 and December 16, 2019, Petitioner was a low risk inmate. He received presumed credit and received a time credit factor of 10.

c. Between December 16, 2019 and June 13, 2020, Petitioner was a low risk inmate. He received presumed credit and received a time credit factor of 10.

d. Between December 10, 2020 and June 8, 2021, Petitioner was a low risk inmate and received actual credit based on his April 28, 2021 risk assessment with a time credit factor of 10.

e. Between June 8, 2021 and December 5, 2021, Petitioner was a low risk inmate and received actual credit based on his April 28, 2021 risk assessment with a time credit factor of 10.

f. Between December 5, 2020 and June 3, 2022, Petitioner was a low risk inmate and received actual credit based on his April 28, 2021 risk assessment. He received a

4

J.A. 171

time credit factor of 15.

g.  Between June 3, 2022 and November 30, 2022, Petitioner was a medium risk inmate based on his February 15, 2022 risk assessment. He received a time credit factor of 10.

h.  Between November 30, 2022 and May 29, 2023, Petitioner was a medium risk inmate. He received a time credit factor of 10.

I declare under the penalty of perjury, the foregoing is true and correct, to the best of my knowledge, and that all attached documents are true and correct copies of the documents maintained by the BOP in the ordinary course of business.

Executed on this 25th day of January 2023.

Brittny May
Case Manager
FCI Cumberland

5

J.A. 172

Register Number:13888-084, Last Name:WHITE

**U.S. DEPARTMENT OF JUSTICE**                           **FEDERAL BUREAU OF PRISONS**

| | |
|---|---|
| Register Number....: 13888-084 | Responsible Facility: CUM |
| Inmate Name | Assessment Date.....: 01-19-2023 |
|   Last............: WHITE | Period Start/Stop...: 12-21-2018 to 01-19-2023 |
|   First...........: WILLIAM | Accrued Pgm Days....: 1487 |
|   Middle..........: A | Disallowed Pgm Days.: 3 |
|   Suffix..........: | FTC Towards RRC/HC..: 155 |
| Gender............: MALE | FTC Towards Release.: 365 |
| Start Incarceration: 09-12-2012 | Can Apply FTC.......: No |

| Start | Stop | Pgm Status | Pgm Days |
|---|---|---|---|
| 12-21-2018 | 01-19-2023 | accrue | 1487 |

  **Cannot apply FTC**

|   Facility | Category | Assignment | Start | | Stop | |
|---|---|---|---|---|---|---|
|   CUM | FSA | R-MED | 08-30-2022 | 1315 | CURRENT | |

------------------------------------------------------------------------------

| Start | Stop | Pgm Status | Pgm Days |
|---|---|---|---|
| 12-21-2018 | 12-05-2021 | accrue | 1080 |

  Accrued Pgm Days...: 1080
  Carry Over Pgm Days: 0
  Time Credit Factor.: 10
  Time Credits.......: 360

------------------------------------------------------------------------------

| Start | Stop | Pgm Status | Pgm Days |
|---|---|---|---|
| 12-05-2021 | 06-03-2022 | accrue | 180 |

  Accrued Pgm Days...: 180
  Carry Over Pgm Days: 0
  Time Credit Factor.: 15
  Time Credits.......: 90

------------------------------------------------------------------------------

| Start | Stop | Pgm Status | Pgm Days |
|---|---|---|---|
| 06-03-2022 | 07-22-2022 | accrue | 49 |

  Accrued Pgm Days...: 49
  Carry Over Pgm Days: 0
  Time Credit Factor.: 10
  Time Credits.......: 10

------------------------------------------------------------------------------

| Start | Stop | Pgm Status | Pgm Days |
|---|---|---|---|
| 07-22-2022 | 07-25-2022 | disallow | 3 |

  **Not in qualifying admit status**

|   Facility | Category | Assignment | Start | | Stop | |
|---|---|---|---|---|---|---|
|   THA | ARS | TRANSFER | 07-21-2022 | 1134 | 07-21-2022 | 1134 |

J.A. 173

Register Number:13888-084, Last Name:WHITE

**U.S. DEPARTMENT OF JUSTICE**                                    **FEDERAL BUREAU OF PRISONS**

| | | | | |
|---|---|---|---|---|
| A02 | ARS | A-ADMIT | 07-21-2022 1134 | 07-21-2022 1720 |
| OKL | ARS | A-BOP HLD | 07-21-2022 1620 | 07-25-2022 0900 |
| A02 | ARS | RELEASE | 07-21-2022 1720 | 07-21-2022 1720 |

------------------------------------------------------------------------------------

| Start | Stop | Pgm Status | Pgm Days |
|---|---|---|---|
| 07-25-2022 | 01-19-2023 | accrue | 178 |

  Accrued Pgm Days...: 178
  Carry Over Pgm Days: 19
  Time Credit Factor.: 10
  Time Credits.......: 60

------------------------------------------------------------------------------------

| # | Start | Stop | Status | Risk Assignment | Risk Asn Start | Factor |
|---|---|---|---|---|---|---|
| 001 | 12-21-2018 | 06-19-2019 | PRESUMPTIVE | FSA R-LW | 04-28-2021 1133 | 10 |
| 002 | 06-19-2019 | 12-16-2019 | PRESUMPTIVE | FSA R-LW | 04-28-2021 1133 | 10 |
| 003 | 12-16-2019 | 06-13-2020 | PRESUMPTIVE | FSA R-LW | 04-28-2021 1133 | 10 |
| 004 | 06-13-2020 | 12-10-2020 | PRESUMPTIVE | FSA R-LW | 04-28-2021 1133 | 10 |
| 005 | 12-10-2020 | 06-08-2021 | ACTUAL | FSA R-LW | 04-28-2021 1133 | 10 |
| 006 | 06-08-2021 | 12-05-2021 | ACTUAL | FSA R-LW | 04-28-2021 1133 | 10 |
| 007 | 12-05-2021 | 06-03-2022 | ACTUAL | FSA R-LW | 04-28-2021 1133 | 15 |
| 008 | 06-03-2022 | 11-30-2022 | ACTUAL | FSA R-MED | 02-15-2022 1149 | 10 |
| 009 | 11-30-2022 | 05-29-2023 | ACTUAL | FSA R-MED | 08-30-2022 1315 | 10 |

J.A. 174

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILLIAM A. WHITE,                          *

    Petitioner,                          *

         v.                            *          Civil Action No. DKC-22-2371

WARDEN, FEDERAL CORRECTIONAL            *
INSTITUTION – CUMBERLAND,[1]
                                     *

    Respondent.
                                ***

**MEMORANDUM OPINION**

William A. White, a federal prisoner incarcerated at Federal Correctional Institution – Cumberland ("FCI-Cumberland"), filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2241 seeking restoration of "about 10 days" of Earned Time Credits ("ETCs") under the First Step Act. ECF No. 1 at 1.  Since the filing of the petition, some of those days have been granted, due to the ongoing revision and refinement of Bureau of Prisons ("BOP") policy and procedures. A few days remain in contention, however, so the entire action is not moot.

Pursuant to the court's Order directing Respondent to file a response to the petition (ECF No. 2), Respondent filed a motion to dismiss, or in the alternative, for summary judgment.  ECF No. 3.  Mr. White was advised of his right to respond (ECF No. 4), and did so on November 10, 2022.  ECF No. 5.  Respondent sought an extension of time within which to file a reply to Mr. White's response (ECF No. 6), which was granted by this court.  ECF No. 7.  Respondent's reply was filed December 28, 2022.  ECF No. 8.  Thereafter, Mr. White filed a motion for leave to supplement response to motion to dismiss.  ECF No. 9.  His motion shall be granted, and the court

---

[1]  The proper respondent in an action for habeas corpus is Mr. White's custodian.  *See* 28 U.S.C. § 2242; *Rumsfeld v. Padilla*, 542 U.S. 426, 435–36 (2004).  The Warden of Federal Correctional Institution – Cumberland, the facility where Mr.White is incarcerated, is the proper respondent in this case.  The Clerk shall amend the docket accordingly.

will construe this filing as a surreply. On March 3, 2023, Respondent filed correspondence with the court, offered as an update in conjunction with the Respondent's reply, regarding the recent recalculation of Mr. White's sentence. ECF No. 10. Mr. White has moved to strike this letter as an impermissible surreply. ECF No. 11. This motion will be denied.

Having reviewed the papers, and finding no hearing necessary, *see* Md. Loc. R. 105.6 (D. Md. 2021), the court grants respondent's motion to dismiss, or in the alternative for summary judgement, and denies the petition for writ of habeas corpus.

## I.    Background

### A.    Factual Background

The parties agree on the factual background underlying this case. Specifically, on July 21, 2022, Mr. White was transferred from Federal Correctional Institution ("FCI")–Terre Haute to Federal Transfer Center ("FTC")–Oklahoma City. Compl., ECF No.1 at 2; Resp., ECF No. 3-1 at 2. He remained at FTC—Oklahoma City until July 25, 2022. *Id.* While there, he was placed in the Special Housing Unit ("SHU") "for allegedly being a 'domestic terrorist.'" ECF No. 1 at 1, 2; *see also* ECF No. 3-1 at 2 (noting that while Mr. White was in Oklahoma City he was "held in the SHU because he had several security threat group assignments."). On July 25, 2022, Mr. White was transferred to FCI-Cumberland, where he remains to this day. ECF No. 1 at 2; ECF No. 3-1 at 2. Upon arrival at FCI-Cumberland, he was again "placed in the SHU from July 25, 2022 to August 22, 2022 due to unavailable bed space in general population." ECF No. 3-1 at 2; *see also* ECF No. 1 at 2. On August 22, 2022, he was released from the SHU to the general population at FCI-Cumberland. *Id.*

### B.    The Positions of the Parties

Based on these facts, Mr. White explains that, pursuant to 28 CFR § 523.40, federal inmates are guaranteed to earn ETCs throughout their incaraceration, except in several circumstances,

2

J.A. 176

including while an inmate is housed in the SHU.  ECF No. 1 at 2-3.  Accordingly, while housed in SHU while in transfer status at FTC-Oklahoma City, and again once transferred to the SHU at FCI-Cumberland, Mr. White was prevented from earning ETCs.  *Id.* at 3. He explains that his issue is "not about SHU confinement per se," but rather that "the BOP was not permitted to impose loss of ETCs as a collateral consequence of SHU confinement without due process."  *Id.* at 6.  Mr. White states that he was "arbitrarily placed" in SHU due to an "idiosyncratic 'domestic terrorist' designation" and the BOP's "inability to manage its bedspace," which cost him the ability to earn ETCs without any due process.  *Id.* at 6.  As relief, he seeks a declaration that he was "deprived . . . of ETCs without Due Process" and restoration of "all said ETCs (about 10 days)."  *Id.* at 7.

In response, Respondent argues that Mr. White is not entitled to relief because he has failed to exhaust his administrative remedies or alternatively, that Mr. White's current security designation within the institution allows him only to *earn* credits, but they cannot be *applied* until he obtains a lower security designation.  ECF No. 3-1 at 9. Additionally, Respondent argues that under 28 C.F.R. § 523.41(c), Mr. White was statutorily ineligible to earn ETCs based on his housing in SHU.  *Id.* at 12.

Mr. White responded to the Respondent's motion.[2]  ECF No. 5.  In addition to discussing exhaustion, Mr. White states that Respondent "didn't properly request summary judgment."  *Id.* at 4.  He does not elaborate on what was improper about Respondent's pursuit of summary judgment.[3]  *Id.*  Next, he explains that Respondent misconstrues his Petition, as he "agree[s] that

---

[2]    In his Response, Mr. White asserts that he was not provided notice of his right to respond pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).  ECF No. 5 at 1.  However, the docket reflects that Mr. White was provided such notice (*see* ECF No. 4).  And, in any event, his Response was timely filed.

[3]    The court will not consider this argument further.  Respondent styled its motion as a "Motion to Dismiss, or in the Alternative, for Summary Judgment," and provided the applicable standards of review for each type of Motion.  When the court treats a motion to dismiss as a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the

3

the earning and application of ETCs are separate concepts." *Id.* at 5. He states that he does not seek to have his credits *applied*, but rather, challenges his inability to *earn* credits during his time in SHU. *Id.* He states that by misconstruing his claim, and thus not responding to it directly, Respondent "forfeits" this argument. *Id.* at 6.

