No. 23-7116

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

WILLIAM WHITE,

*Petitioner-Appellant*,

*v.*

WARDEN OF FEDERAL CORRECTIONAL INSTITUTION - CUMBERLAND,

*Respondent-Appellee*.

On Appeal from the United States District Court
for the District of Maryland, No. 22-cv-02371-DKC (Chasanow, J.)

## REPLY BRIEF FOR WILLIAM WHITE

JAMES WYDA
CLAIRE MADILL
PATRICIA L. RICHMAN
OFFICE OF THE FEDERAL
  PUBLIC DEFENDER
6411 Ivy Lane, Suite 710
Greenbelt, Maryland 20770
(301) 344-0600
Claire_Madill@fd.org

August 13, 2025

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................ iii

INTRODUCTION ...........................................................................1

ARGUMENT ..................................................................................2

I.     PETITIONER WAS ENTITLED TO EARN FSA TIME CREDITS WHILE AT THE FEDERAL TRANSFER CENTER.................................................2

     A.     The district court erroneously deferred to the BOP. .............4

     B.     The Government's statutory argument on appeal conflicts with the argument and decision below................................7

     C.     The Government's proffered interpretation of "successful participation" should be rejected.........................................9

II.     PETITIONER POSSESSED A DUE PROCESS INTEREST IN EARNING FSA TIME CREDITS..................................................................15

     A.     The Government waived or forfeited any due process argument.................................................................16

     B.     The two-prong standard for recognizing liberty interests is satisfied. .........................................................17

          1.     *Prong 1: By using mandatory language, the FSA creates a legitimate expectation in earning and applying time credits.*...............................18

          2.     *Prong 2: The Government does not meaningfully engage with the second prong of the applicable test.* ...............................................24

          3.     *The Government misrepresents precedent*.............................26

          4.     *The Government's "policy" argument falls flat.*......................28

- i -

CERTIFICATE OF COMPLIANCE....................................................................30

CERTIFICATE OF SERVICE ..........................................................................31

# TABLE OF AUTHORITIES

## Cases

*Adepoju v. Scales*, No. 3:25cv245, 2025 WL 1392287 (E.D. Va. May 14, 2025) ................................................................................ passim

*Am. Health Care Assoc. v. Kennedy*, 777 F. Supp. 3d 691 (N.D. Tex. 2015) .......... 6

*Antoine v. Rardin*, No. 24-cv-12462, 2025 WL 968285 (E.D. Mich. Mar. 31, 2025) ..................................................................................... 25

*Bd. of Pardons v. Allen*, 482 U.S. 369 (1987) ........................................... 20

*Calcutt v. FDIC*, 598 U.S. 623 (2023) ..................................................... 8

*Cardoza v. Pullen*, No. 3:22-CV-00591 (SVN), 2022 WL 3212408 (D. Conn. Aug. 9, 2022) ................................................................................. 23

*Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC*, 982 F.3d 258 (4th Cir. 2020) .................................................................................... 7

*Cheng v. United States*, 132 F.4th 655 (2d Cir. 2025) .................................. 26, 27

*Chevron, U.S.A., Inc. v. Nat'l Res. Def. Council*, Inc., 467 U.S. 837 (1984)... 2, 4, 5

*Corrales v. Ricolcol*, No. 5:23-cv-01959-JGB-BFM, 2024 WL 5275574 (C.D. Cal. Jan. 10, 2024) .......................................................................... 11

*Correa-Gutierrez v. Warden*, No. 2:23-cv-08911-CBM-KES, 2024 WL 1469348 (C.D. Cal. Feb. 2, 2024) ................................................................. 22

*Dep't of Labor v. Americare Healthcare Servs.*, LLC, 762 F. Supp. 3d 666 (S.D. Ohio 2025) ............................................................................... 5

*Drayton v. McCall*, 584 F.2d 1208 (2d Cir. 1978) ..................................... 20

*Dunaev v. Engleman*, No. 2:24-cv-09835-AH (SHK), 2025 WL 1558454 (C.D. Cal. Apr. 28, 2025), *report and recommendation adopted* 2025 WL 1555493 (C.D. Cal. May 28, 2025) ................................................................ 14

*Fiorito v. Fikes*, No. 23-1006, 2023 WL 4841966 (8th Cir. July 28, 2023) .......... 26

*Fristoe v. Thompson*, 144 F.3d 627 (10th Cir. 1998) ................................... 23

*Gale v. Warden FCI Milan*, 2025 WL 223870 (E.D. Mich. Jan. 16, 2025)............23

*Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1 (1979) ...........20

*Holcomb v. Lykens*, 337 F.3d 217 (2d Cir. 2003).................................................18

*Hous. & Redevelopment Ins. Exch. v. Turner*, No. 3:22-cv-01565, 2025 WL 848671 (M.D. Pa. Mar. 18, 2025) ........................................................5

*Jackson v. Carlson*, 707 F.2d 943 (7th Cir. 1983).................................................19

*Jackson v. Wadas*, No. 2:25-cv-00151-JPH-MJD, 2025 WL 1284831 (S.D. Ind. May 1, 2025)................................................................25

*Jaffree v. Wallace*, 705 F.2d 1526 (11th Cir. 1993) .................................................4

*Judicial Watch, Inc. v. United States*, 84 F. App'x 335 (4th Cir. 2004) ..................8

*Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454 (1989).......................... 18, 20

*Kvashuk v. Warden, FCI Berlin*, No. No. 23-cv-007, 2024 WL 4349850 (D.N.H. Sept. 30, 2024)........................................................8

*Ledford v. Lemaster*, No. 23-30-DLB, 2023 WL 2905376 (E.D. Ky. Mar. 28, 2023) ........................................................................25

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) ....................................4, 5

*Mallette v. Arlington Cty. Emps.' Supplemental Retirement System II*, 91 F.3d 630 (4th Cir. 1996) ........................................................... 20, 22

*Mills v. Holmes*, 95 F. Supp. 3d 924 (E.D. Va. 2015) ...................................... 17, 20

*Moctezuma-Reyes v. Garland*, 124 F.4th 416 (6th Cir. 2024)................................6

