**OFFICE OF THE FEDERAL PUBLIC DEFENDER**
**DISTRICT OF MARYLAND**
SOUTHERN DIVISION
6411 IVY LANE, SUITE 710
GREENBELT, MARYLAND 20770
TEL: (301) 344-0600
FAX: (301) 344-0019
TOLL FREE: (855) 213-8450

JAMES WYDA
FEDERAL PUBLIC DEFENDER

CLAIRE MADILL
ASSISTANT FEDERAL PUBLIC DEFENDER

September 17, 2025

**VIA E-FILING**
Nwamaka C. Anowi
Clerk of Court
U.S. Court of Appeals for the Fourth Circuit
1100 East Main Street, Suite 501
Richmond, Virginia 23219

**Re:      William White v. Warden - Cumberland, No. 23-7116**
          **Oral Argument Date: September 9, 2025**

Dear Ms. Anowi:

Pursuant to Fed. R. App. P. 28(j), Appellant White submits as supplemental authority *Wiener v. AXA Equitable Life Ins. Co.*, 58 F.4th 774 (4th Cir. 2023) and *United States v. Spivey*, 129 F. App'x 856 (4th Cir. 2005).

At oral argument, the panel suggested it could affirm on the ground that White hadn't "successfully participated," notwithstanding the Government's failure to raise that argument below, because the Court could "affirm on any ground that's evident from the record."

The attached authority underscores that the Court cannot affirm on this ground due to waiver.

This Court may reach *forfeited* issues, but not *waived* ones. *United States v. Laffitte*, 121 F.4th 472, 484 (4th Cir. 2024). "[W]aived errors . . . [are] not reviewable on appeal." *Spivey*, 129 F. App'x at 859; *see also United States v. Howard*, 51 F. App'x 118, 121 n.* (4th Cir. 2002). A party forfeits an issue by inadvertently failing to raise it. *Laffitte*, 121 F.4th at 484. Waiver involves an intentional choice. *Id.*; *Wiener*, 58 F.4th at 781.

This case involves waiver because, below, the Government intentionally advanced a different definition of successful participation: that it merely requires willingness

and ableness to program. The Government told the district court "'successful participation' means" an inmate is "in earning status, i.e., not in opt-out status." J.A.146-47. An inmate "opts out" of earning status by "choosing not to participate" in EBBRs or PAs. J.A.146. The Government said this was a proper interpretation— stating the BOP was in "full compliance" with the FSA—and that this interpretation warranted deference. J.A.140-47. The Government submitted supporting documentation stating that "[t]he earning of FTCs is based on 'earning status,' and NOT participation and/or completion of individual programs." J.A.98. It also relied on a declaration stating that its client calculated White's successful participation based on "days Petitioner could have programmed." JA77.

Because the Government "deliberately steered the District Court" toward a different interpretation of "successful participation" than it advanced on appeal, it waived this argument. *Wood v. Milyard*, 566 U.S. 463, 474 (2012).


        Respectfully Submitted,


        Claire Madill

        Claire Madill

## CERTIFICATE OF COMPLIANCE

I hereby certify that this letter complies with Federal Rule of

Appellate Procedure 28(j) because it contains 338 words in the body of the letter.

*/s/ Claire Madill*
Claire Madill

## CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2025, I electronically filed the foregoing document with the Clerk of the Court for the U.S. Court of Appeals for the Fourth Circuit by using the CM/ECF system. All participants are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/ Claire Madill
Claire Madill

KeyCite Yellow Flag
Declined to Extend by    Wideman v. Innovative Fibers LLC,    4th Cir.(S.C.),
May 2, 2024

58 F.4th 774
United States Court of Appeals, Fourth Circuit.

Malcolm WIENER, Plaintiff – Appellant,

v.

AXA EQUITABLE LIFE INSURANCE
COMPANY, Defendant – Appellee.

No. 21-2165
|
Argued: December 6, 2022
|
Decided: January 20, 2023

**Synopsis**
**Background:** Following denial of his application for reinstatement of life insurance policy, applicant, a citizen of Connecticut, sued insurer in North Carolina state court, alleging negligence under North Carolina law with respect to reasonableness of its assessment of his medical history and conditions and subsequent reporting of such information to information clearinghouse used by insurance companies, causing him to become uninsurable. After removal to federal court and jury trial resulting in final verdict of $8 million in applicant's favor, insurer moved for post-trial relief, including to dismiss case for lack of subject-matter jurisdiction. Applying Connecticut law, the United States District Court for the Western District of North Carolina, Robert J. Conrad, J., granted motion to dismiss, 2021 WL 665112, and denied applicant's motion to amend, 2021 WL 5988273. Applicant appealed.

**Holdings:** The Court of Appeals, Wilkinson, Circuit Judge, held that:

[1] choice of law is waivable, not jurisdictional;

[2] insurer waived the possible application of Connecticut law by affirmatively litigating under the substantive law of North Carolina;

[3] the district court erred when it engaged in its own choice-of-law analysis and decided to apply Connecticut law;

[4] even assuming arguendo that it was proper for the district court to apply Connecticut law, that law would not have ousted its subject-matter jurisdiction; and

[5] alternatively, there was sufficient evidence to support applicant's negligence claim under North Carolina law.

Reversed and remanded.

See also 2020 WL 3035222.

**Procedural Posture(s):** On Appeal; Motion to Dismiss for Lack of Subject Matter Jurisdiction; Motion to Alter or Amend Judgment; Motion for Post-Trial Relief.

West Headnotes (25)

[1] **Federal Courts** ⬤ Dismissal for lack of jurisdiction

In reviewing the district court's decision on motion to dismiss for lack of subject-matter judgment, where appellant won a jury verdict, the Court of Appeals recites the facts as the jury found them, construes all disputed facts in appellant's favor, and gives appellant the benefit of all reasonable inferences.

5 Cases that cite this headnote

[2] **Federal Courts** ⬤ Jurisdiction

Court of Appeals reviews de novo a district court's dismissal for lack of subject-matter jurisdiction.

[3] **Federal Courts** ⬤ Particular parties, domicile or residence of in general

**Federal Courts** ⬤ Insurance claims

In action by unsuccessful applicant for reinstatement of life insurance policy against insurer, the litigants satisfied the statutory requirements for federal diversity jurisdiction where applicant was citizen of Connecticut, insurer was citizen of New York, and amount

in controversy exceeded $75,000. 28 U.S.C.A. § 1332(a).

More cases on this issue

**[4]  Action**  👈  **What law governs**

Choice of law is waivable, not jurisdictional; a party abandons any claim that a different state's law should govern the action if it fails to raise that issue before or during trial.

4 Cases that cite this headnote

**[5]  Federal Courts**  👈  **Sua sponte determination**

**Federal Courts**  👈  **Waiver, estoppel, and consent**

Jurisdictional requirements mark the bounds of a court's adjudicatory authority and as such cannot be waived or forfeited and must be raised by courts sua sponte.

