**No. 23-7116**

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

WILLIAM WHITE,

*Petitioner-Appellant*,

*v.*

WARDEN OF FEDERAL CORRECTIONAL INSTITUTION - CUMBERLAND,

*Respondent-Appellee*.

On Appeal from the United States District Court
for the District of Maryland, No. 22-cv-02371-DKC (Chasanow, J.)

**PETITIONER-APPELLANT WILLIAM WHITE'S**
**PETITION FOR PANEL REHEARING AND REHEARING EN BANC**

JAMES WYDA
CLAIRE MADILL
PATRICIA L. RICHMAN
OFFICE OF THE FEDERAL
  PUBLIC DEFENDER
6411 Ivy Lane, Suite 710
Greenbelt, Maryland 20770
(301) 344-0600
Claire_Madill@fd.org

February 23, 2026

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................. ii

STATEMENT OF PURPOSE .........................................................................1

BACKGROUND ............................................................................................4

REASONS TO GRANT REHEARING EN BANC ....................................6

I.      The majority's constitutional analysis conflicts with opinions from the
        Supreme Court, this Court, and other federal appellate courts ........................6

II.     The majority opinion depends on the incorrect factual conclusion that
        White did not program while in the transfer center.......................................10

III.    The majority eradicated Congress's directive that the BOP provide
        prisoners an opportunity to earn credits "throughout their entire term of
        incarceration"..............................................................................................12

REASONS TO GRANT REHEARING ......................................................14

I.      The opinion wrongly suggests that an assessment is required before a
        prisoner can earn credits. ............................................................................14

II.     The opinion unnecessarily adopts a novel, ineffective remedy for FSA
        violations......................................................................................................15

CONCLUSION ............................................................................................16

CERTIFICATE OF COMPLIANCE..........................................................18

CERTIFICATE OF SERVICE ....................................................................19

APPENDIX...................................................................................................20

- i -

# TABLE OF AUTHORITIES

## Cases

*Adepoju v. Scales*, 782 F. Supp. 3d 306 (E.D. Va. 2025) .................................. 9, 16

*Baker v. Rosalez*, No. 1:24-CV-1362-RP, 2025 WL 2299373 (W.D. Tex. Aug. 8, 2025) ...........................................................................................16

*Bd. of Pardons v. Allen*, 482 U.S. 369 (1987) .................................................. 2, 6, 8

*Borker v. Bowers*, No. 24-10045-LTS, 2024 WL 2186742 (D. Mass. May 15, 2024) ..............................................................................................3

*Cheng v. United States*, 132 F.4th 655 (2d Cir. 2025)........................................ 6, 10

*Gonzalez v. Herrera*, 151 F.4th 1076 (9th Cir. 2025) ................................. 9, 12, 13

*Gonzalez-Fuentes v. Molina*, 607 F.3d 864 (1st Cir. 2010) ..................................2, 8

*Hawkins v. Louisiana Corr. Serv.*, No. 2:12–CV–309, 2013 WL 2319362 (S.D. Tex. May 28, 2013) .....................................................................16

*Heath v. Knight*, No. 22-72702, 024 WL 5198863 (D.N.J. 2024) ..........................16

*Jackson v. Carlson*, 707 F.2d 943 (7th Cir. 1983)........................................... 2, 7, 8

*Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454 (1989)...............................7

*Kim v. Hurston*, 182 F.3d 113 (2d Cir. 1999)..........................................................8

*Mallette v. Arlington Cty. Emps.' Supplemental Ret. Sys. II*, 91 F.3d 630 (4th Cir. 1996) ..............................................................................................2, 9

*Milliken v. Bradley*, 433 U.S. 267 (1977)...............................................................15

*Perevoznikov v. Stover*, 747 F. Supp. 3d 329 (D. Conn. 2024) ........................ 14, 16

*Pharm. Coal. For Patient Access v. United States*, 126 F.4th 947 (4th Cir. 2025) ..............................................................................................13