Respondent replied on December 28, 2022, arguing again that Mr. White has not exhausted available administrative remedies, that he was provided notice pursuant to *Roseboro v. Garrison*, that the court should afford deference to the BOP "in the application of First Step Act (FSA) Time Credits and related statutes pursuant to *Chevron, U.S.A., Inc. v. NRDC*, Inc., 467 U.S. 837, 865 (1984)," and finally, that the "BOP is in full compliance with FSA's statutory mandate regarding the earning of Time Credits." ECF No. 8. Additionally, Respondent discusses at length recent revisions to the First Step Act (*see* ECF No. 8 at 8-11), and indicated that all federal inmates' credits would soon be recalculated. *Id.* at 12. At the time, Respondent indicated that "if Petitioner is entitled (which is determined based on whether he was in earning status while in the SHU) to additional Time Credits, any available Time Credits may be applied accordingly, if able and in accordance with BOP Program Statement 5410.01." *Id.*

Petitioner filed a Motion seeking leave to reply, which the court now grants.[4] ECF No. 9. Therein, he argues that Respondent's information regarding the updated BOP policies cannot be

---

material that is pertinent to the motion." *Id.* When the moving party styles its motion as a "Motion to Dismiss or for Summary Judgment," as is the case here, and attaches additional materials to its motion, the nonmoving party is, of course, aware that materials outside the pleadings are before the court, and the court can treat the motion as one for summary judgment. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998).

[4] Generally, no party is entitled to file a surreply unless authorized by the court. *See* Local Rule 105.2(a) (D. Md. 2021). A surreply is most often permitted when the moving party must respond to matters raised for the first time in a reply. *See Lewis v. Rumsfeld*, 154 F. Supp. 2d 56, 61 (D. D.C. 2001). Moreover, the latest filings by both parties are not truly replies or surreplies, but rather updates of events that are highly relevant, and thus should be labelled supplements or amendments, rather that replies. The distinction is not material. All information will be considered.

4

accepted because it is raised for the first time in a Reply, and thus prohibited under *United States v. Alston*, 722 F.3d 603 (4th Cir. 2013).[5] *Id.* at 3. He indicates that, under the new BOP program statement, "SHU inmates would be permitted to earn ETCs while in SHU unless deprived of them by a disciplinary hearing officer." *Id.* He includes a FSA Time Credit recalculation sheet with his surreply, which indicates that most of the credits he seeks through this Petition were awarded to him through the recalculation done pursuant to the updated program statement. *See* ECF No. 9-1. However, even with the new calculations in place, he is still being denied ETCs for his time spent in transfer status in Oklahoma City, from July 21 until July 25, 2002. *Id.*; ECF No. 9 at 4. He states that "though this action now involves only one day of ETC, the point – that a prisoner cannot be deprived of ETCs without due process – is of increased importance." ECF No. 9 at 4.

On March 3, 2023, Respondent filed correspondence with the court, and requested that it be construed as "an update in conjunction with the Respondent's Reply." ECF No. 10 at 2. In this correspondence, Respondent confirms what Petitioner stated in his surreply. Namely, that "[o]n January 19, 2023, Petitioner received a recalculation of his FSA Time Credits pursuant to BOP Program Statement 5410.01 wherein . . . The BOP has restored the days he lost while he was held in the Special Housing Unit ("SHU"). Accordingly, Petitioner's FSA worksheet reflects only three disallowed program days for the time he was in transfer status from Terre Haute, Indiana to Oklahoma City, Oklahoma." *Id.* at 1. Based on the program statement, Respondent indicates that Mr. White is not entitled to credit for the days that he was in transfer status. *Id.* Specifically, "Petitioner cannot earn Time Credits while in a designation outside the institution." *Id.* (citing

---

[5]  Mr. White misunderstands the procedural posture of *Alston*. There, Alston's case was before the Fourth Circuit on appeal. *United States v. Alston*, 722 F.3d 603, 606 (4th Cir. 2013). The court noted that "an issue first argued in a reply brief is not properly before a court of appeals." *Id.* (quoting *Cavallo v. Star Enter.*, 100 F.3d 1150, 1152 n. 2 (4th Cir.1996)).

5

J.A. 179

BOP Program Statement 5410.01, First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4)).

Mr. White has moved to strike Respondent's correspondence as an impermissible surreply. ECF No. 11. His motion will be denied, as the court views this filing as a relevant update to Respondent's Reply rather than as an impermissible surreply. Further, it does not add any new information beyond what Mr. White himself proferred in his surreply, so he is not prejudiced by the inclusion of these facts in the record before the court.

## II.    Exhaustion

Habeas corpus relief is available when a prisoner is held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Challenges to the execution of a federal sentence are properly brought under 28 U.S.C. § 2241. *See Setser v. United States*, 566 U.S. 231, 244 (2012). It is the responsibility of the United States Attorney General, the Department of Justice and the Federal Bureau of Prisons to compute sentences of prisoners committed to the custody of the United States or the District of Columbia and apply credit where it is due. *See* 18 U.S.C. § 3624, *see also Leavis v. White*, 898 F.2d 154 (6th Cir. 1990) (citing *United States v. Norman*, 767 F.2d 455, 457 (8th Cir.1985)); *United States v. Clayton*, 588 F.2d 1288, 1292 (9th Cir. 1979). In the event a prisoner disputes the computation of his sentence or the application of credits, he is permitted to seek a remedy for the grievance through the administrative remedy process in place in the Bureau of Prisons ("BOP") facilities. *See* 28 C.F.R. 542.10 *et seq.*; *see also United States v. Mitchell*, 845 F.2d 951, 952 (11th Cir. 1988) ("[A] federal district court does not have jurisdiction to entertain a federal prisoner's petition for jail time credit until the prisoner has exhausted his administrative remedies with the Attorney General under 18 U.S.C. § 3568.").

J.A. 180

It is well-established that a petitioner seeking judicial review of agency actions must first have exhausted available remedies within the agency prior to filing suit. *See McKart v. United States*, 395 U.S. 185, 193-95 (1969). "The basic purpose of the exhaustion doctrine is to allow an administrative agency to perform functions within its special competence," that is, "to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies." *Parisi v. Davidson*, 405 U.S. 34, 37 (1972). Petitioners seeking relief under § 2241 are subject to this exhaustion requirement. *See Branden v. 30 Judicial Cir. Ct.*, 410 U.S. 484, 489-92 (1973); *McClung v. Shearin*, 90 Fed. Appx. 444, 445 (4th Cir. 2004) (Petitioner must exhaust administrative remedies prior to filing § 2241 petition seeking restoration of good conduct credits); *Asare v. United States Parole Commission*, 2 F.3d 540, 544 (4th Cir. 1993) (challenging BOP projected release date requires exhaustion). "Although § 2241 does not contain a statutory exhaustion requirement, courts have consistently required a petitioner to exhaust his administrative remedies prior to petitioning for a writ of habeas corpus." *Wright v. Warden, FCI-Cumberland*, No. CIV.A. RDB-10-671, 2010 WL 1258181, at *1 (D. Md. Mar. 24, 2010). "Exhaustion of administrative remedies may not be required where a petitioner demonstrates futility, the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or the administrative procedure is clearly shown to be inadequate to prevent irreparable harm." *Id.* (citing *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3rd Cir.1988).

Mr. White and Respondent vehemently disagree on whether this claim is properly exhausted. And because the court's ability to address the merits of this case turns on whether Mr. White has properly exhausted his claim, it is worth carefully examining the arguments on both sides.

7

J.A. 181

In his petition, Mr. White preemptively addresses his attempts to exhaust this claim. ECF No. 1 at 3. Mr. White states that on July 26, 2022, he "submitted a BP-8" form[6] to Counselor Rice raising the issue of being placed in SHU without due process. *Id.* Counselor Washington confirmed to Mr. White that the BP-8 form was received. *Id.* Mr. White states that he subsequently made numerous oral and written requests to Counselor Washington for a BP-9 form, but was not provided one. *Id.* He concludes that because he was not "able to timely obtain a BP-9, [he] was not able to access the administrative remedy system." *Id.*

Respondent counters that Mr. White's claims are unexhausted. ECF No. 3-1 at 9. Contrary to Mr. White's assertion that he was not able to access the administrative remedy system, Respondent states that "[b]etween January 1, 2022 through October 12, 2022," which encompasses the complained-of time period at issue here, Mr White "filed fifty-seven administrative remedies, which clearly demonstrates his familiarity with the process." *Id.* Of those 57 administrative remedies, only four related to credits under the First Step Act. *Id.* Further, "[w]hen the institution closed or rejected his requests, [Mr. White] failed to correct the errors and/or appeal to Central Office," thereby failing to complete the process of exhausting his claims.

Respondent includes the Declaration of Misty Shaw, Paralegal at the Mid-Atlantic Regional Office of the BOP, in support of the argument that Mr. White has failed to exhaust his claims. ECF No. 3-3. Ms. Shaw avers that Mr. White "has filed an innumerable total of remedies since being in BOP custody," and has filed 57 remedies between January 1, 2022 and October 12, 2022. *Id.* at 4. Of those 57, only four referenced the First Step Act. *Id.* Those four remedies referencing the First Step Act were filed on March 22, 2022, May 24, 2022, and two were filed on June 10, 2022. *Id.*; *see also* ECF No. 3-3 at 15-45, Attachment B to the Decl. of Misty Shaw, Petitioner's BOP grievance history from 1/1/22 until 10/12/22. The court notes that the dates of

---

[6] Mr. White does not clarify what the different forms are used for.

8

Mr. White's grievances related to the FSA predate the relevant time period at issue in Mr. White's petition: from July 21, 2022 until August 22, 2022. Ms. Shaw concludes that "[b]ecause [Mr. White] neither resubmitted his appeals when they were rejected in accordance with instruction and did not appeal to Central Office, he has not properly exhausted his administrative remedies." ECF No. 3-3 at 5.

In reply, Mr. White again states that he filed a "BP-8" on July 26, 2022 regarding denial of ETCs while housed in SHU. ECF No. 5 at 2. He states that he then requested a "BP-9" form on several occasions, but Counselor Washington "failed to provide [him] with a BP-9 form because the BP-8 was never returned." *Id.* He states that he was required to file the remedy within 20 days time on the appropriate form, a BP-9, and with that form "unavailable" he could not exhaust his administrative remedies. *Id.* He indicates that he was able to file regional-level claims (on BP-10 and BP-11 forms) during the relevant time period. *Id.*

Mr. White includes a sworn declaration averring that "para. 5-10 of Doc. 1", the portion of his petition which contains information regarding exhaustion, "are true." ECF No. 5-1. He further states that while he was able to obtain BP-10 and BP-11 forms from Counselor Washington during the time period at issue, Counselor Washington specifically denied him the BP-9 forms he needed properly to advance his claim through the administrative remedy process. *Id.* Respondent replied, again reiterating that Mr. White failed properly and fully to exhaust his administrative remedies. ECF No. 8.

The Administrative Remedy Procedure ("ARP") provides that if an inmate is unable to resolve his complaint informally, he may file a formal written complaint on the proper form within 20 calendar days of the date of the occurrence on which the complaint is based. *See* 28 C.F.R. § 542.14(a). If an inmate is not satisfied with the Warden's response, he may appeal to the Regional Director within 20 calendar days of the Warden's response. *See* 28 C.F.R. § 542.15(a). If the

9

J.A. 183

inmate still is not satisfied, he may appeal the Regional Director's response to the Office of General

Counsel, Washington, D.C., using the appropriate forms. The inmate must file this final appeal

within 30 calendar days of the date the Regional Director signed the response. *See id.* An inmate

is not deemed to have exhausted his administrative remedies until he has filed his complaint at all

levels. *See* 28 C.F.R. § 542.15(a).

The record before the court reflects a dispute of material fact between the parties regarding

whether Mr. White was able to access the grievance procedures needed to exhaust this claim. Mr.

White avers that he filed a "BP-8" form regarding his claims on July 26, 2022. Thereafter, he

states that he repeatedly requested a "BP-9" form from Counselor Washington, but Counselor

Washington would not provide him with the required BP-9 form. If, in fact, Counselor Washington

was denying Mr. White these forms, Mr. White may have been unable to access the grievance

procedure. Thus, there is a material dispute of fact as to whether Mr. White was prevented from

accessing the forms required to complete the grievance process. The record, at this point, does not

support an affirmative finding that Mr. White failed to exhaust this claim. Accordingly, the court

must reach the merits of Mr. White's claim.

**III.    Motion to Dismiss or for Summary Judgment**

   **A.  Standards of Review**

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil

Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief

above the speculative level on the assumption that all the allegations in the complaint are true

(even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations

omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the

elements of the claim. However, the complaint must allege sufficient facts to establish those

elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

J.A. 184

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48 (emphasis in original). The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. NC. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

### B. Entitlement to Credits

Only the Attorney General, acting through the BOP, may administer a federal inmate's sentence. *See* 18 U.S.C. § 3621; *United States v. Wilson*, 503 U.S. 329, 335 (1992). This includes determining where an inmate serves his sentence as well as time credit. *See* 18 U.S.C. § 3621(b); *Wilson*, 503 U.S. at 335. "A claim for credit against a sentence attacks the computation and execution of the sentence rather than the sentence itself." *United States v. Miller*, 871 F.2d 488, 490 (4th Cir. 1989). Such challenges must be brought in a petition for habeas corpus relief under 28 U.S.C. § 2241 in a prisoner's district of confinement. *Id.*; *Fontanez v. O'Brien*, 807 F.3d 84,

11

J.A. 185

87 (4th Cir. 2015) (recognizing "attacks on the execution of a sentence are properly raised in a § 2241 petition") (internal quotation and citation omitted).