*Mohammed v. Engleman*, No. 2:25-cv-01011-MWC-MBK, 2025 WL 1909836 (C.D. Cal. July 9, 2025).....................................................................21

*Monroe v. Bombard*, 422 F. Supp. 211 (S.D.N.Y. 1976).....................................28

*Montgomery v. Anderson*, 262 F.3d 641 (7th Cir. 2001)................................. 18, 27

*Morrissey v. Brewer*, 408 U.S. 471 (1972)...................................................... 26, 28

- iv -

*N.C. Farm Bureau Fed., Inc. v. U.S. Dep't of Labor*, No. 5:24-CV-00527-FL, 2025 WL 1296245 (E.D.N.C. May 5, 2025)........................................................5

*O'Bryan v. J.W. Cox*, No. 21-4052, 2021 WL 3932275 (D.S.D. Sept. 1, 2021).....21

*Patel v. Birkholz*, 2024 WL 4112432 (C.D. Cal. May 20, 2024) ...........................10

*Pelullo v. FCC Coleman-Low*, No. 5:23-cv-189, 2024 WL 3771691 (M.D. Fla. Aug. 13, 2024) ...............................................................................................7

*Prieto v. Clarke*, 780 F.3d 245 (4th Cir. 2015).................................................. 17, 18

*Restaurant Law Ctr. v. U.S. Dep't of Labor*, 120 F.4th 163 (5th Cir. 2024) ............5

*Sandin v. Conner*, 515 U.S. 472 (1995)................................................................24

*SEC v. Chenery Corp.*, 332 U.S. 194 (1947) ...........................................................8

*Sedlacek v. Rardin*, No. 24-1254, 2025 WL 948485 (6th Cir. Jan. 21, 2025) . 26, 27

*Sharma v. Peters*, 756 F. Supp. 3d 1271 (M.D. Ala. 2024)....................................9

*Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) .............................................. 2, 6, 7

*Stageman v. PHH Mortg. Corp.*, No. 4:24-cv-00505-JAR, 2025 WL 471197 (E.D. Mo. Feb. 12, 2025) ...............................................................................6

*Stokes v. Stirling*, 64 F.4th 131 (4th Cir. 2023) ...................................................17

*Thompson v. Veach*, 501 F.3d 832 (7th Cir. 2007).................................................23

*United States v. Jones*, 565 U.S. 400 (2012) ........................................................16

*United States v. U.S. Training Ctr.*, 498 F. App'x 308 (4th Cir. 2012) .................16

*Utah v. Su*, 109 F.4th 313 (5th Cir 2024) ...............................................................5

*Valladares v. Ray*, 130 F.4th 74 (4th Cir. 2025).............................................. 21, 22

*Young v. Harper*, 520 U.S. 143 (1997) ............................................................ 19, 25

**Statutes**

18 U.S.C. § 3621 ................................................................................................2, 11

18 U.S.C. § 3624..........................................................................................5, 18

18 U.S.C. § 3632 ............................................................ 5, 11, 21, 26

57 Okl. St. Ann. § 365 (1990).........................................................................19

**Other Authorities**

115 Cong. Rec. S7838 (Dec. 19, 2018) ..................................................13

118 Cong. Rec. S5974 (Dec. 14, 2023) ..................................................13

Ben Harrington & Nathan James, Cong. Rsch. Serv., Federal Correctional Reform
and the First Step Act of 2018 (updated Dec. 28, 2018) ......................................14

Nathan James, Cong. Rsch. Serv., R45558, The First Step Act of 2018: An
Overview (2019)..........................................................................13

Senators Sheldon Whitehouse & John Cornyn, Letter Re: RIN 1120–AB76, "FSA
Time Credits" (Jan. 25, 2021), *available at*
https://www.whitehouse.senate.gov/wp-
content/uploads/imo/media/doc/Comment%20on%20FSA%20Time%20Credit%
20Proposed%20Rule.pdf..................................................................14

**Regulations**

28 C.F.R. § 523.41 ..........................................................................2

**INTRODUCTION**

The United States Supreme Court has never declined to apply the Due Process Clause to statutes that use mandatory language giving prisoners a legitimate expectation in early release—even where there are conditions attached. Yet, the Government asks this Court to depart from these cases and hold that federal inmates do not have a protected liberty interest in earning First Step Act (FSA) time credits. The Government's arguments ignore its own forfeiture of the issue and fabricate a never-before-applied legal standard. This Court should apply the proper two-part legal test for determining whether a prisoner has a liberty interest. When that test is applied, it is clear that White has a liberty interest earned FSA time credits.

But this Court need not even address the due process question. Instead, it can reverse because the categorical denial of FSA time credits to White due to his "transfer" designation status violated the FSA. The Government's response doesn't even address the waiver/forfeiture problems or that the regulation invoked didn't apply to White's circumstances. Instead, the Government advances an argument, not raised below, that since the BOP supposedly does not even offer evidence-based recidivism reduction programming (EBBRs) or productive activities (PAs) in the Oklahoma Federal Transfer Center (FTC), White did not "successfully participate" in the FSA time credit scheme. The Court should reject this argument. The Government's interpretation of successful participation conflicts with BOP's own

Program Statement, contradicts the FSA's mandate that BOP "shall" provide EBBRs and PAs to "all prisoners . . . throughout their entire term of incarceration," 18 U.S.C. § 3621(h)(6), and ignores the FSA's purpose to reduce the prison population. Instead, the Court should adopt BOP's interpretation of successful participation: as long as a prisoner is willing and able to participate in programming, he earns FSA time credits.

## ARGUMENT

**I.    Petitioner Was Entitled to Earn FSA Time Credits While at the Federal Transfer Center.**

Because BOP categorically bars the earning of FSA time credits for inmates "in-transit," J.A.224, White was denied these credits for his time in an FTC. The district court applied *Chevron* and *Skidmore* deference to uphold that decision. White appealed, arguing that the Government failed to preserve an argument related to this time, the district court erroneously applied deference, the BOP violated the FSA, and the regulation invoked did not apply to White. Initial Brief ("I.B.") at 18-27 (available at ECF 19).