1 Case that cites this headnote

**[6]  Federal Courts**  👈  **Timeliness issues**

Jurisdictional objections may be raised at any time.

**[7]  Insurance**  👈  **Contractual or policy clauses; agreements**

Insurer waived the possible application of Connecticut law by repeatedly requesting the district court to apply North Carolina law in removed action brought by unsuccessful applicant for reinstatement of life insurance policy, who was a citizen of Connecticut and asserted a negligence claim against insurer under North Carolina law; insurer affirmatively litigated the entire case under the substantive law of North Carolina, as its answer, motion for summary judgment, trial brief, proposed jury instructions, and post-trial motion to dismiss all either assumed North Carolina law applied or explicitly cited North Carolina law as governing, and insurer did not suggest that Connecticut law might apply until its reply to applicant's response to its post-trial motion to dismiss.

13 Cases that cite this headnote

**[8]  Estoppel**  👈  **Waiver Distinguished**

**Estoppel**  👈  **Nature and elements of waiver**

Although jurists often use the words interchangeably, waiver and forfeiture are technically distinct, based on the degree of intentionality involved; whereas "forfeiture" is the failure to make the timely assertion of a right, "waiver" is the intentional relinquishment or abandonment of a known right.

**[9]  Criminal Law**  👈  **Presentation of questions in general**

**Criminal Law**  👈  **Necessity of Objections in General**

Distinction between "waiver" and "forfeiture" is relevant in the context of plain-error review in a criminal matter. Fed. R. Crim. P. 52(b).

**[10]  Removal of Cases**  👈  **Forms and rules of procedure in general**

District court erred when it engaged in its own choice-of-law analysis and decided to apply Connecticut law in removed action brought against insurer by unsuccessful applicant for reinstatement of life insurance policy, where both parties consented to the choice of North Carolina law to govern the action, insurer waived any argument that another state's law should be applied, and there were no "special circumstances" that would have justified the court's departure from general rule that courts should not consider waived issues.

7 Cases that cite this headnote
More cases on this issue

**[11]  Federal Courts**  👈  **Conflict of Laws; Choice of Law**

Where the parties have agreed to the application of the forum state's law, their consent concludes the choice-of-law inquiry.

7 Cases that cite this headnote

**[12]    Federal Courts**  🔑  Substance or procedure;
determinativeness

Where neither party argues that forum state's
choice-of-law rules require court to apply
substantive law of another state, court should
apply forum state's substantive law.

20 Cases that cite this headnote

**[13]    Federal Civil Procedure**  🔑  Sua sponte
orders

It is inappropriate for the trial court to dispose of
a case sua sponte on an objection which would be
waived if not raised by the defendants in a timely
manner.

**[14]    Federal Civil Procedure**  🔑  Waiver,
abandonment, or default

Nation's adversarial system and benefits derived
from adhering to adversarial process generally
require that courts not revive waived issues.

2 Cases that cite this headnote

**[15]    Federal Civil Procedure**  🔑  Waiver,
abandonment, or default

Trial courts must be cautious about raising
waived issues sua sponte lest they erode the
principle of party presentation so basic to the
nation's system of adjudication.

**[16]    Removal of Cases**  🔑  Forms and rules of
procedure in general

Even assuming arguendo that, in removed
action brought against insurer by unsuccessful
applicant for reinstatement of life insurance
policy, it was proper for district court to apply
Connecticut law despite fact that both parties
consented to choice of North Carolina law and
insurer waived any argument that another state's
law should be applied, Connecticut law would
not have defeated federal jurisdiction; statute in

question, the Connecticut Insurance Information
and Privacy Protection Act (CIIPPA), governed
choice of law rather than choice of forum
and did not divest courts of jurisdiction, any
argument that CIIPPA barred applicant's claim
was thus subject to the ordinary rules of timely
presentment and waiver, and insurer waived
any argument that CIIPPA preempted applicant's
claim by failing to raise it at any point before
or during trial. Conn. Gen. Stat. Ann. §§
38a-995(a), 38a-995(b), 38a-995(c).

6 Cases that cite this headnote
More cases on this issue

**[17]    Administrative Law and
Procedure**  🔑  Exclusive or original
jurisdiction

When statute designates exclusive nonjudicial
forum for category of claim, it divests courts of
jurisdiction over those claims.

**[18]    Administrative Law and
Procedure**  🔑  Exclusive or original
jurisdiction

When statute provides for exclusive remedies
without stripping courts of their adjudicatory
powers, it affects only choice of law and does not
oust jurisdiction.

**[19]    Federal Preemption**  🔑  Nature of preemption

Choice-of-forum    preemption    extinguishes
jurisdiction because it affects courts' actual
adjudicatory power; the same is not true of
preemption claims generally, which affect only
the "substantive laws" governing the action.

1 Case that cites this headnote

**[20]    Federal Preemption**  🔑  Nature of preemption

Preemption issues that dictate choice of forum
are jurisdictional and therefore may not be
waived, but this rule does not extend to
preemption issues that affect parties' choice of
law.

3 Cases that cite this headnote

**[21]**   **Federal Courts**  🗝   Weight or preponderance of evidence in general

Court of Appeals reviews challenges to sufficiency of evidence de novo.

5 Cases that cite this headnote

**[22]**   **Federal Civil Procedure**  🗝   Weight of evidence

**Federal Civil Procedure**  🗝   Presumptions; construction of evidence

**Federal Civil Procedure**  🗝   Evidence

**Federal Civil Procedure**  🗝   Construction of evidence

When loser of jury trial challenges verdict on renewed motion for judgment as a matter of law or motion for new trial, question is whether a jury, viewing evidence in light most favorable to winning party, could have properly reached conclusion reached by this jury. Fed. R. Civ. P. 50(b).

7 Cases that cite this headnote

**[23]**   **Removal of Cases**  🗝   Trial, judgment, and review

Although the district court dismissed, for lack of subject-matter jurisdiction, removed action brought by unsuccessful applicant for reinstatement of life insurance policy against insurer, without reaching insurer's sufficiency-of-the-evidence challenge, the Court of Appeals would exercise its "discretion" to resolve the challenge rather than remand it, upon determining that the district court in fact had jurisdiction, where both parties had ample opportunity to develop facts pertaining to the sufficiency issue over the course of their litigation, the issue was primarily a question of law, the issue was briefed and argued on appeal, and, in the appellate court's view, the proper outcome was beyond doubt, rendering a remand pointless.

More cases on this issue

**[24]**   **Insurance**  🗝   Negligence in general

Sufficient evidence supported jury's finding that insurer negligently reported to the Medical Information Bureau (MIB), an information clearinghouse used by insurance companies, false medical information about unsuccessful applicant for reinstatement of life insurance policy, causing him to become uninsurable, as constituted negligence under North Carolina law; it was undisputed that insurer's employees falsely reported to clearinghouse that applicant suffered from four serious medical conditions, employees relayed that incorrect and damaging information without even conducting basic inquiries such as consulting applicant's primary care doctor or reviewing the follow-up tests in his medical records, applicant thereafter became effectively uninsurable or uninsurable at a reasonable cost, and it was the erroneous MIB codes reported by insurer that caused applicant's uninsurability.