*Rome v. Morales*, 68 F.3d 471 (5th Cir. 1995) .....................................................16

*Sedlacek v. Rardin*, No. 24- 1254, 2025 WL 948485 (6th Cir. Jan. 21, 2025) .......10

- ii -

*Tyler v. Hooks*, 945 F.3d 159 (4th Cir. 2019)...........................................................16

*United States v. Hillary*, 106 F.3d 1170 (4th Cir. 1997) ........................................15

*Valladares v. Ray*, 130 F.4th 74 (4th Cir. 2025)................................... 1, 4, 6, 9

*Vargas v. Rivers*, No. 24-10703, 2025 WL 1380067 (5th Cir. May 13, 2025).. 9, 10

*White v. Warden*, 164 F.4th 326 (4th Cir. 2026) ......................................................1

*Wilson v. Jones*, 430 F.3d 1113 (10th Cir. 2005) .....................................................8

*Wolff v. McDonnell*, 418 U.S. 539 (1974) ...........................................................2, 7

*Woolsey v. Warden*, No. 2:25-CV-137-WKW, 2025 WL 2598794 (M.D. Ala. Sept. 8, 2025) ...........................................................................................................9

*Young v. Harper*, 520 U.S. 143 (1997) ....................................................................8

## Statutes

18 U.S.C. § 3621 ............................................................................... 3, 4, 12, 13

18 U.S.C. § 3624.........................................................................................................7

18 U.S.C. § 3632 ................................................................................ 3, 4, 8

## Regulations

28 C.F.R. § 542.18 ...................................................................................................16

## Rules

Fed. R. App. P. 40 ............................................................................... 1, 2, 3, 4

Local Rule 40 ....................................................................................... 1, 2, 3, 4

**STATEMENT OF PURPOSE**

The majority adopted an interpretation of the First Step Act (FSA) and the due process rights associated with it that, as Judge King notes in his dissent, not only "flout[s] the plain text of the FSA and the BOP's policies and practices," but "also threatens chaos, unequal treatment, and other unfairness in the FSA time credit system." Dissent at 31.[1] Pursuant to Federal Rule of Appellate Procedure 40 and Local Rule 40, Petitioner-Appellant White asks the this Court go en banc to correct the majority's decision or for the majority to reconsider and/or amend its opinion.

"The First Step Act established a system of mandatory time credits for incarcerated individuals who participate in recidivism reduction programming, with limited exceptions." *Valladares v. Ray*, 130 F.4th 74, 77 (4th Cir. 2025). After BOP refused Petitioner White time credits for his stint in a federal transfer center, White filed a habeas petition. There is no dispute that White qualified to earn FSA time credits or that he would have earned such credits if BOP had not involuntarily transferred him. The majority held that White was not entitled to relief either as a statutory or constitutional matter.

Rehearing en banc is warranted because of the conflict sown by the majority's constitutional analysis. Local Rule 40(b)(iii); Fed. R. App. P. 40(b)(2)(A)-(C).

---

[1] Citations herein refer to the slip opinion, which is available at ECF 41. The opinion can also be viewed at *White v. Warden*, 164 F.4th 326 (4th Cir. 2026).

- 1 -

Courts have long recognized that prisoners have a liberty interest, protected by the Due Process Clauses, in good-time credits. *E.g.*, *Wolff v. McDonnell*, 418 U.S. 539 (1974); *Jackson v. Carlson*, 707 F.2d 943, 946-47 (7th Cir. 1983). White argued he had the same liberty interest in FSA time credits. ECF at 19 at 29-46. After failing to ask a single question about due process at oral argument, the majority unnecessarily addressed this issue and held—without any legal citation—that a prisoner does not have a protected liberty interest in mandatory time credits that have "conditions" or "contingencies" attached. Opinion at 14-15. But that legal standard has been repeatedly rejected by virtually all federal appellate courts, including this one. Where a statute awards a benefit upon the satisfaction of certain conditions, a liberty interest exists. *E.g.*, *Bd. of Pardons v. Allen*, 482 U.S. 369 (1987); *Gonzalez-Fuentes v. Molina*, 607 F.3d 864 (1st Cir. 2010); *Mallette v. Arlington Cty. Emps.' Supplemental Ret. Sys. II*, 91 F.3d 630 (4th Cir. 1996); *Jackson*, 707 F.2d at 946. The majority does not address, let alone distinguish, any of these cases.