### 1.   The First Step Act

The First Step Act of 2018 (the "FSA"), P.L. 115-391, § 102(b)(1), 132 Stat 5194, 5210 (Dec. 21, 2018), amended 18 U.S.C. § 3621 which governs the calculation of federal prison sentences.  Section 102(b) of the FSA also amended 18 U.S.C. § 3624(b), allowing federal inmates to earn additional good time credits.  *See* P.L. 115-391, § 102(b)(1).  The FSA, among other things, allows the BOP to award inmates a maximum of 54 days of good time credits per year of their imposed sentence rather than 54 days of credit per year of their sentence served.  *See Pizarro v. White*, 2019 WL 1922437, at *1 (M.D. Pa. Apr. 30, 2019).

The FSA was enacted on December 21, 2018.  *See* 18 U.S.C. § 3632.  Within 210 days of enactment, the Attorney General was charged with developing and releasing a Risk and Needs Assessment System ("the System").  *Id.*  The System is for:  (1) determining an inmate's risk of recidivism; (2) assessing an inmate's risk of violence or serious misconduct; (3) determining the type and amount of evidence-based recidivism reduction programming ("EBRRs") appropriate for each inmate; (4) periodically assessing an inmate's recidivism risk; (5) reassigning an inmate to appropriate EBRRs and productive activities ("PAs") as needed; (6) determining when to provide incentives and rewards for successful participation in EBRRs and PAs; and (7) determining when the inmate is ready to transfer to pre-release custody or supervised release. *See id*. § 3632(a). Further, the System provides guidance on the "type, amount, and intensity of EBRR programs and PAs to be assigned to each inmate based on the inmate's specific criminogenic needs." *Kurti v. White*, No. 1:19-cv-2109, 2020 WL 2063871, at *4 (M.D. Pa. Apr. 29, 2020) (citing 18 U.S.C. § 3632(b)).

12

J.A. 186

The FSA allows eligible[7] inmates who successfully complete EBRRs or PAs to receive earned time credits (ETCs) to be applied toward time in pre-release custody or supervised release. *See* 18 U.S.C. § 3632(d)(4)(A). An inmate may earn ten (10) days of credit for every thirty (30) days of successful participation in EBRRs or PAs. *See id.* Additionally, eligible inmates who have been assessed at a minimum or low risk of recidivism, who maintain their low risk of recidivism over two (2) consecutive assessments, may earn an additional five (5) days of time credit for every thirty (30) days of successful participation. *See id.*

On July 19, 2019, the System was released for use throughout the BOP in compliance with the timeline set in the FSA. *See Holt v. Warden,* 539 F. Supp. 3d 1005, 1010 (D.S.D. 2021). Thereafter, within 180 days, the BOP was to implement and complete an initial intake risk and needs assessment for each prisoner. 18 U.S.C. § 3621(h)(1)(A). On January 15, 2020, the BOP announced that all inmates had been screened using the System, known as the Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN"). *Holt*, 539 F. Supp. 3d at 1010. The implementation phase of the FSA, a two-year phase-in period for providing EBRRs and PAs, commenced after all inmates had been screened. 18 U.S.C. §§ 3621(h)(2)–(3). During the phase-in period, the BOP had until January 15, 2022 to provide EBRRs and PAs to all inmates. *Id.* § 3621(h)(2).

Thereafter, on January 19, 2022, the BOP published and codified its "procedures regarding the earning and application of Time Credits as authorized by the First Step Act of 2018" (the "January Final Rule"). *See* FSA Time Credits, p.1, 87 Fed. Reg. 12, 2705 (January 19, 2022) (codified at 28 C.F.R. pt. 523); *see also* ECF No. 3-6. Notably, under the January Final Rule, eligible inmates received retroactive time credits for programming and activities they participated

---

[7] To be eligible to earn ETCs, inmates must not have a conviction for a disqualifying offense. *See* 18 U.S.C. § 3632(d)(4)(D). Additionally, certain deportable non-U.S. citizens are not eligible for ETCs. 18 U.S.C. § 3632(d)(4)(E).

13

in beginning December 21, 2018, the date of the FSA's enactment.  ECF No. 3-6 at 4, 15.  In determining how to award ETCs during the period before individualized risk and needs assessments had been completed for every inmate (from the FSA's enactment on December 21, 2018 until January 14, 2020), the BOP, in its discretion, determined that eligible inmates will be afforded a "presumption of participation" for that period and will be awarded ETCs accordingly. *Id.* at 5, 15.  Importantly, for Mr. White's case, the BOP indicated that "[i]nmates will not receive credit for any period in which they were in a special housing unit, in a designation status outside the institution, temporarily transferred to the custody of another Federal or non-Federal government agency, in mental health/psychiatric holds … , or for refusing mandatory programming." *Id.* at 5, 15.  It is this provision, codified at 28 CFR pt. 523.41(c)(4), that Mr. White challenges.

On October 5, 2022, Mr. White's ETCs were calculated by the BOP pursuant to these procedures.  Decl. of Brittny May, ECF No. 3-4 at 4.  Under the January Final Rule, once Mr. White was "transferred on July 21, 2022, he stopped earning any FSA credit." *Id.* at 5.  Thereafter, he remained in "disallow status, i.e. the time he spent in transfer status or the SHU," and between July 21, 2022, and August 23, 2022 "he lost thirty-three days of possible calendar days accrued." *Id.* at 5-6.

Importantly, on November 18, 2022, the BOP published BOP Program Statement 5410.01, First Step Act of 2018 – Time Credits:  Procedures for Implementation of 18 U.S.C. § 3632(d). *See* BOP Program Statement 5410.01, First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d).  This Program Statement implements the January Final Rule, and further clarifies the BOPs procedures for awarding and applying ETCs under the FSA. *Id.*  Relevant here, this policy update clarified what "successful participation" in EBRRs and PAs means, and now provides that "[i]nmates in Disciplinary Segregation status will not be considered

14

J.A. 188

to be 'successfully participating.' Inmates in restrictive housing for Administrative Detention shall obtain [E]TCs if they otherwise remain in earning status under the policy." *See* BOP Program Statement 5410.01 at 4. SHUs are "housing units in B[OP] institutions where inmates are securely separated from the general inmate population . . . to help ensure the safety, security, and orderly operation of correctional facilities, and protect the public." *See* BOP Program Statement 5270.11, Special Housing Units. An inmate placed in SHU can either be designated "administrative detention status" or "disciplinary segregation status." *Id.*; 28 CFR 541.22. Administrative detention status is a "status which removes you from the general population when necessary to ensure the safety, security, and orderly operations of correctional facilities, or to protect the public. It is non-punitive." *Id.* at 3. Disciplinary segregation status is a "punitive status imposed only by the Discipline Hearing Office as a sanction for committing a prohibited act(s)." BOP Program Statement 5410.01 at 4. Under the updated program statement, only those inmates in SHU on disciplinary segregation status are ineligible to earn ETCs.

Because Mr. White was in administrative detention status, not disciplinary segregation status, following his transfer from Oklahoma City to FCI-Cumberland, this BOP policy update directly impacted Mr. White. His sentence was recalculated, and he was given credit for his time in SHU when he was first transferred to FCI-Cumberland. ECF No. 9 at 4; ECF No. 10 at 1. He has not been credited for the days he was in transfer status from Terra Haute to Okalahoma City. *Id.*

### 2. Mootness

A case becomes moot when issues presented are no longer live controversies or if parties lack a legally cognizable interest in the outcome. *Murphy v. Hunt*, 455 U.S. 478, 481 (1984). Therefore, a case becomes moot when there is no viable legal issue left to resolve. *See Powell v. McCormick*, 395 U.S. 486, 496 (1969). If developments occur during the course of a case which

15

J.A. 189

render the court unable to grant a party the relief requested, the case must be dismissed as moot. *Blanciak v. Allegheny Ludlum Co.*, 77 F.3d 690, 698–699 (3d Cir. 1996). Mootness, a doctrine of standing, may occur at any stage of a federal judicial proceeding when there is no longer a case or controversy as required by Article III, § 2, of the Constitution. Standing requires that the petitioner maintain a personal interest at the commencement of litigation and throughout the entirety of the action, *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); the parties must have a personal stake in the outcome of a lawsuit at all stages of the proceeding, *United States v. Verdin*, 243 F.3d 1174, 1177 (9th Cir. 2001). "This means that, throughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable decision." *Spencer*, 523 U.S. at 7. If a case becomes moot, the lack of a case or controversy requires this court to dismiss the case for lack of jurisdiction. *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983).

Mr. White's Petition seeks restoration of credits he believed he was entitled to from July 21, 2022 until July 25, 2022 while in transfer status in Oklahoma City, and then from July 26, 2022 until August 22, 2022 while housed in SHU at FCI-Cumberland. ECF No. 1 at 3. The record reflects that, based on the BOP's recalculation of credits pursuant to updated policies, Mr. White has now been awarded all applicable credits for the period from July 26, 2022 until August 22, 2022. See ECF No. 9, 9-1, 10. Thus, this portion of Mr. White's claim is dismissed as moot. The court must then consider only whether Mr. White is entitled to credit for his time spent in transfer status in Oklahoma City from July 21, 2022 until July 25, 2022. Additionally, the court considers Mr. White's argument that that "a prisoner cannot be deprived of ETCs without due process." ECF No. 9 at 4.

16

J.A. 190

### 3. Entitlement to ETCs while in transfer status

The record supports that Mr. White's sentence has been properly calculated, and he is not entitled to the credit he seeks.

The BOP is entitled to deference in the application of FSA ETCs. *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 865 (1984). Courts defer to an agency's interpretation of a statute when Congress has "charged [the agency] with responsibility for administering the provision[.]" *See Chevron*, 467 U.S. at 865; *see also Smiley v. Citibank, N.A.*, 517 U.S. 735, 739 (1996) ("It is our practice to defer to the reasonable judgments of agencies with regard to the meaning of ambiguous terms in statutes that they are charged with administering."). There exists a "presumption that Congress, when it left ambiguity in a statute meant for implementation by an agency, understood that the ambiguity would be resolved, first and foremost, by the agency, and desired the agency (rather than the courts) to possess whatever degree of discretion the ambiguity allows." *Smiley*, 517 U.S. at 740-41.

An agency's interpretation of a statute it administers is always given some judicial deference, but the deference level varies. When Congress gives authority to an agency to make rules with the force of law, and the agency acted pursuant to that delegated authority in interpreting the statute, then courts review the agency's interpretation under the standards articulated in *Chevron*. *See United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001). The *Chevron* standard provides that where the statute being interpreted by the agency is silent or contains ambiguity, courts give deference to the agency's interpretation if it "is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 845; *see also Lopez v. Davis*, 531 U.S. 230, 242 (2001) (holding the BOP had the authority to fill the "statutory gap" in § 3621(e)'s early release provision in a reasonable manner in light of the Congress' "revealed design"). Therefore, if 18 U.S.C. § 3632(d)(4), at issue here, is clear, the BOP must apply it as written. However, if ambiguity exists,

17

J.A. 191

"the question for the court is whether" the BOP's interpretation of 18 U.S.C. § 3632(d)(4) is reasonable and reflects a "permissible construction of the statute." *Chevron*, 467 U.S. at 843.

Here, 18 U.S.C. § 3632(d)(4)(A) explains that "[a] prisoner, except for an ineligible prisoner under subparagraph (d), who successfully completes [EBRRs or PAs], shall earn [ETCs]." However, ambiguity exists, because what constitutes 'successful completion' was not defined by Congress. Thus, the BOP, after allowing for notice and comment, published 28 C.F.R. § 523.41(c). There, the BOP outlined that "[a]n eligible inmate . . . generally will not be considered to be 'successfully participating' in EBRR Programs or PAs in situations including . . . (ii) Designation status outside the institution . . . ." such as Mr. White's few days in transfer status in Oklahoma City. This is a permissible construction of the statute, and thus the BOP is entitled to *Chevron* deference.

Further, the promulgation of the BOP's policy statement[8] maintaining that inmates in a "[d]esignation status outside the institution," such as transfer status, are not "successfully participating" in EBRRs or PAs, and accordingly they are not able to accrue ETCs, is an "internal agency guideline that has not been subjected to the rigors of notice and comment rulemaking." *Cunningham v. Scibana*, 259 F. 3d 303, 306 (4th Cir. 2001); *see also* BOP Program Statement 5410.01, First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d). While policy statements are not given the force of law, they are entitled to respect. *See Christensen v. Harris County*, 529 U.S. 576, 587 (2000). An agency's interpretation of a statute, such as the BOP's program statement at issue here, is afforded respect when it has the "power to persuade" as defined by the Supreme Court in *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).

> We consider that the rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and

---

[8]    *See* BOP Program Statement 5410.01, First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d).