The Government does not respond to the first (preservation) or fourth (whether the regulation applies) arguments. Accordingly, this Court could reverse on the narrow ground that the regulation at issue did not apply to White, as he was not "outside the institution" while at an FTC. I.B.25-27 (citing 28 C.F.R. § 523.41(c)(4)(ii)).

- 2 -

Instead, the Government argues that deference was appropriate. Response Brief ("R.B.") at 43-50 (available ECF 33). Alternatively, it contends White could not earn FSA time credits because, per the Government, the FTC doesn't offer programming, so White couldn't have "successfully participated." R.B.33-43.

The Government's arguments are unpersuasive. Its deference arguments mispresent appellate procedure and ignore that courts must independently analyze statutory text. As to the FSA's meaning, the Government's proffered interpretation of successful participation should not even be considered, as it is brand new, differs from the argument and reasoning below, and relies on facts not in the record. In any event, the Court should reject the Government's argument. Not only does the Government's proposed interpretation of "successful participation" conflict with the BOP's own policies (which the Government simultaneously champions as impeccably crafted in other parts of its brief), it conflicts with other portions of the FSA (namely, the sections requiring BOP to provide EBBRs/PAs at all times after an individual's sentence commences) and ignores that the FSA was designed to reduce the prison population. The Court should adhere to the definition of "successful participation" laid out in the BOP's Program Statement: an individual earns FSA time credits when he is willing and able to participate in programming.

- 3 -

**A.     The district court erroneously deferred to the BOP.**

The district court never fulfilled its "obligation to independently interpret" the FSA, *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024), instead deferring to the BOP's interpretation as "permissible" and "mak[ing] sense," J.A.192-93.

The Government advances three uncompelling arguments for why deference was appropriate.

First, the Government invokes stare decisis.  The district court applied *Chevron* deference (J.A.191-92), but *Chevron* has been overruled.  *Loper Bright*, 603 U.S. at 412.  The Government argues this change in law is irrelevant, citing *Loper Bright*'s statement that it was "not call[ing] into question prior cases that relied on the *Chevron* framework" because those decisions "are still subject to statutory *stare decisis*."  R.B.43-44 (citing *Loper Bright*, 603 U.S. at 412).

That is not how stare decisis or judicial hierarchy works.  "The doctrine of stare decisis pertains to the deference a court may give <u>to its own prior decisions</u>." *Jaffree v. Wallace*, 705 F.2d 1526, 1532 (11th Cir. 1993) (emphasis added).  While the Supreme Court accords stare decisis to its own decisions, this Court and the district court are "compelled to apply the precedent of a higher court," *i.e.*, *Loper Bright*. *Jaffree*, 705 F.2d at 1532.  When an "intervening Supreme Court precedent affects a case pending . . . on direct appeal," the "relatively uncontroversial practice" is to "vacate the judgment below and remand for reconsideration in light of the new

- 4 -

decision." *Utah v. Su*, 109 F.4th 313, 319 (5th Cir 2024). Thus, at minimum, this Court should reverse and remand for reconsideration of the statutory question. *Nicoletti v. Bayless*, No. 24-6012, 2025 WL 80294 (4th Cir. Jan. 13, 2025). If this Court decides to analyze the meaning of the FSA itself, then it must "exercis[e] independent legal judgment," rather than apply *Chevron*. *Loper Bright*, 603 U.S. at 401; *see Restaurant Law Ctr. v. U.S. Dep't of Labor*, 120 F.4th 163, 171 (5th Cir. 2024).

Second, the Government argues that deference is required because the FSA "delegates authority" to the BOP to define successful participation or "fill up the details." R.B.46-47. The Government again misreads *Loper Bright*. Those principles apply only where the delegation is "express" or "clear and unambiguous." *Loper Bright*, 603 U.S. at 394-95 & n.5; *Dep't of Labor v. Americare Healthcare Servs.*, LLC, 762 F. Supp. 3d 666, 685-86 (S.D. Ohio 2025); *Hous. & Redevelopment Ins. Exch. v. Turner*, No. 3:22-cv-01565, 2025 WL 848671, at *5 (M.D. Pa. Mar. 18, 2025); *N.C. Farm Bureau Fed., Inc. v. U.S. Dep't of Labor*, No. 5:24-CV-00527-FL, 2025 WL 1296245, *11 (E.D.N.C. May 5, 2025). Here, the FSA contains no express, clear, and unambiguous delegation to define "successful participation." *See* 18 U.S.C. § 3624; 18 U.S.C. § 3632. To the contrary, the FSA's "successful participation" language exists in a section that *removes* BOP discretion by using mandatory language such as "shall." 18 U.S.C. § 3632(d)(4). Indeed, far from a

- 5 -

delegation "where Congress generally authorizes an agency to implement a statute but provides no specifics," *Duffus v. MaineHealth*, 2:24-cv-00268-SDN, 2025 WL 1928339, at \*11 (D. Me. July 14, 2025), the FSA contains detailed and specific commands about when and how to administer credits.  Nor does the Government point to a portion of the FSA delegating authority to define "successful participation;" rather, it points to *another* section of the statute (related to creating a risks and needs system) and asks this Court to implicitly infer some sort of delegation.  R.B.47.  But "[t]he actual delegation of authority to the agency must be clear: imprecise wording alone won't cut it."  *Moctezuma-Reyes v. Garland*, 124 F.4th 416, 421 (6th Cir. 2024).

Finally, an agency can "fill up the details" only "by adopting measures to advance [the] intended statutory purpose." *Stageman v. PHH Mortg. Corp.*, No. 4:24-cv-00505-JAR, 2025 WL 471197, at \*6 (E.D. Mo. Feb. 12, 2025).  Regulatory details cannot violate "a statutory command."  *Am. Health Care Assoc. v. Kennedy*, 777 F. Supp. 3d 691, 702 (N.D. Tex. 2015).  Here, BOP's wholesale exclusion of individuals in "transit" or in "designation status outside the institution" from the FSA time credit scheme violates Congress's command that eligible prisoners earn credits during the entirety of their incarceration.  I.B.22-25.