3 Cases that cite this headnote
More cases on this issue

**[25]**   **Federal Courts**  🗝   Verdict

Court of Appeals does not lightly disturb jury verdicts on the basis of insufficient evidence.

**\*777**   Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Robert J. Conrad, Jr., District Judge. (3:18−cv−00106−RJC−DSC)

**Attorneys and Law Firms**

ARGUED: Ross Fulton, RAYBURN COOPER & DURHAM, P.A., Charlotte, North Carolina, for Appellant. Matthew Woodruff Sawchak, ROBINSON, BRADSHAW & HINSON, P.A., Raleigh, North Carolina, for Appellee. ON BRIEF: David G. Webbert, JOHNSON, WEBBERT & GARVAN, LLP, Augusta, Maine; Richard H. Fallon, Jr., Cambridge, Massachusetts; Carolyn T. Seely, Greenwich, Connecticut, for Appellant. John R. Wester, Stephen D.

Feldman, ROBINSON, BRADSHAW & HINSON, P.A., Charlotte, North Carolina, for Appellee.

Before GREGORY, Chief Judge, WILKINSON, Circuit Judge, and John A. GIBNEY, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

**Opinion**

Reversed and remanded by published opinion. Judge Wilkinson wrote the opinion, in which Chief Judge Gregory and Senior Judge Gibney joined.

WILKINSON, Circuit Judge:

Malcolm Wiener appeals the district court's post-trial dismissal of his case for lack of subject-matter jurisdiction. A jury found that AXA Equitable Life Insurance Company negligently reported false medical information about Wiener to an information clearinghouse used by insurance companies, causing him to become uninsurable. Despite the fact that the parties satisfied the requirements for federal diversity jurisdiction, and the fact that both parties litigated the entire case through trial under North Carolina law, the district court decided that Connecticut law applied and found itself deprived of subject-matter jurisdiction by virtue of a Connecticut statute. This was error. Choice of law is waivable and was waived here. And even if Connecticut's law applied, it would not have ousted federal jurisdiction. Finding no merit in the alternative ground for affirmance that AXA advances with respect to liability, we reverse and remand the case for further proceedings in accordance with this opinion.

I.

[1] Because Wiener won a jury verdict, we recite the facts as the jury found them, construe all disputed facts in his favor, and give him the benefit of all reasonable inferences. *See Konkel v. Bob Evans Farms Inc.*, 165 F.3d 275, 279 (4th Cir. 1999).

**\*778** Wiener, a citizen of Connecticut, purchased $16 million in life insurance from AXA Equitable, a citizen of New York, in the 1980s. After Wiener's policy lapsed in 2013, he applied for reinstatement and authorized AXA to access his medical records. AXA conducted a medical assessment of Wiener's reinstatement application without attempting to speak to Wiener's primary care doctor and

without reviewing the follow-up tests in his medical records. AXA then negligently and erroneously concluded that Wiener suffered from four serious medical conditions.

Based on its flawed review of Wiener's medical history, AXA's North Carolina office reported false diagnosis "codes" to an information exchange—the Medical Information Bureau (MIB). The MIB is a consortium of about 400 companies, which write about 90–95% of the individual life insurance policies in the United States. When an MIB member reviews an applicant's medical records, it reports any medical conditions that might be relevant to a later underwriter in the form of standardized six-character codes. Wiener's application was assigned to an AXA underwriter in Connecticut, Hallie Hawkins, who reviewed his medical records and asked her colleague in AXA's North Carolina office, Sandra Huffstetler, to report Wiener's MIB codes.

In 2014, AXA declined Wiener's application for reinstatement. So Wiener's insurance agent submitted new applications for a $16 million policy to at least eight other insurers. Two carriers made preliminary offers for $10 million policies at double the standard rate. No other carrier offered Wiener a policy. Several insurance-company representatives informed Wiener's agent that Wiener's MIB codes adversely affected their determination, and an expert testified that at least one code that AXA incorrectly reported was a "hot button[ ]" that would deter carriers from offering insurance. J.A. 1581.

Wiener sued AXA in North Carolina state court in 2018. His complaint alleged that Huffstetler, who worked in AXA's North Carolina operations center, reported false conclusions about his medical conditions to the MIB, causing him to become uninsurable. The complaint included four counts under North Carolina law: (1) negligent misrepresentation; (2) libel; (3) negligence; and (4) violation of North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1. AXA removed the case to the Western District of North Carolina based on diversity of citizenship. AXA's answer cited North Carolina law and did not raise any choice-of-law issues. *See* J.A. 146.

The district court denied AXA's motion for summary judgment with respect to Wiener's claim that AXA negligently caused him to become uninsurable. It concluded that there was a "genuine dispute of fact as to whether the MIB codes effectively rendered [Wiener] uninsurable or insurable at a significantly increased cost." *Id.* at 235. The court granted

AXA summary judgment on Wiener's remaining claims. AXA's memorandum supporting its summary-judgment motion, the court's summary-judgment decision, and AXA's trial brief all cited North Carolina law as the governing law.

A jury trial on Wiener's negligence claim was held in September 2020. AXA moved for a directed verdict, arguing that Wiener's claimed injury was categorical uninsurability, and that this injury was contradicted by his own evidence because several companies gave Wiener preliminary offers of insurance. The district court denied the motion. The jury subsequently found AXA liable for negligence and awarded Wiener $8 million—the value of the $16 million death benefit from his **\*779** lapsed policies less $8 million because Wiener had not mitigated his damages.

AXA moved for post-trial relief. Its motion objected to the court's subject-matter jurisdiction for the first time. Relying on North Carolina law, AXA asserted that an exclusive-remedies provision of North Carolina's Consumer and Customer Information Privacy Act (CCIPA) preempted Wiener's negligence claim and deprived the court of subject-matter jurisdiction. AXA also challenged the sufficiency of the evidence. In response, Wiener argued, *inter alia*, that the North Carolina statute did not apply because it only applies to North Carolina residents, and Wiener lives in Connecticut.

The district court concluded that it lacked subject-matter jurisdiction and dismissed the case. While the court noted that the parties had not disputed that North Carolina law governed as the case proceeded through trial, the court undertook a choice-of-law analysis *sua sponte* based on the possibility that Connecticut law applied. It held that Connecticut law applied because the North Carolina choice-of-law inquiry looks to the place of injury, and Wiener's injury—his inability to procure life insurance—occurred in his home state of Connecticut. The court then determined that *Connecticut*'s Insurance Information and Privacy Protection Act (CIIPPA) provided exclusive statutory remedies for AXA's reporting of inaccurate MIB codes and thereby deprived the court of subject-matter jurisdiction over Wiener's common-law negligence claim. So the court dismissed the case for lack of jurisdiction without reaching AXA's remaining arguments.