The majority's statutory analysis also warrants rehearing en banc (or rehearing) for two reasons, one factual and one legal. The majority "overlooked" a "material factual . . . matter," namely, that White apparently *did* program during the time in question. Local Rule 40(b)(i); Fed. R. App. P. 40(b)(1)(A). The fundamental factual premise underlying the majority opinion was that White could not have programmed because he was incarcerated in a BOP facility that offered no

programming. Opinion at 6-8. But White was offered, and completed, official BOP programming workbooks during the time in question. *See* Appendix (attached). The majority's refusal to apply the proper standard of review for a motion to dismiss led them to assume away this crucial fact.

In addition to this factual error, the majority's legal analysis conflicts with the FSA. Congress clearly wanted qualified federal prisoners to be able earn credits at all times after their sentence commenced, 18 U.S.C. § 3632(d)(4)(B),[2] and required BOP to provide that opportunity "throughout [a prisoner's] entire term of incarceration," 18 U.S.C. § 3621(h)(6). Yet the majority held that BOP can refuse to provide programming whenever it wants and that a federal prisoner has no meaningful recourse when that happens. As Judge King's dissent persuasively explains, the opinion unfairly guts the FSA in a manner that will affect myriad federal prisoners. Dissent at 27-31. The en banc Court should address this "question[] of exceptional importance." Local Rule 40(b)(iv); Fed. R. App. P. 40(b)(2)(D).

Panel rehearing is warranted not only due to the majority's factual error, but also because the majority opinion wades into two areas that weren't presented in this

---

[2] *See also Borker v. Bowers*, No. 24-10045-LTS, 2024 WL 2186742, at *2 (D. Mass. May 15, 2024) ("The FSA plainly requires that a prisoner shall earn time credits at the rate described after the person's sentence commences." (cleaned up)).

case: the appropriate remedy for BOP's violation of its statutory obligations and whether the so-called "risk and needs assessment" is a prerequisite to earning FSA credits. Given the lack of briefing on these issues, and the absence of legal citations from the majority on either point, it is unsurprising that, in both instances, the majority opinion cannot be squared with the current law. At minimum, Petitioner asks the majority to amend its opinion to remove the paragraph about the appropriate remedy, the suggestion that a risk-and-needs assessment is required to earning credits, and the due process analysis. *See* Local Rule 40(b)(i), (ii), (iv); Fed. R. App. P. 40(b)(1)(A), (b)(2)(D).

## BACKGROUND

White is a federal prisoner who qualifies to earn FSA time credits. Those credits are received for "participation in evidence-based recidivism reduction programming [EBRRs] or productive activities [PAs]" and can eventually accelerate release from prison. 18 U.S.C. § 3632(d)(4)(A), (C). Although the FSA establishes a "mandatory" scheme that requires BOP to award and apply credits, *Valladares*, 130 F.4th at 77, 79, and although "the FSA expressly requires the BOP to 'provide all prisoners with the opportunity to actively participate . . . *throughout their entire term of incarceration.*' *See* 18 U.S.C. § 3621(h)(6)," Dissent at 28, BOP refused to provide White credits for the time he was—through no fault of his own—in a BOP transfer center. White filed a habeas petition arguing that the refusal to grant him

- 4 -

credits during this time violated the FSA and procedural due process. Below, the government devoted a single sentence in response, arguing that the deprival of credits accorded with BOP regulation. Dissent at 22; ECF 20 at 29, 168 (J.A.26, 165). It did not respond to the due process argument, nor did it object that White had not shown participation. ECF 20 at 18-30, 168-69 (J.A. 15-27, 165-66). Applying the now-overruled "*Chevron*" doctrine, the district court denied White's petition.