18

J.A. 192

> litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

*Id*. The BOP's program statement that led to the determination that Mr. White *was* entitled to credit for his time spent in SHU at FCI-Cumberland, but *was not* entitled to credit for his time spent in transfer status in Okalahoma City makes sense and thus is entitled to respect. Mr. White is not entitled to the credit that he seeks.

Next, the court considers Mr. White's argument that, prior to placement in transfer status, he was entitled to Due Process because of the corresponding lack of ability to earn ETCs while in such a status. In general, when analyzing a claim of denial of Due Process, "[w]e first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (citing *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)). The United States District Court for the Distrtict of Minnesota considered an analogous issue to that raised by Mr. White in *Fiorito Fikes*, No. 22-CV-0749 (PJS/TNL), 2022 WL 16699472 (D. Minn. Nov. 3, 2022). There, the court addressed whether the petitioner "was entitled to additional procedural protections before being placed in the SHU" given the corresponding inability to earn ETCs. *Fiorito*, 2022 WL 16699472 at *4. The court explained that "Federal prisoners have long been entitled to time credits resulting from good behavior, *see* 18 U.S.C. § 3624(b), and challenges to the loss of good-time credits following prison disciplinary proceedings are a regular and unexceptional feature of modern habeas litigation." *Fiorito*, 2022 WL 16699472, at *5 (citing *Preiser v. Rodriguez*, 411 U.S. 475, 487-88 (1973); *Portley-El v. Brill*, 288 F.3d 1063, 1066-67 (8th Cir. 2002)). Therefore, "it is not absurd to argue that [E]TCs, like

19

J.A. 193

good-time credits, might also implicate protected liberty interests that could be vindicated through a habeas petition." *Fiorito*, 2022 WL 16699472, at *5.

However, two critical differences exist between good-time credits and ETCs earned pursuant to the First Step Act:

> First, good-time credits entitle a prisoner to a reduction in his sentence, period. ETCs[9] are not quite so straightforward. In contrast to prisoners who earn good-time credits, prisoners who earn ETCs may not be able to *apply* those ETCs. *See* 18 U.S.C. § 3624(g)(1)(D). Instead, application of ETCs is contingent on maintaining a minimal or low risk of recidivism as assessed by the BOP or, alternatively, on receiving an exception to that requirement from the warden of the facility where the prisoner is detained. *Id.* Further, even when a prisoner may apply ETCs, § 3632(d)(4)(C) directs that those ETCs may be applied by the BOP 'toward time in prerelease custody *or* supervised release.' Prerelease custody, however, is just another form of BOP custody, *see* 18 U.S.C. § 3624(g)(2), and '[a] legal action seeking transfer from one form of BOP custody to another (like a legal action seeking transfer from one BOP facility to another) is not a challenge to the fact or duration of confinement.' . . . This contingency makes it doubtful that ETCs are a protected liberty interest.

*      *      *

> Second, unlike good-time credit accumulated under § 3624(b), ETCs are not a general entitlement. Instead, prisoners are merely afforded the opportunity to earn ETCs by participating in recidivism-reduction programming. Although ETCs themselves are a recent creation, many courts examining similar time-credit schemes have held that the loss of a mere opportunity to accumulate credit towards a sentence is not sufficient to create a protected liberty interest. . . . The general rule that the loss of an opportunity to earn a reduction in sentence does not amount to infringement of a protected liberty interest makes particular sense in the context of ETCs, as the opportunity to participate in recidivism-reduction programming can be lost for several reasons, including reasons having nothing to do with the conduct or blameworthiness of the prisoner. For example, a prisoner who is temporarily transferred from the custody of the BOP to a non-BOP facility to testify at trial, *see* 28 U.S.C. § 2241(c)(5), would be unable to successfully participate in BOP

---

9    The United States District Court for the District of Minnesota utilizes the acronym "FTC," for First Step Act time credits, rather than ETCs, which has been used by the parties here. Accordingly, any reference to FTCs in this quoted language has been changed to ETCs for consistency, but the analysis is unaltered.

20

J.A. 194

recidivism-reduction programming during the time that the prisoner remained outside the custody of the BOP, *see* 28 C.F.R. § 523.41(c)(4)(iii).  The same would be true of a prisoner who is transferred to a hospital for extended treatment of a serious medical need. *See id.* § 523.41(c)(4)(ii). The statute and accompanying regulations betray no expectation that ETC credits could reasonably be regarded as an entitlement, rather than as a benefit that a prisoner might or might not be able to earn at various times during his detention.  This is too flimsy an expectation to give rise to a protected liberty interest.  And because the opportunity to earn ETCs is not a protected liberty interest, [Petitioner] was not entitled to due process before he lost that opportunity by getting sent to the SHU.

*Fiorito*, 2022 WL 16699472, at *5, 6.  This analysis is sound, and applicable to Mr. White's current Due Process claims.  For the reasons outlined above, Mr. White did not have a liberty interest in the opportunity to earn ETCs, and thus was not entitled to any additional Due Process protections prior to being placed in transfer status.

## IV.    Conclusion

Mr. White has received all the credit to which he is entitled, and his arguments regarding Due Process fail.  Accordingly, the court will deny Mr. White's request for habeas relief.  Respondent's motion to dismiss, or in the alternative for summary judgment (ECF No. 3), will be granted.  Mr. White's motion for leave to supplement response to motion to dismiss (ECF No. 9) will be granted, and motion to strike (ECF No. 11) will be denied.

A separate Order follows.

July 31, 2023                                                    /s/
                                                    DEBORAH K. CHASANOW
                                                    United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILLIAM A. WHITE,                         *

    Petitioner,                          *

        v.                            *         Civil Action No. DKC-22-2371

WARDEN, FEDERAL CORRECTIONAL             *
INSTITUTION – CUMBERLAND,
                                          *
    Respondent.
                                        ***
**ORDER**

For the reasons stated in the forgoing Memorandum Opinion, it is this 31st day of July, 2023, by the United States District Court for the District of Maryland hereby ORDERED that:

1.    The Clerk is DIRECTED to update the docket to reflect "Warden, Federal Correctional Institution – Cumberland," as the proper respondent in this case;

2.    Mr. White's request for habeas relief is DENIED;

3.    Respondent's motion to dismiss, or in the alternative for summary judgment (ECF No. 3), is GRANTED;

4.    Mr. White's motion for leave to supplement response to motion to dismiss (ECF No. 9) is GRANTED;

5.    Mr. White's motion to strike (ECF No. 11) is DENIED; and

6.    The Clerk SHALL PROVIDE a copy of the foregoing Memorandum Opinion and a copy of this Order to Petitioner and to counsel for respondent and CLOSE this case.

                                  /s/
                            DEBORAH K. CHASANOW
                            United States District Judge

J.A. 196

IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF MARYLAND

Baltimore Division

FILED ___ ENTERED
____ RECEIVED

OCT 5 2023

CLERK U.S. DISTRICT COURT
AT BALTIMORE
DISTRICT OF MARYLAND

BY _____ DEPUTY

William A White

Petitioner

v.                                          Case No: DKC-22-2371

Warden, FCI-Cumberland

Respondent

MOTION TO EXTEND TIME TO FILE A NOTICE OF APPEAL

PURSUANT TO FED.R.APP.P. 4(a)(5)

Comes Now the Petitioner, William A White, and I hereby Move this Court to Extend the Time to File A Notice Of Appeal in this matter to October 31, 2023. In support, I state as follows:

1) The Court entered judgment in this matter July 31, 2023. I had 60 days to note my appeal. Fed. R. App. P. 4(a).

2) I hereby aver under penalty of perjury this 1ST day of October 2023 that the following is true and correct: All of my mail at FCI-Cumberland is opened and screened by the institutions SIS personnel, who make the decision when to deliver mail to me. I have not received a copy of the Court's Order of July 31, 2023, by postal mail. This is

J.A.1197

one of six pieces of legal mail I am aware of which have not been delivered. I became aware of the Court's Order today by happenstance while Searching the law library. Having so averred, I sayeth no more under oath.

3) The time to file a notice of appeal expired September 29, 2023, two days ago. The Court may extend the time to appeal after the fact on a finding of excusable neglect. Fed. R. App. P. 4(a)(5)(A)(ii). The issue of whether or not a prisoner has a liberty interest in Earned Time Credits under the First Step Act will be, I believe, one of first impression on appeal. I need time to research this issue before determining whether to file my Notice of Appeal. Here, I have not received the Court's Order by postal mail and had no notice of it before this date. If any Bureau of Prisons employee is responsible for this, this is equitable estoppel; if not, its equitable tolling. Whiteside v. United States 775 F3d 1180 (4ᵀᴴ Cir 2014) (en banc); Cada v. Baxter Healthcare Corp 920 F2d 446 (4ᵀᴴ Cir 1990) quoting Menominee Indian Tribe of Wis v. United States 577 US 250 (2016). As both are a higher standard than excusable neglect, I meet the standard for an extension of time.

Thus, I move this Court to extend my time to file Notice of Appeal in this matter to October 31, 2023.

Respectfully Submitted,

William A White

J.A. 199

CERTIFICATE OF SERVICE

I hereby certify that this Motion To Extend Time To File A Notice Of Appeal was mailed to the Clerk of the Court, 1ST Class Postage Prepaid, for filing on the ECF System, to which responding counsel is subscribed, this 1ST day of October, 2023.

William A White # 13888-084

FCI-Cumberland

PO Box 1000

Cumberland, MD 21501

William A White #13888-084
Federal Correctional Institution - Cumberland
PO Box 1000
Cumberland, MD 21501



CLERK
UNITED STATES DISTRICT COURT
  FOR THE DISTRICT OF MARYLAND
101 W. LOMBARD ST RM 4415
BALTIMORE, MD 21201-2605

FILED
LOGGED
ENTERED
RECEIVED

OCT 5 2023

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND

BY

DEPUTY



LEGAL MAIL



J.A. 200

USCA4 Appeal: 23-7116   Doc: 20   Filed: 05/2

J.A. 201

IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF MARYLAND

Baltimore Division

William A White

    Petitioner

v.

Warden, Federal Correctional Institution-

Cumberland

    Respondent

Case No: 22-cv-2371

FILED
LOGGED
ENTERED
RECEIVED

NOV 1 2023

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

## NOTICE OF APPEAL

Comes Now the Petitioner, William A White, and I hereby Note my Appeal to the Fourth Circuit Court of Appeals this **26**th day of October, 2023, of the Court's final order of July 31, 2023, rendering judgment for the Respondent.

Respectfully Submitted,

_____

William A White # 13888-084

FCI- Cumberland

PO Box 1000

Cumberland, MD 21501

J.A. 202

<u>CERTIFICATE OF MAILING</u>

I hereby certify that this Notice of Appeal was mailed to the Clerk of the Court and the US Attorney's Office for the District of Maryland, 1ST Class Postage Prepaid, this 26TH day of October, 2023.

William A White

William A White # 13888-084
Federal Correctional Institution - Cumberland
P.O. Box 1000
Cumberland, MD 21501

BALTIMORE MD 212

30 OCT 2023 PM 6 L

<◇> 13888-084 <◇>
Us Dist Ct Dist Of Maryland
101 W Lombard ST
Rm 4415
Baltimore, MD 21201-2605
United States

FILED     ENTERED
LOGGED     RECEIVED

NOV   1 2023

CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND

BY             DEPUTY

LEGAL MAIL



received
OCT 25 2023
FCI CUM
Mailroom

21201-262915

Appeals
#1

J.A. 204



FEDERAL CORRECTIONAL INSTITUTION
14601 BURBRIDGE ROAD, SE
CUMBERLAND, MARYLAND 21502

THE ENCLOSED LETTER WAS PROCESSED
THROUGH SPECIAL MAILING PROCEDURES
FOR FORWARDING TO YOU. THE LETTER HAS
BEEN NEITHER OPENED NOR INSPECTED.
IF THE WRITER RAISES A QUESTION OR
PROBLEM OVER WHICH THIS FACILITY HAS
JURISDICTION, YOU MAY WISH TO RETURN
THE MATERIAL FOR FURTHER INFORMATION
OR CLASSIFICATION. IF THE WRITER
– ENCLOSES CORRESPONDENCE FOR
FORWARDING TO ANOTHER ADDRESSEE,
PLEASE RETURN THE ENCLOSURE TO THE
ABOVE ADDRESS.

J.A. 205

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILLIAM A. WHITE,                          *

    Petitioner,                            *

        v.                                 *          Civil Action No. DKC-22-2371

WARDEN, FEDERAL CORRECTIONAL               *
INSTITUTION - CUMBERLAND,
                                     *

    Respondent.

                                     ***

**ORDER**

The court issued a Memorandum Opinion and Order granting respondent's motion to dismiss, or in the alternative for summary judgment, and closing the case on July 31, 2023. (ECF Nos. 12, 13). The court received Petitioner's motion for extension of time to file a notice of appeal on October 5, 2023. (ECF No. 14). The certificate of service accompanying the motion states that the motion was mailed to the Clerk of the court on October 1, 2023, with first class postage prepaid. *Id.* at 3.