Third, the Government summarily argues that the district court appropriately applied *Skidmore*.  R.B.48-50.  But the district court did not correctly apply

- 6 -

*Skidmore*.  I.B.21.  Nor does the Government apply any of the factors for analyzing the persuasiveness of an agency's statutory interpretation under *Skidmore*.  *E.g.*, *Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC*, 982 F.3d 258, 264 (4th Cir. 2020) (listing factors like "the thoroughness" of the agency's consideration and "its consistency with earlier and later pronouncements").  Indeed, if the Government *had* applied those factors, it would have undermined the district court.  For example, as explained below, the definition of successful participation that the Government advances now conflicts with the definition articulated in BOP's Program Statement, thereby showing a lack of "consistency."

> **B.  The Government's statutory argument on appeal conflicts with the argument and decision below.**

Putting aside its deference arguments, on the merits, the Government advances a statutory interpretation that it did not raise below and that the district court did not consider: that White was not entitled to earn FSA time credits while in the FTC because White did not actually complete any EBBRs or PAs, as the BOP supposedly did not offer such programming in the FTC.  R.B.8, 33-40.  This wasn't the reason BOP gave for denying White credits.  Rather, BOP applied its "blanket, automatic prohibition" that White's "designation status caused an automatic ineligibility for Petitioner to earn time credits."  *Pelullo v. FCC Coleman-Low*, No. 5:23-cv-189, 2024 WL 3771691, at *5 (M.D. Fla. Aug. 13, 2024); *see* J.A.78-79, 101, 177.

The Court should decline to consider the Government's brand-new argument.

There has been a waiver or forfeiture.  The Government does not defend its failure to respond to the transit argument below. I.B.19.  The Government's decision to raise a new argument for the first time on appeal provides yet another basis for this Court to decline to address it. *Judicial Watch, Inc. v. United States*, 84 F. App'x 335, 338 (4th Cir. 2004).

Alternatively, the discrepancy between the reasoning below and the Government's reasoning on appeal requires, at minimum, reversal and remand. There is no evidence in the record about White's supposed failure to participate in EBBRs/PAs while in the FTC, nor the availability of programming at the FTC, so this issue cannot be resolved on a motion to dismiss or summary judgment. *Kvashuk v. Warden, FCI Berlin*, No. No. 23-cv-007, 2024 WL 4349850, *5 (D.N.H. Sept. 30, 2024) (government not entitled to judgment as a matter of law on FSA time credit claim where "[m]aterial facts are in dispute as to whether any programs at all were made available to Kvashuk, whether he might have been waitlisted at any time, and, if so, whether those programs were the type that could have yielded time credits if not for the BOP's failure to include that time period in calculating his credits"). Additionally, "reviewing courts 'must judge the propriety of [agency] action solely by the grounds invoked by the agency.'" *Calcutt v. FDIC*, 598 U.S. 623, 624 (2023) (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).  Since the ground

- 8 -

invoked to deny credits below (that White's transfer status automatically precluded earned FSA time credits) differs from the ground advanced here (that he did not successfully participate), the denial of credits cannot be upheld.

**C. The Government's proffered interpretation of "successful participation" should be rejected.**

If this Court does reach the merits of the statutory question, the Government's proposed definition of "successful participation" should be rejected. The Government's interpretation (a) ignores the BOP's own differing interpretation of "successful participation," (b) conflicts with other portions of the FSA (particularly, the mandate that the BOP provide programming), and (c) undermines a primary goal of the FSA, namely, to reduce the prison population.

a. Not once does the Government acknowledge that its advanced interpretation of "successful participation" conflicts with the BOP's own program statement. Per the Government, an individual hasn't "successfully participated" for purposes of FSA time credits unless they have "actively participated" or completed EBBRs/PAs. R.B.37, 41. But BOP awards time credits so long as an individual is willing and able to participate in programming. J.A.223-24; *Sharma v. Peters*, 756 F. Supp. 3d 1271, 1284 n.14 (M.D. Ala. 2024) ("[T]he inmate will earn FSA time credits by default so long as he is able and willing (i.e. not opting out, choosing not to participate in programming, or otherwise not successfully participating) to complete programming." (cleaned up)). That means an inmate must participate in

- 9 -

programming that is available and recommended, but they are not punished when BOP fails to provide it. Thus, "current regulations allow for the possibility that a person may be 'successfully participating,' and thus accruing earned time credit, during periods in which they are not actually participating in programming." *Patel v. Birkholz*, 2024 WL 4112432, *3 n.2 (C.D. Cal. May 20, 2024).

The Government's refusal to acknowledge BOP's definition of successful participation underscores the inconsistency in its briefing. At the same time the Government defends BOP's categorical exclusion of individuals designated "outside the institution" as "properly promulgated" and deference worthy (R.B.38), the Government effectively asks this Court to reject BOP's overarching definition of "successful participation." The Government cannot cherry-pick which portions of BOP policy warrant deference. In contrast, Petitioner asks this Court to adopt BOP's interpretation of "successful participation" as being willing and able to participate in available programming, not as a matter of deference, but rather because, as explained below, it accords with other provisions of the FSA and the statute's purpose. And he asks the Court to reject the exclusion for White's time in the FTC as contrary to the FSA's plain text.

b.      The BOP's promulgated interpretation of "successful participation" harmonizes the FSA much better than the Government's proposal. As the Government emphasizes, this Court should consider the context and structure of the

- 10 -

FSA when analyzing the meaning of "successful participation." R.B.34-36. Yet the Government ignores that Congress clearly wanted federal inmates to be able to earn FSA time credits *at every stage of their incarceration*—without exception. Congress made this clear several times. It mandated that the BOP provide EBBRs/PAs to "*all prisoners*" at *all times* ("throughout their entire term of incarceration"). 18 U.S.C. § 3621(h)(6) (emphasis added). The statute further states that BOP "*shall* . . . ensure that . . . *all prisoners* are able to successfully participate in such programs." 18 U.S.C. § 3632(a)(5)(C) (emphases added). Congress again made this intent clear by mandating that eligibility to start earning credits begin as soon as a sentence "commences," *i.e.*, the date the prisoner enters custody. 18 U.S.C. § 3632(d)(4)(B)(ii). Hence, Congress "delineated the limited time frames during which such credits will not accrue"—after the statute's enactment and when a sentence commences—and "left no room for the BOP to create additional exceptions." *Corrales v. Ricolcol*, No. 5:23-cv-01959-JGB-BFM, 2024 WL 5275574, at *4-*5 (C.D. Cal. Jan. 10, 2024). Relevant here, Congress did not allow exceptions for when an individual is being transferred or when programming is unavailable.