Wiener timely appealed.

## II.

**[2]** We review de novo a district court's dismissal for lack of subject-matter jurisdiction. *See Holbrook v. United States,* 673 F.3d 341, 345 (4th Cir. 2012).

**[3]** At the outset, we note that there is no dispute that Wiener and AXA satisfy the statutory requirements for federal diversity jurisdiction under 28 U.S.C. § 1332. Wiener is a citizen of Connecticut, AXA is a citizen of New York, and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a).

Moreover, while AXA argues that the choice of Connecticut law made no difference in this case, it is clear that the district court's decision to apply Connecticut's law instead of North Carolina's was determinative. AXA claims that North Carolina has a Consumer and Customer Information Privacy Act that, like the Connecticut statute, would preempt Wiener's negligence claim. But the North Carolina statute applies only to "persons who are residents" of North Carolina. N.C. Gen. Stat. § 58-39-10(b)(1). Because Wiener has never been a resident of North Carolina, the North Carolina CCIPA would not preempt his negligence claim. So the district court's dismissal of Wiener's case depended on the court's decision to apply Connecticut law.

We must therefore determine whether the district court erred in dismissing for lack of subject-matter jurisdiction based on its choice of Connecticut law. We conclude that choice of law is waivable, not jurisdictional, and AXA waived the possible application of Connecticut law by affirmatively litigating under the substantive law of North Carolina. It was therefore error for the district court to apply Connecticut law. And even assuming *arguendo* that it was proper for the court to apply Connecticut law, that law would not have ousted its subject-matter jurisdiction.

### A.

**[4]** "All U.S. Courts of Appeals to have addressed the issue have held that choice **\*780** of law issues may be waived." *Williams v. BASF Catalysts LLC,* 765 F.3d 306, 316 (3d Cir. 2014); *see, e.g., P.R. Hosp. Supply, Inc. v. Bos. Sci. Corp.,* 426 F.3d 503, 505–06 (1st Cir. 2005); *Saks v. Franklin Covey Co.,* 316 F.3d 337, 349 (2d Cir. 2003); *Fruge v. Amerisure Mut. Ins. Co.,* 663 F.3d 743, 747 (5th Cir. 2011) (per curiam); *Meridia Prods. Liab. Litig. v. Abbott Labs.,* 447 F.3d 861, 865 (6th Cir. 2006); *Wachovia Sec., LLC v. Banco Panamericano, Inc.,* 674 F.3d 743, 751 (7th Cir. 2012); *P&O Nedlloyd, Ltd.*

*v. Sanderson Farms, Inc.*, 462 F.3d 1015, 1017 n.3 (8th Cir. 2006); *Johnson v. Armored Transp. of Cal., Inc.*, 813 F.2d 1041, 1044 (9th Cir. 1987); *Mauldin v. Worldcom, Inc.*, 263 F.3d 1205, 1211–12 (10th Cir. 2001); *Pulte Home Corp. v. Osmose Wood Preserving, Inc.*, 60 F.3d 734, 739 n.15 (11th Cir. 1995); *Jannenga v. Nationwide Life Ins. Co.*, 288 F.2d 169, 172 (D.C. Cir. 1961); *Waner v. Ford Motor Co.*, 331 F.3d 851, 856 n.2 (Fed. Cir. 2003).

This court is no exception. In *Bilancia*, we noted that the "failure of the plaintiffs to object at any time during trial or to except to the charge as required under [Federal Rule of Civil Procedure] 51 waived any right on their part to complain that the action was improperly submitted as one controlled by Virginia law." *Bilancia v. Gen. Motors Corp.*, 538 F.2d 621, 623 (4th Cir. 1976). Under *Bilancia*, choice of law is waivable, not jurisdictional.

 **[5]**    **[6]** This rule makes sense in light of Supreme Court precedent and the consequences of labeling issues as jurisdictional. Jurisdictional requirements are, of course, important: They "mark the bounds of a court's adjudicatory authority" and as such "cannot be waived or forfeited" and "must be raised by courts *sua sponte*." *Boechler, P.C. v. Comm'r*, —— U.S. ——, 142 S. Ct. 1493, 1497, 212 L.Ed.2d 524 (2022) (quotation marks omitted). But given that jurisdictional objections can be raised at any time and may "result in the waste of judicial resources" and "unfairly prejudice litigants," the Supreme Court has "tried in recent cases to bring some discipline to the use of" the jurisdictional label. *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434–35, 131 S.Ct. 1197, 179 L.Ed.2d 159 (2011). Thus the Court has "urged" that an issue "should not be referred to as jurisdictional unless it governs a court's adjudicatory capacity, that is, its subject-matter or personal jurisdiction." *Id.* at 435, 131 S.Ct. 1197; *see also Boechler*, 142 S. Ct. at 1497 ("[W]e treat a procedural requirement as jurisdictional only if Congress 'clearly states' that it is." (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006)).

Holding that choice of law is jurisdictional would engraft an additional requirement onto the statutory prerequisites for diversity jurisdiction that Congress delineated in 28 U.S.C. § 1332: It would not be enough for federal subject-matter jurisdiction that the parties are diverse and have an amount in controversy greater than $75,000. Rather, a federal court would only have jurisdiction if the litigation were conducted under the correct state's substantive law. To hold as such

would defy the Supreme Court's attempts to bring "discipline" to the "jurisdictional" label. *Henderson*, 562 U.S. at 435, 131 S.Ct. 1197; *see Boechler*, 142 S. Ct. at 1497.

Moreover, labeling choice-of-law issues jurisdictional would have precisely the negative consequences that the Supreme Court has identified. Choice of law is typically debated by the parties during the course of litigation—for instance, in competing motions for summary judgment or proposed jury instructions—much like an affirmative defense. If choice of law were jurisdictional, a party could refrain from objecting to its adversary's choice of law,  **\*781**  litigate the entire case based on that law, and then move to dismiss the case after trial if it loses before the jury. The resulting "waste of judicial resources" and "unfair[ ] prejudice" to litigants is obvious. *Henderson*, 562 U.S. at 434, 131 S.Ct. 1197. In short, holding that choice of law is jurisdictional would create the perfect conditions for sandbagging.

Thus we reaffirm our conclusion in *Bilancia* that choice of law is not jurisdictional. A party abandons any claim that a different state's law should govern the action if it fails to raise that issue before or during trial.

## B.

 **[7]**  AXA waived any contention that this action should have been governed by Connecticut law. So the district court erred when it applied that law.