On appeal, over Judge King's vehement dissent, the panel majority affirmed. The majority held that White was not entitled to FSA time credits because there was no evidence that "FSA programming was offered" at the transfer center or "that White even requested such programming while there." Opinion at 6. As Judge King highlighted, the majority lacked factual support for its claim that White did not, and could not, have programmed. Dissent at 27-28. In reality, White *did* program. Pursuant to instructions from a BOP psychologist, White completed BOP's Evidence-Based Recidivism Reduction (EBRR) Trauma and Criminal Thinking program workbooks. *See* Appendix.

As a statutory matter, the majority opinion rejected White's argument that federal prisoners should earn credits so long as they remain willing and able to engage in available and recommended programming. Opinion at 8-9; ECF 36 at 9-

- 5 -

15. As Judge King explained, White's position was consistent with BOP's actual practices and best harmonized the FSA. Dissent at 28-31.

The majority also rejected White's due process claim. It reasoned that, since the earning of FSA time credits was "contingent" on meeting certain statutory prerequisites, White was not entitled to any procedural protections before being deprived of credits. Opinion at 14-15.

## REASONS TO GRANT REHEARING EN BANC

**I.    The majority's constitutional analysis conflicts with opinions from the Supreme Court, this Court, and other federal appellate courts.**

White argued that the deprivation of earned FSA time credits violated procedural due process. Addressing this question was unnecessary once the majority determined that White wasn't statutorily entitled to credits.[3]   Nonetheless, the majority rejected White's argument. In doing so, it created substantial conflict.

A statute creates a liberty interest for prisoners where it "contain[s] language mandating release under certain circumstances." *Allen*, 482 U.S. at 372. There is no dispute that the FSA uses mandatory language requiring an individual's release when statutory prerequisites are met. *See* Opinion at 14 ("awarding FSA time credits is mandatory"); *Valladares*, 130 F.4th at 77, 79.

---

[3] If White was not entitled to credits under the statute, then he had no reasonable expectation (and therefore no liberty interest) in those credits. *See Cheng v. United States*, 132 F.4th 655, 659 (2d Cir. 2025).

Nonetheless, the majority rejected the due process claim. It reasoned: "Because the earning and application of FSA time credits are contingent upon numerous conditions both within and outside of a prisoner's control, the FSA does not create a statutory entitlement to those credits." Opinion at 15. The majority cites **<u>zero</u>** cases for the proposition that a protected liberty interest cannot arise for "contingent" or "conditional" statutory entitlements. *Id.* at 13-15. The lack of citation is not surprising, as this so-called "conditional" test conflicts with the opinions of the Supreme Court, other courts of appeals, and this Court.

<u>Supreme Court.</u> Every case in which the Supreme Court has found a statutorily-created protected liberty interest has involved "conditional" or "contingent" rights. Statutory liberty interests are created "by mandating the outcome to be reached upon a finding that the relevant criteria"—*i.e.,* conditions—"have been met." *Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 462 (1989). For example, prisoners have a liberty interest in good-time credits,[4] but good-time credits are conditional on a determination that an individual complied with prison rules and can be taken away for misbehavior. 18 U.S.C. § 3624(b). Similarly, the Supreme Court found a liberty interest arose from a parole statute that mandated release only when certain conditions were met, for example, that the board found

---

[4] *Wolff*, 418 U.S. 539; *Jackson*, 707 F.2d at 946-47.

that the person could "be released without detriment to the prisoner or to the community" and that he could "fulfill the obligations of a law-abiding citizen." *Allen*, 482 U.S. at 376-78; *see also Young v. Harper*, 520 U.S. 143, 144-45 (1997) (finding prisoners had liberty interest in preparole, even though they qualified for preparole only upon meeting certain conditions).