Petitioner later filed a notice of appeal that was received by the court on November 1, 2023. (ECF No. 15). The certificate of service accompanying the notice states that the notice was mailed to the Clerk of the court on October 26, 2023, with first class postage prepaid. *Id.* at 2.

The respondent in this action is a United States employee. In this instance, the notice of appeal "must be filed with the district clerk within 60 days after entry of the judgment or order appealed from[.]" Fed. R. App. P. 4(a)(1)(B). Thus, the deadline for Petitioner to file his notice of appeal was September 29, 2023. Petitioner states that as of October 1, 2023, he had not received a copy of the court's order denying his Petition and on that date he "became aware of the Court's

J.A. 206

order by happenstance while searching the law library." (ECF No. 14 at 2).  He mailed his motion

requesting an extension to file a notice of appeal on that date.  *Id.* at 3.

Federal Rule of Appellate Procedure 4(a)(5) governs extensions of time to file a notice of

appeal and provides that:

> (A) The district court may extend the time to file a notice of appeal if:
>
>> (i) a party so moves no later than 30 days after the time prescribed by this Rule 4(a) expires; and
>>
>> (ii) regardless of whether its motion is filed before or during the 30 days after the time prescribed by this Rule 4(a) expires, that party shows excusable neglect or good cause.

*Id.*  Additionally, Fed. R. Civ. P. 77(d) provides in pertinent part that "Lack of notice of the entry

[of an order or judgment] does not affect the time for appeal or relieve--or authorize the court to

relieve--a party for failing to appeal within the time allowed, except as allowed by Federal Rule of

Appellate Procedure (4)(a)."

Petitioner is deemed to have filed the instant motion requesting an extension on October 1,

2023, which is two days after the 60 day deadline to file a notice of appeal expired and well within

the time prescribed for filing a motion for an extension of time.  *See Houston v. Lack*, 487 U.S.

266, 270 (1988); *Lewis v. Richmond Police Department*, 947 F.2d 733, 734-35 (4th Cir. 1991);

*United States v. Dorsey*, 988 F. Supp. 917, 919-920 (D. Md. 1998) (prisoner pleadings are deemed

filed on the day they are deposited in the prison mailbox for mailing).  Further, Petitioner provides

good cause for the extension.

Petitioner's motion for an extension of time to file a notice of appeal will be granted, and

Petitioner's notice of appeal is deemed to have been filed on October 26, 2023 when Petitioner

mailed the notice.  *See* Fed. R. App. P. (a)(5)(C) (extension of time to file notice of appeal may

not exceed 30 days after the prescribed time or 14 days after the date when the order granting the motion is entered, whichever is later).

Accordingly, it is this 13th day of November, 2023, by the United States District Court for the District of Maryland, ORDERED that:

1. Petitioner's motion for an extension of time to file an appeal (ECF No. 14) BE, and the same hereby IS, GRANTED; and

2. The Clerk is directed to transmit a copy of this Order to Petitioner, to counsel for Respondent; and to the Clerk of the United States Court of Appeals for the Fourth Circuit, and to close this case.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge

3

J.A. 208

FILED: December 18, 2024

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 23-7116
(1:22-cv-02371-DKC)

_____

WILLIAM A. WHITE

Petitioner - Appellant

v.

WARDEN OF FEDERAL CORRECTIONAL INSTITUTION - CUMBERLAND

Respondent - Appellee

_____

O R D E R

_____

The court grants leave to proceed in forma pauperis.

For the Court--By Direction

/s/ Nwamaka Anowi, Clerk

J.A. 209

 **U.S. Department of Justice**
Federal Bureau of Prisons

C H A N G E   N O T I C E
OPI:        CPD/CPB
NUMBER:   5410.01 CN-2
DATE:       March 10, 2023

# First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4)

*/s/*
*Approved*:  Colette S. Peters
Director, Federal Bureau of Prisons

This Change Notice (CN) implements the following changes to Program Statement 5410.01, **First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4)**, dated November 18, 2022.

*The highlighted text has been changed (either added or struck through) in **Section 10. APPLICATION OF FTCs***:

To apply FTCs to prerelease placement, an inmate ordinarily must otherwise be eligible to participate in prerelease custody consistent with limitations as outlined in the Program Statement **Community Corrections Center (CCC) Utilization and Transfer Procedure**, separate from any FSA eligibility criteria, and be "opted in" at the time of the referral and be in minimum or low risk status through their last two assessment periods and transfer to prerelease placement. However, in all cases, earned time credits will be applied to prerelease custody (RRC and/or HC) as required by the First Step Act.

The First Step Act requires that, if an individual meets the criteria outlined in (c)(1), the credits must be applied when the amount of time credits earned is equivalent to remainder of the prisoner's imposed term of imprisonment, consistent with the method for calculation described below.  Pre-release placement in a Residential Reentry Center (RRC) or Home Confinement (HC) will be based on FTCs other than those credits already applied to early transfer for supervised release.

 **U.S. Department of Justice**
Federal Bureau of Prisons

C H A N G E  N O T I C E
OPI:        CPD/CPB
NUMBER:   5410.01 CN-1
DATE:      February 6, 2023

# First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4)

*/s/*
*Approved*:  Colette S. Peters
Director, Federal Bureau of Prisons

This Change Notice (CN) implements the following changes to Program Statement 5410.01, **First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4)**, dated November 18, 2022.

*The highlighted text has been added to Section 5. RISK AND NEED ASSESSMENT:*
If an inmate fails to complete a recommended EBRR or PA to address an identified need area, staff will enter the applicable fail or withdraw code into SENTRY, and the inmate will not be considered to have opted out, and therefore, in non-earning status.

An inmate will be reassessed for both risk level and needs at each regularly scheduled Program Review throughout the remainder of the inmate's incarceration at a BOP institution. As defined in the Program Statement **Inmate Classification and Program Review**, the unit team will document the inmate's progress toward recommended goals and update the Individualized Need Plan, as appropriate. The inmate will receive a copy of their updated Individualized Need Plan which will include the reassessed risk level, need areas, and program recommendations. **Inmates placed in prerelease custody, and who are not subject to regularly scheduled program review, will not receive reassessments. For inmates in prerelease placement, reassessments will be completed automatically on a monthly basis and will capture changes which occur during prerelease placement.**

*The highlighted text has been added to Section 6. HOW TO EARN FTCs:*
**For inmates in prerelease custody, "the most recent two consecutive risk assessments" refers to the final two risk assessments conducted while the inmate was at a BOP institution, prior to the application of FTCs, i.e., the inmate's transfer to supervised release**

or prerelease custody.  For those inmates who have not completed two assessments prior to transfer to prerelease custody, reassessments will be completed automatically on a monthly basis and will capture changes which occur during prerelease placement.

*The highlighted text has been added to **Section 8. TRACKING AND EARNING OF FTCs:***
FSA Time Credit Assessments (FTC Worksheets) will be automatically uploaded to the Inmate Central File during each auto-calculation.  Inmates will be provided a copy of the most recent FTC Worksheet during regularly scheduled program reviews.

*The highlighted text in has been changed (either added or struck through) in **Section 10. APPLICATION OF FTCs***:
~~While inmates with unresolved pending charges and/or detainers may earn FTCs, if otherwise eligible, they will be unable to apply them to prerelease custody or release to supervision unless the charges and/or detainers are resolved.  An inmate with an unresolved immigration status will be treated as if he/she has unresolved pending charges with regard to the application of FTCs.~~

To apply FTCs to prerelease placement, an inmate ordinarily must otherwise be eligible to participate in prerelease custody consistent with limitations as outlined in the Program Statement **Community Corrections Center (CCC) Utilization and Transfer Procedure**, separate from any FSA eligibility criteria, and be "opted in" at the time of the referral and be in minimum or low risk status through their last two assessment periods and transfer to prerelease placement. ~~For inmates with minimum or low risk who have not yet maintained two consecutive assessments, they will need to submit a BP-A0148, Inmates Request to Staff, during their regularly scheduled Program Review in order to have their early application of FTCs considered.  The Unit Manager will submit a request, along with the unit team's recommendation, to the Warden (or designee) for final decision.~~

Once an inmate has been transferred to prerelease custody pursuant to the procedures outlined in this section, the inmate will maintain the recidivism risk level the inmate had at the time of the transfer, unless the inmate benefits from a lower recidivism risk level based on the passage of time or the inmate's actions result in a higher risk rating.  If an inmate is removed from prerelease custody for a violation, and is returned to a BOP institution, the inmate's recidivism risk level will be reassessed pursuant to the procedures outlined in Section 5 of this Program Statement.

For inmates who meet the following criteria, up to 365 days of earned FTCs will be automatically applied to early release:

- ~~Has no detainers or unresolved pending charges, to include unresolved immigration status and~~

- **Is not the subject of a final order of removal under immigration laws, and**

**As used in this Section, "last risk and needs assessment" refers to the final risk and needs assessment conducted while the inmate was at a BOP institution, prior to the inmate's transfer to supervised release or prerelease custody.**

*The highlighted text has been added to the **REFERENCES** section:*

7310.04 CN-1   Community Corrections Center (CCC) Utilization and Transfer Procedure (12/16/1998)

 **U.S. Department of Justice**
Federal Bureau of Prisons

P R O G R A M   S T A T E M E N T
OPI:        CPD/CPB
NUMBER:   5410.01
DATE:       November 18, 2022

# First Step Act of 2018 - Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4)

*/s/*

*Approved*:  Colette S. Peters
Director, Federal Bureau of Prisons

1.  **PURPOSE AND SCOPE**

**§ 523.40 Purpose.**

**(a) The purpose of this subpart is to describe procedures for the earning and application of Time Credits as authorized by 18 U.S.C. 3632(d)(4) and Section 101 of the First Step Act of 2018 (Pub. L. 115-391, December 21, 2018, 132 Stat. 5194) (FSA), hereinafter referred to as "FSA Time Credits" or "Time Credits."**

**(b) Generally, as defined and described in this subpart, an eligible inmate who successfully participates in Evidence-Based Recidivism Reduction (EBRR) Programs or Productive Activities (PAs) that are recommended based on the inmate's risk and needs assessment may earn FSA Time Credits to be applied toward prerelease custody or early transfer to supervised release under 18 U.S.C. 3624(g).**

The purpose of this policy is to establish Bureau of Prisons (Bureau) criteria and procedures for awarding time credits pursuant to 18 U.S.C § 3632(d)(4) and 18 U.S.C § 3624(g) to eligible inmates under the provisions of First Step Act of 2018 (FSA) codified in part in Title 18 U.S.C. § 3632.

**Federal Regulations from 28 CFR are shown in this type.**
Implementing instructions are shown in this type.

a.  **Program Objectives**.  The expected results of this Program Statement are to:

■  Inform inmates and staff of the process for earning, documenting, applying, forfeiting, and restoring after forfeiture FSA Time Credits (FTCs) in accordance with the FSA.
■  Inform inmates and staff of the circumstances which would preclude an inmate from earning and/or applying FTCs.
■  Identify the process for applying FTCs in combination with the Residential Drug Abuse Treatment Program (RDAP) early release benefit under 18 U.S.C. § 3621(e).

b.  **Institution Supplement**.  None required. Should local facilities make any changes outside changes required in national policy or establish any additional local procedures to implement national policy, the local Union may invoke to negotiate procedures or appropriate arrangements.

2.  **BACKGROUND**

The FSA provides eligible inmates may earn FTCs for successfully participating and completing approved EBRR programs or PAs.  The FSA prohibits inmates from receiving credit prior to its enactment, prior to the commencement of the inmate's sentence, or if the inmate is serving a sentence for a disqualifying offense or has a disqualifying prior conviction. The FSA allows qualifying inmates to apply FTCs toward prerelease community-based placement (i.e., Residential Reentry Center (RRC) and/or home confinement (HC)). Further, at the discretion of the Director of the Federal Bureau of Prisons (Director), the FSA allows for FTC to be applied toward early release to supervision.

3.  **DEFINITIONS OF TERMS**

**§ 523.41 Definitions.**

**(a) *Evidence-Based Recidivism Reduction (EBRR) Program.* An EBRR Program is a group or individual activity that has been shown by empirical evidence to reduce recidivism or is based on research indicating that it is likely to be effective in reducing recidivism; and is designed to help prisoners succeed in their communities upon release from prison. EBRR Programs may include, but are not limited to, those involving the following types of activities:**

> **(1) Social learning and communication, interpersonal, anti-bullying, rejection response, and other life skills;**
> **(2) Family relationship building, structured parent-child interaction, and parenting skills;**
> **(3) Classes on morals or ethics;**

P5410.01   11/18/2022   Federal Regulations from 28 CFR: this type. Implementing instructions: this type.      2

J.A. 215

**(4) Academic classes;**

**(5) Cognitive behavioral treatment;**

**(6) Mentoring;**

**(7) Substance abuse treatment;**

**(8) Vocational training;**

**(9) Faith-based classes or services;**

**(10) Civic engagement and reintegrative community services;**

**(11) Inmate work and employment opportunities;**

**(12) Victim impact classes or other restorative justice programs; and**

**(13) Trauma counseling and trauma-informed support programs.**

A list of approved EBRR programs is available on the FSA resource page of the Bureau's public website and the Correctional Programs Branch and Reentry Services Division's intranet pages. The list will be updated as programs/activities are added.