An interpretation of "successful participation" that allows an inmate to earn FSA time credits from the beginning of their sentence forward—so long as they are willing and able to engage in available and recommended programming—

harmonizes the statute. If White did not participate in EBBRs/PAs in the FTC, that is because BOP violated its statutory obligation to provide programming. Interpreting "successful participation" to allow the earning of FSA time credits, so long as inmates were willing and able to engage in available and recommended programming, solves this problem. It incentivizes prisoners to take advantage of available programming, encourages the BOP to provide that programming, respects Congress's clear intent to permit the earning of FSA time credits throughout the entirety of an individual's incarceration after sentence commencement, all without unfairly punishing prisoners who are unable to program due to the BOP's statutory violations.

Contrary to the Government's assertions, White is not arguing that he should earn FSA time credits for merely "existing in prison." R.B.20. If BOP had offered or recommended EBBRs/PAs to White during his time in the FTC, and White refused to participate, then he would not be entitled to credits. J.A.224. But it is fundamentally unfair to deny White FSA time credits when it's the BOP's flouting of its statutory obligation to provide EBRRs/PAs in all facilities during the entirety of an individual's incarceration that caused the unavailability of programming. As the Government said, the FSA sets up an "exchange." R.B.35. White did his part: he was willing and able to engage in any available EBBRs/PAs. It was BOP that did not hold up its end of the bargain: it transferred White (a decision White had no

- 12 -

control over) and apparently failed to comply with its statutory duty to provide EBBRs/PAs.

c.    Finally, White's interpretation of successful participation best promotes the FSA's dual purposes.

The Government claims it has the better interpretation of "successful participation" because the purpose of the FSA was to reduce recidivism.  Per the Government, it would be inconsistent with this purpose to permit prisoners to earn FSA time credits when they have not actually completed programming even where, as is true here, that lapse was BOP's fault.  R.B.21, 33, 35-36.

However, the FSA had another major purpose: to reduce the prison population.  The FSA "was the culmination of several years of congressional debate *about what Congress might do to reduce the size of the federal prison population* while also creating mechanisms to maintain public safety."  Nathan James, Cong. Rsch. Serv., R45558, The First Step Act of 2018: An Overview (2019) (emphasis added).  Congress was motivated by "overcrowded prisons" and the toll this country's prison industrial complex has imposed.  115 Cong. Rec. S7838 (Dec. 19, 2018) (statement of Sen. Grassley) (co-sponsor explaining that the FSA "revises policies that have led to overcrowded prisons and, of course, ballooning taxpayer expenses"); 118 Cong. Rec. S5974 (Dec. 14, 2023) (statement of Sen. Booker) (another co-sponsor noting that the FSA addressed that "we were wasting billions of

- 13 -

dollars" and "investing billions of dollars in warehousing people"); Ben Harrington & Nathan James, Cong. Rsch. Serv., Federal Correctional Reform and the First Step Act of 2018 (updated Dec. 28, 2018) (noting that "[c]oncerns about the financial and social costs of incarcerating a growing number of federal inmates" motivated the FSA). FSA time credits facilitate this goal of reducing the prison population: they "allow certain prisoners to earn additional time credits for successfully completing rehabilitative programs, leading to an earlier release from prison to community supervision." Harrington & James, *supra*, at 2; *see also Dunaev v. Engleman*, No. 2:24-cv-09835-AH (SHK), 2025 WL 1558454, at \*4 (C.D. Cal. Apr. 28, 2025), *report and recommendation adopted* 2025 WL 1555493 (C.D. Cal. May 28, 2025) (noting "one of the fundamental goals of the Act: to reduce the size of the prison population vis-à-vis programming directly aimed at rehabilitation and the reduction in the risk of recidivism"); Senators Sheldon Whitehouse & John Cornyn, Letter Re: RIN 1120–AB76, "FSA Time Credits" (Jan. 25, 2021), *available at* https://www.whitehouse.senate.gov/wp-content/uploads/imo/media/doc/Comment%20on%20FSA%20Time%20Credit%20Proposed%20Rule.pdf (noting that the FSA's time credit scheme was designed to "reduce both prison costs and recidivism rates for incarcerated individuals").

The Government completely ignores this alternative purpose of the FSA. The Government's definition of "successful participation" would extend the amount of

- 14 -

time individuals stay incarcerated.[1]  Fewer FSA time credits would be earned and ultimately applied, thereby keeping individuals in prison.  In contrast, White's proposed interpretation promotes both statutory purposes: it reduces the prison population by not unduly restricting time credits while still promoting recidivism-reduction by requiring prisoners to take advantage of programming that is actually available.

## II.    Petitioner Possessed a Due Process Interest in Earning FSA Time Credits.

The district court erred in concluding that White lacked a protected liberty interest in earned FSA time credits.  For one, the Government failed to preserve any objection to White's due process argument.  Additionally, the district court failed to apply the proper framework for ascertaining a liberty interest.  If it had, it would have concluded that the Due Process Clause applies to FSA time credits, as the FSA's mandatory language creates a legitimate expectation in earning and applying those credits, and the credits ultimately result in release from prison.

None of the Government's responses hold water.  The Government admits that it did not raise due process below.  On the merits, the Government also does not apply the two-step legal standard for determining liberty interests for prisoners. Instead, it claims that federal inmates cannot have a liberty interest in earning or

---

[1] The Government's insistence that the Due Process Clause does not apply to FSA time credits will also contribute to overincarceration, by eliminating the procedural rights of inmates to internally challenge erroneous FSA time credit decisions.

applying FSA time credits because those credits are "conditional." But the Supreme Court has repeatedly recognized liberty interests even in "conditional" prison statutes or regulations. *Infra* 18-20. The question is not whether the statute is conditional, but rather whether it utilizes mandatory language creating a legitimate expectation in early release. To the extent the Government suggests that FSA time credits are discretionary, the FSA's text contradicts that assertion. And the Government's arguments based on precedent and policy lack factual support.