AXA litigated this entire case under the substantive law of North Carolina. AXA's answer, motion for summary judgment, trial brief, proposed jury instructions, and post-trial motion to dismiss all either assumed North Carolina law applied or explicitly cited North Carolina law as governing. As the district court noted, "the parties did not dispute that North Carolina law governed this negligence claim" prior to post-trial filings. *Wiener v. AXA Equitable Life Ins. Co.*, No. 3:18-cv-00106-RJC-DSC, 2021 WL 665112, at *3 (W.D.N.C. Feb. 19, 2021). Even AXA's memorandum of law supporting its post-trial motion to dismiss asked the court to apply North Carolina law. *See* Dkt. Entry 131 at 7 ("The controlling statute here is the North Carolina Consumer and Customer Information Privacy Act, N.C. Gen. Stat. §§ 58-39-5 to -165."). AXA did not suggest that Connecticut law might apply until its reply to Wiener's response to its post-trial motion to dismiss. *See* Dkt. Entry 140 at 4 (arguing that

Connecticut law would be as fatal to Wiener's claim as North Carolina law).

 **[8]** AXA's failure to object to the application of North Carolina law and affirmative invocations of that law constitute, for all relevant purposes, a waiver of any argument that another state's law should be applied. On appeal, AXA disputes this conclusion based on the technical distinction between waiver and forfeiture: "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)).

 **[9]** While this distinction is relevant, for example, in the context of Federal Rule of Criminal Procedure 52(b), *see id.* at 732–33, 113 S.Ct. 1770, it makes no difference here. First, "jurists often use the words interchangeably." *Kontrick v. Ryan*, 540 U.S. 443, 458 n.13, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004). In fact, in *Bilancia*, we said that a party's mere failure to object "waived" choice of law. 538 F.2d at 623. Second, insofar as waiver is distinguished from forfeiture based on the degree of intentionality involved, we find that AXA's repeated requests for the district court to apply North Carolina law fall closer to the waiver end of the spectrum. AXA did not just fail to timely object to North Carolina law; it affirmatively asked the court to apply that law by, *inter alia*, proposing jury instructions that quoted and cited North Carolina law, *see* J.A. 245–47, and arguing to the court in its post-trial motions that a North Carolina statute is "controlling," Dkt. Entry 131 at 7.

 **[10]**    **[11]**    **[12]** Because both parties consented to the choice of North Carolina law to govern this action and AXA waived any **\*782** argument that another state's law should be applied, the district court erred when it engaged in its own choice-of-law analysis and decided to apply Connecticut law.[1] As the Second Circuit has recognized, "where the parties have agreed to the application of the forum [state's] law, their consent concludes the choice of law inquiry." *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997). "Where neither party argues that the forum state's choice of law rules require the court to apply the substantive law of another state, the court should apply the forum state's substantive law." *Echo, Inc. v. Whitson Co.*, 52 F.3d 702, 707 (7th Cir. 1995).

 **[13]**    **[14]**    **[15]** The district court erred when it applied Connecticut law despite AXA's waiver because "it is

inappropriate for the trial court to dispose of [a] case sua sponte on an objection ... which would be waived if not raised by the defendant(s) in a timely manner." *Sinwell v. Shapp*, 536 F.2d 15, 19 (3d Cir. 1976). In the analogous context of waivable statute-of-limitations defenses, we have explained that "defense[s] waivable by the inaction of a party" are "hallmarks of our adversarial system of justice, a system in which the parties are obliged to present facts and legal arguments before a neutral and relatively passive decision-maker." *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 654 (4th Cir. 2006). In other words, our adversarial system and "the benefits derived from adhering to the adversarial process" generally require that courts not revive waived issues. *Id.* at 655. "[T]rial courts must be cautious about raising" waived issues *sua sponte* lest they "erod[e] the principle of party presentation so basic to our system of adjudication." *Arizona v. California*, 530 U.S. 392, 412–13, 120 S.Ct. 2304, 147 L.Ed.2d 374 (2000).

The district court should not therefore have raised and considered the waived choice-of-law issue *sua sponte*. There were no "special circumstances," *Arizona*, 530 U.S. at 412, 120 S.Ct. 2304, that would "justif[y] our departure from the general rule" that courts should not consider waived issues, *Eriline*, 440 F.3d at 657. Therefore, the district court's decision to apply Connecticut law despite AXA's waiver "constitutes an error of law." *Id.*

### C.

 **[16]**    **[17]**    **[18]** Even assuming *arguendo* that it was proper for the district court to apply Connecticut law, the court was wrong to conclude that the Connecticut Insurance Information and Privacy Protection Act defeats federal jurisdiction. It is true that when a statute designates an exclusive non-judicial forum for a category of claim, it divests courts of jurisdiction over those claims. *See Int'l Longshoremen's Ass'n, AFL-CIO v. Davis*, 476 U.S. 380, 390–91, 106 S.Ct. 1904, 90 L.Ed.2d 389 (1986) (explaining that because the National Labor Relations Act places cases within the "exclusive domain of the National Labor Relations Board," it governs choice of forum and divests courts of jurisdiction). But when a statute provides for exclusive remedies *without* stripping courts of their adjudicatory powers, it "affects only the choice of law" and does not oust jurisdiction. *Saks*, 316 F.3d at 349.

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    8

[19]    [20]    *Davis* held that "when a state proceeding or regulation is claimed to be pre-empted by the NLRA ... the issue is a choice-of-forum rather than a choice-of-law **\*783** question." 476 U.S. at 391, 106 S.Ct. 1904. Choice-of-forum preemption extinguishes jurisdiction because it affects courts' "actual adjudicatory ... power." *Id.* at 391 & n.9, 106 S.Ct. 1904. The same is not true of "pre-emption claims generally," which affect only the "substantive laws" governing the action. *Id.* at 391 n.9, 106 S.Ct. 1904. Thus, *Davis* "made clear that preemption issues that dictate the choice of forum are jurisdictional and therefore may not be waived, but expressly stated that this rule does not extend to preemption issues that affect the parties' choice of law." *Saks,* 316 F.3d at 349 (describing ERISA preemption as a non-jurisdictional choice-of-law issue); *accord Violette v. Smith & Nephew Dyonics, Inc.,* 62 F.3d 8, 11–12 (1st Cir. 1995) (noting that under *Davis,* when "the question is whether state tort or federal statutory law controls, preemption is not jurisdictional and is subject to the ordinary rules of appellate adjudication, including timely presentment and waiver").

In support of its position that exclusive-remedies statutes defeat jurisdiction, AXA cites our decision in *Evans v. B.F. Perkins Co.,* 166 F.3d 642 (4th Cir. 1999). *Evans* held that because the plaintiff's sole remedy against his employer was pursuant to the Virginia Workers' Compensation Act, the district court properly dismissed his common-law action for lack of jurisdiction. *Id.* at 650. But *Evans* did not address the distinction between choice-of-forum and choice-of-law statutes, and the Virginia Workers' Compensation Act created an administrative forum for workers' compensation claims: the Virginia Workers' Compensation Commission. *See* Va. Code Ann. § 65.2-201(A); *see also Banks v. Va. Elec. & Power Co.,* No. 99-1392, 2000 WL 191851, at \*2 (4th Cir. 2000) (explaining that "because the plaintiff was the statutory employee of the defendant," he was "limited to an action for workers' compensation benefits before the state's workers' compensation tribunal").