Other Federal Courts. The majority opinion also runs counter to precedent from other circuits. For example, the Seventh Circuit made clear that the "conditional" nature of a statutory benefit does not remove it from Due Process Clause protection: "[I]f the government creates . . . a firm expectation that if the prisoner **complies with specified conditions** he will automatically earn the credits and be released earlier—a deprivation of that right is a deprivation of liberty." *Jackson*, 707 F.2d at 947 (emphasis added). The exact situation exists here: the FSA creates a firm expectation that, if a prisoner complies with specified statutory conditions, he will automatically earn credits toward earlier release. 18 U.S.C. § 3632(d)(4). Similarly, the First Circuit found a protected liberty interest in prisoners' release to electronic monitoring, even though "eligibility criteria" (*i.e.*, conditions) existed for the program. *Gonzalez-Fuentes*, 607 F.3d at 870, 890; *see also Wilson v. Jones*, 430 F.3d 1113, 1120-21 (10th Cir. 2005); *Kim v. Hurston*, 182 F.3d 113 (2d Cir. 1999). Indeed, several district courts have concluded the FSA's mandatory language creates a liberty interest. *E.g.*, *Woolsey v. Warden*, No. 2:25-

- 8 -

CV-137-WKW, 2025 WL 2598794, at *16-*17 (M.D. Ala. Sept. 8, 2025); *Adepoju v. Scales*, 782 F. Supp. 3d 306, 319-21 (E.D. Va. 2025).

This Court. The majority's opinion clashes with this Court's own precedent. In *Mallette*, the government raised the argument that the majority adopted—that the existence of statutory prerequisites or conditions before a benefit can be awarded defeats the existence of a liberty interest. 91 F.3d at 637. This Court rejected it. A liberty interest existed because "[o]nce [the petitioner] meets those particularized standards [required by statute]," there was no "discretion not to award benefits." *Id.* at 635. As the Court explained, "a desired plum need not be already in hand before warranting the shelter of the Due Process Clause." *Id.* at 638. The same is true here. Once a prisoner meets the so-called conditions laid out by the majority, the BOP has no discretion to refuse to award credits. *Valladares*, 130 F.4th at 77, 79; *Gonzalez v. Herrera*, 151 F.4th 1076, 1085 (9th Cir. 2025) (noting that the BOP "must" follow the FSA for eligible prisoners).

The majority did not cite, let alone distinguish, any of these cases. Opinion at 13-15. Instead, it misleadingly claims that it is "joining" other circuits. Opinion at 15. Putting aside that the cases the majority cited were litigated by pro se litigants and contain superficial analysis, two of them don't actually hold the same as the majority here. *Vargas* did <u>not</u> hold that there was no statutory entitlement to FSA time credits, but rather rejected the due process claim on other grounds. *Vargas v.*

- 9 -

*Rivers*, No. 24-10703, 2025 WL 1380067, at *1 (5th Cir. May 13, 2025). *Cheng* involved a noncitizen with a final order of removal—an individual who, unlike White, was statutorily excluded from earning FSA time credits (and thus could not have any expectation in such credits). 132 F.4th at 659. Only a single unpublished appellate decision reaches the same conclusion, and it does so with little real analysis. *Sedlacek v. Rardin*, No. 24- 1254, 2025 WL 948485, at *1 (6th Cir. Jan. 21, 2025).

**II.    The majority opinion depends on the incorrect factual conclusion that White did not program while in the transfer center.**

Rehearing en banc (and rehearing) is warranted because the premise of the majority opinion—that White did not participate in any qualifying programming— is incorrect. The majority "overlooked" this "material factual . . . matter," Local Rule 40(b), because it did not apply the proper standard of review for motions to dismiss.