**(b) *Productive Activity (PA).* A PA is a group or individual activity that allows an inmate to remain productive and thereby maintain or work toward achieving a minimum or low risk of recidivating.**

Productive activities include a variety of groups, programs, classes and individual activities which can be either structured or unstructured.  These pro-social activities contribute to an inmate's overall positive institutional adjustment, to include maintaining clear institution conduct, and include, but are not limited to:

- Structured, curriculum-based group programs and classes
- Productive, free-time activities (e.g., recreation, hobby crafts, or religious services)
- Family interaction activities (e.g., social visiting)
- Personal growth and development classes (e.g., adult continuing education classes)
- Institution work programs
- Community service projects
- Participation in an Inmate Financial Responsibility plan

The Bureau has approved a group of specific, structured, curriculum-based PAs which are available to assist the inmate in addressing identified needs.  The list is available on the FSA resource page of the Bureau's public website and the Correctional Programs Branch and Reentry Services Division intranet pages.  The list will be updated as programs/activities are added.

**(c) *Successful participation.***

**(1) An eligible inmate must be "successfully participating" in EBRR Programs or**

P5410.01    11/18/2022    Federal Regulations from 28 CFR: this type. Implementing instructions: this type.    3

J.A. 216

**PAs to earn FSA Time Credits for those EBRR Programs or PAs.**
**(2) "Successful participation" requires a determination by Bureau staff that an eligible inmate has participated in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment, and has complied with the requirements of each particular EBRR Program or PA.**

An inmate will remain in FTC earning status while on any waitlist for EBRR Programs or PAs recommended based on the inmate's needs assessment, not to exceed two assessment periods, as long as the inmate has not refused or declined to participate. Active participation in at least one EBRR Program or PA by the inmate supersedes this requirement. Exceptions to the two-assessment period time frame can be granted by the Regional Director upon request from the Warden. However, should an inmate refuse or decline to participate in the recommended EBRR program or PA for which they had been on a waitlist, staff will enter the applicable decline code in SENTRY, and the inmate will be considered declined, or opted out, for the entire waitlist period. The waitlist period is defined in terms of the corresponding need area(s). When an inmate declines participation after being on a waitlist, the auto-calculation application will first identify any need areas associated with the declined program and then identify the oldest waitlist associated with the need area(s). Any credits earned since the oldest waitlist associated with the need area, without intervening participation, will be rescinded to reflect the inmate's refusal.

**(3) Temporary operational or programmatic interruptions authorized by the Bureau that would prevent an inmate from participation in EBRR programs or PAs will not ordinarily affect an eligible inmate's "successful participation" for the purposes of FSA Time Credit eligibility.**
**(4) An eligible inmate, as described in paragraph (d) of this section, will generally not be considered to be "successfully participating" in EBRR Programs or PAs in situations including, but not limited to:**
  **(i) Placement in a Special Housing Unit;**

Inmates in Disciplinary Segregation status will not be considered to be "successfully participating." Inmates in restrictive housing for Administrative Detention shall obtain FTCs if they otherwise remain in earning status under the policy.

  **(ii) Designation status outside the institution (*e.g.,* for extended medical placement in a hospital or outside institution, an escorted trip, a furlough, etc.);**
  **(iii) Temporary transfer to the custody of another Federal or non-Federal government agency (*e.g.,* on state or Federal writ, transfer to state custody for service of sentence, etc.);**

In the case of placement or transfers outside the institution (e.g., furlough, writ, escorted trip, outside hospital placement, etc.), an inmate will continue to earn FTCs if they are in the institution for any part of the day. An inmate must be out of the institution for the entire 24-hour day before the inmate reverts to non-earning status.  Upon return to the institution, the inmate's earning status will resume.

**(iv) Placement in mental health/psychiatric holds; or**
**(v) "Opting out" (choosing not to participate in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment).**

An inmate is considered to be opting out, and therefore, is not in earning status, if the inmate refuses or declines to participate in any EBRR programs or structured, curriculum-based PAs recommended based on an identified need. Further, an inmate is considered to be opting out if the inmate refuses to participate in or fails to complete any portion of the Standardized Prisoner Assessment for Reduction in Criminality (SPARC-13), the Bureau's assessment system.  See the Program Statement **First Step Act Needs Assessment**.

**(5)(i) If an eligible inmate "opts out," or chooses not to participate in any of the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment, the inmate's choice must be documented by staff.**

An inmate's refusal to complete any portion of the SPARC-13 or to participate in EBRR programs or structured, curriculum-based PAs recommended to address an identified need is documented in SENTRY using FSA-specific assignments. See the Program Statement **First Step Act Needs Assessment.**

**(ii) Opting out will not, by itself, be considered a disciplinary violation. However, violation of specific requirements or rules of a particular recommended EBRR Program or PA, including refusal to participate or withdrawal, may be considered a disciplinary violation. (*see* this part: 28 C.F.R. part 541)**
**(iii) Opting out will result in exclusion from further benefits or privileges allowable under the FSA, until the date the inmate "opts in" (chooses to participate in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment, as documented by staff).**

Note: C.F.R. citation added due to typographical error in published regulations.

P5410.01    **11**/18/2022    Federal Regulations from 28 CFR: this type. Implementing instructions: this type.    5

J.A. 218

**(d)** *Eligible inmate —*

    **(1)** *Eligible to earn FSA Time Credits.* **An inmate who is *eligible to earn* FSA Time Credits is an *eligible inmate* for the purposes of this subpart. Any inmate sentenced to a term of imprisonment pursuant to a conviction for a Federal criminal offense, or any person in the custody of the Bureau, is *eligible to earn* FSA Time Credits, subject to the exception described in paragraph (d)(2) of this section.**

    **(2)** *Exception.* **If the inmate is serving a term of imprisonment for an offense specified in 18 U.S.C. 3632(d)(4)(D), the inmate is not *eligible to earn* FSA Time Credits.**

Federal inmates in state custody are not eligible to earn FTCs. Additionally, state boarders, treaty transfers inmates, and military inmates sentenced pursuant to the Uniform Code of Military Justice who are serving their sentence in Bureau custody are not eligible to earn FTCs.

Inmates sentenced under the Code of District of Columbia (DC Code) cannot earn FTCs unless or until the DC Council defines eligibility to earn FTCs (i.e., which DC Code offenses, if any, preclude eligibility). If and when the earning of FTCs is authorized for inmates sentenced under DC Code, the unit team will review inmates for eligibility and enter the applicable eligibility assignment into SENTRY. Any retroactive application of FTCs will be made consistent with the authorities granted under DC Code.

## 4.  DETERMINATION OF ELIGIBILITY

At the inmate's Initial Classification, the unit team will conduct a review of the inmate's current conviction(s) as well as prior criminal convictions to determine the inmate's eligibility to earn FTCs.

For the current offense(s) review, the unit team will review the Judgement & Commitment (J&C) Order and the Presentence Investigation Report (PSR) for sentencing enhancements, if necessary, to determine if the inmate is ineligible. The list of FTC ineligible offenses, identified by statute, based on the inmate's current offense(s) is available on the FSA resource page of the Bureau's public website and the Correctional Programs Branch intranet page. If an inmate is determined to be ineligible based on the current offense(s), no review of prior offenses is required.

For the prior conviction review, an inmate is ineligible to earn FTCs if:

- The current offense is determined to be a "serious violent felony" not already specifically listed by the statute, and

P5410.01    11/18/2022     Federal Regulations from 28 CFR: this type. Implementing instructions: this type.      6

J.A. 219

- The inmate was sentenced to a term of imprisonment of more than a year for the current offense, and
- The inmate served a term of imprisonment of more than a year for a previous federal or state offense consisting of murder, voluntary manslaughter, assault with intent to commit murder, aggravated sexual abuse and sexual abuse, abusive sexual contact, kidnapping, carjacking, arson, or terrorism.

Additional criteria regarding the prior offense include:

- The conviction must have been based on an adult conviction. Juvenile adjudications are not considered, and
- If the prior conviction is a state offense, the state offense must match the specific federal offense listed above element-by-element.

For purposes of this review only, "serious violent felony" offense is defined by 18 U.S.C. § 3559(c)(2)(F):

> (i) a Federal or State offense, by whatever designation and wherever committed, consisting of murder (as described in section 1111); manslaughter other than involuntary manslaughter (as described in section 1112); assault with intent to commit murder (as described in section 113(a)); assault with intent to commit rape; aggravated sexual abuse and sexual abuse (as described in sections 2241 and 2242); abusive sexual contact (as described in sections 2244(a)(1) and (a)(2)); kidnapping; aircraft piracy (as described in section 46502 of Title 49); robbery (as described in section 2111, 2113, or 2118); carjacking (as described in section 2119); extortion; arson; firearms use; firearms possession (as described in section 924(c)); or attempt, conspiracy, or solicitation to commit any of the above offenses; and

> (ii) any other offense punishable by a maximum term of imprisonment of 10 years or more that has as an element the use, attempted use, or threatened use of physical force against the person of another or that, by its nature, involves a substantial risk that physical force against the person of another may be used in the course of committing the offense[.]

Due to the complexity of the prior offense review, questions regarding whether an offense is disqualifying may be referred to an institution's local Consolidated Legal Center (CLC) for guidance.

An inmate's eligibility status will be documented on the inmate's Individualized Needs Plan in the Insight case management system, and the inmate will receive a copy. The unit team will also enter the appropriate FSA eligibility assignment into SENTRY.

P5410.01    11/18/2022    Federal Regulations from 28 CFR: this type. Implementing instructions: this type.        7

J.A. 220

5.  **RISK AND NEED ASSESSMENT**

All sentenced inmates, regardless of eligibility status, will receive both a risk and need assessment.  The Prisoner Assessment Tool Targeting Estimated Risk and Needs (PATTERN) is the recidivism risk assessment tool and part of the Bureau's FSA-approved Risk and Needs Assessment System.  The PATTERN tool is completed during the inmate's Initial Classification and is used to assign each incoming inmate an initial recidivism risk level of Minimum, Low, Medium, or High.  The Standardized Prisoner Assessment for Reduction in Criminality (SPARC-13) is the Bureau's needs assessment system and the other half of the Bureau's FSA-approved Risk and Needs Assessment System.  It is used to assess the inmate in 13 need areas which can be targeted to reduce the inmate's risk of recidivating.  See the Program Statement **First Step Act Needs Assessment.**

After the inmate's arrival to their designated facility for service of their sentence and during the initial admission and orientation phase, the PATTERN and SPARC-13 assessments will be completed.  While PATTERN is completed during the inmate's Initial Classification, the SPARC-13 is a multi-part, multi-department assessment process.  Ordinarily, the Initial Classification is completed within 28 days of the inmate's arrival, but completing the PATTERN tool requires the inmate's sentence computation to be completed.  If the sentence computation is incomplete, the Initial Classification should be delayed pending its completion, and the basis for delay should be annotated on the inmate's Program Review Report.  The SPARC-13 is ordinarily completed within the 30 days of an inmate's arrival, however, portions of the SPARC-13 assessment require the inmate's active participation.  Failure on the inmate's part to complete the survey assessments timely will delay completion and negatively impact the inmate's ability to begin earning FTCs as the inmate will be considered "opted out," and therefore is in non-earning status regardless of eligibility to earn FTCs.

Using SPARC-13, staff will recommend and document EBRR programs and/or PAs for inmates consistent with the requirements of the Program Statement **First Step Act Needs Assessment.** If the inmate declines to participate in an EBRR program or PA which has been recommended based on an identified needs area, the department staff assessing the need area will enter a program decline code indicating the inmate's opt out status; otherwise, the inmate will be placed in the program or on a waitlist with the applicable assignment keyed into SENTRY by the department staff assessing the need area.

Should an inmate later refuse or decline to participate in the recommended EBRR program or PA for which they had been on a waitlist, staff will enter the applicable decline code in SENTRY, and the inmate will be considered declined for the entire period on the waitlist.  Any credits earned during the waitlist period will be rescinded to reflect the inmate's refusal.

P5410.01    **11**/18/2022     Federal Regulations from 28 CFR: this type. Implementing instructions: this type.                    8

J.A. 221

If an inmate fails to complete a recommended EBRR or PA to address an identified need area, staff will enter the applicable fail or withdraw code into SENTRY, and the inmate will <mark>not</mark> be considered to have opted out, and, therefore, in non-earning status. Inmates with cognitive or physical disabilities may require more time or additional accommodations to complete an EBRR program or PA. The Program Statement **Management of Inmates with Disabilities** provides guidance on developing local accommodations. If questions about the impact of a disability on earning FTC arise, staff may contact the Women and Special Populations Branch in the Reentry Services Division.