## A.     The Government waived or forfeited any due process argument.

The Government asserts it is "absurd" to think it waived or forfeited a response to White's due process argument but, in the same breath, admits that it "did not address it below." R.B.22 n.11. That's the literal definition of forfeiture. *United States v. Jones*, 565 U.S. 400, 413 (2012) ("consider[ing an] argument forfeited" where "[t]he Government did not raise it below").

Alternatively, the Government argues it was "unnecessary" to respond to White's due process argument because its statutory argument should have prevailed. R.B.22 n.11. This argument would never fly if raised by another party. *See United States v. U.S. Training Ctr.*, 498 F. App'x 308, 316-17 (4th Cir. 2012) (party waived an alternative argument by failing to raise it below).

That this Court invited briefing should not excuse the omission. Fairness requires enforcing waiver and forfeiture rules against appellees, even the

- 16 -

government. *Stokes v. Stirling*, 64 F.4th 131, 137 (4th Cir. 2023). Presumably this Court invited briefing before it knew about the Government's wholesale failure to address due process below.

### B. The two-prong standard for recognizing liberty interests is satisfied.

As the initial brief explained, a two-part test applies when analyzing whether a prisoner has a liberty interest. I.B.31-33. If (1) an inmate has a legitimate expectation in some benefit or entitlement and (2) that benefit/entitlement either (a) affects sentence duration or (b) imposes an atypical or significant hardship, then a liberty interest exists. *Prieto v. Clarke*, 780 F.3d 245, 248-49 (4th Cir. 2015); *Adepoju v. Scales*, No. 3:25cv245, 2025 WL 1392287, at *10-*11 (E.D. Va. May 14, 2025); *Mills v. Holmes*, 95 F. Supp. 3d 924, 932 (E.D. Va. 2015). Because the FSA mandates the earning and applying of FSA time credits, and because FSA time credits ultimately result in release from a BOP prison, the Due Process Clause requires minimum procedural protections before the BOP refuses to award or apply FSA time credits.[2]

---

[2] This case technically only presents the question of whether there is a protected liberty interest in *earning* FSA time credits. But the same reasoning applies *a fortiori* to *applied* credits. *See Adepoju*, 2025 WL 1392287, at *11-*12.

- 17 -

1.    *Prong 1: By using mandatory language, the FSA creates a legitimate expectation in earning and applying time credits.*

Although there is no inherent due process right to early release from prison, a liberty interest exists if White can show that a "statute, regulation, or policy creates" one. *Prieto*, 780 F.3d at 248. Where a statute uses mandatory language stating that an individual *shall* receive something (like time credits), this prong is satisfied. *Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 463 (1989). In contrast, if a statute only creates a subjective hope, or commits a decision to award benefits wholly to the prison's discretion, then a liberty interest does not arise. *Montgomery v. Anderson*, 262 F.3d 641, 645 (7th Cir. 2001); *Holcomb v. Lykens*, 337 F.3d 217, 223 (2d Cir. 2003).

Rather than engaging in this legal framework, the Government argues that no liberty interest exists because the FSA is "conditional." R.B.17-19, 26-29. But the Government cites no pre-FSA case for the proposition that the Due Process Clause does not apply to statutes or regulations that are "conditional." Nor could it. The Supreme Court has routinely recognized that a legitimate expectation can arise from a conditional statute.

Take, for example, good-time credits. Prisoners are entitled to good-time credits "subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations." 18 U.S.C. § 3624(b)(1). That statute makes credits conditional:

- 18 -

inmates only get credits *if* the BOP makes a "determination" *and* that determination is that they "displayed exemplary compliance" with prison regulations. *Id.* Yet, good-time credits *are* protected by the Due Process Clause. *Wolff v. McDonnell*, 418 U.S. 539 (1974); *Jackson v. Carlson*, 707 F.2d 943, 946-47 (7th Cir. 1983).[3]

The Supreme Court's liberty interest decisions in the parole context debunk the Government's "conditional" argument. In *Young v. Harper*, 520 U.S. 143, 144-45 (1997), the Court addressed Oklahoma's "preparole" system, which (like the FSA), created a process by which some inmates were released early to reduce the prison population. To qualify for preparole, an inmate had to satisfy conditions. *Inter alia*, they had to be recommended by the parole board following a review of their conduct in prison and either have served 15% of their sentence be within 1 year of their parole consideration date or projected release date. 57 Okl. St. Ann. § 365 (1990); *Young*, 520 U.S. at 145. Additionally, the preparole system only kicked in once the prison population reached a certain threshold. *Id.* at 145. Notwithstanding these conditions, the Supreme Court found that inmates had protected liberty interest in preparole. *Id.* at 148-53.

---

[3] The Government distinguishes good-time credits on the ground that due process protections apply to those credits. R.B.26. That puts the cart before the horse. Procedural protections apply *because* the test for determining a liberty interest has been satisfied, not because of some inherent feature of good-time credits. *Wolff*, 418 U.S. at 557-59.

The Court reached the same conclusion in *Bd. of Pardons v. Allen*, 482 U.S. 369 (1987). There, the Court held that inmates had a liberty interest in parole even though the Board of Parole had to decide that "three criteria the statute specifies" were met before authorizing parole. *Id.* at 378. A liberty interest existed because the statute "use[d] mandatory language ('shall') to create a presumption that parole release will be granted when the designated findings are made." *Id.* at 377-78 (cleaned up); *see also Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 11-12 (1979); *Mallette v. Arlington Cty. Emps.' Supplemental Retirement System II*, 91 F.3d 630, 635-36 (4th Cir. 1996) (employees had a liberty interest in benefits where the statute required the issuance of benefits "[o]nce an employee meets th[e] particularized standards"); *Drayton v. McCall*, 584 F.2d 1208, 1215 (2d Cir. 1978) (federal prisoner had liberty interest in parole release even though parole could be rescinded under certain "conditions").

As these cases make clear, the pertinent inquiry under the first prong of the liberty interest test is not whether there are "conditions," but whether the statute uses "mandatory language" that "creates a 'legitimate claim of entitlement' [for prisoners] who meet the [FSA's] standards." *Mallette*, 91 F.3d at 635. That, in turn, depends on whether the statute uses mandatory or discretionary language. *Thompson*, 490 U.S. at 463; *Mills*, 95 F. Supp. 3d at 932. The FSA uses the

- 20 -

mandatory language that gives rise to a liberty interest. I.B.34-39; *Adepoju*, 2025 WL 1392287, at *11.