The Connecticut Insurance Information and Privacy Protection Act is different. It does not purport by its terms to strip the courts of their basic adjudicatory powers. Quite the contrary. The statute expressly contemplates that if an insurance company fails to comply with it, an aggrieved individual "may bring an action for equitable relief" or damages in court, and "the court may award costs and reasonable attorney's fees to the prevailing party." Conn. Gen. Stat. § 38a-995(a), (b), (c). Thus, courts have the power to adjudicate claims covered by CIIPPA—they have

*jurisdiction*—even if certain causes of action are preempted by that statute. CIIPPA does not affect the court's "actual adjudicatory or regulatory power as opposed to the State's substantive laws" and is therefore not jurisdictional. *Davis,* 476 U.S. at 391 n.9, 106 S.Ct. 1904.

Because CIIPPA governs choice of law rather than choice of forum and does not divest courts of jurisdiction, any argument that CIIPPA barred Wiener's claim was "subject to the ordinary rules of ... timely presentment and waiver." *Violette,* 62 F.3d at 11–12. As explained above, AXA waived any argument that CIIPPA preempted Wiener's claim by failing to raise it at any point before or during trial. So, even assuming *arguendo* that the district court was entitled to apply Connecticut law, it erred when it dismissed Wiener's negligence claim as preempted by CIIPPA.

### III.

AXA urges us to affirm the district court on the alternative ground that there was insufficient evidence of injury to support Wiener's negligence claim. AXA argues that Wiener's alleged injury was his categorical uninsurability but the evidence **\*784** showed that Wiener received multiple offers of insurance.

[21]    [22]    We review challenges to the sufficiency of the evidence de novo. *Bryant v. Aiken Reg'l Med. Ctrs. Inc.,* 333 F.3d 536, 543 (4th Cir. 2003). When the loser of a jury trial challenges the verdict under Federal Rule of Civil Procedure 50(b), "the question is whether a jury, viewing the evidence in the light most favorable to [the winning party], could have properly reached the conclusion reached by this jury." *Id.* (quotation marks omitted). Because Wiener won at trial, all disputed facts must be construed in his favor and he must be given the benefit of all reasonable inferences. *See Konkel,* 165 F.3d at 279.

[23]    While the district court dismissed for lack of subject-matter jurisdiction without reaching AXA's sufficiency-of-the-evidence challenge, we exercise our "discretion" to resolve it rather than remand it. *Singleton v. Wulff,* 428 U.S. 106, 121, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976). Resolving rather than remanding this challenge is appropriate because "both parties had ample opportunity to develop facts pertaining to the issue" over the course of this litigation, "the issue is primarily a question of law," it "was briefed and argued on appeal," and, in our view, "the proper outcome

is beyond doubt, rendering a remand pointless." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 105 (4th Cir. 2020) (listing factors we have considered in determining whether to resolve issues not decided below).

 **[24]**  Wiener's negligence claim was that AXA's negligent reporting of false medical information about him to the MIB caused him to become uninsurable. Ample evidence supported the jury's verdict for Wiener.

First, AXA does not dispute the jury's finding that it was negligent. AXA's employees falsely reported to an information clearinghouse that Wiener suffered from four serious medical conditions. They relayed this incorrect and damaging information without even conducting basic inquiries—like consulting Wiener's primary care doctor or reviewing the follow-up tests in Wiener's medical records—to determine whether those diagnoses were accurate.

Second, Wiener presented evidence from which a reasonable jury could conclude that he became uninsurable. While AXA asserts that Wiener's theory of injury was that he became "categorically" uninsurable, there is no evidence in the record that Wiener's proffered injury was "categorical" uninsurability. Wiener never argued that he became "categorically" uninsurable or uninsurable "at any price." Br. of Appellee at 3. Rather, in denying AXA's motion for summary judgment and allowing this case to proceed to trial, the district court concluded that "there is a genuine dispute of fact as to whether the MIB codes *effectively* rendered Plaintiff uninsurable or insurable *at a significantly increased cost.*" J.A. 235 (emphasis added). We have no doubt that someone who could obtain a $16 million life insurance policy only by paying annual premiums of $15,999,999 can be considered uninsurable. A reasonable jury could conclude that someone is effectively "uninsurable" when he cannot obtain insurance at a reasonable price.

Wiener presented evidence that he became effectively uninsurable. Sanford Robbins, who was Wiener's insurance agent and had thirty-seven years of experience, testified about his unsuccessful efforts to obtain a replacement $16 million policy for Wiener at the standard rate, which is "the rate that a typical person would obtain if they were healthy." J.A. 1372. Out of eight insurance applications, six carriers declined **\*785** coverage altogether while two made preliminary, revocable offers for a $10 million policy at double the standard rate—which would have cost Wiener an extra $400,000 per year. *Id.* at 1370–73. The jury could

properly have concluded from this evidence that Wiener had become effectively uninsurable or uninsurable at a reasonable cost.

Finally, Wiener presented evidence showing that the erroneous MIB codes that AXA reported caused his uninsurability. An expert witness, Stephen Burgess, testified that life insurance companies look at MIB codes early in determining whether to begin the underwriting process and would be deterred from starting the process if the applicant had MIB codes "of significant concern." *Id.* at 1582. He testified that one of the erroneous MIB codes that AXA reported would be a "hot button[ ]" and a "deal killer for an insurance company." *Id.* at 1581. And Wiener's agent, Robbins, testified that in speaking with insurance carriers whom he had contacted about Wiener's application, he "was told that the Medical Information Bureau file had a coding in it that created an underwriting issue," which would prevent carriers from issuing a policy at the standard rate. *Id.* at 1372.

 **[25]**  In sum, we do not lightly disturb jury verdicts on the basis of insufficient evidence, and we will not do so for a challenge as insubstantial as AXA's. The able district judge conducted a well-run trial during which Wiener presented sufficient evidence from which a reasonable jury could conclude that AXA's negligent reporting of erroneous MIB codes caused him to be become effectively uninsurable. The jury properly performed its function when it resolved these disputed facts in Wiener's favor. AXA's contrary arguments lack merit, so we decline to affirm the district court's dismissal on this alternative ground.

### IV.

The district court erred by applying Connecticut law despite both parties' choice to litigate under North Carolina law. It also erred by concluding that Connecticut's CIIPPA divested it of subject-matter jurisdiction despite that statute affecting only choice of law rather than choice of forum. AXA's alternative argument for affirmance based on the nature of Wiener's injury and its causation was thoroughly briefed and argued before us, and we find it to be without merit. But because AXA's argument for post-trial relief challenging the amount of damages, *see* J.A. 954, was neither raised nor briefed before this court, we think the better course is to remand to the district court to consider that issue in the first instance, *see* *Hillman v. IRS,* 263 F.3d 338, 343 (4th Cir. 2001).