The majority held that White was not entitled to time credits for his "three-day transitory stay in the Federal Transfer Center Oklahoma City" because "no FSA programming was offered" and "there is no evidence that White even requested such programming while there." Opinion at 6. As Judge King explained, there wasn't sufficient record for this assertion. Dissent at 27. White's *pro se* petition was dismissed at the motion to dismiss stage, before an opportunity to present evidence. Further, because the government did not oppose White's petition on the ground that

- 10 -

he failed to show participation, "the parties understandably did not present evidence to the district court" on that "then-irrelevant topic." *Id.*[5] But, as White pointed out in his reply, evidence indicated that programming *was* available. ECF 19 at 34 & n.26; Dissent at 27-28. To the extent the majority was concerned about whether programming occurred, the proper remedy was "at minimum, reversal and remand" for factual development. Dissent at 28 n.4. Instead, the majority assumed facts not in evidence—that White did not and could not have programmed—to rule against White.

The majority's refusal to adhere to the motion-to-dismiss standard led to its significant factual error. White was offered, and completed, programming during his stint at the Federal Transfer Center. *See* Appendix. Specifically, he was assigned, and completed, the workbooks for BOP's EBBR Trauma and Criminal Thinking programs. This likely qualified as an EBRR or productive activity.[6]

Because there is evidence that White did program, and the majority's opinion depends on the opposite assumption, rehearing or rehearing en banc is warranted.

---

[5] If the government had responded to White's petition on the ground that he failed to show participation, he would have submitted the evidence in the appendix.

[6] The term "productive activity" has a broad definition. It includes "a variety of groups, programs, classes and individual activities," both "structured" and "unstructured," including "[p]roductive, free-time activities" and "[p]ersonal growth and development classes." ECF 20 at 219 (J.A.216). EBBRs encompass "individual activit[ies]" and "[t]rauma counseling and trauma-informed support programs." ECF 20 at 218-19 (J.A.215-16)

**III.   The majority eradicated Congress's directive that the BOP provide prisoners an opportunity to earn credits "throughout their entire term of incarceration."**

Putting aside the factual error, the majority's statutory analysis "runs headlong into the plain text of the FSA, along with BOP policies and practices." Dissent at 28.

A court cannot ignore the plain text of a statute because it finds it imprudent. A statutory interpretation that "simply disagrees with the policy chosen by Congress" is improper, as "it is not the court's role to choose what it thinks is the best policy outcome and to override the plain meaning of a statute, apparent anomalies or not." *Gonzalez*, 151 F.4th at 1090 (cleaned up).

But that is what the majority does. The majority recognized that the FSA's plain text required BOP to provide White with an opportunity to earn credits while in the transfer center. Opinion at 8; *see also* 18 U.S.C. § 3621(h)(6). Yet, it decided it could ignore that language because, per the majority, it simply would be too hard for BOP to comply. As the majority lamented, "the BOP provides practical reasons for why it did not offer programming during the transfer" and it would "defy common sense" to adhere to the plain language. Opinion at 8-9; *see also* Opinion at 14 (citing "practical limitations on the BOP's ability to provide qualifying programming in given situations"). As Judge King explained, the majority held that "the BOP is excused, without clear limitations, from providing programming"

- 12 -

because, in the majority's view, it would just be too hard for BOP to follow the statute. Dissent at 31. At base, the majority "simply disagree[d] with the policy chosen by Congress," *Gonzalez*, 151 F.4th at 1090, to require BOP to make programming available "throughout [a prisoner's] entire term of incarceration," 18 U.S.C. § 3621(h)(6).

Worse still, as Judge King explained, White's interpretation of the FSA doesn't actually defy "common sense," Opinion at 9, but actually best synthesizes the statute.[7] White's proposed interpretation (that a prisoner earns credits so long as he doesn't refuse programming) not only matches BOP's actual practices, but also properly balances the FSA's dual requirements that the BOP provide opportunities to earn credits throughout a prisoner's incarceration and that a prisoner participate in programming. Dissent at 28-31; ECF 36 at 16-22 (Reply at 9-15).