During the inmate's Initial Classification, the unit team will develop an Individualized Need Plan for the inmate based on the results of the inmate's needs assessment and related recommendations provided by the departments that assessed the need area as documented in SENTRY and Insight Feedback. Recommendations may include EBRR programs and/or structured curriculum-based PAs designed to address the inmate's identified need areas and based on the inmate's ability to complete the program/activity.

Additional groups, programs, classes, or unstructured activities may be recommended to assist the inmate in establishing positive institutional adjustment and involvement in pro-social activities. The inmate's risk level, needs assessment results, and program recommendations will be documented on the inmate's Insight Individualized Need Plan, and the inmate will receive a copy.

An inmate will be reassessed for both risk level and needs at each regularly scheduled Program Review throughout the remainder of the inmate's incarceration <mark>at a BOP institution</mark>. As defined in the Program Statement **Inmate Classification and Program Review**, the unit team will document the inmate's progress toward recommended goals and update the Individualized Need Plan, as appropriate. The inmate will receive a copy of their updated Individualized Need Plan which will include the reassessed risk level, need areas, and program recommendations. <mark>Inmates placed in prerelease custody, and who are not subject to regularly scheduled program review, will not receive reassessments. For inmates in pre-release placement, reassessments will be completed automatically on a monthly basis and will capture changes which occur during prerelease placement.</mark>

6. **HOW TO EARN FTCs**

**§ 523.42 Earning First Step Act Time Credits.**

**(a) *When an eligible inmate begins earning FSA Time Credits.* An eligible inmate begins earning FSA Time Credits after the inmate's term of imprisonment commences (the date the inmate arrives or voluntarily surrenders at the designated Bureau facility where the**

P5410.01    **11**/18/2022    Federal Regulations from 28 CFR: this type. Implementing instructions: this type.    9

J.A. 222

**sentence will be served).**

Because the ability to accrue time credits begins after the inmate's current term of incarceration begins (e.g., the date the inmate arrives at or voluntary surrenders to their initially designated Bureau facility to serve their sentence), an inmate cannot earn FTCs during pretrial confinement, nor can they earn credits based on a prior incarceration. Further, an inmate cannot earn FTC when not in Bureau custody, including when in U.S. Marshals Service custody prior to arriving at their designated facility, regardless of where they are housed, or once released to their supervised release term.

**(b)** *Dates of participation in EBRRs or PAs.*

**(1) An inmate cannot earn FSA Time Credits for programming or activities in which he or she participated before December 21, 2018, the date of enactment of the First Step Act of 2018.**

**(2) An eligible inmate, as defined in this subpart, may earn FSA Time Credits for programming and activities in which he or she participated from December 21, 2018, until January 14, 2020.**

**(3) An eligible inmate, as defined in this subpart, may earn FSA Time Credit if he or she is successfully participating in EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment on or after January 15, 2020.**

**(c)** *Amount of FSA Time Credits that may be earned.*

**(1) For every thirty-day period that an eligible inmate has successfully participated in EBRR Programs or PAs recommended based on the inmate's risk and needs assessment, that inmate will earn ten days of FSA Time Credits.**

**(2) For every thirty-day period that an eligible inmate has successfully participated in EBRR Programs or PAs recommended based on the inmate's risk and needs assessment, that inmate will earn an additional five days of FSA Time Credits if the inmate:**

**(i) Is determined by the Bureau to be at a minimum or low risk for recidivating; and**

**(ii) Has maintained a consistent minimum or low risk of recidivism over the most recent two consecutive risk and needs assessments conducted by the Bureau.**

The calculation of FTCs is fully automated and based on the number of 30-day periods in earning status. Additionally, the eligibility to earn FTCs is distinct from the ability to apply/use FTCs.

P5410.01    **11**/18/2022      Federal Regulations from 28 CFR: this type. Implementing instructions: this type.                    10

J.A. 223

**For inmates in prerelease custody, "the most recent two consecutive risk assessments" refers to the final two risk assessments conducted while the inmate was at a BOP institution, prior to the application of FTCs, i.e., the inmate's transfer to supervised release or prerelease custody. For those inmates who have not completed two assessments prior to transfer to prerelease custody, reassessments will be completed automatically on a monthly basis and will capture changes which occur during prerelease placement.**

## 7. LIMITATIONS ON EARNING OF FTCs

Despite being eligible to earn FTCs, there are situations where an inmate is unable or unwilling to participate in EBRR programs or PAs, and therefore cannot earn FTCs. Such circumstances may include, but are not limited to, the following:

- Placement in Disciplinary Segregation status);
- Designation status outside the institution (e.g., an outside medical trip or escorted trip, in-transit or at an in-transit facility, a furlough for the full day, etc.);
- Placement in the custody of another jurisdiction (e.g., on state or federal writ, transfer to state custody for service of sentence, transfer to another federal agency, etc.);
- Placement in mental health/psychiatric holds;
- Detention as a material witness or for civil contempt;
- Placement in civil commitment; or
- "Opting out" (choosing not to participate in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment).

If an inmate refuses to participate in required programs (e.g., Inmate Financial Responsibility (FRP), Drug Education, etc.), the inmate will not earn FTC. While these programs are voluntary, the refusal to participate can result in the loss of certain benefits including the inability to earn FTCs.

## 8. TRACKING AND EARNING OF FTCs

FTCs are awarded based on the inmate's eligibility to earn credit, completion of the PATTERN and SPARC-13 assessments, and ongoing participation in programs designed to reduce the risk of recidivating. Once an inmate is in earning status, they will remain in earning status unless or until the limitations outlined in the previous section of this Program Statement are applied.

FTCs are auto-calculated based on 30-day increments in earning status. Partial credit will not be awarded. FTCs will be credited on a monthly basis agency-wide, as well as during the inmate's regularly scheduled Program Reviews, based on a completed 30-day period. No FTCs will post to the inmate's record if he/she has not accrued 30 days in earning status. Rather, any days in FTC earning status will carry over to the next monthly cycle, and the inmate will receive all

P5410.01   **11**/18/2022   Federal Regulations from 28 CFR: this type. Implementing instructions: this type.   11

J.A. 224

applicable FTCs at that time.

For example: If the first monthly posting of FTCs for an inmate occurs only five days after completing their initial assessments and going into earning status, no FTCs will post to the inmate's record as they have not yet accrued 30 days in earning status.  Rather, the five days will carry over to the next monthly cycle, and the inmate will receive the FTCs at the end of the second month.  If later, the inmate goes into FRP Refuse or declines a recommended needs-related program and goes into opt out status, the inmate is no longer in earning status, and therefore, stops accruing days toward FTCs and no FTCs will post to the inmate's record.  Once the inmate returns to earning status, they will resume accruing days toward the earning of FTCs.

**FSA Time Credit Assessments (FTC Worksheets) will be automatically uploaded to the Inmate Central File during each auto-calculation.  Inmates will be provided a copy of the most recent FTC Worksheet during regularly scheduled program reviews.**

9.  **LOSS AND RESTORATION OF FTCs**

**§ 523.43 Loss of FSA Time Credits.**

**(a) *Procedure for loss of FSA Time Credits.* An inmate may lose earned FSA Time Credits for violation of the requirements or rules of an EBRR Program or PA. The procedures for loss of FSA Time Credits are described in 28 CFR part 541.**

Per the FSA, only earned time credits can be lost, and future time credits cannot be impacted. For purposes of inmate discipline, time credits are considered officially "earned" during the monthly auto-calculation or at the time of the inmate's last Program Review assessment, whichever was most recent.  A sanction of loss of FSA time credits by the Discipline Hearing Officer (DHO) may only be imposed when an inmate is found to have committed a prohibited act.  Loss of FTCs cannot be entered as a suspended sanction. See the Program Statement **Inmate Discipline Program**.

**(b) *How to appeal loss of FSA Time Credits.* Inmates may seek review of the loss of earned FSA Time Credits through the Bureau's Administrative Remedy Program (28 CFR part 542).**

**(c) *Restoration of FSA Time Credits.* An inmate who has lost FSA Time Credits under this subpart may have part or all of the FSA Time Credits restored to him or her, on a case-by-case basis, after clear conduct (behavior clear of inmate disciplinary infractions under 28 CFR part 541) for two consecutive risk and needs assessments conducted by the Bureau.**

J.A. 225

The authority to restore any portion of the offender's lost FTCs is delegated to the Warden and may not be delegated lower than the Associate Warden level. The inmate may request restoration of FTCs during a regularly scheduled Program Review and only after having maintained clear conduct for two consecutive risk and needs assessments. The Unit Manager will submit a request using BP-A1156, Restoration of Federal Time Credits, along with the unit team's recommendation, through the DHO to the Warden (or designee) for final decision. If the recommendation to restore FTCs is approved, the Unit Manager or Acting Unit Manager will process the restoration approval into the inmate's record and update via Insight or Insight Feedback.

Whether denied or approved, a copy of the decision will be provided to the inmate. If denied, the inmate will be advised that they may reapply for FTC restoration six months from the date of denial, if clear conduct is maintained. A copy will be maintained in the inmate's J&C and electronic inmate central file (e-ICF), with other sentence computation documents.

10. **APPLICATION OF FTCs**

**§ 523.44 Application of FSA Time Credits.**

**(a)** *How Time Credits may be applied.* **For any inmate eligible to earn FSA Time Credits under this subpart who is:**

> **(1) Sentenced to a term of imprisonment under the U.S. Code, the Bureau may apply FSA Time Credits toward prerelease custody or supervised release as described in paragraphs (c) and (d) of this section.**
> **(2) Subject to a final order of removal under immigration laws as defined in 8 U.S.C. 1101(a)(17) (*see* 18 U.S.C. 3632(d)(4)(E)), the Bureau may not apply FSA Time Credits toward prerelease custody or early transfer to supervised release.**
> **(3) Serving a term of imprisonment pursuant to a conviction for an offense under laws other than the U.S. Code (see Section 105 of the FSA, Pub. L. 115-391, 132 Stat. 5214 (not codified; included as note to 18 U.S.C. 3621)), the Bureau may not apply FSA Time Credits toward prerelease custody or early transfer to supervised release. This paragraph (a)(3) will not bar the application of FSA Time Credits, as authorized by the DC Code, for those serving a term of imprisonment for an offense under the DC Code.**

Inmates sentenced under the DC Code can neither earn nor apply FTCs unless and until the DC Council defines eligibility to earn FTCs (i.e., which DC Code offenses, if any, preclude eligibility) and defines the criteria which authorizes the application of FTC (i.e., any circumstances, if any, which preclude application). If and when the earning and application of

J.A. 226

FTCs is authorized for inmates sentenced under the DC Code, the unit team will review inmates for eligibility and enter the applicable eligibility assignment into SENTRY. Any retroactive application of FTCs will be made consistent with the authorities granted under the DC Code.

~~While inmates with unresolved pending charges and/or detainers may earn FTCs, if otherwise eligible, they will be unable to apply them to prerelease custody or release to supervision unless the charges and/or detainers are resolved. An inmate with an unresolved immigration status will be treated as if he/she has unresolved pending charges with regard to the application of FTCs.~~

**(b)** *Consideration for application of FSA Time Credits.* **Where otherwise permitted by this subpart, the Bureau may apply FSA Time Credits toward prerelease custody or early transfer to supervised release under 18 U.S.C. 3624(g) only if an eligible inmate has:**

> **(1) Earned FSA Time Credits in an amount that is equal to the remainder of the inmate's imposed term of imprisonment;**
> **(2) Shown through the periodic risk reassessments a demonstrated recidivism risk reduction or maintained a minimum or low recidivism risk, during the term of imprisonment; and**
> **(3) Had the remainder of his or her imposed term of imprisonment computed under applicable law.**

**(c)** *Prerelease custody.* **The Bureau may apply earned FSA Time Credits toward prerelease custody only when an eligible inmate has, in addition to satisfying the criteria in paragraph (b) of this section:**

> **(1) Maintained a minimum or low recidivism risk through his or her last two risk and needs assessments; or**
> **(2) Had a petition to be transferred to prerelease custody or supervised release approved by the Warden, after the Warden's determination that:**
>> **(i) The prisoner would not be a danger to society if transferred to prerelease custody or supervised release;**
>> **(ii) The prisoner has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities; and**
>> **(iii) The prisoner is unlikely to recidivate.**

To apply FTCs to prerelease placement, an inmate ordinarily must otherwise be eligible to participate in prerelease custody consistent with limitations as outlined in the Program Statement **Community Corrections Center (CCC) Utilization and Transfer Procedure**~~, separate from any FSA eligibility criteria,~~ and be "opted in" at the time of the referral and be in minimum or low risk status through their last two assessment periods and transfer to prerelease placement.