In some instances, the Government implies that the BOP has discretion over whether to award and apply FSA time credits. For example, the Government describes FSA time credits as "discretionary motivational tools, not guaranteed sentencing reductions," and states that FSA time credits "can be applied" toward release to supervision or prerelease custody. R.B.19, 27.

That argument misrepresents the FSA. FSA time credits are "discretionary" insofar as a *prisoner* can decline to participate. But, unless a prisoner opts out, the BOP has no discretion to refuse to award or apply credits. 18 U.S.C. § 3632(d)(4)(A), (C); *Valladares v. Ray*, 130 F.4th 74, 77 (4th Cir. 2025) (noting that the FSA established a "system of mandatory time credits"); *Adepoju*, 2025 WL 1392287, at *6, *8, *11; *Mohammed v. Engleman*, No. 2:25-cv-01011-MWC-MBK, 2025 WL 1909836, at *11 (C.D. Cal. July 9, 2025) ("Congress's use of the word 'shall' . . . reinforces that the FSA imposes a mandatory requirement."); *O'Bryan v. J.W. Cox*, No. 21-4052, 2021 WL 3932275, at *2 (D.S.D. Sept. 1, 2021) (BOP cannot "refuse to honor time credits" because "[s]uch a reading of the First Step Act is contrary to the mandatory language of the Act").

The Government highlights other examples of so-called BOP "discretion," but these arguments suffer from multiple problems. The government does not respond

- 21 -

to White's point that the mere existence of some discretion doesn't defeat the existence of a liberty interest.  I.B.37-39.  Additionally, the Government's examples are not actually discretionary decisions, but rather ministerial tasks required by statute.  *E.g.*, *Mallette*, 91 F.3d at 635 (finding liberty interest even though agency had to make "decisionmaking [related] to the application of certain particularized eligibility criteria").  For example, the Government suggests that BOP makes the ultimate determination of whether an individual's conviction disqualifies him from participation (R.B.26-27), but the statute governs eligibility, and BOP cannot depart from it.  *Valladares*, 130 F.4th at 85.  Similarly, the Government alleges that "BOP must determine if the inmate can apply earned ETCs towards prerelease custody and/or towards supervised release."  R.B.13.  But this is a ministerial task; if the statutory qualifications are met, the BOP *must* apply the credits and release the individual; there is no discretionary "determination" of whether release is authorized.  I.B.9-10.[4]

---

[4] The Government represents that the BOP "has complied" with all its directives under the FSA.  R.B. 5.  Not true.  The BOP's flouting of the FSA has necessitated litigation across the nation.  For example, the BOP has:

- Disqualified individuals from participation where they do not have a statutorily disqualifying conviction, *Valladares*, 130 F.4th at 85;
- Wrongfully deemed non-citizens without final removal orders ineligible for FSA time credits, *Adepoju*, 2025 WL 1392287, at *9-*10; *Correa-Gutierrez v. Warden*, No. 2:23-cv-08911-CBM-KES, 2024 WL 1469348, at *3 (C.D. Cal. Feb. 2, 2024); and
- Ignored the mandate that inmates start earning credits when their sentence

The FSA stands in sharp contrast with actually discretionary schemes that do not create a liberty interest. For example, D.C. parole regulations did not create a liberty interest because the governing statute stated that the parole board "*may* authorize his release on parole." *Thompson v. Veach*, 501 F.3d 832, 836 (7th Cir. 2007) (citation omitted). Federal prisoners have no liberty interest in a sentence reduction following the residential drug treatment program (RDAP) because the statute states that a person's sentence "after successfully completing a treatment program *may* be reduced by the Bureau of Prisons." *Fristoe v. Thompson*, 144 F.3d 627, 629-30 (10th Cir. 1998) (citation omitted). Similarly, a court found no liberty interest in an individual's release to home confinement under the "CARES Act" because the statute stated that the BOP "*may* lengthen the maximum amount of time for . . . home confinement." *Cardoza v. Pullen*, No. 3:22-CV-00591 (SVN), 2022 WL 3212408, at *11, at *13 (D. Conn. Aug. 9, 2022) (emphasis added). In reaching that conclusion, the district court contrasted the discretionary provisions of the CARES Act to the FSA. *Id.* at *13; *see also Adepoju*, 2025 WL 1392287, at *6 (also contrasting the CARES Act to the FSA).

This case would be different if the FSA stated that individuals "may" be entitled to earn and apply time credits. But that is not the statute Congress wrote.

"commences," *Gale v. Warden FCI Milan*, 2025 WL 223870, at *3-*4 (E.D. Mich. Jan. 16, 2025).

- 23 -

Although the Government refuses to acknowledge it, the FSA uses mandatory language and limits discretion, thereby satisfying the first prong of the due process test.

> 2. *Prong 2: The Government does not meaningfully engage with the second prong of the applicable test.*

*Sandin* added an additional gloss to the liberty interest test for prisoners. In addition to showing a legitimate expectation through mandatory language, inmates must show either that the prison decision at issue affects the duration of the sentence or constitutes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 486-87 (1995). Although only one of these options is necessary to find a liberty interest, both are satisfied here. I.B.39-45.

Largely, the Government ignores this prong. In fact, the Government doesn't even dispute that the "atypical and significant hardship" standard is met. Nor could it. As a district court explained when holding that an individual had a liberty interest in applied FSA time credits, this standard is satisfied because incarceration imposes an atypical and significant hardship compared to prerelease custody. *Adepoju*, 2025 WL 1392287, at *11.

As to the alternative way of satisfying this prong (showing the prison decision affects sentence duration), the only argument the Government makes is that the FSA does not "shorten . . . sentence[s]." R.B.30. The Government reasons that the first

- 24 -

365 days of credits are applied "towards supervised release," so "an inmate is transferred from the legal custody of the BOP to the oversight of the appropriate United States Probation Office," and "only the sentencing Court, not the BOP, may shorten an inmate's sentence." R.B.30.