**Wiener v. AXA Equitable Life Insurance Company, 58 F.4th 774 (2023)**

---

*REVERSED AND REMANDED*

**All Citations**

58 F.4th 774

---

## Footnotes

1    We reject AXA's suggestion that Wiener invited the district court to apply Connecticut law. Wiener discussed Connecticut's CIIPPA in his response to AXA's post-trial motion in order to explain how North Carolina's analogous statute operates. *See* J.A. 963–64. He did not request that the court throw out his jury verdict and apply Connecticut law instead.

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

🚩 KeyCite Yellow Flag

Post-Conviction Relief Granted by   Spivey v. U.S.,   E.D.Va.,   August 10, 2007

129 Fed.Appx. 856
This case was not selected for
publication in the Federal Reporter.
Not for Publication in West's Federal Reporter See Fed.
Rule of Appellate Procedure 32.1 generally governing
citation of judicial decisions issued on or after Jan. 1, 2007.
See also Fourth Circuit Rule 32.1 (Find CTA4 Rule 32.1)
United States Court of Appeals,
Fourth Circuit.

UNITED STATES of America, Plaintiff-Appellee,
v.
Curtis SPIVEY, Defendant-Appellant.

No. 03-4809.
|
Argued: Feb. 3, 2005.
|
Decided: May 10, 2005.

**Synopsis**
**Background:** Defendant was convicted in the United States
District Court for the Eastern District of Virginia, T.S. Ellis,
III, J., of assault with a dangerous weapon with intent to do
bodily harm, and was sentenced to 110 months imprisonment.
Defendant appealed.

**Holdings:** The Court of Appeals held that:

[1] error in instructing the jury was invited by defendant, and
thus, was not reversible, and

[2] district court was not required to sua sponte instruct the
jury on a lesser-included offense of simple assault.

Affirmed.

West Headnotes (2)

[1]    **Criminal Law**  🗝 Instructions

Error in instructing the jury on assault with
a dangerous weapon with intent to do bodily
harm, which was not a lesser-included offense
of the charged offense of assault with intent
to commit murder, was invited by defendant,
who specifically requested the instruction, and
thus, was not reversible; the Government never
expressly misled the district judge into believing
that there was law to support the erroneous
instruction.

1 Case that cites this headnote

[2]    **Criminal Law**  🗝 Grade or Degree of Offense

District court was not required to sua sponte
instruct the jury on a lesser-included offense of
simple assault.

**\*856**  Appeal from the United States District Court for the
Eastern District of Virginia, at Alexandria. T.S. Ellis, III,
District Judge. (CR-01-484).

**Attorneys and Law Firms**

Matthew Alan Wartel, Alexandria, Virginia, for Appellant.

G. David Hackney, Assistant United States Attorney,  **\*857**
Office of the United States Attorney, Alexandria, Virginia, for
Appellee.

Paul J. McNulty, United States Attorney, Michael E. Rich,
Assistant United States Attorney, Alexandria, Virginia, for
Appellee.

Before TRAXLER, GREGORY,  and  SHEDD,  Circuit
Judges.

**Opinion**

Affirmed by unpublished per curiam opinion.

Unpublished opinions are not binding precedent in this
circuit. See Local Rule 36(c).

PER CURIAM:

**\*\*1**  Curtis R. Spivey appeals his conviction for assault
with a dangerous weapon with intent to do bodily harm.

**U.S. v. Spivey, 129 Fed.Appx. 856 (2005)**

*See* 18 U.S.C.A. § 113(a)(4) (West 2000). Spivey appeals primarily on the ground that the submission of this crime to the jury, which he requested, constituted reversible error. For the reasons that follow, we affirm.

### I.

Spivey and a fellow prisoner named John Darrell had an altercation after Darrell told Spivey to stop making noise while Darrell was watching television. According to Darrell, Spivey hit him with a five- or six-inch sharp object in his back and chest. Dr. Konrad Jarrett described the injury to Darrell's upper back as "just a scratch" and the injury to Darrell's left chest as "a puncture wound," which did not penetrate the chest cavity. J.A. 179. Dr. Jarrett opined that had the puncture wound penetrated far enough, it could have been fatal, and he described Darrell's injuries as consistent with having been inflicted by either an ice pick or an ink pen.

A grand jury returned a one-count superceding indictment charging Spivey with assault with intent to commit murder. *See* 18 U.S.C.A. § 113(a)(1) (West 2000). This offense carries a maximum sentence of twenty years. Before trial, both parties requested that the district court also submit for the jury's consideration another offense defined in § 113(a), to wit, the offense of assault with a dangerous weapon with intent to do bodily harm, *see* 18 U.S.C. § 113(a)(4), which carries a maximum sentence of imprisonment of only ten years.

After the Government's case-in-chief, the district court asked the parties if there were any corrections or objections to the requested instructions, which included the offense of assault with a dangerous weapon with intent to do bodily harm. Aside from one objection raised by the Government irrelevant to this appeal, neither party raised an objection or suggested any change to the proposed jury instructions.

After reading the jury the agreed upon instructions, the district court asked counsel whether the jury had been fully and fairly instructed. Spivey's attorney responded, "Yes, your honor." J.A. 258. The district judge also requested that counsel review the verdict form. Spivey's counsel lodged no objection to the verdict form, which reflected both offenses. The jury returned a verdict of not guilty on the offense of assault to commit murder, but guilty on the offense of assault with a dangerous weapon with intent to do bodily harm. The district court sentenced Spivey to 110 months imprisonment. [*]

**\*858** II.

 **[1]**   Spivey principally argues that the district court erred by submitting to the jury the offense of assault with a dangerous weapon with intent to do bodily harm. Specifically, Spivey asserts that the submission to the jury of an offense other than that charged in the indictment is only appropriate in cases where the indictment already charges all the elements of the second offense. The indictment in this case charged Spivey with the offense of assault with intent to commit murder. Spivey contends that the use of a dangerous weapon is an element of the offense of assault with a dangerous weapon with intent to do bodily harm, but is not an element of the offense of assault with intent to commit murder. Stated another way, the offense of assault with a dangerous weapon with intent to do bodily harm is not a lesser-included offense of assault with intent to commit murder. Because the indictment charging Spivey with the offense of assault with the intent to commit murder did not include a finding on the element regarding the use of a dangerous weapon, Spivey contends the district court erred in instructing the jury as to the dangerous weapon offense and his conviction on this offense should be reversed.

 **\*\*2**   The Government concedes that the offense of assault with a dangerous weapon with intent to do bodily harm is not a lesser-included offense of assault with intent to commit murder and that lesser offense instructions are only permissible in cases where the indictment contains the elements of the lesser offense. *See Schmuck v. United States,* 489 U.S. 705, 716, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989) (adopting elements test where one offense is not necessarily included in another unless the elements of the lesser offense are a subset of the elements of the charged offense). Nonetheless, the Government argues that we should not reverse Spivey's conviction because the error was invited.