Under the majority decision, notwithstanding Congress's clear intent to have credits available to prisoners throughout their entire incarceration and thereby reduce prison sentences, BOP can refuse to provide programming to prisoners for any reason or no reason at all, for apparently as long as BOP wishes, thereby depriving prisoners of mandatory credits. That ruling will not affect only White, but every

---

[7] Common sense can be invoked "to look beyond the plain language of a statute" only in "exceptionally rare" circumstances where the language would otherwise result in an "absurd" outcome. *Pharm. Coal. For Patient Access v. United States*, 126 F.4th 947, 961 (4th Cir. 2025).

federal prisoner eligible to earn FSA credits.  The Court should go en banc to correct this misstep.

## REASONS TO GRANT REHEARING

The Court should rehear the case for the same reasons articulated above, and especially because the factual premise underlying the opinion (that White could not have participated), was wrong.  Additionally, or alternatively, the Court should amend the opinion to remove the portions about the possible remedy and necessity of an assessment.

**I.     The opinion wrongly suggests that an assessment is required before a prisoner can earn credits.**

Seemingly inadvertently, the majority opinion wades into a hotly contested issue not presented by White's case.  Much litigation exists about whether a risk-and-needs assessment is a prerequisite to earning FSA credits.  District courts have said it's not required,[8] and both this Court and the First Circuit are expressly considering the issue in cases that properly present it.  *Miles v. Bowers*, 25-1291 (1st Cir.); *Benson v. Warden*, 24-6713 (4th Cir.).  This question was never presented or discussed in this case, as White had been assessed before the time period at issue.  However, the majority opinion contains a stray line suggesting an assessment must

---

[8] *E.g.*, *Perevoznikov v. Stover*, 747 F. Supp. 3d 329, 334-35 (D. Conn. 2024); *Kvashuk v. Warden*, No. 23-cv-007-SE, 2024 WL 4349850, at \*5 (D.N.H. Sept. 30, 2024).

come before a prisoner can earn credits. *See* Opinion at 14 ("Under the FSA, a prisoner must first qualify for the opportunity to earn credits by an initial assessment of his recidivism risk . . . ") The government has relied on this line to argue an assessment is required. ECF 33, *Miles v. Bowers*, 25-1291 (1st Cir.). Since this issue was neither briefed nor relevant in this case, the gratuitous sentence should be deleted.

## II.    The opinion unnecessarily adopts a novel, ineffective remedy for FSA violations.

The majority opinion asserts—without any citation—that the proper remedy for BOP's failure to provide programming would be for BOP to make it available upon White's request, rather than to award White his unlawfully denied credits. Opinion at 10. Not only was this position never posited by any party, it also makes little sense. The purpose of a judicial remedy is to make the injured party whole, *Milliken v. Bradley*, 433 U.S. 267, 280 n.15 (1977), *i.e.*, place the victim "in exactly the same position in which he would have been had there been no error in the first instance," *United States v. Hillary*, 106 F.3d 1170, 1172 (4th Cir. 1997). The majority's remedy would not make White whole—it only permits White to obtain *future* credits, by giving him access to future programming upon request (assuming BOP even complied with his request). It fails to address the loss of credits that White suffered due to BOP's unlawful withholding of programming in the first place. And,

- 15 -

given that BOP's administrative process takes months,[9] this so-called "remedy" means that, even if a prisoner ultimately prevailed and obtained access to programming upon request, he would still lose the weeks of credits that he would have otherwise earned.  But every extra day incarcerated constitutes an irreparable harm that prisoners like White should not have to endure because BOP violated its statutory obligations to provide programming.  *See Adepoju*, 782 F. Supp. 3d at 316. Indeed, courts have regularly ordered the reinstatement or recalculation of unlawfully denied credits as a remedy.[10]

The majority should delete the paragraph about remedy.