P5410.01    11/18/2022    Federal Regulations from 28 CFR: this type. Implementing instructions: this type.     14

J.A. 227

However, in all cases, earned time credits will be applied to prerelease custody (RRC and/or HC) as required by the First Step Act.

The First Step Act requires that, if an individual meets the criteria outlined in (c)(1), the credits must be applied when the amount of time credits earned is equivalent to remainder of the prisoner's imposed term of imprisonment, consistent with the method for calculation described below.  Pre-release placement in a Residential Reentry Center (RRC) or Home Confinement (HC) will be based on FTCs other than those credits already applied to early transfer for supervised release.

~~For inmates with minimum or low risk who have not yet maintained two consecutive assessments, they will need to submit a BP-A0148, Inmates Request to Staff, during their regularly scheduled Program Review in order to have their early application of FTCs considered.  The Unit Manager will submit a request, along with the unit team's recommendation, to the Warden (or designee) for final decision.~~

Inmates with high or medium PATTERN recidivism risk levels are exceptions to the routine application of this policy with regard to awarding FTCs toward early transfer to prerelease custody and/or supervised release.  The Warden will consult with the Regional Director before approving an inmate under section (c)(2), unless an exemption is granted by the Regional Director consistent with the Program Statement **Directives Management Manual**.  Ordinarily, inmates considered inappropriate for early transfer to prerelease custody or supervised release under section (c)(2) include, but are not limited to, inmates who:

- Have a high or medium PATTERN recidivism risk level
- Have a current or prior offense listed in the Program Statement **Categorization of Offenses**. Early transfers for such inmates are considered only in highly unusual circumstances. Ordinarily, an inmate is precluded from receiving an early transfer if he/she has an offense listed in either the Section titled "Offenses categorized as crimes of violence", or the Section titled, "Offenses that at the Director's discretion shall preclude an inmate's receiving certain Bureau program benefits".
- Has a Public Safety Factor (PSF) that the Designation and Sentence Computation Center (DSCC) Administrator has not waived.
- Have a history of community-based supervision (i.e., probation, parole, supervised release, halfway house, home confinement, etc.) non-compliance to include technical violations, escape, absconding/eluding, and/or new criminal conduct.
- Inmates who have been found to have committed 100 OR 200 level prohibited acts during the current term of incarceration, or the prohibited acts of using drugs or alcohol, drug possession, possession of drug paraphernalia, or introduction of drugs into Bureau institutions within the last three years from the date of the incident.

P5410.01    **11**/18/2022    Federal Regulations from 28 CFR: this type. Implementing instructions: this type.        15

J.A. 228

Additionally, inmates with high or medium PATTERN recidivism risk levels must demonstrate a good faith effort to lower their recidivism risk by:

- Maintaining clear conduct for at least three years from the date of the request.
- Successfully completing at least one of the Bureau's residential EBRR programs recommended based on an identified need area within the past five years, if any have been assigned.
- Is otherwise compliant with all the other requirements of this Program Statement with regard to successful program participation.

Inmates may initiate a request under (c)(2) by submitting a BP-A0148, Inmate Request to Staff, during their regularly scheduled Program Review.  The Unit Manager will submit a request, along with the unit team's recommendation, to the Warden (or designee) for final decision.

For Minimum and Low PATTERN risk inmates, consistent with the methodology described in Sections 6 and 7 of this policy, the Bureau will initially estimate an FSA conditional Projected Release Date (PRD) by calculating the maximum number of potential FTC that an inmate may earn during his or her sentence.  The Bureau will make an initial projection based on the inmate's PATTERN risk level. (For inmates currently in custody as of the effective date of this policy, the PATTERN risk level will be presumed to be the current level). This FSA PRD is subject to change during the inmate's incarceration, and it will be adjusted if the inmate's PATTERN score changes or if the inmate enters non-earning status.

FTC will not be applied towards an inmate's release date unless earned. Medium and High PATTERN risk inmates may earn FTC, but will not receive an estimated FSA PRD.

RRC and/or HC referrals will ordinarily be submitted to the respective Residential Reentry Management (RRM) office 12 months in advance of the inmate's PRD or at least 60 days prior to the projected RRC/HC placement date, whichever is greater.  The RRC and/or HC recommendation will include the total number of days recommended based on the Five Factor Review (see 18 U.S.C. § 3621(b)), required under the Second Chance Act, plus the remaining number of FTC days not applied to supervised release at the time of the referral.  When determining the FTC days available to be applied toward RRC/HC placement, the Bureau will assume that the inmate will remain in earning status from the referral date until the transfer to prerelease custody.   There is no expectation the RRC/HC placement date will be modified once the referral has been submitted to the RRM office.

**Once an inmate has been transferred to prerelease custody pursuant to the procedures outlined in this section, the inmate will maintain the recidivism risk level the inmate had at the time of the transfer, unless the inmate benefits from a lower recidivism risk level based**

P5410.01    11/18/2022    Federal Regulations from 28 CFR: this type. Implementing instructions: this type.    16

J.A. 229

==on the passage of time or the inmate's actions result in a higher risk rating. If an inmate is removed from prerelease custody for a violation, and is returned to a BOP institution, the inmate's recidivism risk level will be reassessed pursuant to the procedures outlined in Section 5 of this Program Statement.==

Prerelease placement is dependent on, but not limited to, the inmate's release residence, program requirements, and available contract bed space and funding.

**(d) *Transfer to supervised release.* The Bureau may apply FSA Time Credits toward early transfer to supervised release under 18 U.S.C. 3624(g) only when an eligible inmate has, in addition to satisfying the criteria in paragraphs (b) and (c) of this section:**
> **(1) An eligible inmate has maintained a minimum or low recidivism risk through his or her last risk and needs assessment;**
> **(2) An eligible inmate has a term of supervised release after imprisonment included as part of his or her sentence as imposed by the sentencing court; and**
> **(3) The application of FSA Time Credits would result in transfer to supervised release no earlier than 12 months before the date that transfer to supervised release would otherwise have occurred.**

For inmates who meet the following criteria, up to 365 days of earned FTCs will be automatically applied to early release:

- Has a term of supervised release to follow the term of incarceration
- Has a low or minimum PATTERN risk level
- Has maintained a low or minimum PATTERN risk level for at least two consecutive assessments conducted during regularly scheduled Program Reviews
- ~~Has no detainers or pending charges, to include unresolved immigration status and~~
- Is not the subject of a final order of removal under immigration laws, and
- Has not opted out or refused to participate in any required program, and therefore, is in earning status.

As explained in Section 10(b), the Bureau will calculate an inmate's PRD by assuming that an inmate will remain in earning status throughout his or her sentence, including while in prerelease custody. If an inmate on prerelease custody has already earned the maximum 365 days of credit toward supervised release, the PRD will be adjusted only if the inmate loses earned FTCs consistent with Section 9. If an inmate is returned to prison for a violation during prerelease custody or any other reason, their projected FTCs may be adjusted depending on any failure to remain in earning status.

==**As used in this Section, "last risk and needs assessment" refers to the final risk and needs**==

P5410.01      **11**/18/2022      Federal Regulations from 28 CFR: this type. Implementing instructions: this type.                    17

J.A. 230

**assessment conducted while the inmate was at a BOP institution, prior to the inmate's transfer to supervised release or prerelease custody.**

## 11. RESIDENTIAL DRUG ABUSE TREATMENT PROGRAM EARLY RELEASE BENEFIT AND FTCs

Inmates who successfully complete the Residential Drug Abuse Treatment Program (RDAP) and are eligible for early release pursuant to 18 U.S.C. § 3621(e) may also earn FTCs which could be applied towards an additional reduction to their Projected Release Date (PRD).   Eligibility to apply earned FTCs is separate and unrelated to the eligibility requirements under 3621(e).

An inmate must complete all required components of RDAP, including the community-based treatment component, in order to receive the early release benefit pursuant to 18 U.S.C. § 3621(e).  The 3621(e) benefit will be applied first to the inmate's sentence computation, followed by the application of FTCs, however, an inmate must have sufficient time remaining to serve to complete all required components of the RDAP program (i.e., 120-day community-based treatment).

In the event an inmate has insufficient time remaining to serve after completing the RDAP program to receive both the early release benefit under 3621(e) and the full 365 days toward early release of earned FTCs, the number of FTC days applied will be reduced to allow for, at a minimum, the 120-day community-based placement as required under 3621(e).

Regardless of whether the inmate is receiving the 3621(e) release benefit alone or in conjunction with FTCs, the inmate will have a conditional release method entered into SENTRY until the inmate receives a community-based placement date with, at a minimum, the required 120 days and the unit team has submitted a completed BP-A0628, Notification of RRC Placement Date, to the Designation and Sentence Computation Center (DSCC).

Inmates who release early pursuant to section 3621(e) and who also earn FTCs will be keyed with the release method which identifies that both benefits have been applied.  The Correctional Systems t intranet page provides a list of FSA release method codes and descriptions for staff.

## 12. ADMINISTRATIVE REMEDIES.

Inmates who wish to seek review of any issue relating to this Program Statement may use the procedures outlined in the Program Statement **Administrative Remedy Program**.

P5410.01    11/18/2022    Federal Regulations from 28 CFR: this type. Implementing instructions: this type.                18

J.A. 231

**REFERENCES**

*U.S. Codes or Regulations Referenced*
8 U.S.C. § 1101
18 U.S.C. § 3624
18 U.S.C. § 3632
28 C.F.R. § 541
28 C.F.R. § 542

*Program Statements*

| | |
|---|---|
| 1221.66 CN-1 | Directives Management Manual (7/21/1998) |
| 1330.18 | Administrative Remedy Program (1/6/2014) |
| 5162.05 | Categorization of Offenses (3/16/2009) |
| 5200.06 | Management of Inmates with Disabilities (11/22/2019) |
| 5220.01 | First Step Act Program Incentives (7/14/2021) |
| 5270.09 CN-1 | Inmate Discipline Program (11/18/2020) |
| 5322.13 | Inmate Classification and Program Review (5/16/2014) |
| 5330.11 CN-1 | Psychology Treatment Programs (4/25/2016) |
| 5331.02 CN-2 | Early Release Procedures under 18 U.S.C. § 3621(e) (9/27/2017) |
| 5400.01 | First Step Act Needs Assessment (6/25/2021) |
| 7310.04 CN-1 | Community Corrections Center (CCC) Utilization and Transfer Procedure (12/16/1998) |

*Forms*

| | |
|---|---|
| BP-A0148 | Inmate Request to Staff |
| BP-A0628 | Notification of RRC Placement Date |
| BP-A1156 | Restoration of Federal Time Credits |

*ACA Standards:*

**American Correctional Association Standards for Adult Correctional Institutions - 5th Edition:**
5-ACI-2C-11, 5-ACI-3C-01, 5-ACI-3C-03, 5-ACI-3C-04, 5-ACI-3C-07, 5-ACI-3C-08, 5-ACI-3C-11, 5-ACI-3C-13, 5-ACI-3C-15, 5-ACI-3C-19,
5-ACI-3C-23, 5-ACI-3D-19, 5-ACI-4A-09, 5-ACI-5B-01, 5-ACI-5B-03, 5-ACI-5B-04, 5-ACI-5B-05, 5-ACI-5B-06, 5-ACI—5B-07, 5-ACI-5B-08,
5-ACI-5B-09, 5-ACI-5E-02, 5-ACI-5E-11, 5-ACI-5E-12, 5-ACI-5E-13, 5-ACI-5E-14, 5-ACI-5E-15, 5-ACI-6A-42, 5-ACI-6C-06, 5-ACI-7B-10

**American Correctional Association Performance Based Standards for Adult Local Detention Facilities - 4th Edition:**
4-ALDF-2A-30, 4-ALDF-2A-47, 4-ALDF-2A-50, 4-ALDF-3A-01, 4-ALDF-3A-02, 4-ALDF-

P5410.01    **11**/18/2022    Federal Regulations from 28 CFR: this type. Implementing instructions: this type.    19

4C-40, 4-ALDF-5A-04, 4-ALDF-5A-08,
4-ALDF-6B-01, 4-ALDF-6B-02, 4-ALDF-6B-04, 4-ALDF-6B-05, 4-ALDF-6B-08, 4-ALDF-6C-01, 4-ALDF-6C-03. 4-ALDF-6C-04, 4-ALDF-6B-07, 4-ALDF-6C-09, 4-ALDF-6C-11, 4-ALDF-6C-12, 4-ALDF-6C-14, 4-ALDF—6C-15, 4-ALDF-6C-18, 4-ALDF-7D-2

*Records Retention Requirements*
Requirements and retention guidance for records and information applicable to this program are available in the Records and Information Disposition Schedule (RIDS) on Sallyport.

P5410.01    **11**/18/2022    Federal Regulations from 28 CFR: this type. Implementing instructions: this type.    20

J.A. 233