That argument is a non-starter. Release from prison to supervision is *shortening* a sentence of imprisonment. *Jackson v. Wadas*, No. 2:25-cv-00151-JPH-MJD, 2025 WL 1284831, at *1 (S.D. Ind. May 1, 2025) ("When [FSA] credits are applied to early transfer to supervised release, the inmate's sentence of imprisonment is effectively shortened."); *Antoine v. Rardin*, No. 24-cv-12462, 2025 WL 968285, at *2 (E.D. Mich. Mar. 31, 2025) ("A maximum of 365 days of FTCs may be applied towards a prisoner's early transfer to supervised release, basically shortening the sentence by up to one year."); *Ledford v. Lemaster*, No. 23-30-DLB, 2023 WL 2905376, at *1 (E.D. Ky. Mar. 28, 2023) ("The FSA permits federal prisoners to earn sentence credits, thus shortening their sentence[.]"). Many individuals who are released early due to good-time credits are released to supervision, and they still have liberty interests in those credits. And the Supreme Court has explained that the fact that a prisoner is released subject to conditions does not defeat the existence of a liberty interest. *Young*, 520 U.S. at 145, 149 (finding liberty interest in preparole even though the release is "subject to constraints" and "preparolees . . . remained within the custody of the Department of Corrections"); *Morrissey v. Brewer*, 408

U.S. 471, 478 (1972) (finding liberty interest even though those granted parole "are subjected to specified conditions for the duration of their terms").

### 3. The Government misrepresents precedent.

The Government claims "two sister Circuit Courts of Appeals[] have found that an inmate has no protected liberty interest in the earning or application of ETCs due to the conditional nature of the credits." R.B.28-29 (citing *Cheng v. United States*, 132 F.4th 655 (2d Cir. 2025) & *Sedlacek v. Rardin*, No. 24-1254, 2025 WL 948485 (6th Cir. Jan. 21, 2025)).[5] That is not a correct summary of either case. The petitioners in *Cheng* and *Sedlacek* were statutorily disqualified from earning FSA time credits in the first place: Cheng was a non-citizen with a final order of removal, and Sedlacek had a disqualifying conviction. *Cheng*, 132 F.4th at 659; *Sedlacek*, 2025 WL 948485, at *1-*2. Because Congress clearly excluded them from the FSA credit scheme, *see* 18 U.S.C. § 3632(d)(4)(D)-(E), neither had a reasonable expectation in earning or applying credits. In contrast, White is not statutorily disqualified from earning FSA time credits. I.B.8 n.6; R.B.15. Petitioner believes this will be the first Circuit Court of Appeal case to address the question of whether

---

[5] The appeal from *Fiorito*, the case the district court relied upon extensively (J.A.193-95), was partially dismissed as moot and partially affirmed in an unpublished, unreasoned decision. *Fiorito v. Fikes*, No. 23-1006, 2023 WL 4841966 (8th Cir. July 28, 2023).

an individual who statutorily qualifies to participate has a liberty interest in earning (and, ultimately, applying) FSA time credits.[6]

The Government encourages this Court to disregard *Adepoju*, 2025 WL 1392287, because that the case involved the revocation of FSA release, rather than the earning of FSA time credits. R.B.30-31. But "a month in prison is a month in prison, whether caused by failure to award [credits] or by awarding and then revoking [credits]." I.B.52 (quoting *Montgomery*, 262 F.3d at 645). And the Government ignores *Adepoju*'s actual analysis. In that case, the district court applied the two-prong test that White has advanced (rather than the Government's non-existent "conditional" test), concluding that the Due Process Clause applied to FSA time credits because (1) federal inmates have an "objective expectation" in credits because "[t]he FSA uses 'explicitly mandatory language,'" and (2) the outcome of FSA time credits (prerelease custody in that particular case) constituted "an atypical and significant hardship relative to the ordinary incidents of prison life." *Adepoju*, 2025 WL 1392287, at *10-*12 (citations omitted). *Adepoju* is persuasive because it properly applies the liberty interest test in the FSA context.

---

[6] *Cheng* and *Sedlacek* are unpersuasive for other reasons. Both cases are non-binding; the inmates proceeded pro se; and the opinions are devoid of reasoning on the due process question.

- 27 -

### 4. The Government's "policy" argument falls flat.

The Government argues that giving inmates due process protections would be burdensome. R.B.32. But "administratively inconvenient or financially burdensome . . . difficulties do not suffice to excuse the [government] from according basic constitutional rights to inmates." *Monroe v. Bombard*, 422 F. Supp. 211, 217 (S.D.N.Y. 1976).

In any event, these concerns are overblown. The process required is "minimum." *Morrisey*, 408 U.S. at 489. The Due Process Clause protects good-time credits, and the Government doesn't claim that this has caused administrative burden. Additionally, any burden imposed will ultimately depend on whether the BOP complies with the FSA. If the BOP does comply with the statute, then inmates presumably will not seek due process hearings (or, when they do, they will be easily denied). But if a BOP credit decision contradicts the statute or the facts, then inmates should have an opportunity to challenge it. Presumably, after a few hearings on the matter, the BOP will change its policy to accord with the statute. If hearings continue, the reason would not be the Due Process Clause, but rather BOP's failure to comply with the FSA.

- 28 -

Respectfully submitted,

JAMES WYDA
Federal Public Defender

*/s/ Claire Madill*
CLAIRE MADILL
PATRICIA L. RICHMAN
Assistant Federal Public Defenders
Office of the Federal Public Defender
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
(301) 344-0600
Claire_Madill@fd.org
Patricia_Richman@fd.org

August 13, 2025

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(ii) in that, according to the word-count feature of the word-processing system used to prepare this document (Microsoft Word for Microsoft 365), the brief contains 6,499 words, excluding the portions exempted by Rule 32(f).

/s/ Claire Madill
CLAIRE MADILL

## CERTIFICATE OF SERVICE

I certify that on August 13, 2025, I electronically filed the foregoing brief with

the Clerk of Court using the CM/ECF system, which will send notice of such filing

to all registered CM/ECF users.

*/s/ Claire Madill*     
CLAIRE MADILL