" 'A defendant in a criminal case cannot complain of error which he himself has invited.' " *United States v. Herrera,* 23 F.3d 74, 75 (4th Cir.1994) (quoting *Shields v. United States,* 273 U.S. 583, 586, 47 S.Ct. 478, 71 L.Ed. 787 (1927)). In this case, Spivey specifically requested that the district court give the jury the instruction as to the offense of assault with a dangerous weapon with intent to do bodily harm. In addition, Spivey confirmed on no fewer than three occasions during trial his support for the district court's instructions. After the Government's case-in-chief, the district court consulted

with counsel regarding the proposed instructions provided by the parties, which included the lesser offense instruction, and counsel for Spivey approved of the instruction. After the closing arguments, the district court instructed the jury on the lesser offense of assault with a dangerous weapon with intent to do bodily harm, and Spivey's counsel affirmed that the jury had been fully and fairly instructed. Finally, the district court requested that counsel review the verdict form, which included each offense, and Spivey's counsel again concurred.

### A.

Spivey argues that this error cannot be classified as invited for three reasons. First, pointing to our opinion in *Livingston v. Murdaugh,* 183 F.3d 300 (4th Cir.1999), where we held that the solicitor's role in seeking the jury instruction prevented any error from being classified as invited by **\*859** the defendant, Spivey argues that the error in this case is likewise not invited. Specifically, Spivey points out that the Government requested the erroneous instruction in its proposed instructions to the court.

The solicitor in *Livingston,* however, played a dramatically different role from the part played by the Government in this case. In *Livingston,* we noted that while the defendant "initially suggested the erroneous instruction, ... the solicitor led the argument with the trial judge." *Id.* at 302 (internal quotation marks omitted). Furthermore, when the trial judge asked whether the solicitor had any law to support his assertion that the instruction was proper, "[t]he solicitor answered, 'Yes sir,' despite the fact that no such law exists." *Id.*

In this case, no evidence suggests that the Government "led the argument with the trial judge" to give the jury an erroneous instruction as did the solicitor in *Livingston.* Rather, both Spivey and the Government requested the instruction in their proposed instructions to the court. Throughout trial, moreover, Spivey's counsel repeatedly approved of the district court's instruction on assault with a dangerous weapon with intent to do bodily harm, and the Government played no greater role than Spivey's counsel in assenting to the district court's instruction. Perhaps most importantly, and in contrast to the solicitor's conduct in *Livingston,* the Government never expressly misled the district judge into believing that there was law to support the erroneous instruction when in fact there was not. For these reasons, Spivey has failed to demonstrate that the Government's role in this case prevents any error from being classified as invited by him.

### B.

**\*\*3** Second, Spivey contends that the Supreme Court's decision in *United States v. Olano,* 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), changed the invited error doctrine. According to Spivey, errors after *Olano* must be classified as either waived or forfeited, such that there is no longer any room in the analysis for our traditional invited error doctrine. *See United States v. Perez,* 116 F.3d 840, 842 (9th Cir.1997) (en banc).

We do not believe that *Olano* has worked such a change in our approach to the issue. As the Court made clear in *Olano,* "[d]eviation from a legal rule is 'error' unless the rule has been waived." *Olano,* 507 U.S. at 732-33, 113 S.Ct. 1770. By specifically requesting an instruction on assault with a dangerous weapon with intent to do bodily harm, counsel for Spivey gave up the right to complain about the submission of the offense to the jury. Whether we call the error an invited error or a waived error under *Olano* is irrelevant. Invited errors are by definition waived errors, and under *Olano,* not reviewable on appeal. Spivey's claim that *Olano* somehow changed our invited error doctrine is therefore without merit, as evidenced by the fact that we have continued to apply the invited error doctrine, even after the Supreme Court's decision in *Olano. See, e.g., United States v. Bennafield,* 287 F.3d 320, 325 (4th Cir.2002) (applying invited error doctrine post-*Olano* and refusing to consider claim that district court erred by instructing the jury on an allegedly lesser, but not included, offense, given that defendant requested the instruction).

### C.

Third, Spivey argues that an "exceptional circumstance" exists that would remove the bar to reversal erected by the invited error doctrine. That is, Spivey contends **\*860** that reversal is necessary to preserve the integrity of the judicial process and prevent a miscarriage of justice because his conviction violates the Fifth Amendment prohibition against permitting "a defendant to be tried on charges that are not made in the indictment against him." *Stirone v. United States,* 361 U.S. 212, 217, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960).

We have never recognized an exception to the invited error doctrine, *see Wilson v. Lindler,* 8 F.3d 173, 175 (4th Cir.1993) (en banc), and we do not believe one is warranted in this case, given that Spivey's conviction would neither jeopardize the integrity of the judicial process nor cause a miscarriage of justice.

### III.

**[2]**    Spivey also challenges his conviction on two other grounds. First, he contends that the district court should have charged the jury with the lesser offense of simple assault because there was conflicting testimony on the type of weapon used in the attack. Spivey failed to object to the omission of that instruction. Thus, the court reviews the omission for plain error. *See Olano,* 507 U.S. at 732-35, 113 S.Ct. 1770.

Generally, a district court is not required to submit a specific instruction unless the instruction is warranted by the evidence *and* is requested by a party. *See United States v. Baker,* 985 F.2d 1248, 1259 (4th Cir.1993). Neither the Government nor Spivey requested the instruction as to the lesser-included offense of simple assault. Nor did either party object to the omission of the simple assault instruction at any point. Because no party requested, or even suggested, that the district court instruct the jury as to the lesser-included offense of simple assault, the district court's failure to do so was not error.

**\*\*4**  Second, Spivey contends that his conviction should be reversed because his counsel was ineffective. In particular, Spivey asserts that his attorney was ineffective in failing to call available defense witnesses, to lodge any objections to the Government's allegedly late disclosure of certain information, to object to the Government's use of a withheld statement to impeach Spivey on the stand, and to file a timely new trial motion raising these issues.

Unless the record *conclusively* demonstrates counsel's ineffectiveness, this court will not review an ineffective assistance of counsel claim on direct review. *See United States v. Hoyle,* 33 F.3d 415, 418 (4th Cir.1994). The record does not conclusively demonstrate Spivey's allegations of ineffectiveness against his counsel.

### IV.

For the reasons discussed above, we affirm Spivey's conviction and sentence.

*AFFIRMED*

**All Citations**

129 Fed.Appx. 856, 2005 WL 1101117

---

### Footnotes

\*    Prior to sentencing, Spivey moved *pro se* for appointment of new counsel for purposes of sentencing and appeal, arguing that trial counsel was not trustworthy and effective, failed to raise several alleged discovery violations to the district court, and failed to call an unnamed defense witness at trial. At Spivey's sentencing hearing, the district court considered and denied Spivey's motion for appointment of new counsel for sentencing purposes. For purposes of this appeal, the district court ordered appointment of new counsel for Spivey.

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.