## CONCLUSION

Rehearing or rehearing en banc is warranted.

---

[9] *Hawkins v. Louisiana Corr. Serv.*, No. 2:12–CV–309, 2013 WL 2319362, at *3 (S.D. Tex. May 28, 2013) (noting that the BOP grievance system takes "approximately two months at a minimum"); 28 C.F.R. § 542.18.

[10] *E.g.*, *Tyler v. Hooks*, 945 F.3d 159, 173 (4th Cir. 2019) (granting habeas relief to restore good-time credits); *Baker v. Rosalez*, No. 1:24-CV-1362-RP, 2025 WL 2299373, at *2 (W.D. Tex. Aug. 8, 2025); *Heath v. Knight*, No. 22-72702, 024 WL 5198863, at *4 (D.N.J. 2024); *Perevoznikov*, 747 F. Supp. 3d at 336; *see also Rome v. Morales*, 68 F.3d 471, *2 (5th Cir. 1995) ("[A]n order to restore good time credits . . . is available only in a habeas proceeding.").

Respectfully submitted,

JAMES WYDA
Federal Public Defender

/s/ Claire Madill
CLAIRE MADILL
PATRICIA L. RICHMAN
Assistant Federal Public Defenders
Office of the Federal Public Defender
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
(301) 344-0600
Claire_Madill@fd.org
Patricia_Richman@fd.org

February 23, 2026

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 40(d)(3)(A) in that, according to the word-count feature of the word-processing system used to prepare this document (Microsoft Word for Microsoft 365), the brief contains 3,838 words, excluding the portions exempted by Rule 32(f).

/s/ Claire Madill
CLAIRE MADILL

- 18 -

# CERTIFICATE OF SERVICE

I certify that on February 23, 2026, I electronically filed the foregoing brief with the Clerk of Court using the CM/ECF system, which will send notice of such filing to all registered CM/ECF users.

*/s/ Claire Madill*
CLAIRE MADILL

# APPENDIX

## DECLARATION OF WILLIAM WHITE

1. My name is William White. I am the Petitioner-Appellant in *William White v. Warden of Fed Correctional Ins – Cumberland*, No. 23-7116.

2. I believe I did successfully participate in programing at the Federal Transfer Center in Oklahoma City during the time period in question in this case. When I arrived at the facility, I met with a psychologist about certain mental health concerns. She provided me with the workbooks for the Bureau of Prison's Evidence-Based Recidivism Reduction (EBBR) Trauma and Criminal Thinking programs, which I completed while at the transfer facility.

3. I did not mention this in my *pro se* pleadings before the district court because the government only ever objected to my petition on the ground that I was ineligible due to my transfer status, not due to any lack of participation.

4. If the government had argued that my petition failed to sufficiently allege participation, I would have amended my habeas petition to plead the participation described above and/or would have provided evidence to the Court of this participation.

I declare under penalty of perjury that the foregoing is true and correct to the best of my recollection.

EXECUTED ON: Febuary 10 , 2026

William White

WITNESS

- 21 -

**Bureau of Prisons**
**Psychology Services**
**Brief R&D Screening**

**\*\*SENSITIVE BUT UNCLASSIFIED\*\***

| | | | | |
|---|---|---|---|---|
| Inmate Name: WHITE, WILLIAM A | | | | Reg #:  13888-084 |
| Date of Birth: ▬▬▬ | Sex: M | Facility: OKL | | Unit Team: 5F HOM |
| Date: 07/21/2022 18:02 | Provider: Thomas, Kelsey L. Staff | | | |

**Comments**

████████████ Inmate WHITE was seen due to ████████████ that arose during the intake screening process at FTC Oklahoma City. ████████████

████████████ Brief counseling was provided regarding available coping strategies and management of time in transit, and an independent study workbook and puzzles were provided. ████████████

████████████

**Diagnosis:**

████████████

Completed by Thomas, Kelsey L. Staff Psychologist on 07/21/2022 18:05